# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LUGANO DIAMONDS & JEWELRY INC., *et al*.,[1] | Case No. 25-12055 (___) |
| Debtors. | (Joint Administration Requested) |

## APPLICATION OF DEBTORS FOR AN ORDER (A) AUTHORIZING AND APPROVING THE APPOINTMENT OF OMNI AGENT SOLUTIONS, INC. AS CLAIMS AND NOTICING AGENT, AND (B) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby file this application (this "Application") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"): (a) authorizing the Debtors to retain and appoint Omni Agent Solutions, Inc. ("Omni") as claims and noticing agent ("Claims and Noticing Agent") in the Debtors' chapter 11 cases, effective as of the Petition Date (as defined below), to, among other things, (i) distribute required notices to parties in interest, (ii) receive, maintain, docket, and otherwise administer proofs of claim filed in the Debtors' chapter 11 cases, and (iii) provide such other claims and noticing services; and (b) granting related relief. In support of this Application, the Debtors submit the *Declaration of Paul H. Deutch in Support of the Application of Debtors for an Order (A) Authorizing and Approving the Appointment of Omni Agent Solutions, Inc. as Claims and Noticing Agent, and (B) Granting Related Relief* (the "Deutch Declaration"), attached hereto as **Exhibit B**, and the *Declaration of J. Michael Issa in Support of*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's U.S. federal tax identification number, to the extent applicable, are as follows: Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc. (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308). The notice address for the Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, California 92660.

*Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"),[2] filed contemporaneously herewith.  In further support of this Application, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.     This United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory and legal predicates for the relief requested herein are section 156(c) of title 28 of the United States Code, section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rule 2002(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Local Rule 2002-1(e), and the Court's *Protocol for the Employment of Claims and Noticing Agents Under 28 U.S.C. § 156(c)*, instituted by the Office of the Clerk of the United States Bankruptcy Court for the District of Delaware (the "Clerk") on February 1, 2012 (the "Claims Agent Protocol").

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

## BACKGROUND

4.      On the date hereof (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code (the "<u>Chapter 11 Cases</u>") in the Court. The Debtors are authorized to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No official committee has been appointed in the Chapter 11 Cases, and no request has been made for the appointment of a trustee or an examiner.

6.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in the First Day Declaration.

## OMNI'S QUALIFICATIONS

7.      Omni is comprised of leading industry professionals with significant experience in the administrative aspects of large, complex chapter 11 cases. Omni's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Omni has served as debtors' claims and noticing agent and/or administrative agent in many large bankruptcy cases in this district and in other districts nationwide, including, among others, the following: *In re Claire's Holdings LLC*, No. 25-11454 (BLS) (Bankr. D. Del. Aug. 6, 2025); *In re Zen JV, LLC,* No. 25-11195 (JKS) (Bankr. D. Del. June 24, 2025); *In re At Home Grp. Inc.*, No. 25-11120 (JKS) (Bankr. D. Del. June 16, 2025); *In re Boundless Broadband, LLC*, No. 25-10948 (BLS) (Bankr. D. Del. May 29, 2025); *In re Solid Fin. Tech., Inc.*, No. 25-10669 (BLS) (Bankr. D. Del. Apr. 7,2025); *In re Go Lab, Inc.*, No. 25-10557 (KBO) (Bankr. D. Del. Mar. 25, 2025); *In re Wynne Transp. Holdings, LLC*, No. 25-10027 (KBO) (Bankr. D. Del. Jan. 10, 2025); *In re Ligado Networks, LLC*, No. 25-10006 (TMH) (Bankr. D. Del. Jan. 5, 2025); *In re First Mode, Holdings, Inc.*, No. 24-12794 (KBO) (Bankr. D. Del. Dec. 15, 2024); *In re True*

*Value Co., L.L.C.*, No. 24-12337 (KBO) (Bankr. D. Del. Oct. 14, 2024); *In re Accuride Corp.*, No. 24-12289 (JKS) (Bankr. D. Del. Oct. 11, 2024); *In re Edgio, Inc.*, No. 24-11985 (KBO) (Bankr. D. Del. Sept. 9, 2024); *In re Vyaire Med. Inc.*, No. 24-11217 (BLS) (Bankr. D. Del. June 11, 2024); *In re Never Slip Holdings, Inc.*, No. 24 10663 (LSS) (Bankr. D. Del. Apr. 1, 2024).[3] Omni will follow procedures that conform to applicable guidelines promulgated by the Clerk and the Judicial Conference, and as may be entered by the Court's order.

8.     By appointing Omni as the Claims and Noticing Agent in the Chapter 11 Cases, the distribution of notices and the processing of claims will be expedited, and the Clerk's office will be relieved of the administrative burden of processing proofs of claims, if any.

## SERVICES TO BE PROVIDED

9.     This Application pertains only to the work to be performed by Omni under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(e). Any work to be performed by Omni outside of this scope is not covered by this Application or by any order granting approval hereof. Specifically, Omni will perform the following tasks, as necessary, in its role as Claims and Noticing Agent, as well as all quality control relating thereto:

    (a)     prepare and serve required notices and documents in the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including (as applicable) (i) notice of the commencement of the Chapter 11 Cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code, if held, (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on approval of a disclosure statement and confirmation of the Debtors' chapter 11 plan, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any confirmed plan, and (vii) all other notices, orders, pleadings, publications and other documents as the Debtors or the Court may deem necessary or appropriate for an orderly administration of the Chapter 11 Cases;

---

[3]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Application. Copies of these orders are available upon request to the Debtors' proposed counsel.

(b)      maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

(c)      maintain (i) a list of all potential creditors, equity holders, and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k), Local Rule 2002-1(b), and (c), and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010, and update and make said lists available upon request by a party-in-interest or the Clerk;

(d)      furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)      maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)      maintain an electronic platform for purposes of filing proofs of claim;

(g)      for all notices, applications, motions, orders, or other pleadings or documents served, prepare and file, or cause to be filed with the Clerk, an affidavit or certificate of service within seven days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was served (in alphabetical order) with their mailing or email addresses, as applicable, (iii) the manner of service, and (iv) the date served;

(h)      process all proofs of claim received, including those received by the Clerk's office, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(i)      maintain the official claims register for each Debtor (collectively, the "Claims Registers") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, etc.); (vi) the applicable Debtor; and (vii) any disposition of the claim;

(j)     provide public access to the Claims Registers, including complete proofs of claim with attachments, if any, without charge on a case-specific website maintained by Omni;

(k)     implement necessary security measures to ensure the completeness and integrity of the Claims Registers, the safekeeping of the original proofs of claim, and the protection from public access any information protected by court order or under Local Rule 9037-1;

(l)     file quarterly updated Claims Registers in alphabetical and numerical order or a certification of no claims activity if there has been no claims activity in the quarter;

(m)     record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(n)     relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Omni, not less than weekly;

(o)     upon completion of the docketing process for all proofs of claim received to date for each case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

(p)     monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Registers and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(q)     identify and correct any incomplete or incorrect addresses in any mailing or service lists (to the extent such corrected information is available);

(r)     assist in the dissemination of information to the public and respond to requests for administrative information regarding the Chapter 11 Cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

(s)     if the Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk within three days of notice to Omni of entry of the order converting the Chapter 11 Cases;

(t)     30 days prior to the close of the Chapter 11 Cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing Omni as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of the cases; and

(u)    within 14 days of notice to Omni of entry of an order dismissing or converting the Chapter 11 Cases or within 28 days of entry of a final decree closing the Chapter 11 Cases, (i) forward to the Clerk an electronic version of all proofs claims, (ii) upload the publicly available portions of the creditor matrix into CM/ECF, (iii) forward to the Clerk the sealed portions of the creditor matrix in the format requested by the Clerk, and (iv) docket in the lead case a combined Claims Register containing claims from all cases, and also docket a case-specific final Claims Register and creditor mailing matrix in each respective jointly administered case.

10.    The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Omni at https://omniagentsolutions.com/Lugano.

## PROFESSIONAL COMPENSATION

11.    The Debtors respectfully request that the undisputed fees and expenses incurred by Omni in the performance of the above services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court. Omni agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred and to serve monthly invoices on the Debtors, the office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, counsel to Compass Group Diversified Holdings LLC ("CODI"), the Debtors' prepetition secured lender and postpetition secured lender, and any party-in-interest who specifically requests service of the monthly invoices. If any dispute arises relating to the engagement agreement setting forth the terms of Omni's retention and attached as Exhibit 1 to the Proposed Order (the "Engagement Agreement") or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

12.     Prior to the Petition Date, the Debtors provided two $25,000 retainers (together, the "Retainer") to Omni.  Omni seeks to first apply the Retainer to all reasonable and documented prepetition fees and expenses, and thereafter, to have the Retainer replenished to the original advance amount, and thereafter, to hold the Retainer under the Engagement Agreement during the Chapter 11 Cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

13.     Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend, and hold harmless Omni and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents (each, an "Indemnified Party," and collectively, the "Indemnified Parties"), under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Omni's bad faith, gross negligence, or willful misconduct or as otherwise provided in the Engagement Agreement or Proposed Order.  The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in the Chapter 11 Cases.

14.     The terms of Omni's retention are set forth in the Engagement Agreement; *provided* that the Debtors are seeking approval solely of the terms and provisions of the Engagement Agreement as set forth in this Application and the Proposed Order attached hereto.  To the extent that there is any inconsistency between this Application, the Proposed Order, and the Engagement Agreement, the Proposed Order shall govern.

## **DISINTERESTEDNESS**

15.     Although the Debtors do not propose to employ Omni under section 327 of the Bankruptcy Code pursuant to this Application (such retention will be sought by separate application), Omni has nonetheless reviewed its electronic database to determine whether it has

any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Deutch Declaration, Omni has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

16.     Moreover, in connection with its retention as Claims and Noticing Agent, Omni represents in the Deutch Declaration, among other things, that:

(a)     Omni is not a creditor of the Debtors;

(b)     Omni will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in the Chapter 11 Cases;

(c)     by accepting employment in the Chapter 11 Cases, Omni waives any rights to receive compensation from the United States government in connection with the Chapter 11 Cases;

(d)     in its capacity as the Claims and Noticing Agent in the Chapter 11 Cases, Omni will not be an agent of the United States and will not act on behalf of the United States;

(e)     Omni will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in the Chapter 11 Cases;

(f)     Omni is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g)     in its capacity as Claims and Noticing Agent in the Chapter 11 Cases, Omni will not intentionally misrepresent any fact to any person;

(h)     Omni shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)     Omni will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     none of the services provided by Omni as Claims and Noticing Agent in the Chapter 11 Cases shall be at the expense of the Clerk's office.

17. Omni will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## RELIEF REQUESTED

18. By this Application, the Debtors request entry of the Proposed Order: (a) authorizing the Debtors to retain and appoint Omni as Claims and Noticing Agent in the Chapter 11 Cases, effective as of the Petition Date, to, among other things, (i) distribute required notices to parties in interest, (ii) receive, maintain, docket, and otherwise administer proofs of claim filed in the Chapter 11 Cases, and (iii) provide such other claims and noticing services; and (b) granting related relief.

## BASIS FOR RELIEF REQUESTED

19. Section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of a bankruptcy court, authorizes the Court to use "facilities" or "services" other than the Clerk for administration of bankruptcy cases. 28 U.S.C. § 156(c). Specifically, the statute provides, in relevant part:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

20. Bankruptcy Rule 2002 generally regulates what notices must be given to creditors and other parties in interest in bankruptcy cases. Fed. R. Bankr. P. 2002. Bankruptcy Rule 2002 specifically provides that Court may authorize a person other than the Clerk to provide notices. *See, e.g.*, Bankruptcy Rule 2002(a) ("the clerk *or the court's designee*" must provide notice)

(emphasis added); Bankruptcy Rule 2002(f) ("the clerk, *or some other person as the court may direct*," must provide notice) (emphasis added).

21.    In addition, Local Rule 2002-1(e) provides:

> The Court may at the First Day Hearing authorize the retention of a claims and noticing agent—"claims agent"—under 28 U.S.C. § 156(c) on motion substantially confirming to Local Form 134. A chapter 11 debtor with more than 200 parties identified in the list filed under Local Rule 1007-2(a) must file the motion with its petition or within 7 days thereafter, unless the Court orders otherwise. The claims agent must comply with the Court's Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c) and perform the [claims and noticing services].

Del. Bankr. L.R. 2002-1(e). Accordingly, Bankruptcy Rule 2002(f), Local Rule 2002-1(e), and section 156(c) of title 28 of the United States Code empower the Court to utilize outside agents and facilities for notice and claims purposes, provided that the Debtors' estates bear the cost of such services.

22.    The Debtors have more than 200 creditors in the Chapter 11 Cases. Accordingly, a claims and noticing agent is required and, given the number of parties in the Debtors' mailing matrix, is otherwise in the best interests of the Debtors' estates and their creditors. By appointing Omni as the Claims and Noticing Agent in the Chapter 11 Cases, the distribution of notices and the processing of claims will be expedited, and the Clerk will be relieved of the administrative burden of processing what may be a significant number of claims.

23.    For all of the foregoing reasons, the Debtors believe that the appointment of Omni as the Claims and Noticing Agent in the Chapter 11 Cases is necessary and in the best interests of the Debtors, their estates and creditors, and all parties in interest.

24.    Furthermore, the Debtors respectfully submit that the fees and expenses that would be incurred by Omni under the proposed engagement would be administrative in nature and, therefore, should not be subject to standard fee application procedures of professionals.

33769059.1

25.     By separate application, the Debtors will seek authorization to retain and employ Omni as the administrative agent in the Chapter 11 Cases, pursuant to section 327(a) of the Bankruptcy Code, because the administration of the Chapter 11 Cases will also require Omni to perform duties outside the scope of 28 U.S.C. § 156(c).

### COMPLIANCE WITH CLAIMS AND NOTICING AGENT PROTOCOL

26.     The Debtors' selection of Omni to act as the Claims and Noticing Agent satisfies the *Claims Agent Protocol.* The Debtors obtained and reviewed engagement proposals from at least two other Court-approved claims and noticing agents to ensure selection through a competitive process. Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that Omni's rates are competitive and reasonable given Omni's quality of services and expertise.

### NOTICE

27.     The Debtors will provide notice of this Application to the following parties or their respective counsel: (a) the U.S. Trustee; (b) those creditors holding the 30 largest unsecured claims against the Debtors' estates (on a consolidated basis); (c) the office of the attorney general for each of the states in which the Debtors operate; (d) the United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Department of Justice; (g) the Securities and Exchange Commission; (h) counsel to CODI, the Debtors' prepetition secured lender and postpetition secured lender; and (i) any party that is entitled to notice pursuant to Bankruptcy Rule 2002. The Debtors will serve copies of this Application, and any order entered in respect of this Application, as required by Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of page intentionally left blank]*

## CONCLUSION

WHEREFORE, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein, and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated: November 16, 2025
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Timothy R. Powell*
Edmon L. Morton (Del. No. 3856)
Sean M. Beach (Del. No. 4070)
Timothy R. Powell (Del. No. 6894)
Benjamin C. Carver (Del. No. 7176)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  emorton@ycst.com
             sbeach@ycst.com
             tpowell@ycst.com
             bcarver@ycst.com

-and-

**KELLER BENVENUTTI KIM LLP**
Tobias S. Keller (*pro hac vice* pending)
Traci L. Shafroth (*pro hac vice* pending)
Scott Friedman (*pro hac vice* pending)
101 Montgomery Street, Suite 1950
San Francisco, California 94104
Telephone: (415) 496-6723
Facsimile:  (650) 636-9251
Email:  tkeller@kbkllp.com
             tshafroth@kbkllp.com
             sfriedman@kbkllp.com

*Proposed Attorneys for Debtors
and Debtors-in-Possession*

**EXHIBIT A**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LUGANO DIAMONDS & JEWELRY INC., *et al.*,[1] | Case No. 25-12055 (___) |
| Debtors. | (Jointly Administered) |

### ORDER (A) AUTHORIZING AND APPROVING THE APPOINTMENT OF OMNI AGENT SOLUTIONS, INC. AS CLAIMS AND NOTICING AGENT, AND (B) GRANTING RELATED RELIEF

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"): (a) authorizing the Debtors to retain and appoint Omni Agent Solutions, Inc. ("Omni") as claims and noticing agent ("Claims and Noticing Agent") in the Chapter 11 Cases, effective as of the Petition Date, to, among other things, (i) distribute required notices to parties in interest, (ii) receive, maintain, docket, and otherwise administer proofs of claim filed in the Chapter 11 Cases, and (iii) provide such other claims and noticing services; and (b) granting related relief; and upon the First Day Declaration and the Deutch Declaration; and upon the statements of counsel made in support of the relief requested in the Application at the hearing before this Court; and it appearing that this Court has jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and it appearing that venue of the Chapter 11 Cases and the Application

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's U.S. federal tax identification number, to the extent applicable, are as follows: Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc. (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308). The notice address for the Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, California 92660.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that

this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that it may enter a final order

consistent with Article III of the United States Constitution; and it appearing that proper and

adequate notice of the Application has been given under the circumstances and in accordance with

the Bankruptcy Rules and Local Rules and that no other or further notice is necessary; and after

due deliberation thereon; and this Court having found that the relief herein is in the best interests

of the Debtors' estates; and good and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED THAT:**

1.    Notwithstanding the terms of the Engagement Agreement attached hereto as

**<u>Exhibit 1</u>**, the Application is approved solely as set forth in this Order.

2.    Any objections to the entry of this Order, to the extent not withdrawn or settled, are

overruled.

3.    The Debtors are authorized pursuant to 28 U.S.C. §156(c) and Local Rule 2002-1(e)

to retain Omni as Claims and Noticing Agent, effective as of the Petition Date, under the terms of

the Engagement Agreement, and Omni is authorized and directed to perform noticing services and

to receive, maintain, record, and otherwise administer the proofs of claim filed in the

Chapter 11 Cases (if any), and to perform all related tasks, all as described in the Application.

4.    Omni shall serve as the custodian of court records and shall be designated as the

authorized repository for all proofs of claim filed in the Chapter 11 Cases (if any) and is authorized

and directed to maintain official claims registers for each of the Debtors, to provide public access

to every proof of claim unless otherwise ordered by this Court, and to provide the Clerk with a

certified duplicate thereof upon the request of the Clerk (if necessary).

5.     Omni is authorized and directed to provide an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim (if necessary).

6.     Omni is authorized to take such other action to comply with all duties set forth in the Application and this Order.

7.     Omni shall comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. §156(c).

8.     The Debtors are authorized to compensate Omni in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Omni and the rates charged for each, and to reimburse Omni for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Omni to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

9.     Omni shall maintain records of all services performed, showing dates, categories of services, fees charged, and expenses incurred.  Omni shall serve monthly invoices on the Debtors, the U.S. Trustee, counsel for the Debtors, counsel for any official committee appointed in the Chapter 11 Cases, counsel to Compass Group Diversified Holdings LLC, the Debtors' prepetition secured lender and postpetition secured lender, and any party-in-interest who specifically requests service of the monthly invoices.

10.     The Debtors and Omni shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices; *provided* that the Debtors or Omni may seek resolution of any such dispute from this Court if resolution is not achieved.

11.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Omni under this Order shall be an administrative expense of the Debtors' estates.

12.     Omni may apply the Retainer to all prepetition invoices, which Retainer shall be replenished to the original retainer amount, and, thereafter, Omni may hold the Retainer under the Engagement Agreement during the Chapter 11 Cases as security for the payment of fees and expenses incurred under the Engagement Agreement. Upon completion of its engagement, Omni shall return any excess Retainer amounts to the Debtors or the Reorganized Debtors, as applicable.

13.     The Debtors shall indemnify the Indemnified Parties under the terms of the Engagement Agreement, as modified pursuant to this Order.

14.     The Indemnified Parties shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Agreement for services other than the services provided under the Engagement Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by this Court.

15.     Notwithstanding anything to the contrary in the Engagement Agreement, the Debtors shall have no obligation to indemnify an Indemnified Party, or provide contribution or reimbursement to such Indemnified Party, for any claim or expense that is either: (a) judicially determined (the determination having become final) to have arisen from such Indemnified Party's gross negligence, willful misconduct, or fraud; (b) for a contractual dispute in which the Debtors allege the breach of such Indemnified Party's contractual obligations (if any) if this Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to applicable law; or (c) settled prior to a judicial determination under (a) or (b), but determined by this Court, after notice and a hearing, to be a claim or expense for which such

Indemnified Party should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement as modified by this Order.

16.     If, before the earlier of (a) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal), or (b) the entry of an order closing the Chapter 11 Cases, any Indemnified Party believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Agreement (as modified by this Order), including without limitation the advancement of defense costs, such Indemnified Party must file an application therefor in this Court, and the Debtors may not pay any such amounts to such Indemnified Party before the entry of an order by this Court approving the payment.  This paragraph is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by the Indemnified Parties for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify the Indemnified Parties.  All parties in interest shall retain the right to object to any demand by any Indemnified Party for indemnification, contribution, or reimbursement.

17.     In the event Omni is unable to provide the services set out in this Order, Omni will immediately notify the Clerk and the Debtors' counsel and, upon approval of this Court, cause to have all original proofs of claim and other relevant information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtors' counsel.

18.     The Debtors may submit a separate retention application, pursuant to 11 U.S.C. § 327 and/or any applicable law, for work that is to be performed by Omni but is not specifically authorized by this Order.

33769059.1

19.     Omni shall not cease providing noticing and claims processing services during the Chapter 11 Cases for any reason, including nonpayment, without an order of this Court; *provided*, *however*, that Omni may seek expedited relief for such an order.

20.     In the event of any inconsistency between the Engagement Agreement, the Application, and this Order, this Order shall govern.

21.     Notice of the Application as provided therein shall be deemed good and sufficient notice of the Application, and such notice satisfies the requirements of Bankruptcy Rule 6004(a) and the Local Rules.

22.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

23.     The Debtors and Omni are authorized, but not directed, to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

24.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# **EXHIBIT 1**

## **Engagement Agreement**

## STANDARD SERVICES AGREEMENT

This Agreement is entered into as of October 21, 2025, between Omni Agent Solutions, Inc ("**Omni**"), and Lugano Diamonds & Jewelry Inc., together with each of its affiliates and subsidiaries listed on Schedule 1, annexed hereto (collectively, the "Companies").[1] The parties agree as follows:

## Terms and Conditions

I.     SERVICES

(a)     Upon request by the Companies or as may be necessary for Omni to comply with applicable law, governmental regulation, court order or court rule, Omni shall provide the Companies with consulting and administrative services ("**Services**") in connection with the Companies' potential filing of chapter 11 petitions under the Bankruptcy Code (the "**Code**") and during any chapter 11 case(s) which the Companies may initiate. Without limitation, the Services may include any or all of the following: Assisting in the preparation of the Companies' bankruptcy schedules and statements of financial affairs ("**Schedules and SOFA**"), noticing, communication related services, claims management and reconciliation, plan solicitation, balloting and tabulation, contract review, securities, claims analysis, providing confidential online workspaces or data rooms (the publication of which shall not violate the confidentiality provisions of this Agreement), account management, disbursements, automation, and any other service which may be agreed upon by the parties.

(b)     The Companies understand that to assist or enable Omni to provide the Services, Omni will engage in communications with various persons acting on the Companies' behalf (each, a "**Companies Party**").[2] The Companies agree that any and all requests, advice, information or direction which a Companies Party provides to or makes of Omni may be relied upon Omni, that Omni may rely upon the accuracy and completeness of the information provided without any obligation to further verify it, and that the Companies shall be  bound by any and all requests, advice, information or direction made

(c)     The Companies understand that Omni is not being retained to provide any legal or financial advice and that none of Omni's communications with a Companies Party or any other party constitutes legal or financial advice.

II.     RATES

(a)     The Companies agree to pay Omni for all fees, charges and costs for Services provided on their behalf in the amounts set forth in the schedule attached hereto as **Exhibit "A"**

---

[1] Upon the filing of one or more chapter 11 petitions, the term "**Companies**" shall thereafter mean and include each of the filing parties, in their individual capacities as debtors and debtors in possession, together with any other entities whose chapter 11 cases are jointly administered with the filing parties' case(s). Each of the Companies shall be jointly and severally liable for all fees and costs incurred hereunder.

[2] Unless otherwise agreed upon, a Companies Party includes the Companies' managers, general partners, officers, directors, employees, agents, representatives, counsel, consultants and/or any other party with whom the Companies authorize to engage in a communication with Omni.

(the "**Rate Schedule**"). *In addition, Omni has agreed to provide the Companies with (i) a $15,000 credit on prepetition fees (contingent upon the voluntary commencement of at least one of the Companies' chapter 11 cases), and (ii) a ten (10%) percent discount on Omni's standard hourly rates).* Omni reserves the right to amend the Rate Schedule by increasing its hourly rates, unit prices, and any other charges, fees, and costs therein during the term of this Agreement and that upon so doing, the parties agree that the rates, prices, and other charges shall be effective immediately and constitute the operative Rate Schedule. Omni shall obtain pre-authorization from restructuring counsel prior to incurring fees and expenses in an amount in excess of $10,000 per service or more than $30,000 in a 30-day period.

(b)     Omni may invoice the Companies monthly for the Services it provided during the preceding calendar month consistent with the applicable Rate Schedule. All invoices are due and payable upon receipt. Notwithstanding anything herein to the contrary, in the event the Companies file one or more chapter 11 petitions, any payment made to Omni will be in accordance with applicable bankruptcy law and orders of the bankruptcy court.

(c)     If any amount is unpaid to Omni thirty (30) days from the date of the Companies' receipt of an invoice, the Companies agree to pay a late charge calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days. In the case of a dispute of any portion of an invoice, the Companies shall give written notice to Omni within ten (10) days of receipt of the invoice as to the charges disputed and the basis thereof. The undisputed portion of the invoice will remain due and payable immediately upon receipt, but late charges shall not accrue on any amounts in dispute or any amounts unable to be paid due to Court order or applicable law. At its sole discretion, Omni may first apply any payment received against the cumulative sum of the late charges then due before it applies any remaining balance to the outstanding principal balance

(d)     Omni may require an advance or direct payment from the Companies of an individual expense, or a group of related expenses, which are expected to exceed $7,500 (*e.g.*, publication notice).

(e)     The Companies shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of the Companies, notwithstanding how such taxes may be designated, levied, or based. This provision is intended to include sales, use, and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Omni.

(f)     The Companies shall pay to Omni all actual charges (including fees, costs and expenses as set forth in the then effective Rate Structure) related to, arising out of, or resulting from, any error or omission made by the Companies including, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses.

(g)     Upon execution of this Agreement, the Companies shall pay Omni a retainer of $25,000 (the "**Retainer**"). Omni may use the Retainer against all reasonable and documented prepetition fees and expenses, which Retainer shall then be replenished as promptly as practicable by the Companies to its original amount. At Omni's discretion, the Retainer may then be applied

to the payment of the final invoice from Omni under and pursuant to this Agreement (the "**Final Invoice**"), or to any other invoice. Except with respect to the Final Invoice, upon notice from Omni to the Companies of the application of some or all of the Retainer, the Companies shall replenish the Retainer as promptly as practicable to its original amount. Omni shall return to the Companies any amount of the Retainer that remains following application of the Retainer to the payments of unpaid fees and expenses hereunder.

(h)     Payments to Omni for services rendered under the terms of this Agreement may be remitted using either or both of the following methods:

(i)     **Wire Transmission**

(Omni's wire information will be included on each monthly invoice)

(ii)     **Check**
Omni Agent Solutions
c/o Accounts Receivable
5955 De Soto Avenue
Suite 100
Woodland Hills, CA 91367

## III.     RETENTION

(a)     The Agreement is effective immediately upon its execution by the parties; provided, however, that it shall be subject to, if and when applicable, the terms of any order entered approving the engagement of Omni by the Companies in the Companies' chapter 11 proceeding(s).

(b)     If the Companies commence one or more chapter 11 cases pursuant to the Code, then as soon as is practicable, but in no event more than thirty (30) days after such case or cases are commenced, the Companies agree to and shall take all necessary actions to obtain bankruptcy court approval to retain Omni as their claims and noticing agent pursuant to 28 U.S.C. § 156(c), and as its administrative agent pursuant to section 327(a) of the Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of any application concerning Omni's retention and any order setting forth its terms are subject to Omni's approval which shall not be unreasonably withheld. Notwithstanding any other provision of this Agreement, if the bankruptcy court does not enter an order approving Omni's retention pursuant to 28 U.S.C. § 156(c) or section 327 of the Code, this Agreement will be terminated effective immediately.

## IV.     TERM

(a)     Except as provided herein, the Agreement will remain in effect until terminated: (a) on a mutually agreed upon date as set forth in a writing executed by both parties; (b) on a date of no less than sixty (30) days from the date written notice is provided by one party to the other; (c) by the Companies for cause ("**Cause**") which, for purposes of this Agreement, shall mean that Omni has acted in bad faith, with gross negligence, or engaged in willful misconduct that results in material harm to the Companies' effort and ability to reorganize or sell their assets in their chapter 11 cases; or (d) by Omni upon the Companies' material breach of any term herein. If

Omni's engagement has been already approved by the bankruptcy court, then Omni shall continue to perform the Services until the entry of an order by the bankruptcy court, in a form and substance satisfactory to Omni, whose consent will not be unreasonably withheld, providing for the terms and conditions of its discharge, including date of termination.

(b)     Upon its termination, Omni shall provide the Companies with all materials Omni is required to return to the Companies under the terms of this Agreement as well as all in-process deliverables in their then-current state of completion for Services which Omni provided prior to the effective date of the termination promptly after it has received payment in full of all sums attributable to such Services, including for any Services which have then not yet been invoiced. Omni shall coordinate with the Companies and, to the extent applicable, the clerk of the bankruptcy court, to maintain an orderly transfer of record keeping functions, shall provide the necessary staff and assistance required for an orderly transfer, and the Companies agree to pay all sums which may become due in connection therewith. Without limiting the foregoing, upon the Companies' written request made at any time during the term of this Agreement, Omni shall deliver to the Companies and/or the Companies' retained professionals at the Companies' sole expense any or all of the non-proprietary data and records held by Omni pursuant to this Agreement, in the form requested by the Companies.

## V.     CONFIDENTIALITY

Omni and the Companies, on behalf of themselves and on behalf of each Companies Party, agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided under this Agreement ("**Confidential Information**"), except if any of such information: (a) is then or thereafter becomes publicly available, other than by breach by the receiving party; (b) is already in the receiving party's possession or known to it and was received from a third party that, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party; (c) was independently developed; (d) is lawfully obtained from a third party who, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party; or (e) is subject to production or revelation pursuant to an order of any court, governmental agency or other regulatory body, arbitrator or subpoena, it may, upon not less than ten (10) calendar days written notice to the other party, release the required information.

## VI.    OMNI'S PROPERTY RIGHTS

(a)     The parties understand and agree that any and all software programs or other materials furnished by Omni pursuant to this Agreement or used by Omni to provide the Services during the term of this Agreement ("**Omni's Property**") are Omni's sole and exclusive property; *provided, however,* Omni's Property does not include the intellectual property or any information of any Company or Companies Party. Without limiting the foregoing, Omni's Property includes data processing programs, specifications, applications, routines, documentation, ideas, concepts, know-how or techniques relating to data processing or Omni's performance of Services. Omni reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time of accessibility, types of terminals and other equipment, and the Omni database serving the Companies, so long as any such

changes do not materially interfere with ongoing Services provided to the Companies in connection with the Companies' pending bankruptcy cases.

(b)     The Companies acknowledge and agree that regardless of any sums it has been charged or has paid to Omni, it obtains no rights or ownership whatsoever in any of Omni's Property and that their use by the Companies is limited to enabling Omni to provide the Services hereunder.

## VII.    BANK ACCOUNTS

At the request of the Companies, Omni is authorized to establish account(s) with financial institutions in the name of and/or as agent for the Companies and to manage such account(s), including to facilitate distributions pursuant to a chapter 11 plan or otherwise.

## VIII.   COMPANIES' DATA

(a)     Without limiting any other provision of this Agreement, the Companies represent and warrant to Omni that when a Companies Party provides information to Omni (a) the Companies have all necessary authority to disclose it to Omni and that Omni is fully authorized to use it in connection with its performance of the Services; (b) that the information is materially accurate and complete to the best of the Companies' knowledge at the time of such communication(s); and (c) that Omni has no responsibility whatsoever to verify or otherwise independently confirm the accuracy or completeness of any information, programs, data or instructions it is provided including, without limitation, data it receives in connection with the preparation of the Companies' Schedules and SOFAs. The Companies agree that they shall be deemed to have reviewed and approved any and all Schedules and SOFAs which are filed on their behalf.

(b)     Without limiting any other provision of this Agreement, the Companies understand and agree that all data, storage media, programs or other materials which are furnished to Omni on its behalf (the "**Companies' Data**") may be retained by Omni until full payment has been made to Omni for all of its Services and that they shall remain liable to Omni for all fees and expenses thereafter charged by Omni for maintaining, storing or disposing of any or all of it.  Omni agrees that it will dispose of the Companies' Data in a manner requested by or acceptable to the Companies; provided, however, that if Omni has not provided Services to the Companies for a period of ninety (90) days and provides no less than thirty (30) days written notice, Omni may dispose of any or all of the Companies' Data in any commercially reasonable at the Companies' sole expense. The Companies agree to use commercially reasonable efforts to initiate and maintain backup files that would allow the Companies to regenerate or duplicate all programs, data or information which is provided on their behalf to Omni.

(c)     If Omni is retained pursuant to bankruptcy court order, disposal of any of the Companies' Data shall comply with any applicable court orders and rules or clerk's office instructions.

## IX.     NO REPRESENTATIONS OR WARRANTIES

Omni makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness, or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting its enforceability to the maximum extent compatible with applicable law.

## X.     INDEMNIFICATION

(a)     To the fullest extent permitted by applicable law, the Companies shall indemnify and hold harmless Omni and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (each, an "**Indemnified Party**," and collectively, the "**Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from, arising out of or related to Omni's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b)     Omni and the Companies shall provide notice to the other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the services provided under and pursuant to the Agreement.

(c)     The Companies' indemnification of Omni hereunder shall exclude Losses resulting from Omni's gross negligence or willful misconduct.

(d)     The Companies' indemnification obligations hereunder shall survive the termination of this Agreement.

## XI.     LIMITATIONS OF LIABILITY

Except as expressly provided herein, Omni's liability to the Companies for any Losses, unless due to Omni's gross negligence or willful misconduct, shall be limited to the total amount paid by the Companies for the portion of the particular specific task or expense of the Service that gave rise to the alleged Loss. In no event shall Omni's liability to the Companies for any Losses arising out of this Agreement exceed the total amount actually paid to Omni for services provided under and pursuant to this Agreement. Moreover, in no event shall Omni be liable for any indirect, special, or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the services provided under and pursuant to this Agreement.

## XII.     GENERAL

(a)     Each party acknowledges that authorized person(s) on its behalf have read Agreement, understands it, and agrees to be bound by its terms. Each party further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements, and communications between the parties

relating to the subject matter hereof.

(b)     If any provision of this Agreement shall be held to be invalid, illegal, or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c)     This Agreement may be modified only by a writing duly executed by a Companies Party, on behalf of the Companies, and an officer of Omni.

(d)     This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that either party may assign this Agreement to a wholly-owned subsidiary or affiliate or to an entity which has succeeded to all or substantially all of the business or assets of a party without the other party's consent, provided that the assigning party provides adequate assurance of performance by the proposed assignee.

(e)     This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

(f)     Whenever performance by Omni of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Omni's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

(g)     The Companies will use their best efforts to cooperate with Omni at the Companies' facilities if any portion of the Services require Omni's physical presence.

(h)     To the maximum extent permitted by law, each party agrees that neither it nor any of its subsidiaries shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of the other party during the term of this Agreement and for a period of six (6) months after termination thereof unless the other party provides prior written consent to such solicitation or retention; provided, however, that the foregoing provisions will not prevent either party from hiring or seeking to hire any such person who responds to general advertising or a general solicitation not targeted to the employees of the other party.

(i)     The Companies and Omni are and shall be independent contractors of each other and no agency, partnership, joint venture, or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

(j)     The language used in this Agreement will be deemed to be the language chosen by the Companies and Omni to express their mutual intent, and no rule of strict construction will be applied against either party.

(k)     In the event that any arbitration legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree that the prevailing party is entitled to be paid all of its reasonable attorneys' fees, court costs, and any other expense reasonably related thereto in the amount which may be set by the court or by an arbitrator, whether in the same action or in a separate action brought for the purpose of establishing such amount, in addition to any other relief to which the prevailing party may be entitled.

(l)     The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

(m)     Any dispute arising out of or relating to this Agreement, or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. There shall be one arbitrator named in accordance with such rules. The arbitration shall be conducted in the English language in New York in accordance with the United States Arbitration Act. Notwithstanding the foregoing, during the pendency of any applicable chapter 11 case(s) of the Companies, any disputes related to this Agreement shall be decided by the bankruptcy court with jurisdiction over the chapter 11 case(s).

(n)     Omni reserves the right to make changes in operating procedures, operating systems, programming languages, general purpose library programs, application programs, time periods of accessibility, types of terminals and other equipment, and the Omni database serving the Companies, so long as any such changes do not materially interfere with ongoing Services provided to the Companies in connection with the Companies' pending bankruptcy case(s).

(o)     All headings used in this Agreement are for convenience of reference only, are not part of this Agreement and shall not affect the construction of, or be taken into consideration in interpreting, this Agreement.

XIII.   NOTICING

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Omni:          Omni Agent Solutions, Inc.
                     5955 De Soto Avenue
                     Suite 100
                     Woodland Hills, CA 91367
                     Tel: (818) 906-8300
                     Attn: Brian K. Osborne, Pres. & CEO

Email: Bosborne@omniagnt.com

If to the Companies:  Lugano Diamonds & Jewelry Inc.

_____

_____

Attn: _____

Email:_____

With a copy to:    Keller Benvenutti Kim LLP

101 Montgomery Street, Suite 1950

San Francisco, CA 94104

Attn:  Tobias S. Keller, Esq.

tkeller@kbkllp.com

Scott Friedman, Esq.

sfriedman@kbkllp.com

Or to such other address as the Party to receive the notice or request so designates by written notice to the other.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement effective as of the date first above written.

**OMNI AGENT SOLUTIONS, INC.**

By: _____

Name:  Paul Deutch

Title:   Executive Vice President

Agreed and accepted this **___** day of October, 2025

**LUGANO DIAMONDS & JEWELRY INC.**

_____

Name: _____

Title: _____

## SCHEDULE

## "1"

**Lugano Buyer, Inc.**
**Lugano Diamonds & Jewelry Inc.**
**K.L.D. Jewelry, LLC**
**Lugano Prive, LLC**
**Lugano Holding, Inc.**

**EXHIBIT**

"A"

# 2025 Rate Sheet



| Hourly Rates for Standard and Custom Services* | RATE / COST |
|---|---|
| Office Services | $50 - $75.00 per hour |
| Case Administration Services | $80 - $275 per hour |
| Claims Management | $80 - $275 per hour |
| Noticing Services | $80 - $275 per hour |
| Schedules and SOFA Services | $80 - $275 per hour |
| Solicitation Services | $80 - $295 per hour |
| Disbursement/Treasury Services | $150 - $295 per hour |
| Communications Services – Call Center | $75 - $175 per hour |
| Quality Control/Oversight Management | $150 - $275 per hour |
| Senior Management/Consulting Services | $225 - $275 per hour |
| Programming and IT Customization | $95 - $175 per hour |

| Claims Management | RATE / COST |
|---|---|
| Inputting Proofs of Claim | Hourly rates (No per claim charges) |
| Scanning | $.10 per image |
| Remote Internet access for claims management | |
| Setup | No charge |
| Access | No charge |

| Schedules / SoFA | RATE / COST |
|---|---|
| Preparation and updating of schedules and SoFAs | $80.00 - $275.00 per hour |

| Informational Website | RATE / COST |
|---|---|
| Creation, Configuration and Initial Setup | No charge |
| Data Entry / Information Updates | Standard hourly rates apply |
| Programming and Customization | $95 - $175 per hour |
| Debtor Website Hosting | No charge |
| Committee Website Hosting | No charge |
| Shareholder Website Hosting | No charge |
| Scanning | $0.10 per image |

| Public Debt and Equities Securities and/Rights Offerings Services | RATE / COST |
|---|---|
| Noticing Services | Standard hourly rates apply |
| Solicitation, Balloting and Tabulation | Standard hourly rates apply |
| Rights Offerings | Standard hourly rates apply |
| Security Position Identification Reports | Standard hourly rates apply |

| Liquidating / Disbursing Agent | RATE / COST |
|---|---|
| Comply with Plan requirements, preparation of disbursement reports, payout calculations, check generation, bank reconciliations | Standard hourly rates apply |

| Solicitation and Tabulation | RATE / COST |
|---|---|
| Plan and disclosure statement mailings | Quoted prior to printing |
| Ballot tabulation | Standard hourly rates apply |

*Additional professional services not covered by this rate structure will be charged at hourly rates, including any outsourced services performed under our supervision and control.

# 2025 Rate Sheet



| Printing and Noticing Services | RATE / COST |
|---|---|
| Copy | $.10 per image |
| Document folding and insertion | No charge |
| Labels/Envelope printing | $.035 each |
| MSL E-mail noticing | No charge |
| High Volume or Certified E-mail Noticing | TBD per volume |
| Facsímile Noticing | $.10 per image |
| Postage/Overnight Service | Prevailing rates as required (Advance payment required for postage charges over $10,000) |
| Envelopes | Varies by size |

| Newspaper and Legal Notice Publishing | RATE / COST |
|---|---|
| Coordinate and publish legal notice | Quote prior to publishing |

| Call Centers / Dedicated Line | RATE / COST |
|---|---|
| Creation, configuration and initial setup | No charge |
| Hosting fee | $50.00 per Month |
| Usage | $.10 per Minute |
| Call center personnel | Standard Hourly Rates |

| UST Reporting Compliance | RATE / COST |
|---|---|
| Assist debtors to satisfy jurisdicational requirements, preparation of monthly operating and post-confirmation reports | Standard hourly rates apply |

| Electronic Services, Storage & Security | RATE / COST |
|---|---|
| License Fee and System Maintenance | .10 per Record |
| Per image storage | No charge |
| Monthly Encryption Bandwidth and Security Compliance Charges** | .15 per MB |
| Automated Services | .20 per process |

| Virtual Data Rooms | |
|---|---|
| | Quote upon request |

| Miscellaneous | RATE / COST |
|---|---|
| Telephone charges | At cost |
| Delivery | At cost |
| Archival DVD/CD-Rom | $50.00 per copy |

** Charges relate to secure, bidirectional encryption of web-based documents and telephony, as well as secure storage of case records, documents and related files based on volume

# EXHIBIT B

## Deutch Declaration

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| LUGANO DIAMONDS & JEWELRY INC., *et al.*,[1] | Case No. 25-12055 (___) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF PAUL H. DEUTCH IN SUPPORT OF THE APPLICATION
OF DEBTORS FOR AN ORDER (A) AUTHORIZING AND APPROVING THE
APPOINTMENT OF OMNI AGENT SOLUTIONS, INC. AS CLAIMS AND
NOTICING AGENT, AND (B) GRANTING RELATED RELIEF**

I, Paul H. Deutch under penalty of perjury, declare as follows:

1.    I am the Executive Vice President of Omni Agent Solutions, Inc. ("Omni"), a chapter 11 administrative services firm, whose offices are located at 5955 DeSoto Avenue, Woodland Hills, CA 91367 and 1120 Avenue of the Americas, 4th Floor, New York, NY 10036. Except as otherwise noted, I have personal knowledge of the matters set forth herein and, if called and sworn as a witness, I could and would testify competently thereto.[2]

2.    This declaration (this "Declaration") is made in support of the *Application of Debtors for an Order (A) Authorizing and Approving the Appointment of Omni Agent Solutions, Inc. as Claims and Noticing Agent, and (B) Granting Related Relief*, which was filed contemporaneously herewith and incorporated by reference herein (the "Application").[3]

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's U.S. federal tax identification number, to the extent applicable, are as follows:  Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc.  (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308). The notice address for the Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, California 92660.

[2]    Certain of the disclosures herein relate to matters within the knowledge of other professionals at Omni and are based on information provided by them.

[3]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Application.

3.      Omni is comprised of leading industry professionals with significant experience in the administrative aspects of large, complex chapter 11 cases.  Omni's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Omni has served as debtors' claims and noticing agent and/or administrative agent in many large bankruptcy cases in this district and in other districts nationwide, including, among others, the following:  *In re Claire's Holdings LLC*, No. 25-11454 *(*BLS) (Bankr. D. Del. Aug. 6, 2025); *In re Zen JV, LLC*, No. 25-11195 (JKS) (Bankr. D. Del. June 24, 2025); *In re At Home Grp. Inc.*, No. 25-11120 (JKS) (Bankr. D. Del. June 16, 2025); *In re Boundless Broadband, LLC*, No. 25-10948 (BLS) (Bankr. D. Del. May 29, 2025); *In re Solid Fin. Tech., Inc.*, No. 25-10669 (BLS) (Bankr. D. Del. Apr. 7,2025); *In re Go Lab, Inc.*, No. 25-10557 (KBO) (Bankr. D. Del. Mar. 25, 2025); *In re Wynne Transp. Holdings, LLC*, No. 25-10027 (KBO) (Bankr. D. Del. Jan. 10, 2025); *In re Ligado Networks, LLC*, No. 25-10006 (TMH) (Bankr. D. Del. Jan. 5, 2025); *In re First Mode, Holdings, Inc.*, No. 24-12794 (KBO) (Bankr. D. Del. Dec. 15, 2024); *In re True Value Co., L.L.C.*, No. 24-12337 (KBO) (Bankr. D. Del. Oct. 14, 2024); *In re Accuride Corp.*, No. 24-12289 (JKS) (Bankr. D. Del. Oct. 11, 2024); *In re Edgio, Inc.*, No. 24-11985 (KBO) (Bankr. D. Del. Sept. 9, 2024); *In re Vyaire Med. Inc.*, No. 24-11217 (BLS) (Bankr. D. Del. June 11, 2024); *In re Never Slip Holdings, Inc.*, No. 24 10663 (LSS) (Bankr. D. Del. Apr. 1, 2024).[4]

4.      As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Omni will perform, at the request of the Clerk of the Court for the United States Bankruptcy Court for the District of Delaware (the "Clerk"), the services specified in the Application and the Engagement

---

[4]      Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Declaration.  Copies of these orders are available upon request to the Debtors' proposed counsel.

Agreement, and, at the Debtors' request, any related administrative, technical, and support services as specified in the Application and the Engagement Agreement. In performing such services, Omni will charge the Debtors the rates set forth in the Engagement Agreement, which is attached as Exhibit 1 to the Order.

5.     On or about October 22, 2025, the Debtors provided Omni a retainer in the amount of $25,000, and on October 31, 2025, the Debtors provided Omni with another $25,000 retainer (together, the "Retainer"). Omni will apply the Retainer to its prepetition invoices (less any prepetition credits) and hold the balance Retainer under the Engagement Agreement during the Chapter 11 Cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

6.     Omni represents, among other things, the following:

(a)     Omni is not a creditor of the Debtors;

(b)     Omni will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in the Chapter 11 Cases;

(c)     by accepting employment in the Chapter 11 Cases, Omni waives any rights to receive compensation from the United States government in connection with the Chapter 11 Cases;

(d)     in its capacity as the Claims and Noticing Agent in the Chapter 11 Cases, Omni will not be an agent of the United States and will not act on behalf of the United States;

(e)     Omni will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in the Chapter 11 Cases;

(f)     Omni is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

(g)     in its capacity as Claims and Noticing Agent in the Chapter 11 Cases, Omni will not intentionally misrepresent any fact to any person;

(h)     Omni shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

(i)     Omni will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     none of the services provided by Omni as Claims and Noticing Agent in the Chapter 11 Cases shall be at the expense of the Clerk.

7.      Proposed bankruptcy counsel for the Debtors has provided Omni with a list of the Debtors' creditors and other parties in interest.  I have caused an examination of these records to be made to determine which, if any, of the parties in interest Omni may have represented in the past or may be representing at the present time in totally unrelated matters.  To the best of my knowledge and based solely upon information provided to me by the Debtors, and except as provided herein, neither Omni, nor any employee thereof, has any materially adverse connection to the Debtors, their creditors or other relevant parties.  Omni may have relationships with certain of the Debtors' creditors as a vendor or in connection with cases in which Omni serves or has served in a neutral capacity as noticing, claims and balloting agent for another chapter 11 debtor.

8.      Omni personnel may have relationships with some of the Debtors' creditors or other parties in interest.  However, to the best of my knowledge, such relationships, to the extent they exist, are of a personal nature and completely unrelated to the Chapter 11 Cases.  Omni has and will continue to represent clients in matters unrelated to the Chapter 11 Cases.  In addition, Omni has had and will continue to have relationships in the ordinary course of its business with certain vendors, professionals, and other parties in interest that may be involved in the Debtors' cases in matters unrelated to these cases.  Omni may also provide professional services to entities or persons that may be creditors or parties in interest in the Chapter 11 Cases, which services do not directly relate to, or have any direct connection with, the Chapter 11 Cases or the Debtors.  To the best of

my knowledge, neither Omni, nor any employees thereof, represents any interest materially adverse to the Debtors' estates with respect to any matter upon which Omni is to be engaged.

9. Omni is not a party to any agreement where it receives consideration in exchange for transferring information derived from Omni's role as an administrative agent in cases in this district or elsewhere to nonclient third parties. Omni does not have any contract or agreement with any party under which Omni would receive consideration in exchange for providing claims data.

10. Although the Debtors do not propose to retain Omni under section 327 of the Bankruptcy Code (such retention may be sought by separate application), Omni has nonetheless reviewed its electronic database to determine whether it has any relationships with the entities provided by the Debtors. At this time, Omni is not aware of any relationship which would present a disqualifying conflict of interest. Should Omni discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Omni will use reasonable efforts to file promptly a supplemental declaration. Omni will also comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

11. Based on the foregoing, I believe that Omni is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Dated: November 16, 2025    */s/ Paul H. Deutch*
Wilmington, Delaware    Paul H. Deutch
    Executive Vice President
    Omni Agent Solutions, Inc.

33769059.1

5