## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LUGANO DIAMONDS & JEWELRY INC., *et al.*,[1] | Case No. 25-12055 (___) |
| Debtors. | (Joint Administration Requested) |

**MOTION OF DEBTORS FOR INTERIM AND FINAL ORDERS (A) AUTHORIZING THE DEBTORS TO (I) CONTINUE TO OPERATE THE CASH MANAGEMENT SYSTEM, (II) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (III) MAINTAIN EXISTING BUSINESS FORMS, AND (IV) CONTINUE INTERCOMPANY TRANSACTIONS, (B) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION INTERCOMPANY TRANSACTIONS, AND (C) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") hereby file this motion (this "<u>Motion</u>") for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit B** and **Exhibit C**, respectively (the "<u>Proposed Orders</u>"): (a) authorizing, but not directing, the Debtors to (i) continue to operate their Cash Management System (as defined herein) and maintain their existing Bank Accounts (as defined herein), (ii) honor certain prepetition and postpetition obligations related thereto, (iii) maintain existing Business Forms (as defined herein) in the ordinary course of business, and (iv) continue Intercompany Transactions (as defined herein); (b) granting administrative expense status to the Intercompany Transactions; and (c) granting related relief. In support of this Motion, the Debtors submit the *Declaration of J. Michael Issa in Support of Chapter 11 Petitions and First Day*

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's U.S. federal tax identification number, to the extent applicable, are as follows:  Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc.  (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308). The notice address for the Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, California 92660.

*Motions* (the "<u>First Day Declaration</u>"),[2] filed contemporaneously herewith.  In further support of this Motion, the Debtors respectfully state as follows:

<u>**JURISDICTION AND VENUE**</u>

1.     The United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory and legal predicates for the relief requested herein are sections 105(a), 363, 364, and 503(b)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Local Rule 2015-1.

<u>**BACKGROUND**</u>

4.     On the date hereof (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code (the "<u>Chapter 11 Cases</u>") in the Court.  The Debtors are authorized to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

5.      No official committee has been appointed in the Chapter 11 Cases, and no request has been made for the appointment of a trustee or an examiner.

6.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in the First Day Declaration.

## THE DEBTORS' CASH MANAGEMENT SYSTEM

7.      In the ordinary course of business, the Debtors and their non-Debtor affiliates maintain a cash management and disbursement system (the "Cash Management System") to facilitate the efficient operation of their business.  The Debtors use the Cash Management System to collect, transfer, and disburse funds generated from their operations and to facilitate cash monitoring, forecasting, and reporting.

8.      Following the resignation of their prior Chief Executive Officer and the investigation into the related fraud, as described in further detail in the First Day Declaration, the Debtors have undertaken significant efforts to review their prior financial statements and their cash receipts and disbursements.  The Debtors now maintain daily oversight of the Cash Management System and reconcile their books and records daily to ensure that all transfers are properly accounted for, including transfers with their non-Debtor subsidiary in the United Kingdon.

9.      Because of the nature and operational scale of the Debtors' business, any disruption to the Cash Management System will have an immediate and significant adverse effect on the Debtors' business and operations, to the detriment of their estates and all stakeholders.  Accordingly, to minimize disruption and maximize the value of the Debtors' estates, the Debtors request authority, but not direction, to continue operating their existing Cash Management System and honor certain prepetition obligations related thereto in the ordinary course of business during the pendency of the Chapter 11 Cases.

## I.    The Bank Accounts

10.    As of the Petition Date, the Cash Management System comprises six bank accounts (each, a "Bank Account," and collectively, the "Bank Accounts").  Debtor Lugano Diamonds & Jewelry Inc. ("Lugano Diamonds"), Debtor K.L.D. Jewelry, LLC ("KLD"), and Debtor Lugano Prive, LLC ("Lugano Prive," and collectively with Lugano Diamonds and KLD, the "Operating Debtors") each maintain a Bank Account at Bank of America, N.A. ("Bank of America") and U.S. Bank National Association ("U.S. Bank," and collectively with Bank of America, the "Cash Management Banks").

11.    The Bank Accounts constituting the Cash Management System are identified on **Exhibit A** attached hereto.  Each of the Bank Accounts is a general-purpose checking account, and each Operating Debtor uses its respective Bank Accounts for receiving and disbursing funds.  However, as noted in further detail below, one Operating Debtor may make a payment on behalf of another Debtor or non-Debtor affiliate.  None of the Bank Accounts has been established for a particular purpose, such as a payroll or a disbursement account.  Further, each Bank Account is separately maintained, and there are no automated transfers or sweeps between Bank Accounts.  All transfers between Bank Accounts, whether intercompany or intracompany, are initiated manually.

12.    Cash held in the Bank Accounts is subject to security interests in favor of the Debtors' prepetition and postpetition secured lender, Compass Group Diversified Holdings LLC ("CODI").[3]  Lugano Diamonds' Bank Account with Bank of America is subject to a Deposit Account Control Agreement (the "DACA") in favor of CODI.

---

[3]    Nothing herein shall be construed as an admission that any security interest with respect to the cash held in the Bank Accounts, including, without limitation, whether the security interests or claims are valid, enforceable, perfected, or subject to any setoff, counterclaim, or defense.

13.     Simultaneously herewith, the Debtors have moved for authorization to enter into a debtor-in-possession financing facility (the "DIP Facility") pursuant to the *Motion of Debtors for Interim and Final Orders (A) Authorizing the Debtors to (I) Obtain Postpetition Financing, and (II) Utilize Cash Collateral, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Granting Adequate Protection to the Prepetition Lender, (D) Modifying the Automatic Stay, (E) Scheduling a Final Hearing, and (F) Granting Related Relief* (the "DIP Motion").  If the Court grants the relief requested in the DIP Motion, the Bank Accounts will be pledged as collateral in favor of the lender under the DIP Facility.

## II.     Intercompany Transactions

14.     In the ordinary course of their business, the Debtors engage in intercompany financial transactions with each other (collectively, the "Intercompany Transactions"), resulting in intercompany receivables and payables (the "Intercompany Balances").  The Intercompany Transactions take two forms: (a) domestic Intercompany Transactions among the Debtors, and (b) Intercompany Transactions between Lugano Diamonds and its non-Debtor foreign subsidiaries.[4]

15.     The Debtors account for and record all Intercompany Transactions and Intercompany Balances in their centralized accounting system, the results of which are manually monitored and reconciled on a daily basis.  The Debtors can ascertain, trace, and account for all Intercompany Transactions, and they will continue to monitor Intercompany Transactions on a postpetition basis in the ordinary course of business.  The Intercompany Balances are generally

---

[4]     Non-Debtor Lugano Canada Inc. ("Lugano Canada") is not operating, and non-Debtor Lugano Diamonds UK Limited ("Lugano UK") is operating.  Lugano Diamonds handles all Intercompany Transactions with Lugano UK and any payments that need to be made on behalf of Lugano Canada Inc.  The Debtors estimate that they may need to perform up to $20,000 of Intercompany Transactions with Lugano UK between the entry of the Proposed Orders, but the Debtors reserve the right to request additional relief related to such Intercompany Transactions.

reflected in intercompany invoices, in the Debtors' accounting system, and documented through intercompany agreements.

16.     The Intercompany Transactions are an essential component of the Debtors' operations and centralized Cash Management System.  Any interruption of the Intercompany Transactions would disrupt the Debtors' operations and harm the Debtors' estates and, by extension, their stakeholders.  Without the ability to continue these transactions, the Debtors' business would be significantly damaged.  Accordingly, the Debtors request authority, but not direction, to honor any obligations associated with the Intercompany Transactions and to continue entering into ordinary course Intercompany Transactions (including with respect to netting or setoffs, if any).[5]  The Debtors also request that all valid postpetition Intercompany Balances owed on account of an Intercompany Transaction be afforded administrative expense priority pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code.[6]  This relief will ensure that each entity receiving payments from a Debtor or benefiting from a payment made by a Debtor on behalf of such entity will continue to bear ultimate repayment responsibility for such ordinary course transactions, thereby reducing the risk that these transactions would jeopardize the recoveries available to each Debtor's respective creditors.[7]

---

[5]   For the avoidance of doubt, the Debtors request authority to set off mutual prepetition obligations and mutual postpetition obligations relating solely to Intercompany Transactions and will not set off any prepetition obligations against any postpetition obligations.

[6]   Notwithstanding anything herein to the contrary, including, but not limited to, the administrative expense status requested for the Intercompany Transactions, all Debtors, for themselves and their subsidiaries, hereby expressly reserve any and all rights, claims, and privileges to dispute any Intercompany Transaction and payment or funds transfer made on account of any Intercompany Transaction.

[7]   This Motion provides an overview of the Debtors' typical Intercompany Transactions.  The relief requested herein is applicable with respect to all Intercompany Transactions and is not limited to those Intercompany Transactions described in this Motion.  To the extent that there are any outstanding prepetition obligations related to Intercompany Transactions not described herein, the Debtors, out of an abundance of caution, seek authority, but not direction, to honor such obligations.

### III.    The Bank Fees

17.    In the ordinary course of business, the Debtors incur periodic service charges and other fees in connection with the maintenance of the Cash Management System (collectively, the "Bank Fees").  The Bank Fees are automatically deducted from the corresponding Bank Accounts by the respective Cash Management Banks on a monthly basis.  On average, the Debtors pay approximately $4,000 per month in Bank Fees.  The Debtors estimate that they owe approximately $4,000 in Bank Fees as of the Petition Date.  To ensure the uninterrupted operation of the Cash Management System, the Debtors seek authority, but not direction, to continue paying Bank Fees, including any Bank Fees that are owed as of the Petition Date, in the ordinary course of business on a postpetition basis.

### IV.    Corporate Credit Cards

18.    The Cash Management System also includes the use of corporate credit cards (collectively, the "Corporate Credit Cards") issued by American Express Company ("AMEX"). The Debtors' aggregate credit limit under the Corporate Credit Cards is $500,000.  The Corporate Credit Cards are provided to certain employees and used to purchase various business expenses including, but not limited to, office supplies, travel expenses, and to make payments to certain vendors (the "Corporate Credit Card Obligations").  The Debtors pay the Corporate Credit Card Obligations on a monthly basis in arrears.  The average monthly balance on account of the Corporate Credit Cards is approximately $500,000. The Debtors estimate that they owe AMEX approximately $500,000 in Corporate Credit Card Obligations as of the Petition Date.

19.    Use of the Corporate Credit Cards is an integral part of the Cash Management System, and continuation of the ability to use the Corporate Credit Cards is essential to the continued operation of the Debtors' business.  Accordingly, to ensure that the Debtors' operations are not materially disrupted, the Debtors request authority, but not direction, to pay all prepetition

33769057.1

Corporate Credit Card Obligations and to continue to use the Corporate Credit Cards in the ordinary course during the administration of the Chapter 11 Cases.

**V.      Compliance with U.S. Trustee Guidelines as to Business Forms and Books and Records**

20.      As part of the Cash Management System, the Debtors use a variety of preprinted business forms, including, but not limited to, checks, letterhead, correspondence forms, invoices, as well as certain electronically generated business forms (collectively, and as they may be modified from time to time, the "Business Forms") in the ordinary course of business. The Debtors also maintain books and records to document their financial results and a wide array of operating information (collectively, the "Books and Records"). To avoid a material disruption to their business operations and to minimize administrative expense to their estates, the Debtors request authorization, but not direction, to continue using all the Business Forms and Books and Records, without reference to the Debtors' status as debtors in possession in accordance with Local Rule 2015-1.

**RELIEF REQUESTED**

21.      By this Motion, the Debtors request entry of the Proposed Orders: (a) authorizing, but not directing, the Debtors to (i) continue to operate their Cash Management System and maintain their existing Bank Accounts, (ii) honor certain prepetition and postpetition obligations related thereto, (iii) maintain existing Business Forms in the ordinary course of business, and (iv) continue Intercompany Transactions; (b) granting administrative expense status to the Intercompany Transactions; and (c) granting related relief.

## BASIS FOR RELIEF REQUESTED

I.     **The Court Should Authorize the Debtors' Continued Use of the Cash Management System Because It Is Essential to the Debtors' Ongoing Operations and Restructuring Efforts**

22.     The *Region 3 Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "U.S. Trustee Guidelines") for the United States Trustee for the District of Delaware (the "U.S. Trustee") require a debtor in possession to, among other things: (a) establish one debtor-in-possession bank account for all estate monies required for the payment of taxes, including payroll taxes; (b) close all existing bank accounts and open new debtor-in-possession accounts; (c) maintain a separate debtor-in-possession account for cash collateral; and (d) obtain checks that bear the designation "debtor in possession" and reference the bankruptcy case number and type of account on such checks.  These requirements are intended to provide a clear line of demarcation between prepetition and postpetition transactions, payments, and operations and help protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date.

23.     Considering the complexity of the Debtors' business and financial affairs and their need to collect, transfer, and disburse funds throughout the Cash Management System, enforcing these provisions of the U.S. Trustee Guidelines during the Chapter 11 Cases would severely disrupt the Debtors' business and their ability to efficiently administer the Chapter 11 Cases. Accordingly, the Debtors request that the Court allow them to operate each of the Bank Accounts listed on **Exhibit A** annexed hereto, as they were maintained in the ordinary course of business prior to the Petition Date.

24.     The continuation of the Cash Management System should be permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing."  Bankruptcy

33769057.1

courts routinely treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter[.]" *In re Baldwin United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). In granting such relief, courts recognize that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993). The United States Court of Appeals for the Third Circuit emphasized that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (noting that maintaining an existing cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

25.       Here, requiring the Debtors to adopt a new, segmented cash management system during the Chapter 11 Cases would be expensive, burdensome, and unnecessarily disruptive to the Debtors' operations. Importantly, the Cash Management System provides the Debtors with the ability to track and report the location and amount of funds, which, in turn, allows management to track and control such funds, ensure cash availability, and reduce administrative costs through a centralized method of coordinating the collection and movement of funds. In light of the size and complexity of the Debtors' operations, any disruption of the Cash Management System could have a severe adverse effect on the Debtors' restructuring efforts. By contrast, maintaining the current Cash Management System will facilitate the Debtors' smooth transition into chapter 11 by, among other things, minimizing delays in paying postpetition debts and eliminating administrative inefficiencies. Finally, maintaining the current Cash Management System will allow the Debtors'

treasury and accounting employees to focus on their daily responsibilities as opposed to the non-accretive task of reconstructing the Cash Management System.

26.    Parties in interest will not be harmed by the Debtors' maintenance of the Cash Management System, including maintenance of the Bank Accounts and the Intercompany Transactions, because the Debtors have implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of obligations incurred before the Petition Date.  Specifically, with the assistance of their advisors, the Debtors have implemented internal control procedures that prohibit payments on account of prepetition debts without the prior approval of the Debtors' accounting and treasury departments.   In light of such protective measures, maintaining the Cash Management System is in the best interests of their estates and stakeholders.

27.    Accordingly, the Debtors request the Court authorize, but not direct, the continued use of the existing Cash Management System to facilitate the Debtors' transition into chapter 11. Specifically, the Debtors request that the Court authorize the Cash Management Banks to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business.  Notwithstanding the foregoing, any check, draft, or other notification that the Debtors advise the Cash Management Banks to have drawn, issued, or otherwise presented before the Petition Date may be honored by the Cash Management Banks only to the extent authorized by order of the Court.  If the Debtors' ability to conduct transactions by these methods is impaired, the Debtors may be unable to perform under certain contracts, and payments to vendors could be delayed, resulting in unnecessary disruption to their business operations and additional costs to their estates.

28.     As part of the requested relief, the Debtors also seek a waiver of the requirement under the U.S. Trustee Guidelines to establish specific bank accounts for tax payments, including payroll taxes.  The Debtors' tax obligations can be paid out of the Bank Accounts as they are in the ordinary course of business, and the U.S. Trustee can adequately monitor the flow of funds into, among, and out of the accounts, as set forth in the required reporting.  Moreover, the creation of a new debtor-in-possession account designated solely for tax obligations would be unnecessary and inefficient.

## II.     Authorizing the Debtors to Continue Using Debit, Wire, Credit Card, and ACH Payments Is Warranted

29.     The Debtors request that the Court grant further relief from the U.S. Trustee Guidelines to the extent such guidelines require the Debtors to make all disbursements by check. In particular, the U.S. Trustee Guidelines require that all receipts and all disbursements of estate funds must be made by check with a notation representing the reason for the disbursement.  In the ordinary course of business, the Debtors conduct transactions through wires, ACH transfers, direct deposits, and other similar methods.  If the Debtors' ability to conduct transactions by these methods—including their ability to pay associated fees—is impaired, the Debtors may be unable to perform under certain contracts, their business operations may be unnecessarily disrupted, and their estates will incur additional costs.  The Debtors request relief to continue making disbursements postpetition in the ordinary course of business.

30.     The Debtors request relief to continue paying all Corporate Credit Card Obligations, or to obtain Corporate Credit Cards postpetition in the ordinary course of business. Courts in this district have regularly allowed debtors in large chapter 11 cases to continue making disbursements in the ordinary course of business.  *See, e.g.*, *In re Liberated Brands LLC*, No. 25-10168 (JKS) (Bankr. D. Del. Feb. 28, 2025) (authorizing the debtors' cash management banks to

continue to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers); *In re JOANN Inc.*, No. 25-10068 (CTG) (Bankr. D. Del. Feb. 10, 2025) (same); *In re Am. Tire Distribs.*, No. 24-12391 (CTG) (Bankr. D. Del. Nov. 18, 2024) (same); *In re Accuride Corp.*, No. 24-12289 (JKS) (Bankr. D. Del. Nov. 19, 2024) (same); *In re Wheel Pros LLC*, No. 24-11939 (JTD) (same).

### III.    Authorizing the Cash Management Banks to Continue to Maintain, Service, and Administer the Bank Accounts in the Ordinary Course of Business Is Warranted

31.    As discussed above, implementing the U.S. Trustee Guidelines would needlessly interrupt the Debtors' operations and impair the Debtors' efforts to preserve the value of their estates and restructure in an efficient manner.  Thus, the Debtors request the Court authorize, but not direct, the continued use of the existing Cash Management System to facilitate the Debtors' transition into chapter 11.  Specifically, the Debtors request that the Court authorize the Cash Management Banks to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business.  In this regard, the Cash Management Banks should be authorized to receive, process, honor, and pay any and all checks, ACH transfers and other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto.  Notwithstanding the foregoing, the Cash Management Banks should be authorized to receive, process, honor, and pay any and all checks, ACH transfers and other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto.  If the Debtors' ability to conduct transactions by these methods is impaired, the Debtors may be unable to perform under certain contracts, and payments to

vendors could be delayed, resulting in unnecessary disruption to their business operations and additional costs to their estates.

32.     The Debtors further request that the Court authorize the Cash Management Banks to accept, rely upon, and honor all representations from the Debtors as to which checks, drafts, wires, or ACH transfers should be honored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated before or after the Petition Date.  The Debtors also request that, to the extent a Cash Management Bank honors a prepetition check or other item drawn on any account either:  (a) at the direction of the Debtors; (b) in the good-faith belief that the Court has authorized such prepetition check or item to be honored; or (c) as a result of a mistake made despite implementation of reasonable customary item handling procedures, such bank will not be deemed to be nor shall be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item honored postpetition.  Such relief is reasonable and appropriate because the Cash Management Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

33.     Moreover, the Debtors request authority to authorize the Cash Management Banks to:  (a) continue to charge the Debtors the Bank Fees, as applicable; and (b) charge-back returned items to the Bank Account, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such returned items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers in the ordinary course of business.

**IV.    The Court Should Authorize Payment of Fees and Prepetition Obligations Related to the Bank Accounts**

34.    The relief requested herein is essential to the Debtors' continuation of ordinary-course operations and, as such, is warranted under sections 105(a) and 363 of the Bankruptcy Code.  Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value.  *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 825–26 (D. Del. 1999); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989); *In re James A. Phillips, Inc.*, 29 B.R. 391, 398 (S.D.N.Y. 1983).  In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims.

35.    Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions."  *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also James A. Phillips*, 29 B.R. at 397 (relying on section 363 of the Bankruptcy Code to allow a contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release the funds owed to the debtors); *Ionosphere Clubs*, 98 B.R. at 175 (finding that a sound business justification existed to justify payment of certain prepetition wages); *In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring the debtor to show a "good business reason" for a proposed transaction under section 363(b) of the Bankruptcy Code).

36.     Courts also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code, which codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Under section 105(a) of the Bankruptcy Code, courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business.  *See Just for Feet*, 242 B.R. at 825−26.  Specifically, a court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").  *See, e.g.*, *Ionosphere Clubs*, 98 B.R. at 176; *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the business).  A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."  *Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)).  Indeed, at least one court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim."  *CoServ*, 273 B.R. at 497.

37.     These standards are satisfied here because the payment of fees, including the Bank Fees and related prepetition obligations, are necessary to maintain the Cash Management System and avoid any disruption in the administration of the Bank Accounts.  The Debtors request authority, but not direction, to continue to pay the Bank Fees and any prepetition amounts related

thereto, in the ordinary course of business, in light of the material benefit of maintaining the Cash Management System. The relief requested represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 6003.

## V.    Continued Use of the Corporate Credit Cards Is Appropriate and Warranted

38.    Under section 364(a) of the Bankruptcy Code, where the trustee or debtor in possession is authorized to operate the business of the debtor under section 1108 of the Bankruptcy Code, they "may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense." 11 U.S.C. § 364(a). The Debtors utilize the Corporate Credit Cards as a source of unsecured credit and as an alternative payment method with respect to various business expenses. Consistent with their prepetition, ordinary course practices and, as permitted under section 363(c) of the Bankruptcy Code, the Debtors seek to continue to utilize the Corporate Credit Cards on a postpetition basis. The Debtors request that the Court grant administrative expense status to postpetition credit extended by AMEX and authorize, but not direct, the Debtors to satisfy the prepetition amounts owed to AMEX so that the Debtors may continue to utilize a source of unsecured credit and maintain, without disruption, a vital component of the Cash Management System.

39.    Granting administrative expense status to postpetition extensions of credit by AMEX is permitted under sections 364(a) and 503(b) of the Bankruptcy Code and, accordingly, the Debtors request that it be granted. In addition, ample authority exists to support authorizing the payment of the prepetition amounts owed to Bank of America. The Corporate Credit Cards are an integral part of the Cash Management System, which the Debtors rely upon for the continued

33769057.1

operation of their business.  It is likely that, given the prepetition credit exposure, AMEX would be unwilling to continue to advance amounts to the Debtors postpetition absent the relief set forth in this Motion.  It would be extremely difficult, disruptive, and time-consuming to replace AMEX, and such difficulties would be compounded if the Debtors were required to replace AMEX on an expedited basis, and would be further compounded, if the Debtors were required to do so in the first few days of the Chapter 11 Cases—a critical time for the Debtors.  Should the Debtors lose the ability to use the Corporate Credit Cards, it could seriously harm their business at the outset of the Chapter 11 Cases.

40.      Based on the foregoing, a sound business purpose exists to maintain the Corporate Credit Cards postpetition, and doing so is consistent with the Debtors' fiduciary duty to preserve the value of their estates.  Additionally, allowing the Debtors to satisfy the AMEX prepetition claims is necessary to ensure AMEX's postpetition provision of credit.  Given the critical nature of the AMEX relationship, the Debtors submit that the relief requested with respect to the Corporate Credit Cards and prepetition claims is warranted and necessary.

## VI.    The Court Should Authorize the Debtors to Continue Using Their Existing Business Forms

41.      To the extent the Debtors have any preprinted checks, and to avoid disruption of the Cash Management System and unnecessary expense, pursuant to Local Rule 2015-1(a), the Debtors request that they be authorized to continue to use such checks and other Business Forms substantially in the form existing immediately before the Petition Date, without reference to their status as debtors in possession.  Parties in interest will not be prejudiced by this relief.  Parties doing business with the Debtors undoubtedly will be aware of their status as debtors in possession and, thus, changing preprinted business forms is unnecessary and would be unduly burdensome.  Nonetheless, and in accordance with Local Rule 2015-1(a), with respect to any checks that are

generated electronically, or following the depletion of the Debtors' preprinted check stock during the pendency of the Chapter 11 Cases, if any, the Debtors shall ensure that such electronic checks and new check stock reflect their status as debtors in possession and the corresponding bankruptcy case number.

## VII.    The Court Should Authorize the Debtors to Continue Conducting Intercompany Transactions in the Ordinary Course and Grant Administrative Priority Status to Postpetition Intercompany Claims Among the Debtors

42.    In the ordinary course of business, the Debtors engage in and record Intercompany Transactions with other Debtors and non-Debtor affiliates resulting in Intercompany Balances.[8] At any given time, as a result of the Intercompany Transactions, there may be claims owing by one Debtor to another Debtor or non-Debtor affiliate (collectively, the "Intercompany Claims") in connection with the receipt and disbursement of funds.  The Debtors have historically reflected Intercompany Claims as journal entry receivables and payables, as applicable, in the respective Debtor's accounting system.  The Debtors closely track all fund transfers in their accounting systems and can ascertain, trace, and account for all Intercompany Transactions previously described.  The Debtors, moreover, will continue to maintain records of such Intercompany Transactions.

43.    Because certain of the Intercompany Transactions represent extensions of intercompany credit made in the ordinary course of business that are an essential component of the Cash Management System, the Debtors request the authority, but not direction, to continue

---

[8]    Because the Debtors engage in Intercompany Transactions on a regular basis and such transactions are common among enterprises like that of the Debtors, the Debtors submit that the Intercompany Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code and, thus, do not require the Court's approval.  Nonetheless, out of an abundance of caution, the Debtors are seeking express authority to engage in such transactions on a postpetition basis.  Moreover, the continued performance of the ordinary course Intercompany Transactions is integral to ensure the Debtors' ability to operate their businesses as debtors in possession.

engaging in such transactions postpetition in the ordinary course of business without need for further Court order. The Debtors further request that pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, all postpetition payments on account of postpetition Intercompany Transactions between or among the Debtors and non-Debtor affiliates that give rise to an Intercompany Claim be accorded administrative expense status, which would result in an administrative expense claim in favor of the applicable Debtor payor. For the avoidance of doubt, the relief requested herein with respect to the postpetition Intercompany Transactions and the Intercompany Balances resulting therefrom shall not constitute an admission of the Debtors or any other party as to the validity, priority, or status of any prepetition Intercompany Balance or the Intercompany Transaction(s) from which such Intercompany Balance may have arisen.

44.     The relief requested herein should be approved as it fairly balances the Debtors' need to facilitate the ordinary course operation of their business, minimize disruption, and preserve value, on the one hand, with maintaining the substantive interests of their stakeholders and the general Bankruptcy Code interest in transparency, on the other hand.

## PROCESSING OF CHECKS AND ELECTRONIC FUND TRANSFERS SHOULD BE AUTHORIZED

45.     The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of access to cash on hand and anticipated access to cash collateral and debtor-in-possession financing. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the relief requested herein. Accordingly, the Debtors do not believe that checks or wire transfer requests, other than those relating to authorized payments, will be inadvertently honored. Therefore, the Debtors request authority, but not direction, to

authorize all applicable Banks when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

**THE REQUIREMENTS OF BANKRUPTCY RULE 6003(a) ARE SATISFIED**

46.     Bankruptcy Rule 6003(a) empowers a court to grant certain relief within the first 21 days after the petition date only to the extent that "relief is needed to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(a). For the reasons discussed above, an immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations. Failure to receive the requested relief during the first 21 days of the Chapter 11 Cases would severely disrupt the Debtors' operations at this critical juncture and cause immediate and irreparable harm. The requested relief is necessary for the Debtors to operate their business in the ordinary course, preserve the ongoing value of their operations, and maximize value of their estates for the benefit of all stakeholders. The Debtors have demonstrated that the requested relief is "needed to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003(a), and request that the Court grant the requested relief.

**RESERVATION OF RIGHTS**

47.     Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order

33769057.1

granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## **WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)**

48.     To the extent that any aspect of the relief sought herein constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## **NOTICE**

49.     The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) those creditors holding the 30 largest unsecured

claims against the Debtors' estates (on a consolidated basis); (c) the office of the attorney general for each of the states in which the Debtors operate; (d) the United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Department of Justice; (g) the Securities and Exchange Commission; (h) the Cash Management Banks; (i) counsel to CODI, the Debtors' prepetition secured lender and postpetition secured lender; and (j) any party that is entitled to notice pursuant to Bankruptcy Rule 2002.  The Debtors will serve copies of this Motion, and any order entered in respect of this Motion, as required by Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

[<em>Remainder of page intentionally left blank</em>]

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of the Proposed Orders, substantially in the forms attached hereto as **Exhibit B** and **Exhibit C**, (a) granting the relief requested herein, and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated: November 16, 2025
      Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Timothy R. Powell*
Edmon L. Morton (Del. No. 3856)
Sean M. Beach (Del. No. 4070)
Timothy R. Powell (Del. No. 6894)
Benjamin C. Carver (Del. No. 7176)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:   emorton@ycst.com
       sbeach@ycst.com
       tpowell@ycst.com
       bcarver@ycst.com

-and-

**KELLER BENVENUTTI KIM LLP**
Tobias S. Keller (*pro hac vice* pending)
Traci L. Shafroth (*pro hac vice* pending)
Scott Friedman (*pro hac vice* pending)
101 Montgomery Street, Suite 1950
San Francisco, California 94104
Telephone:  (415) 496-6723
Facsimile:   (650) 636-9251
Email:   tkeller@kbkllp.com
       tshafroth@kbkllp.com
       sfriedman@kbkllp.com

*Proposed Attorneys for Debtors*
*and Debtors-in-Possession*

## **EXHIBIT A**

**Bank Accounts**

| Bank Accounts | | | |
|---|---|---|---|
| **Account Holder** | **Bank** | **Last 4 Digits of Account Number** | **Type** |
| Lugano Diamonds & Jewelry Inc. | Bank of America | 6485 | Checking |
| | U.S. Bank | 8643 | Checking |
| K.L.D. Jewelry, LLC | Bank of America | 3172 | Checking |
| | U.S. Bank | 0527 | Checking |
| Lugano Prive, LLC | Bank of America | 0218 | Checking |
| | U.S. Bank | 0535 | Checking |

**<u>EXHIBIT B</u>**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| LUGANO DIAMONDS & JEWELRY INC., *et al*.,[1] | Case No. 25-12055 (___) |
| Debtors. | (Jointly Administered) |
| | Re: Docket No. _____ |

**INTERIM ORDER (A) AUTHORIZING THE DEBTORS TO (I) CONTINUE
TO OPERATE THE CASH MANAGEMENT SYSTEM, (II) HONOR CERTAIN
PREPETITION OBLIGATIONS RELATED THERETO, (III) MAINTAIN EXISTING
BUSINESS FORMS, AND (IV) CONTINUE INTERCOMPANY TRANSACTIONS,
(B) GRANTING ADMINISTRATIVE EXPENSE STATUS TO
POSTPETITION INTERCOMPANY TRANSACTIONS,
AND (C) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"):  (a) authorizing, but not directing, the Debtors to (i) continue to operate their Cash Management System and maintain their existing Bank Accounts, (ii) honor certain prepetition and postpetition obligations related thereto, (iii) maintain existing Business Forms in the ordinary course of business, and (iv) continue Intercompany Transactions; (b) granting administrative expense status to the Intercompany Transactions; and (c) granting related relief; and upon the First Day Declaration; and upon the statements of counsel made in support of the relief requested in the Motion at the hearing before this Court; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's U.S. federal tax identification number, to the extent applicable, are as follows:  Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc.  (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308).  The notice address for the Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, California 92660.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

United States District Court for the District of Delaware dated February 29, 2012; and it appearing

that venue of the Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C.

§§ 1408 and 1409; and this Court having found that this is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2) and that it may enter a final order consistent with Article III of the United States

Constitution; and it appearing that proper and adequate notice of the Motion has been given under

the circumstances and in accordance with the Bankruptcy Rules and Local Rules and that no other

or further notice is necessary; and after due deliberation thereon; and this Court having found that

the relief herein is in the best interests of the Debtors' estates; and good and sufficient cause

appearing therefor:

**IT IS HEREBY ORDERED THAT:**

1.       The Motion is GRANTED on an interim basis as set forth herein.

2.       Any objections to the entry of this Interim Order, to the extent not withdrawn or

settled, are overruled.

3.       The final hearing (the "Final Hearing") on the Motion shall be held on

_____, 2025, at__:__ _.m., (prevailing Eastern Time).  Any objections or responses to entry

of a final order on the Motion shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on

_____, 2025 and shall be served on:  (a) the Debtors, 620 Newport Center Dr., Ste 100,

Newport Beach, California 92660, Attn:  J. Michael Issa; (b) proposed counsel to the Debtors,

(i) Keller Benvenutti Kim LLP, Attn:  Tobias S. Keller, Esq. (tkeller@kbkllp.com) and Traci L.

Shafroth, Esq. (tshafroth@kbkllp.com); and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney

Square, 1000 North King Street, Wilmington, DE 19801, Attn:  Timothy R. Powell, Esq.

(tpowell@ycst.com) and Benjamin C. Carver, Esq. (bcarver@ycst.com); (c) counsel to Compass

Group Diversified Holdings LLC, prepetition secured lender and postpetition secured lender,

Squire Batton Boggs (US) LLP, 1000 Key Tower 127 Public Square, Cleveland, OH 44114, Attn: Peter Morrison, Esq. (peter.morrison@squirepb.com); (d) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Timothy Fox (timothy.fox@usdoj.gov); and (e) any statutory committee appointed in the Chapter 11 Cases.

4.      The Debtors are authorized, but not directed, in all cases in the ordinary course of business, to: (a) continue operating the Cash Management System, substantially as identified on Exhibit A attached to the Motion and as described therein; (b) honor their prepetition obligations related thereto; (c) use, in their present form, all correspondence and Business Forms, as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date, without reference to the Debtors' status as debtors in possession; (d) continue to perform and record Intercompany Transactions in the ordinary course of business and treat postpetition Intercompany Balances in a manner consistent with this Court's grant of administrative expense status thereto; *provided, however*, that the Debtors shall not perform more than $20,000 of Intercompany Transactions with Lugano UK until the entry of a final order approving the Motion; *provided further, however*, that the Debtors reserve the right to seek additional relief related to such Intercompany Transactions; (e) continue to use the Corporate Credit Cards and honor the Corporate Credit Card Obligations; (f) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, including those accounts identified on Exhibit A attached to the Motion, without the need to comply with certain guidelines set forth in the U.S. Trustee Guidelines (to the extent applicable); (g) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (h) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, ACH transfers, and other debits; (i) open new debtor in possession Bank Accounts; and (j) pay the Bank Fees, including any

33769057.1

prepetition amounts and any ordinary course Bank Fees incurred in connection with the Bank Accounts, and to otherwise perform their obligations under the documents governing the Bank Accounts.

5.       The Cash Management Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, electronic fund transfers, credit card payments, and ACH transfers or other items presented or issued, whether before or after the Petition Date, and drawn on the Bank Accounts, after the Petition Date, by the holders or makers thereof, as the case may be, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order; *provided* that the Debtors shall only instruct or request any Cash Management Bank to pay or honor any check, draft, or other payment item issued on a Bank Account prior to the Petition Date but presented to such Cash Management Bank for payment after the Petition Date.

6.       The Cash Management Banks are authorized to debit the Bank Accounts in the ordinary course of business and consistent with the Cash Management System, without the need for further order of this Court for:  (a) all checks drawn on the Bank Accounts which are cashed at such Cash Management Bank's counters or exchanged for cashier's checks by the payees thereof prior to or after the Petition Date; (b) all checks, automated clearing house entries, and other items deposited in or credited to one of the Bank Accounts with such Cash Management Bank prior to or after the Petition Date that have been dishonored, reversed, or returned unpaid for any reason, including returned items that result from wire transfers, ACH transactions, or other electronic transfers of any kind, together with any fees and costs in connection therewith, to the same extent

the Debtors were responsible for such items prior to the Petition Date; and (c) all undisputed prepetition and postpetition amounts outstanding as of the date hereof, if any, owed to any Cash Management Bank as service charges for the maintenance of the Cash Management System, including any Bank Fees incurred in the ordinary course of business.

7.      In the course of providing cash management services to the Debtors, the Cash Management Banks are authorized, without further order of this Court and in the ordinary course of business, to deduct the applicable fees, including Bank Fees (whether arising prior to or after the Petition Date) from the applicable Bank Accounts, and further, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers. Any such fees arising after the Petition Date, including Bank Fees, that are charged by the Cash Management Bank in the ordinary course of business are entitled to administrative expense priority status pursuant to section 503(b) of the Bankruptcy Code.

8.      Notwithstanding any other provision of this Interim Order, any Cash Management Bank may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to, on, or after the Petition Date should be honored pursuant to any order of this Court, and no bank that honors a prepetition or postpetition check or other item drawn on any account that is the subject of this Interim Order (a) at the direction of the Debtors, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of a mistake made despite implementation of reasonably customary handling procedures, shall be deemed to be nor shall be liable to the Debtors

or their estates or any other person or entity on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Interim Order.

9.      Any prepetition deposit, cash management, and treasury services agreements existing between the Debtors and the Cash Management Banks shall continue to govern the postpetition cash management relationship between the Debtors and the applicable Cash Management Bank and, subject to applicable bankruptcy or other law, all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, offset rights, and remedies afforded under such agreements, shall remain in full force and effect absent further order of this Court (including, for the avoidance of doubt, any rights of the Cash Management Bank to use funds from the Bank Accounts to remedy any overdraft of another Bank Account to the extent permitted under the applicable deposit agreement) unless the Debtors and such Cash Management Bank agree otherwise, and any other legal rights and remedies afforded to the Cash Management Bank under applicable law shall be preserved, subject to applicable bankruptcy law.

10.      Subject to the terms of this Interim Order, the Debtors are authorized, but not directed, in the ordinary course of business, to open new accounts or close any existing Bank Accounts and enter into any ancillary agreements, including deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate in their sole discretion, *provided, however*, that the Debtors give notice to the U.S. Trustee at least seven business days prior to opening new accounts or closing any existing Bank Accounts or entering into any ancillary agreements; *provided further, however*, that the Debtors shall open any such new bank accounts at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement.  The relief granted in this Interim Order is extended to any new bank account opened by the Debtors after the date hereof, which

account shall be deemed a "Bank Account," and to the bank at which such account is opened, which bank shall be deemed a "Cash Management Bank."

11.     The Debtors shall serve a copy of this Interim Order on the Cash Management Banks and as soon as possible after entry of this Interim Order, and upon any bank at which the Debtors open a new bank account immediately upon the opening of the new account.

12.     All banks provided with notice of this Interim Order maintaining any of the Bank Accounts shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue timely stop payment orders in accordance with the documents governing such Bank Accounts.

13.     Except as otherwise set forth herein, the Debtors and the Cash Management Banks may, without further order of this Court, agree and implement changes to the policies and procedures related to the Cash Management System in the ordinary course of business.

14.     Subject to the terms of this Interim Order, the Debtors are authorized, but not directed, to continue engaging in Intercompany Transactions in connection with the Cash Management Systems in the ordinary course of business.  The Debtors shall maintain accurate and detailed records of all Intercompany Transactions and the payment of Intercompany Claims so that all transactions, including Intercompany Transactions and the payment of Intercompany Claims, may be readily traced, ascertained, and recorded properly on applicable intercompany accounts (if any) and distinguished between prepetition and postpetition transactions for the purposes of determining administrative expense status.  All postpetition payments from a Debtor to another Debtor or non-Debtor affiliate under any postpetition Intercompany Transactions authorized hereunder that result in an Intercompany Claim are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code.

15.     The Debtors are authorized, but not directed, to set off mutual prepetition and postpetition obligations relating to Intercompany Balances through the Cash Management System in the ordinary course of business.  The Debtors shall continue to maintain accurate, current, and detailed records with respect to all transfers of cash so that all transactions, including Intercompany Transactions, may be readily ascertained, traced, and recorded properly on applicable intercompany accounts.

16.     The Debtors are authorized, but not directed, to continue using the Corporate Credit Cards in the ordinary course of business, including by paying prepetition and postpetition obligations outstanding with respect thereto, subject to the limitations of this Interim Order and any other applicable interim and/or final orders of this Court.  Any existing agreements between or among the Debtors and any bank in respect of the Corporate Credit Cards shall continue to govern the postpetition relationship between the Debtors and such banks, and all the provisions of such agreements, including the termination and fee provisions, rights, benefits, offset or setoff rights and remedies afforded under such agreements, shall remain in full force and effect.  The Debtors and such bank may, without further order of this Court, agree to and implement changes related to the Corporate Credit Cards in the ordinary course of business, pursuant to the terms of those existing agreements.

17.     Any requirement to establish separate bank accounts for cash collateral and/or tax payments is hereby waived.

18.     Nothing contained in the Motion or this Interim Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date, or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

33769057.1

19.     Nothing contained herein shall permit the Cash Management Banks to terminate any cash management services without 30 days' prior written notice (or such other period as may be specified in any agreement between the Debtors and such Cash Management Bank, which period shall control and govern termination of such cash management services notwithstanding anything herein to the contrary) to the Debtors.

20.     Notwithstanding the Debtors' use of the Cash Management System, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which entity makes those disbursements.

21.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

22.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief (including any payment made in accordance with this Interim Order), nothing in this Interim Order is intended as or shall be construed or deemed to be:  (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Interim Order or the Motion or any order granting the relief

requested by the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

23.    The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of the Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted herein.

24.    The Debtors have demonstrated that the requested relief is "needed to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003(a), and the contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(a).

25.     Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due prior to the date of the Final Hearing.

26.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion, and such notice satisfies the requirements of Bankruptcy Rule 6004(a) and the Local Rules.

27.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

28.     The Debtors are authorized, but not directed, to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

29.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

33769057.1

**<u>EXHIBIT C</u>**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| LUGANO DIAMONDS & JEWELRY INC., *et al.*,[1] | Case No. 25-12055 (___) |
| Debtors. | (Jointly Administered) |
| | Re: Docket Nos. _____ & ____ |

**FINAL ORDER (A) AUTHORIZING THE DEBTORS TO (I) CONTINUE
TO OPERATE THE CASH MANAGEMENT SYSTEM, (II) HONOR CERTAIN
PREPETITION OBLIGATIONS RELATED THERETO, (III) MAINTAIN EXISTING
BUSINESS FORMS, AND (IV) CONTINUE INTERCOMPANY TRANSACTIONS,
(B) GRANTING ADMINISTRATIVE EXPENSE STATUS TO
POSTPETITION INTERCOMPANY TRANSACTIONS,
AND (C) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") for entry of a final order (this "<u>Final Order</u>"):  (a) authorizing, but not directing, the Debtors to (i) continue to operate their Cash Management System and maintain their existing Bank Accounts, (ii) honor certain prepetition and postpetition obligations related thereto, (iii) maintain existing Business Forms in the ordinary course of business, and (iv) continue Intercompany Transactions; (b) granting administrative expense status to the Intercompany Transactions; and (c) granting related relief; and upon the First Day Declaration; and upon the statements of counsel made in support of the relief requested in the Motion at the hearing before this Court; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's U.S. federal tax identification number, to the extent applicable, are as follows:  Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc.  (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308). The notice address for the Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, California 92660.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

District Court for the District of Delaware dated February 29, 2012; and it appearing that venue of the Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that it may enter a final order consistent with Article III of the United States Constitution; and it appearing that proper and adequate notice of the Motion has been given under the circumstances and in accordance with the Bankruptcy Rules and Local Rules and that no other or further notice is necessary; and after due deliberation thereon; and this Court having found that the relief herein is in the best interests of the Debtors' estates; and good and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      Any objections to the entry of this Final Order, to the extent not withdrawn or settled, are overruled.

3.      The Debtors are authorized, but not directed, in all cases in the ordinary course of business, to:  (a) continue operating the Cash Management System, substantially as identified on Exhibit A attached to the Motion and as described therein; (b) honor their prepetition obligations related thereto; (c) use, in their present form, all correspondence and Business Forms, as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date, without reference to the Debtors' status as debtors in possession; (d) continue to perform and record Intercompany Transactions in the ordinary course of business and treat postpetition Intercompany Balances in a manner consistent with this Court's grant of administrative expense status thereto; (e) continue to use the Corporate Credit Cards and honor the Corporate Credit Card Obligations; (f) continue to use, with the same account numbers, the Bank Accounts in existence

as of the Petition Date, including those accounts identified on <u>Exhibit A</u> attached to the Motion, without the need to comply with certain guidelines set forth in the U.S. Trustee Guidelines (to the extent applicable); (g) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (h) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, ACH transfers, and other debits; (i) open new debtor in possession Bank Accounts; and (j) pay the Bank Fees, including any prepetition amounts and any ordinary course Bank Fees incurred in connection with the Bank Accounts, and to otherwise perform their obligations under the documents governing the Bank Accounts.

4.      The Cash Management Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, electronic fund transfers, credit card payments, and ACH transfers or other items presented or issued, whether before or after the Petition Date, and drawn on the Bank Accounts, after the Petition Date, by the holders or makers thereof, as the case may be, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order; *provided* that the Debtors shall only instruct or request any Cash Management Bank to pay or honor any check, draft, or other payment item issued on a Bank Account prior to the Petition Date but presented to such Cash Management Bank for payment after the Petition Date.

5.      The Cash Management Banks are authorized to debit the Bank Accounts in the ordinary course of business and consistent with the Cash Management System, without the need for further order of this Court for:  (a) all checks drawn on the Bank Accounts which are cashed at such Cash Management Bank's counters or exchanged for cashier's checks by the payees thereof

prior to or after the Petition Date; (b) all checks, automated clearing house entries, and other items deposited in or credited to one of the Bank Accounts with such Cash Management Bank prior to or after the Petition Date that have been dishonored, reversed, or returned unpaid for any reason, including returned items that result from wire transfers, ACH transactions, or other electronic transfers of any kind, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date; and (c) all undisputed prepetition and postpetition amounts outstanding as of the date hereof, if any, owed to any Cash Management Bank as service charges for the maintenance of the Cash Management System, including any Bank Fees incurred in the ordinary course of business.

6.     In the course of providing cash management services to the Debtors, the Cash Management Banks are authorized, without further order of this Court and in the ordinary course of business, to deduct the applicable fees, including Bank Fees (whether arising prior to or after the Petition Date) from the applicable Bank Accounts, and further, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.  Any such fees arising after the Petition Date, including Bank Fees, that are charged by the Cash Management Bank in the ordinary course of business are entitled to administrative expense priority status pursuant to section 503(b) of the Bankruptcy Code.

7.     Notwithstanding any other provision of this Final Order, any Cash Management Bank may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to, on, or after the Petition Date should

be honored pursuant to any order of this Court, and no bank that honors a prepetition or postpetition check or other item drawn on any account that is the subject of this Final Order (a) at the direction of the Debtors, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of a mistake made despite implementation of reasonably customary handling procedures, shall be deemed to be nor shall be liable to the Debtors or their estates or any other person or entity on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Final Order.

8.    Any prepetition deposit, cash management, and treasury services agreements existing between the Debtors and the Cash Management Banks shall continue to govern the postpetition cash management relationship between the Debtors and the applicable Cash Management Bank and, subject to applicable bankruptcy or other law, all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, offset rights, and remedies afforded under such agreements, shall remain in full force and effect absent further order of this Court (including, for the avoidance of doubt, any rights of the Cash Management Bank to use funds from the Bank Accounts to remedy any overdraft of another Bank Account to the extent permitted under the applicable deposit agreement) unless the Debtors and such Cash Management Bank agree otherwise, and any other legal rights and remedies afforded to the Cash Management Bank under applicable law shall be preserved, subject to applicable bankruptcy law.

9.    Subject to the terms of this Final Order, the Debtors are authorized, but not directed, in the ordinary course of business, to open new accounts or close any existing Bank Accounts and enter into any ancillary agreements, including deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate in their sole discretion; *provided, however*, that the Debtors give notice to the U.S. Trustee at least seven business days prior to opening new

accounts or closing any existing Bank Accounts or entering into any ancillary agreements; *provided further, however*, that the Debtors shall open any such new bank accounts at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement.  The relief granted in this Final Order is extended to any new bank account opened by the Debtors after the date hereof, which account shall be deemed a "Bank Account," and to the bank at which such account is opened, which bank shall be deemed a "Cash Management Bank."

10.    All banks provided with notice of this Final Order maintaining any of the Bank Accounts shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue timely stop payment orders in accordance with the documents governing such Bank Accounts.

11.    Except as otherwise set forth herein, the Debtors and the Cash Management Banks may, without further order of this Court, agree and implement changes to the policies and procedures related to the Cash Management System in the ordinary course of business.

12.    Subject to the terms of this Final Order, the Debtors are authorized, but not directed, to continue engaging in Intercompany Transactions in connection with the Cash Management Systems in the ordinary course of business.  The Debtors shall maintain accurate and detailed records of all Intercompany Transactions and the payment of Intercompany Claims so that all transactions, including Intercompany Transactions and the payment of Intercompany Claims, may be readily traced, ascertained, and recorded properly on applicable intercompany accounts (if any) and distinguished between prepetition and postpetition transactions for the purposes of determining administrative expense status.  All postpetition payments from a Debtor to another Debtor or non-Debtor affiliate under any postpetition Intercompany Transactions authorized

hereunder that result in an Intercompany Claim are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code.

13.     The Debtors are authorized, but not directed, to set off mutual prepetition and postpetition obligations relating to Intercompany Balances through the Cash Management System in the ordinary course of business.  The Debtors shall continue to maintain accurate, current, and detailed records with respect to all transfers of cash so that all transactions, including Intercompany Transactions, may be readily ascertained, traced, and recorded properly on applicable intercompany accounts.

14.     The Debtors are authorized, but not directed, to continue using the Corporate Credit Cards in the ordinary course of business, including by paying prepetition and postpetition obligations outstanding with respect thereto, subject to the limitations of this Final Order and any other applicable interim and/or final orders of this Court.  Any existing agreements between or among the Debtors and any bank in respect of the Corporate Credit Cards shall continue to govern the postpetition relationship between the Debtors and such banks, and all the provisions of such agreements, including the termination and fee provisions, rights, benefits, offset or setoff rights and remedies afforded under such agreements, shall remain in full force and effect.  The Debtors and such bank may, without further order of this Court, agree to and implement changes related to the Corporate Credit Cards in the ordinary course of business, pursuant to the terms of those existing agreements.

15.     Any requirement to establish separate bank accounts for cash collateral and/or tax payments is hereby waived.

16.     Nothing contained in the Motion or this Final Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of

the Petition Date, or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

17. Nothing contained herein shall permit the Cash Management Banks to terminate any cash management services without 30 days' prior written notice (or such other period as may be specified in any agreement between the Debtors and such Cash Management Bank, which period shall control and govern termination of such cash management services notwithstanding anything herein to the contrary) to the Debtors.

18. Notwithstanding the Debtors' use of the Cash Management System, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which entity makes those disbursements.

19. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

20. Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief (including any payment made in accordance with this Final Order), nothing in this Final Order is intended as or shall be construed or deemed to be: (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type

specified or defined in this Final Order or the Motion or any order granting the relief requested by the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

21.     The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of the Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted herein.

22.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion, and such notice satisfies the requirements of Bankruptcy Rule 6004(a) and the Local Rules.

23.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

24.     The Debtors are authorized, but not directed, to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

25.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

33769057.1