## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LUGANO DIAMONDS & JEWELRY INC., *et al.*,[1] | Case No. 25-12055 (___) |
| Debtors. | (Joint Administration Requested) |

**MOTION OF DEBTORS FOR INTERIM AND FINAL ORDERS (A) AUTHORIZING THE DEBTORS TO (I) MAINTAIN AND ADMINISTER THEIR CUSTOMER PROGRAMS, AND (II) HONOR PREPETITION OBLIGATIONS, AND (B) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby file this motion (this "Motion") for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively (the "Proposed Orders"): (a) authorizing, but not directing, the Debtors to (i) fulfill and honor (through payment, credit, setoff, or otherwise) the Customer Obligations (as defined herein) as they deem appropriate and (ii) continue, renew, replace, terminate, and implement Customer Programs (as defined herein) and any other customer practices as they deem appropriate, without further application to the Court (as defined herein); and (b) granting related relief. In support of this Motion, the Debtors submit the *Declaration of J. Michael Issa in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"),[2] filed contemporaneously herewith. In further support of this Motion, the Debtors respectfully state as follows:

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's U.S. federal tax identification number, to the extent applicable, are as follows:  Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc.  (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308). The notice address for the Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, California 92660.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

## JURISDICTION AND VENUE

1.      This United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief requested herein are sections 105(a), 363(b), and 363(c) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

4.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the Court.  The Debtors are authorized to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No official committee has been appointed in the Chapter 11 Cases, and no request has been made for the appointment of a trustee or an examiner.

6.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in the First Day Declaration.

33769063.1

## THE DEBTORS' CUSTOMER PROGRAMS

7.      The Debtors use a high-touch, personalized sales approach to sell high-end jewelry. Most of the Debtors' pieces retail for more than $10,000, with a significant percentage that retail for amounts exceeding $100,000.  To sell their jewelry, the Debtors focus on developing personal relationships with their high-net-worth individual client base (each, a "Customer," and collectively, the "Customers").  These personal relationships are difficult to build and maintain, are a core component of the Debtors' business, and are essential to their success.  Unlike with many retailers, there is an extremely limited customer base that can afford the Debtors' jewelry. Alienating even a small number of Customers by failing to continue the Customer Programs would be detrimental to the Debtors' business.

8.      In the ordinary course of business, the Debtors incur certain obligations, or provide certain benefits, to their Customers (each, a "Customer Program," and collectively, the "Customer Programs").[3]  The Customer Programs are generally focused on developing and maintaining the Debtors' relationships with the Customers, including allowing Customers to trade-in prior purchases in connection with the purchase of more expensive jewelry, permitting Customers to obtain refunds, performing miscellaneous resizing or other work on pieces, and meeting Customers in a philanthropic setting important to both Lugano and the Customers.  The Debtors' ability to continue the Customer Programs and to honor any Customer-related prepetition business practices thereunder in the ordinary course of business is necessary to meet competitive market pressures and ensure Customer satisfaction.  Continuing the Customer Programs allows the Debtors to

---

[3]     Although this Motion is intended to be comprehensive, the Debtors may have inadvertently omitted certain Customer Programs.  The Debtors request relief with respect to all Customer Programs, regardless of whether a Customer Program is specifically identified herein.

maintain the goodwill of their current Customers and partners and, ultimately, enhance revenue and profitability to the benefit of all the Debtors' stakeholders.

9.       The Debtors accrue potential amounts payable with respect to certain of the Customer Programs, including, but not limited to, the Customer Deposit Program, Philanthropic Program, and Designated Giving Program (each as defined herein, and such amounts collectively, the "Customer Obligations").  With the exception of the Philanthropic Program and the Designated Giving Program, the Debtors are not able to anticipate exactly how much, if any, of the Customer Obligations will come due between the entry of the Proposed Orders (such period, the "Interim Period") or over the course of the Chapter 11 Cases.  Accordingly, the Debtors hereby request authority, but not direction, to maintain, modify, and supplement the Customer Programs in the ordinary course of business and to continue honoring any obligations incurred in connection therewith, including the Customer Obligations as they come due.

## I.       Trade-In Program

10.     In the ordinary course of business, the Debtors typically allow Customers to upgrade their prior purchases at any time.  A Customer who acquired a piece may thereafter exchange that piece in connection with the purchase of a more expensive piece of jewelry (the "Trade-In Program").  The Trade-In Program maintains the Debtors' critical relationships with the Customers and, through the sale of a higher price product, brings in additional revenue. While the Debtors' obligations under the Trade-In Program are not readily ascertainable, discontinuing the program would risk breaking the trust the Debtors have built with the Customers. Accordingly, the Debtors seek authorization, but not direction, to maintain the Trade-In Program in the ordinary course of business and consistent with their past practices.

## II.     Refund and Exchange Program

11.     In the ordinary course of business, the Debtors accept returns or exchanges from the Customers within seven days of the date of purchase if the Customer is not satisfied with his or her purchase for any reason (the "Refund and Exchange Program").  Over the past six months, the Debtors refunded or exchanged, on average, approximately $400,000 per month under the Refund and Exchange Program.  While the Debtors' obligations under the Refund and Exchange Program are not readily ascertainable, discontinuing the program would risk breaking the trust the Debtors have built with the Customers.  Accordingly, the Debtors seek authorization, but not direction, to maintain the Refund and Exchange Program in the ordinary course of business, consistent with their past practices.

## III.    Customer Deposit Program

12.     In the ordinary course of business, the Debtors may accept deposits (collectively, the "Customer Deposits") from Customers in connection with sales (the "Customer Deposit Program").  Customer Deposits are ultimately applied to the purchase price.  As of the Petition Date, the Debtors estimate that they are holding approximately $260,000 in Customer Deposits.  Failure to honor the Customer Deposit Program would not only jeopardize the related sales, potentially depriving the Debtors of additional revenue, but, more importantly, would damage the Debtors' relationship with the Customers.  That would undermine one of the Debtors' core strengths and adversely affect their efforts to maximize the value of their estates.  Accordingly, the Debtors seek authorization, but not direction, to, in the ordinary course of business and consistent with their past practices:  (a) honor the Customer Deposit Program and to apply the Customer Deposits to the purchase price of each applicable piece after the Customer acquires such piece, and (b) honor any Customer Obligations in connection therewith.

IV.     **Miscellaneous Jewelry Service Program**

13.     In the ordinary course of business, the Debtors provide the Customers with services related to purchased jewelry (the "Miscellaneous Jewelry Service Program").  For example, if requested, the Debtors may re-size rings at no additional cost to the Customer.  The Debtors have not estimated the value of these services, but believe they are *de minimis* when compared to the value of providing exceptional Customer service for their clientele.  Accordingly, the Debtors seek authorization, but not direction, to maintain the Miscellaneous Jewelry Service Program in the ordinary course of business, consistent with their past practices.

V.     **Philanthropic Program and Designated Giving Program**

14.     In the ordinary course of business, the Debtors sponsor certain philanthropic programs (the "Philanthropic Program").  Lugano gives back to the community in principal areas: the arts, education, healthcare, and community.  Not only is philanthropy a foundational characteristic of what Lugano is, but many of Lugano's customers are involved in philanthropic causes.  This shared experience furthers Lugano's all-important relationship with its clients.

15.     In addition, as part of historical sales efforts, the Debtors, in their discretion, designate a portion of certain sales to be shared with various charities (the "Designated Giving Program").  By this Motion, and to the extent permitted, including by the Agency Agreement and DIP Facility (as such terms are defined in the First Day Declaration) and subject to receiving any and all required consents, the Debtors are seeking authority, but not the direction, to continue the Designated Giving Program with respect to any amounts collected prepetition or postpetition.

16.     The Debtors believe that the positive impact on the communities they operate in, coupled with the Customer loyalty and goodwill generated by the Philanthropic Program and Designated Giving Program, warrants the continuation of the Philanthropic Program and Designated Giving Program on a postpetition basis, including honoring any related outstanding

obligations that arose prior to the Petition Date.  As of the Petition Date, the Debtors estimate that they hold approximately $12,250,000 in outstanding Designated Givings Program remittances and Philanthropic Program pledges, some of which are large, multi-year, multi-installment pledges, to a wide range of charitable causes in connection with the Philanthropic Program.[4]  While the Debtors are not seeking to remit any amounts or pay any pledges currently due or that may come due during the Interim Period, the Debtors are seeking the authority, but not the direction, to remit any such amounts and pay any such pledges and related obligations, whether incurred prepetition or postpetition, under the Philanthropic Program and the Designated Givings Program, in their reasonable business judgment, up to a cap of $750,000 upon entry of a final order.  Additionally, the Debtors also request the authority, in their discretion, to continue the Philanthropic Program and Designated Givings Program in the ordinary course of business and in a manner consistent with past practice.

**VI.    Payment Processors**

17.    In the ordinary course of business, the Debtors accept credit card and debit card payment from Customers through two third-party payment processors (the "Payment Processors"). For one of these Payment Processors, the Debtors receive the net Customer sales less any chargebacks, refunds, and/or processing fees charged by such Payment Processor.  The processing fees charged by this Payment Processor are set off from the funds that are remitted to the Debtors on a daily basis.  For the other Payment Processor, the Debtors receive the gross Customer sales

---

[4]    For the avoidance of doubt, this is not (a) an admission by the Debtors that they are bound by any alleged obligation under the Philanthropic Program or Designated Givings Program, (b) a promise or requirement to pay any claim under the Philanthropic Program or Designated Givings Program, (c) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law under the Philanthropic Program or Designated Givings Program, or (d) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code under the Philanthropic Program or Designated Givings Program.

on a rolling basis each month, and at the end of each such month, that Payment Processor debit the Debtors' account for all chargebacks, refunds, and/or processing fees charged by such Payment Processor. As of the Petition Date, the Debtors estimate that the total amount of unpaid processing fees owed to the Payment Processors, other than unpaid processing fees that may be offset against remittances, do not exceed approximately $50,000 (the "Unpaid Processing Fees").

18.     Maintaining the Debtors' continued ability to accept various methods of payment from Customers is essential to the Debtors' chapter 11 efforts. By this Motion, the Debtors request the authority, but not direction, to pay, or to allow the Payment Processor to pay, all Unpaid Processing Fees. The Debtors also request the authority, in their sole discretion, to allow the Payment Processor to continue to process Customer payments in the ordinary course of business and in a manner consistent with past practice.

## RELIEF REQUESTED

19.     By this Motion, the Debtors request entry of the Proposed Orders: (a) authorizing, but not directing, the Debtors to (i) fulfill and honor (through payment, credit, setoff, or otherwise) the Customer Obligations as they deem appropriate and (ii) continue, renew, replace, terminate, and implement Customer Programs and any other customer practices as they deem appropriate, without further application to the Court; and (b) granting related relief

## BASIS FOR RELIEF REQUESTED

**I.     Continuing to Honor the Customer Programs in the Ordinary Course Is Warranted Under Sections 105(a) and 363 of the Bankruptcy Code**

20.     Section 363(c) of the Bankruptcy Code authorizes a debtor in possession to use property of the estate in the ordinary course of business without notice or a hearing. Consequently, the postpetition continuation, renewal, and replacement of obligations under the Customer Programs in the ordinary course of business is likely permitted by section 363(c) of the Bankruptcy

Code, without further application to the Court.  Out of an abundance of caution, however, the Debtors request the relief described herein.

21.     Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value.  *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 825–26 (D. Del. 1999); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (authorizing payment of prepetition obligations when needed to preserve estate value); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989) (same).  In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims.

22.     Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions."  *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp.* (*In re Montgomery Ward Holding Corp.*), 242 B.R. 147, 153 (D. Del. 1999) (collecting cases); *see also Ionosphere Clubs*, 98 B.R. at 175 (finding that a sound business justification existed to justify payment of certain prepetition wages); *In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring the debtor to show a "good business reason" for a proposed transaction under section 363(b) of the Bankruptcy Code).

23.     Courts also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code, which codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry

out the provisions of this title." 11 U.S.C. § 105(a).  Under section 105(a) of the Bankruptcy Code, courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business.  *See Just for Feet*, 242 B.R. at 825–26.  Specifically, a court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").  *See, e.g.*, *Ionosphere Clubs*, 98 B.R. at 176; *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the business).  A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."  *See Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)).  Indeed, at least one court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim."  *CoServ*, 273 B.R. at 497.

24.     Accordingly, the Court has authority to authorize the Debtors to continue the Customer Programs, and pay prepetition claims arising thereunder, pursuant to sections 105(a) and 363 of the Bankruptcy Code.  Continuing to administer the Customer Programs without interruption as requested herein is critical to preserving the value of the Debtors' assets by, most importantly, preserving customer goodwill and market share, which will benefit from continuing the Customer Programs.  This value will inure to the benefit of the Debtors' estates and their creditors.

33769063.1

II.     **Continuing the Customer Programs and Honoring the Customer Obligations Is in the Best Interests of the Debtors' Businesses and Their Estates**

25.     Continuing to administer the Customer Programs without interruption during the pendency of the Chapter 11 Cases will help preserve the Debtors' valuable customer relationships and goodwill, which will inure to the benefit of the Debtors' estates and their creditors.  In contrast, failure to honor the Customer Programs could place the Debtors at a competitive disadvantage in the marketplace, amplifying the negative effect of customer uncertainty that may arise from the chapter 11 filings.  Such uncertainty could erode the Debtors' brand loyalty—causing their Customers to switch to competitors—which, in turn, would adversely impact their prospects for value maximizing chapter 11 cases.  Accordingly, the Debtors believe that the relief requested herein will maximize the value of their estates for the benefit of all stakeholders.

26.     Accordingly, the Debtors submit that they have shown cause sufficient to warrant the authority to honor the Customer Programs and to honor any Customer Obligations relating thereto, and request that the relief sought herein be approved on the terms set forth in the Proposed Orders.

**PROCESSING OF CHECKS AND ELECTRONIC FUND TRANSFERS SHOULD BE AUTHORIZED**

27.     The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of access to cash on hand and anticipated access to cash collateral and debtor-in-possession financing.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the relief requested herein.  Accordingly, the Debtors do not believe that checks or wire transfer requests, other than those relating to authorized payments, will be inadvertently honored.  Therefore, the Debtors request authority, but not direction, to authorize all applicable banks and financial institutions (collectively, the "Banks"), when

requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003(a) ARE SATISFIED

28.     Bankruptcy Rule 6003(a) empowers a court to grant certain relief within the first 21 days after the petition date only to the extent that "relief is needed to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(a). For the reasons discussed above, an immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations. Failure to receive the requested relief during the first 21 days of the Chapter 11 Cases would severely disrupt the Debtors' operations at this critical juncture and cause immediate and irreparable harm. The requested relief is necessary for the Debtors to operate their business in the ordinary course, preserve the ongoing value of their operations, and maximize value of their estates for the benefit of all stakeholders. The Debtors have demonstrated that the requested relief is "needed to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003(a), and request that the Court grant the requested relief.

## RESERVATION OF RIGHTS

29.     Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order

33769063.1

granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## **WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)**

30.    To the extent that any aspect of the relief sought herein constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## **NOTICE**

31.    The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the Office of the United States Trustee for the District of Delaware;

(b) those creditors holding the 30 largest unsecured claims against the Debtors' estates (on a consolidated basis); (c) the office of the attorney general for each of the states in which the Debtors operate; (d) the United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Department of Justice; (g) the Securities and Exchange Commission; (h) the Banks; (i) the Taxing Authorities; (j) the Payment Processor; (k) counsel to Compass Group Diversified Holdings LLC, the Debtors' prepetition secured lender and postpetition secured lender; and (l) any party that is entitled to notice pursuant to Bankruptcy Rule 2002.  The Debtors will serve copies of this Motion, and any order entered in respect of this Motion, as required by Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of page intentionally left blank]*

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of the Proposed Orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (a) granting the relief requested herein, and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated: November 16, 2025
      Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Timothy R. Powell*
Edmon L. Morton (Del. No. 3856)
Sean M. Beach (Del. No. 4070)
Timothy R. Powell (Del. No. 6894)
Benjamin C. Carver (Del. No. 7176)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:   emorton@ycst.com
      sbeach@ycst.com
      tpowell@ycst.com
      bcarver@ycst.com

-and-

**KELLER BENVENUTTI KIM LLP**
Tobias S. Keller (*pro hac vice* pending)
Traci L. Shafroth (*pro hac vice* pending)
Scott Friedman (*pro hac vice* pending)
101 Montgomery Street, Suite 1950
San Francisco, California 94104
Telephone:  (415) 496-6723
Facsimile:   (650) 636-9251
Email:   tkeller@kbkllp.com
      tshafroth@kbkllp.com
      sfriedman@kbkllp.com

*Proposed Attorneys for Debtors and Debtors-in-Possession*

33769063.1

## EXHIBIT A

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LUGANO DIAMONDS & JEWELRY INC., *et al.*,[1] | Case No. 25-12055 (___) |
| Debtors. | (Jointly Administered) |
| | Re: Docket No. _____ |

### INTERIM ORDER (A) AUTHORIZING THE DEBTORS TO (I) MAINTAIN AND ADMINISTER THEIR CUSTOMER PROGRAMS AND (II) HONOR PREPETITION OBLIGATIONS, AND (B) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of an interim order (this "Interim Order"): (a) authorizing, but not directing, the Debtors to (i) fulfill and honor (through payment, credit, setoff, or otherwise) the Customer Obligations as they deem appropriate and (ii) continue, renew, replace, terminate, and implement Customer Programs and any other customer practices as they deem appropriate, without further application to this Court; and (b) granting related relief; and upon the First Day Declaration; and upon the statements of counsel made in support of the relief requested in the Motion at the hearing before this Court; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated February 29, 2012; and it appearing that venue of the Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's U.S. federal tax identification number, to the extent applicable, are as follows: Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc. (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308). The notice address for the Debtors is 620 Newport Center Dr., Ste 700, Newport Beach, California 92660.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that it may enter a final order consistent with Article III of the United States Constitution; and it appearing that proper and adequate notice of the Motion has been given under the circumstances and in accordance with the Bankruptcy Rules and Local Rules and that no other or further notice is necessary; and after due deliberation thereon; and this Court having found that the relief herein is in the best interests of the Debtors' estates; and good and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      Any objections to the entry of this Interim Order, to the extent not withdrawn or settled, are overruled.

3.      The final hearing (the "<u>Final Hearing</u>") on the Motion shall be held on _____, 2025, at__:__ _.m., (prevailing Eastern Time).  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on _____, 2025 and shall be served on:  (a) the Debtors, 620 Newport Center Dr., Ste 100, Newport Beach, California 92660, Attn:  J. Michael Issa; (b) proposed counsel to the Debtors, (i) Keller Benvenutti Kim LLP, Attn:  Tobias S. Keller, Esq. (tkeller@kbkllp.com) and Traci L. Shafroth, Esq. (tshafroth@kbkllp.com); and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn:  Timothy R. Powell, Esq. (tpowell@ycst.com) and Benjamin C. Carver, Esq. (bcarver@ycst.com); (c) counsel to Compass Group Diversified Holdings LLC, prepetition secured lender and postpetition secured lender, Squire Batton Boggs (US) LLP, 1000 Key Tower 127 Public Square, Cleveland, OH 44114, Attn:  Peter Morrison, Esq. (peter.morrison@squirepb.com); (d) the United States Trustee for the

District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Timothy Fox (timothy.fox@usdoj.gov); and (e) any statutory committee appointed in the Chapter 11 Cases.

4.      The Debtors are authorized, but not directed, on an interim basis, to continue to administer all Customer Programs[3] currently in effect, modify or supplement such Customer Programs in the ordinary course of business and consistent with past practice, and honor any Customer Obligations incurred pursuant thereto, whether incurred prepetition or postpetition as they come due in the ordinary course of business and consistent with past practice without further application to or order of this Court.

5.      The Banks on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such Banks are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

6.      Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief (including any payment made in accordance with this Interim Order), nothing in this Interim Order is intended as or shall be construed or deemed to be:  (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of

---

[3]    For the avoidance of doubt, the Debtors are not seeking interim relief related to the Philanthropic Program, Designated Givings Program, or any Customer Obligations incurred pursuant thereto.

a type specified or defined in this Interim Order or the Motion or any order granting the relief requested by the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

7.      The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of the Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted herein.

8.      The Debtors have demonstrated that the requested relief is "needed to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003(a), and the contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(a).

9.      Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due prior to the date of the Final Hearing.

10.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion, and such notice satisfies the requirements of Bankruptcy Rule 6004(a) and the Local Rules.

11.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

12.     The Debtors are authorized, but not directed, to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

13.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

33769063.1

## **<u>EXHIBIT B</u>**

## **Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LUGANO DIAMONDS & JEWELRY INC., *et al.*,[1] | Case No. 25-12055 (___) |
| Debtors. | (Jointly Administered) |
| | Re: Docket Nos. _____ & _____ |

### FINAL ORDER (A) AUTHORIZING THE DEBTORS TO (I) MAINTAIN AND ADMINISTER THEIR CUSTOMER PROGRAMS AND (II) HONOR PREPETITION OBLIGATIONS, AND (B) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of a final order (this "Final Order"):  (a) authorizing, but not directing, the Debtors to (i) fulfill and honor (through payment, credit, setoff, or otherwise) the Customer Obligations as they deem appropriate and (ii) continue, renew, replace, terminate, and implement Customer Programs and any other customer practices as they deem appropriate, without further application to this Court; and (b) granting related relief; and upon the First Day Declaration; and upon the statements of counsel made in support of the relief requested in the Motion at the hearing before this Court; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated February 29, 2012; and it appearing that venue of the Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this is a core proceeding pursuant to 28 U.S.C.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's U.S. federal tax identification number, to the extent applicable, are as follows: Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc. (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308). The notice address for the Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, California 92660.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

§ 157(b)(2) and that it may enter a final order consistent with Article III of the United States Constitution; and it appearing that proper and adequate notice of the Motion has been given under the circumstances and in accordance with the Bankruptcy Rules and Local Rules and that no other or further notice is necessary; and after due deliberation thereon; and this Court having found that the relief herein is in the best interests of the Debtors' estates; and good and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on final basis as set forth herein.

2.      Any objections to the entry of this Final Order, to the extent not withdrawn or settled, are overruled.

3.      The Debtors are authorized, but not directed, on a final basis, to continue to administer all Customer Programs currently in effect, modify or supplement such Customer Programs in the ordinary course of business and consistent with past practice, and honor any Customer Obligations incurred pursuant thereto, whether incurred prepetition or postpetition, as they come due in the ordinary course of business and consistent with past practices without further application to or order of this Court.

4.      The Debtors are authorized, but not directed, to continue to administer the Philanthropic Program and Designated Givings Program postpetition, in the ordinary course of business and consistent with past practice; *provided* that the Debtors shall honor any related prepetition Philanthropic Program and Designated Givings Program obligations up to a cap of $750,000.

5.      The Banks on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such

33769063.1

Banks are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

6.    Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief (including any payment made in accordance with this Final Order), nothing in this Final Order is intended as or shall be construed or deemed to be:  (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Final Order or the Motion or any order granting the relief requested by the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  Any payment made pursuant to this Final Order is not intended and should not

be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

7.      The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of the Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted herein.

8.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion, and such notice satisfies the requirements of Bankruptcy Rule 6004(a) and the Local Rules.

9.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

10.     The Debtors are authorized, but not directed, to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

11.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

33769063.1