# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>LUGANO DIAMONDS & JEWELRY INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-_____ (___)<br><br>(Joint Administration Requested) |

**DECLARATION OF EBEN PAUL PERISON IN SUPPORT OF MOTION OF DEBTORS FOR (A) AN INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO PERFORM UNDER THE AGENCY AGREEMENT, (II) APPROVING THE SALE GUIDELINES, DISPUTE RESOLUTION PROCEDURES, WAIVER OF VARIOUS LEASE RESTRICTIONS, AND MODIFICATIONS TO THE DEBTORS' CUSTOMER PROGRAMS, (III) SCHEDULING, IF NECESSARY AND PRIOR TO ANY AUCTION, THE AGENT PROTECTIONS HEARING TO CONSIDER ENTRY OF THE AGENT PROTECTIONS ORDER (1) APPROVING THE AGENT PROTECTIONS, (2) SCHEDULING, IF NECESSARY, THE AUCTION, AND (3) APPROVING (X) THE BIDDING PROCEDURES, AND (Y) THE SALE NOTICE; (IV) AUTHORIZING, IF NECESSARY, THE DEBTORS TO EXECUTE AN ALTERNATIVE TRANSACTION AGREEMENT, (V) SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF; AND (B) A FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME (1) THE AGENCY AGREEMENT, OR (2) AN ALTERNATIVE TRANSACTION, (II) AUTHORIZING (1) AGENT TO SELL THE AGENCY ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, OR AUTHORIZING (2) ANOTHER SUCCESSFUL BIDDER TO SELL THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, AND (III) GRANTING RELATED RELIEF**

I, Eben Paul Perison, declare as follows under penalty of perjury:

1.  I am President of Armory Group, LLC and the Chief Executive Officer and Senior Managing Director of its investment banking subsidiary Armory Securities, LLC

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's U.S. federal tax identification number, to the extent applicable, are as follows: Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc. (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308). The notice address for the Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, California 92660.

28985594.4

("Armory"), which maintains its principal office at 200 North Pacific Coast Highway, Suite 1525, El Segundo, CA 90245.  Armory is the proposed investment banker to the above-captioned debtors and debtors in possession (collectively, the "Debtors").

2. I submit this declaration (this "Declaration") in support of the relief requested in the *Motion of Debtors for (A) an Interim Order (I) Authorizing the Debtors to Perform Under the Agency Agreement, (II) Approving the Sale Guidelines, Dispute Resolution Procedures, Waiver of Various Lease Restrictions, and Modifications to the Debtors' Customer Programs, (III) Scheduling, If Necessary and Prior to Any Auction, the Agent Protections Hearing to Consider Entry of the Agent Protections Order (1) Approving the Agent Protections, (2) Scheduling, If Necessary, the Auction, and (3) Approving (X) The Bidding Procedures, and (Y) The Sale Notice; (IV) Authorizing, If Necessary, the Debtors to Execute an Alternative Transaction Agreement, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief; and (B) a Final Order (I) Authorizing the Debtors to Assume (1) the Agency Agreement, or (2) an Alternative Transaction, (II) Authorizing (1) Agent to Sell the Agency Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, or Authorizing (2) Another Successful Bidder to Sell the Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, And (III) Granting Related Relief* (the "Sale Motion")[2], filed contemporaneously herewith.

3. Unless otherwise stated herein, all statements set forth in this Declaration are based upon (i) my personal knowledge of the Debtors' operations and the sales process; (ii) my and Armory's experiences in other similar chapter 11 cases; (iii) discussions with certain other professionals at Armory and with the Debtors' other advisors; and/or (iv) my opinions based upon

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Sale Motion.

28985594.4

2

my experience and knowledge.

4. I am over the age of eighteen (18) and authorized to submit this Declaration on behalf of the Debtors. I am not being specifically compensated for this testimony other than through payments received by Armory, as a proposed professional to be retained by the Debtors. If called upon to testify, I could and would testify as to the facts set forth herein.

5. Armory was retained by Lugano Diamonds & Jewelry Inc. ("Lugano") by engagement letter on May 22, 2025, to provide, among other things, investment banking and financial advisory services on an exclusive basis in connection with a possible restructuring, sale, or financing (the "Sale Process").

## BACKGROUND AND QUALIFICATIONS

6. I have over 25 years of experience in advising middle market companies on mergers and acquisitions, debt and equity capital raises and complex financial restructurings. Prior to forming Armory, I led the investment banking team at The Seaport Group and before that I served as the Head of Special Situations & Restructuring Investment Banking at Oppenhiemer & Co. Before Oppenheimer, I was a Managing Director at Fortress Investment Group, where I was responsible for originating, negotiating and structuring a broad range of alternative debt investments. Prior to Fortress, I was Co-Head of Investment Banking for Libra Securities, LLC, an investment bank specializing in middle market leveraged finance and a Managing Director for U.S. Bancorp Libra, the former leveraged finance and high-yield division of U.S. Bancorp. Preceding my investment banking career, I served as a corporate lawyer for seven years and practiced with Milbank, Tweed, Hadley & McCloy and Gibson, Dunn & Crutcher.

7. I received my bachelor's degree in economics from University of California, Irvine and law degree from the University of California College of the Law, San Francisco (formerly University of California, Hastings College of the Law).

8. Armory is a national investment banking and financial advisory firm with offices in Los Angeles, New York, Chicago, Boston, and Dallas and more than 30 professionals. Armory provides clients with a wide range of investment banking services from mergers and acquisitions and raising debt or equity financing to restructuring and transaction support.

9. Armory routinely provides services to debtors, creditors, and other parties in interest involved with financially troubled companies both in and outside of bankruptcy. Armory has been, and is, involved in complex restructurings and sales transaction throughout the United States, both out of court and in chapter 11 cases. Armory has been retained to provide investment banking and financial advisory services in, among other cases, *In re TreeSap Farms, LLC*, Case No. 25-90071 (Bankr. Tex. Apr. 8, 2025) [Docket No. 181] (investment banker to debtors); *In re Aruze Gaming America, Inc.*, Case No. 23-10356 (Bankr. D. Nev. Apr. 3, 2023) [Docket No. 206] (investment banker to debtors); *In re Wave Computing, Inc.*, Case No. 20-50682 (Bankr. N.D. Cal. Nov. 3, 2020) [Docket No. 688] (investment banker to debtors); *In re EB Holdings II, Inc.*, Case No. 19-16364 (Bankr. D. Nev. Oct. 15, 2019) [Docket No. 76] (financial advisor to debtors); *In re Immune Pharmaceuticals, Inc.*, Case No. 19-13273 (Bankr. D.N.J. Mar. 21, 2019) [Docket No. 76] (financial advisor and investment banker to debtor); *In re Quantum Fuel Sys. Techs. Worldwide, Inc.*, Case No. 16-11202 (Bankr. C.D. Cal. May 2, 2016) [Docket No. 195] (investment banker to debtor).

## THE MARKETING PROCESS

10. Since Armory was engaged in May 2025, Armory has worked closely with the Debtors and their other professional advisors to become knowledgeable about the Debtors' business, finances, and operations. Armory has participated directly in discussions, due diligence, and negotiations with potential bidders. In doing so, Amory has been working closely with the Debtors' management, legal counsel, and other advisors.

11. As part of the Sale Process, the Debtors and Armory identified and contacted over 116 parties who might be interested in a purchase or financing transaction with the Debtors. Of those contacted, 58 parties executed confidentiality agreements and received a confidential information memorandum, leading to five indications of interest, proposing to acquire a controlling interest in the Debtors or substantially all of their assets (the "Assets") through various transaction structures and four indications of interest, proposing to provide staple financing to a potential buyer. The Debtors provided those parties making the Proposals with due diligence materials, including access to a virtual data room (the "Data Room"). The Debtors' management also held due diligence meetings with those parties interested in acquiring the Assets.

12. The Sale Process was challenging in light of the Debtors' discovery prior to commencement thereof of certain concerns in financing, accounting, and inventory practices and irregularities identified in sales, cost of sales, inventory, and accounts receivable recorded . As a result, the Debtor's historical financial statements could not be relied upon and Armory was required to work with the Company's management and interested parties to identify and provide alternative information that would allow those parties to diligence the Debtors' assets and business and, ultimately, to come to conclusions surrounding value and structure that would enable them to prepare and submit indications of interest to Armory and the Debtors.

13. The Debtors subsequently received six letters of intent to acquire their assets, with different proposed transaction structures. The letters of intent included "going concern" and liquidation proposals, certain of which the Special Committee of the Board of Directors of Lugano (in consultation with the full Board), instructed Armory and the Debtors' counsel to further negotiate. After providing additional diligence and conducting discussions with the prospective buyers and extensive deliberations with Armory and the Debtors' other advisors

regarding the terms of the proposals, the Debtors determined the proposed transaction with Enhanced Retail Funding, LLC (the "Agent"), to be the best bid.

14.     After good faith, arms'-length negotiations, the Debtors entered into that certain Agency Agreement (the "Agency Agreement"), dated as of November 16, 2025, by and between Lugano and the Agent.  The Agency Agreement as outlined in the Sales Motion is a combination of two frequently used approaches approved in retail bankruptcies around the United States (an (i) agency agreement and (ii) an equity agreement subject to overbid and auction) that in the interest of time and the pending Holiday season are combined and pursued contemporaneously by the Debtor.  The Debtors determined that entering the Agency Agreement, subject to higher or better offers, is the path that would best maximize value to its stakeholders

15.     Pending approval of the Agency Agreement, or an Alternative Transaction, the Debtors anticipate the continuing operation of their retail businesses and look forward to maintaining retail sales efforts through the holiday season.

## BIDDING PROCEDURES AND SALE TIMELINE

16.     I have reviewed the Debtors proposed bidding procedures.  Based on the extensive prepetition marketing efforts and the importance of an expedited sale, I believe the transaction structure and the bidding procedures enable the Debtors to conduct a final market test of the proposed sale and are likely to maximize the value of the Debtors' assets and businesses.

## AGENT PROTECTIONS

17.     As a key inducement to the execution of the Agency Agreement, the Debtors have agreed, subject to Court approval, to provide the Agent with certain Agent Protections, should the Debtors consummate an alternative transaction for the Assets with another bidder, including, (i) payment of a break-up fee in the amount of $3,000,000, plus (ii) the reimbursement of expenses incurred by Agent though the date of the Debtors' consummation of

such alternative transaction, plus (iii) an amount equal to the reasonable and documented third party costs, fees, and expenses incurred by the Agent (including, without limitation, fees and expenses of legal advisors) in connection with the Agency Agreement and the transactions contemplated thereby in an aggregate amount not to exceed $250,000.00.

18. The Agent Protections were the subject of good faith negotiations. Without the Agent Protections, the Agent would not have agreed to enter the Agency Agreement under the terms reflected in the Agency Agreement, which may have degraded the value of the Assets and imperiled a postpetition sale process.

19. Based on my substantial experience and personal knowledge of the Debtors' sale and marketing efforts, I believe that approval of the proposed Bidding Procedures, including the timeline, and Agent Protections will enable the Debtors to obtain the highest or otherwise best offer for the Assets under the circumstances and will thereby maximize value for the benefit of all stakeholders in these chapter 11 cases.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true correct to the best of my knowledge, information and belief.

Dated: November 17, 2025

*Eben Paul Perison*
Eben Paul Perison