**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| LUGANO DIAMONDS & JEWELRY INC., *et al.*,[1] | Case No. 25-12055 (BLS) |
| Debtors. | (Joint Administration Requested) |
| | **Ref. Docket Nos: 6, 12 & 13** |

## OMNIBUS NOTICE OF FILING OF BLACKLINES OF FIRST-DAY ORDERS

**PLEASE TAKE NOTICE** that, on November 16, 2025, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed certain first day pleadings (the "First Day Pleadings") with the United States Bankruptcy Court for the District of Delaware. Subsequent thereto, the Debtors revised various proposed forms of order attached to certain of the First Day Pleadings.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit 1** is a blackline comparing the proposed form of order attached to the *Motion of Debtors for Interim and Final Orders (A) Approving the Debtors' Proposed Adequate Assurance Procedures with Respect to the Debtors' Utility Providers, (B) Approving the Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, (C) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Services, and (D) Granting Related Relief* [Docket No. 6] as Exhibit A against a revised proposed form of order incorporating certain comments from the Office of the United States Trustee for the District of Delaware (the U.S. Trustee").

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit 2** is a blackline comparing the proposed form of order attached to the *Motion of Debtors for Interim and Final Orders (A) Authorizing the Debtors to (I) Obtain Postpetition Financing, and (II) Utilize Cash Collateral, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Granting Adequate Protection to the Prepetition Lender, (D) Modifying the Automatic Stay, (E) Scheduling a Final Hearing, and (F) Granting Related Relief* [Docket No. 12] as Exhibit A against a revised proposed form of order incorporating certain comments from the U.S. Trustee.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's U.S. federal tax identification number, to the extent applicable, are as follows: Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc. (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308). The notice address for the Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, California 92660.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit 3** is a blackline comparing the proposed form of interim order attached to the *Motion of Debtors For (A) an Interim Order (I) Authorizing the Debtors to Perform Under the Agency Agreement, (II) Approving the Sale Guidelines, Dispute Resolution Procedures, Waiver of Various Lease Restrictions, and Modifications to the Debtors' Customer Programs, (III) Scheduling, if Necessary and Prior to Any Auction, the Agent Protections Hearing to Consider Entry of the Agent Protections Order (1) Approving the Agent Protections, (2) Scheduling, If Necessary, the Auction, and (3) Approving (X) the Bidding Procedures, and (Y) The Sale Notice; (IV) Authorizing, If Necessary, the Debtors To Execute An Alternative Transaction Agreement, (V) Scheduling A Final Hearing, and (VI) Granting Related Relief; and (B) A Final Order (I) Authorizing the Debtors to Assume (1) the Agency Agreement, or (2) an Alternative Transaction, (II) Authorizing (1) Agent to Sell the Agency Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, or Authorizing (2) Another Successful Bidder to Sell The Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief* [Docket No. 13] as <u>Exhibit A</u> against a revised proposed form of order incorporating certain comments from the U.S. Trustee.

[*Remainder of Page Intentionally Left Blank*]

Dated: November 18, 2025
      Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Timothy R. Powell*
Edmon L. Morton (Del. No. 3856)
Sean M. Beach (Del. No. 4070)
Timothy R. Powell (Del. No. 6894)
Benjamin C. Carver (Del. No. 7176)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:    emorton@ycst.com
        sbeach@ycst.com
        tpowell@ycst.com
        bcarver@ycst.com

-and-

**KELLER BENVENUTTI KIM LLP**
Tobias S. Keller (*pro hac vice* pending)
Traci L. Shafroth (*pro hac vice* pending)
Scott Friedman (*pro hac vice* pending)
101 Montgomery Street, Suite 1950
San Francisco, California 94104
Telephone:  (415) 496-6723
Facsimile:  (650) 636-9251
Email:    tkeller@kbkllp.com
        tshafroth@kbkllp.com
        sfriedman@kbkllp.com

*Proposed Attorneys for Debtors
and Debtors-in-Possession*

# EXHIBIT 1

**Utilities Motion Interim Order Blackline**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LUGANO DIAMONDS & JEWELRY INC., *et al.*,[1] | Case No. 25-12055 (——BLS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 6** |

**INTERIM ORDER (A) APPROVING THE DEBTORS' PROPOSED ADEQUATE ASSURANCE PROCEDURES WITH RESPECT TO THE DEBTORS' UTILITY PROVIDERS, (B) APPROVING THE DEBTORS' PROPOSED ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES, (C) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES, AND (D) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"):  (a) establishing procedures for addressing any requests that a Utility Provider may make for additional assurance of payment; (b) prohibiting the Utility Providers from altering, refusing or discontinuing services to, or discriminating against the Debtors; (c) approving an adequate assurance deposit as adequate assurance of postpetition payment to the Utility Providers; and (d) granting related relief; and upon the First Day Declaration; and upon the statements of counsel made in support of the relief requested in the Motion at the hearing before this Court; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's U.S. federal tax identification number, to the extent applicable, are as follows:  Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc.  (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308).  The notice address for the Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, California 92660.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

and 1334 and the *Amended Standing Order of Reference* from the United States District Court

for the District of Delaware dated February 29, 2012; and it appearing that venue of the Chapter

11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that

it may enter a final order consistent with Article III of the United States Constitution; and it

appearing that proper and adequate notice of the Motion has been given under the circumstances

and in accordance with the Bankruptcy Rules and Local Rules and that no other or further notice

is necessary; and after due deliberation thereon; and this Court having found that the relief herein

is in the best interests of the Debtors' estates; and good and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      Any objections to the entry of this Interim Order, to the extent not withdrawn or

settled, are overruled.

3.      The final hearing (the "<u>Final Hearing</u>") on the Motion shall be held on

_____, 2025, at__:__ _.m., (prevailing Eastern Time).  Any objections or responses to entry

of a final order on the Motion shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on

_____, 2025 and shall be served on:  (a) the Debtors, 620 Newport Center Dr., Ste 100,

Newport Beach, California 92660, Attn:  J. Michael Issa; (b) proposed counsel to the Debtors,

(i) Keller Benvenutti Kim LLP, Attn:  Tobias S. Keller, Esq. (tkeller@kbkllp.com) and Traci L.

Shafroth, Esq. (tshafroth@kbkllp.com); and (ii) Young Conaway Stargatt & Taylor, LLP,

Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn:  Timothy R. Powell, Esq.

(tpowell@ycst.com) and Benjamin C. Carver, Esq. (bcarver@ycst.com); (c) counsel to Compass

Group Diversified Holdings LLC, the Debtors' prepetition secured lender and postpetition

secured lender, Squire Batton Boggs (US) LLP, 1000 Key Tower 127 Public Square, Cleveland, OH 44114, Attn: Peter Morrison, Esq. (peter.morrison@squirepb.com); (d) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Timothy Fox (timothy.fox@usdoj.gov); and (e) any statutory committee appointed in the Chapter 11 Cases.

4.      Unless and until this Court orders otherwise, all Utility Providers are prohibited from altering, refusing, or discontinuing services on account of any unpaid prepetition charges, the commencement of the Chapter 11 Cases, or any perceived inadequacy of the Proposed Adequate Assurance.  Notwithstanding anything to the contrary in the Motion, the relief granted by this Interim Order is not with respect to Utility Providers that indirectly supply services through the Debtors' landlords.  Nothing herein shall impair the rights of any utility provider under section 366(c)(4) of the Bankruptcy Code.

5.      The following Adequate Assurance Procedures are hereby approved on an interim basis:

(a)     The Debtors will deposit the Adequate Assurance Deposit in the Adequate Assurance Account as soon as reasonably practicable after entry of this Interim Order.

(b)     Each Utility Provider shall be entitled to the funds in the Adequate Assurance Account in the amount set forth for such Utility Provider in the column labeled "Proposed Adequate Assurance" on the Utility Providers List, attached as Exhibit A to the Motion.

(c)     If an amount relating to Utility Services provided postpetition by a Utility Provider is unpaid, and remains unpaid beyond any applicable grace period, such Utility Provider may request a disbursement from the Adequate Assurance Account by giving notice to:  (i) the Debtors, Lugano Diamonds & Jewelry Inc., 620 Newport Center Dr., Ste 100, Newport Beach, California 92660 (Attn:  J. Michael Issa (missa@glassratner.com)); (ii) proposed counsel to the Debtors, (a) Keller Benvenutti Kim LLP, 101 Montgomery Street, Suite 1950, San Francisco, California 94104 (Attn:  Tobias S. Keller, Esq. (tkeller@kbkllp.com) and Scott J. Friedman, Esq.  (sfriedman@kbkllp.com)); and (b) Young Conaway Stargatt & Taylor LLP, Rodney Square, 1000 North King Street, Wilmington,

Delaware 19801 (Attn: Timothy R. Powell, Esq. (tpowell@ycst.com) and Benjamin C. Carver, Esq. (bcarver@ycst.com)); (iii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Timothy Fox (timothy.fox@usdoj.gov); (iv) any statutory committee appointed in the Chapter 11 Cases; and (v) to the extent not listed herein, those parties entitled to notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").

(d) The Debtors will serve a copy of the Motion and this Interim Order granting the relief requested herein to each Utility Provider identified on Exhibit A to the Motion as soon as reasonably practicable after entry of this Interim Order.

(e) Any Utility Provider desiring additional assurances of payment in the form of deposits, prepayments, or otherwise must serve a request for additional assurance (an "Additional Assurance Request") on the Notice Parties.

(f) Any Additional Assurance Request must: (i) be in writing; (ii) identify the location for which the Utility Services are provided; (iii) certify the amount that is equal to one-half the monthly cost of the Utility Services the Utility Provider supplies to the Debtors, calculated as a historical average payment for the twelve-month period ending October 2025, or shorter period, if applicable; (iv) provide evidence that the Debtors have a direct obligation to the Utility Provider; and (v) explain why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

(g) Unless a Utility Provider files and serves an Additional Assurance Request in accordance with the terms of this Interim Order, the Utility Provider shall be prohibited from altering, refusing, or discontinuing Utility Services to, or discriminating against, the Debtors on account of any unpaid prepetition charges, or requiring additional assurance of payment other than the Proposed Adequate Assurance.

(h) Upon the Debtors' receipt of an Additional Assurance Request, the Debtors will have 21 days from the receipt of such Additional Assurance Request (the "Resolution Period") to negotiate with the Utility Provider to resolve the Utility Provider's Additional Assurance Request. The Debtors and the Utility Provider may, without notice to any party-in-interest or further order of this Court, extend the Resolution Period by such additional period as they shall mutually agree.

(i) Without further order of this Court, the Debtors may resolve any Additional Assurance Request by mutual agreement with a Utility Provider, and the Debtors may, in connection with any such agreement, provide a Utility Provider with additional adequate assurance of payment, including, but not limited to, cash deposits, prepayments, or other forms of security if the Debtors believe that such adequate assurance is reasonable.

(j) If the Debtors and the Utility Provider are unable to reach a consensual resolution within the Resolution Period, or if a Utility Provider was omitted from the Utility Providers List and wishes to dispute that it

4

received adequate assurance of future payment as required by section 366 of the Bankruptcy Code as provided by this Interim Order, the Debtors or such Utility Provider may request a hearing before this Court at the next regularly-scheduled omnibus hearing to determine the adequacy of assurance of payment (a "Determination Hearing") pursuant to section 366(c)(3) of the Bankruptcy Code.

(k) Pending resolution of such dispute at a Determination Hearing, the relevant Utility Provider shall be prohibited from altering, refusing, or discontinuing Utility Services to the Debtors on account of:  (i) unpaid charges for prepetition services; (ii) a pending Additional Assurance Request; or (iii) any objections filed in response to the Proposed Adequate Assurance.

(l) The portion of the Adequate Assurance Deposit attributable to each Utility Provider (including any additional amount deposited upon request of any applicable Utility Provider), or any portion thereof, shall revert to the Debtors less any amounts owed on account of unpaid, postpetition Utility Services, by no later than five business days following the earlier of the date upon which (i) the Debtors reconcile and pay the Utility Provider's final invoice in accordance with applicable non-bankruptcy law following the Debtors' termination of Utility Services from such Utility Provider, or (ii) the effective date of any chapter 11 plan confirmed in the Chapter 11 Cases.

6. The Utility Providers are prohibited from requiring additional adequate assurance of payment other than pursuant to the Adequate Assurance Procedures.

7. The Adequate Assurance Deposit in the amount of $11,868.54 shall be placed into a segregated account, ending in 0527, at U.S. Bank National Association for the benefit of each Utility Provider.  Notwithstanding anything to the contrary in any other order of this Court, including any order approving the use of cash collateral in the Chapter 11 Cases, the interests of any party, including but not limited to the Debtors' prepetition lenders, in, or lien on, the Adequate Assurance Deposit shall be subordinate to the Utility Providers' interest in any Adequate Assurance Deposit until such time as the Adequate Assurance Deposit is returned to the Debtors or as otherwise ordered by this Court.

8. The Debtors' service of the Motion upon the Utility Providers List shall not constitute an admission or concession that any such entity is a "utility" within the meaning of

section 366 of the Bankruptcy Code, and the Debtors reserve all rights and defenses with respect thereto.

9.      The Debtors are authorized, but not directed, to add or remove parties from the Utility Providers List; *provided, however*, that the Debtors shall provide notice of any such addition or removal to the Notice Parties; *provided, further*, that if a Utility Provider is removed from the Utility Providers List, the Debtors shall provide the applicable Utility Provider with seven business days' notice thereof and the opportunity to respond to such removal.  To the extent there is any dispute as to the postpetition amounts owed to a Utility Provider, such Utility Provider shall not be removed from the Utility Providers List, and no funds shall be removed from the Adequate Assurance Deposit, until such dispute has been resolved.  For any Utility Provider that is subsequently added to the Utility Providers List, the Debtors shall serve such Utility Provider a copy of this Interim Order, including the Adequate Assurance Procedures.  The Debtors may increase the Adequate Assurance Deposit by an amount equal to approximately one-half of the Debtors' monthly average cost of services from the subsequently added Utility Provider.  The terms of this Interim Order and the Adequate Assurance Procedures shall apply to any subsequently identified Utility Provider to the same extent as if the Utility Provider was listed on the original Utility Providers List attached hereto.

10.      Pursuant to the Adequate Assurance Procedures, upon the Debtors' termination of Utility Services, the Debtors are authorized, in their discretion and without further order of this Court, to reduce the Adequate Assurance Deposit by an amount not exceeding, for each of the Utility Services being discontinued, the lesser of (a) one-half of the average monthly cost of Utility Services previously provided, calculated as a historical average payment for the twelve-month period ending October 2025, or shorter period, if applicable, to align with the

go-forward average monthly cost of Utility Services, and (b) the amount of the Adequate Assurance Deposit then attributable to the applicable Utility Provider; *provided* that for any Utility Provider for which the Adequate Assurance Deposit is reduced, the Debtors shall have provided such Utility Provider with seven business days' notice of such reduction.

11.     ~~Any~~Subject to further order of this Court, any landlord or third party that pays directly for Utility Services for the benefit of the Debtors pursuant to a nonresidential real property lease must continue paying for such Utility Services in the ordinary course of business and may not cease, reduce, delay, or otherwise interfere with the payment or delivery of such Utility Services, regardless of any nonpayment, deferral, or waiver of rent, or any defaults with respect to the applicable lease; *provided* that a landlord may cease payments on account of Utility Services following the effective date of the rejection of the applicable lease pursuant to section 365 of the Bankruptcy Code, if any.  Notwithstanding anything to the contrary herein, nothing in this Interim Order affects the rights and obligations of the Debtors and their applicable landlords under section 365 of the Bankruptcy Code with respect to nonresidential real property leases.

12.     The Banks on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such Banks are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

13.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief (including any payment made in accordance with this Interim Order), nothing in this Interim Order is intended as or shall be construed or deemed to be:  (a) an

implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Interim Order or the Motion or any order granting the relief requested by the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

14. The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of the Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted herein.

15. The Debtors have demonstrated that the requested relief is "needed to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003(a), and the contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(a).

16. Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due prior to the date of the Final Hearing.

17. Notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion, and such notice satisfies the requirements of Bankruptcy Rule 6004(a) and the Local Rules.

18. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

19. The Debtors are authorized, but not directed, to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

20. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

# **EXHIBIT 2**

**DIP Motion Interim Order Blackline**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| LUGANO DIAMONDS & JEWELRY INC., *et al*.,[1] | Case No. 25-12055 (——BLS) |
| | (Jointly Administered) |
| Debtors. | **Ref. Docket No. 12** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN
POSTPETITION FINANCING, AND (B) USE CASH COLLATERAL; (II) GRANTING
LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS;
(III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION LENDER;
(IV) MODIFYING THE AUTOMATIC STAY; (V) SCHEDULING A
FINAL HEARING; AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (each, a "Debtor" and collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Bankruptcy Cases") for entry of this interim order (this "Interim Order") and a final order (the "Final Order," together with the Interim Order, the "DIP Orders") pursuant to sections 105, 361, 362, 363, 364, 503, 506, 507 and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1, 4001-1, 4001-2, and 9013-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), seeking, among other things:

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's U.S. federal tax identification number, to the extent applicable, are as follows:  Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc. (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308).  The notice address for the Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, California 92660.

[2]    Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, the DIP Credit Agreement (as defined below) or the DIP Term Sheet (as defined below), as applicable.



(i)     authorization for Lugano Diamonds & Jewelry, Inc., a California corporation ("Borrower"), Lugano Buyer, Inc., a Delaware corporation ("Co-Borrower"), Lugano Holding, Inc., a Delaware corporation ("Parent"), Lugano Prive, LLC ("Prive"), and K.L.D. Jewelry, LLC ("KLD," collectively and as applicable, the "DIP Borrowers"), to obtain postpetition financing in connection with a senior secured, superpriority, priming debtor-in-possession delayed draw term loan facility (the "DIP Facility") subject to the terms and conditions set forth in that certain Superpriority Secured Debtor-in-Possession Credit Agreement dated as of [●] (as amended, restated, supplemented, or otherwise modified from time to time, the "DIP Credit Agreement"),[3] by and among the DIP Borrowers and Compass Group Diversified Holdings LLC, a Delaware limited liability company, or an affiliate thereof (solely in its capacities as a lender under the DIP Credit Agreement and party to the DIP Documents, the "DIP Lender"), attached hereto as **Exhibit 1**, consisting of:

a.     a senior secured DIP Facility up to an aggregate amount of $12,000,000 denominated in USD, which shall be available (1) following entry of this Interim Order, as weekly draws, not to exceed $1.5 million in the aggregate, in accordance with the Approved Budget until entry of the Final Order (excluding the Roll-Up DIP Loan (as defined below), the "Interim Draw(s)"), and (2) following the entry of the Final Order, as subsequent draws in an additional aggregate principal amount not to exceed $12 million less the Interim Draw(s) (each such draw after the Interim Draw(s), a "Subsequent Draw," and together with the Interim Draw(s), collectively the "Draws") and satisfaction of the other applicable conditions set forth in the DIP Documents; and

b.     a "roll-up" of Prepetition Obligations (as defined below) held by Compass Group Diversified Holdings LLC (solely in its capacities as lender under the Prepetition Credit Agreement and party to the Prepetition Loan Documents, the "Prepetition Lender"), as further described in the DIP Term Sheet and DIP Credit Agreement, effective immediately upon entry of this Interim Order, in an aggregate principal amount equal to $2,200,000 (the "Roll-Up DIP Loan," and, together with any Draws referenced in the immediately preceding subparagraph (a), the "DIP Loans"), in accordance with the terms and conditions set forth in the DIP Credit Agreement, and all other terms and conditions of the DIP Documents.

(ii)    authorization for the Debtors to (a) execute and enter into the DIP Documents; (b) to perform their respective obligations thereunder; and (c) to take all such other and further acts as may be necessary, appropriate, or desirable in connection therewith;

---

[3]   The DIP Credit Agreement, together with that certain DIP Term Sheet dated as of November 9, 2025, between the Parties (the "DIP Term Sheet"), this Interim Order, the Final Order, and all agreements, documents and instruments delivered or executed in connection therewith, and other security documentation, shall collectively be referred to as the "DIP Documents." In the event of any conflict between the DIP Term Sheet and the DIP Credit Agreement, the DIP Credit Agreement shall control.



(iii)    the granting to the DIP Lender allowed superpriority administrative expense claims in each of the Debtors' Bankruptcy Cases and any successor cases, including any chapter 7 cases, with respect to the DIP Facility and all liabilities, obligations, and indebtedness due or payable under the DIP Documents and this Interim Order (collectively, the "<u>DIP Obligations</u>"), subject to the priorities set forth herein;

(iv)    the granting to the DIP Lender of automatically perfected security interests in, and liens on, with respect to the DIP Loans (including, for the avoidance of doubt, the Roll-Up DIP Loan), all of the DIP Collateral (as defined below) to secure the DIP Loans and the DIP Obligations, subject only to the Carve-Out (as defined below);

(v)    authorization for the Debtors, subject to and pursuant to the terms and conditions set forth in this Interim Order, to continue to (a) use Cash Collateral (as defined below) and (b) provide adequate protection to the Prepetition Lender on account of any Diminution in Value (as defined below) of the Prepetition Collateral (as defined below), including Cash Collateral, as a consequence of the Debtors' use, sale, or lease of the Prepetition Collateral, including any Cash Collateral, the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, the Debtors' incurrence of debt under the DIP Documents, and the priming of certain Prepetition Liens (as defined below) by liens and security interests granted by the DIP Documents, and any other basis consistent with section 361 of the Bankruptcy Code;

(vi)    authorization for the Debtors to incur and pay, on the terms set forth herein and in the DIP Documents, on a final and irrevocable basis, the principal, interest, premiums, fees, expenses, indemnities, and other amounts payable under this Interim Order and the DIP Documents as such amounts become earned, due, and payable and the fees and disbursements of the DIP Lender's attorneys, advisors, and other consultants, all and solely to the extent provided in, and in accordance with this Interim Order and the DIP Documents and without further order of the Court;

(vii)    the waiver of, subject to the terms of this Interim Order and upon entry of the Final Order, (a) the Debtors' and their estates' right to surcharge against the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code, (ii) the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral, and (iii) the "equities of the case" exception under section 552(b) of the Bankruptcy Code, each effective as of the Petition Date;

(viii)    authorization for the DIP Lender to exercise remedies under the DIP Documents on the terms described herein and therein upon the occurrence, and during the continuation of, an Event of Default (as defined below);

(ix)    modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of this Interim Order;

(x)    waiver of any applicable stay (including under section 362 of the Bankruptcy Code and Bankruptcy Rule 6004) and providing for immediate effectiveness of this Interim Order; and


33769084.1
33769084.2

(xi)     the scheduling of a final hearing (the "<u>Final Hearing</u>") to consider the relief requested in the Motion on a final basis and entry of the Final Order, and approval of the form of notice with respect to the Final Hearing.

This Court having considered the Motion, the exhibits attached thereto, the *Declaration of J. Michael Issa in Support of Chapter 11 Petitions and First Day Motions* (the "<u>First Day Declaration</u>"), the DIP Documents, and the evidence submitted, and arguments of counsel made at, the interim hearing (the "<u>Interim Hearing</u>"); and notice of the Motion and the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014 and all applicable Local Bankruptcy Rules, and it appearing that no other or further notice is necessary; and the Interim Hearing having been held and concluded; and all objections and reservations of rights, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled on the merits by this Court; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and all parties in interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' performance with respect to the DIP Term Sheet, the DIP Credit Agreement, and entry into the other DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THIS COURT HEREBY MAKES THE FOLLOWING PRELIMINARY FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

---

[4]    The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.



A.      Petition Date.  On November 16, 2025 (the "Petition Date"), each of the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (this "Court").

B.      Debtors in Possession.  The Debtors are operating their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Bankruptcy Cases.

C.      Jurisdiction and Venue.  This Court has jurisdiction over these Bankruptcy Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  This Court's consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  This Court may enter a final order consistent with Article III of the United States Constitution.  Venue for the Bankruptcy Cases and the proceeding on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      Committee.  As of the date hereof, the United States Trustee for the District of Delaware (the "U.S. Trustee") has not yet appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (any such committee, the "Committee").

E.      Notice.  Upon the record presented to this Court at the Interim Hearing, and under the exigent circumstances set forth therein, notice of the Motion and the relief requested thereby and granted in this Interim Order has been provided in accordance with Bankruptcy Rules 4001(b), 4001(c)(1), and 4001(d), and Local Bankruptcy Rule 9013-1, which notice was appropriate under the circumstances and sufficient for the Motion.  No other or further notice of the Motion or entry of this Interim Order is necessary or required.



F.    <u>Prepetition Secured Debt</u>.    Subject to the limitations thereon contained in paragraphs 26 and 27 of this Interim Order, the Debtors represent, admit, stipulate, acknowledge and agree as follows:

i.    <u>Prepetition Loan Documents</u>.

a.    Prior to the Petition Date, the Prepetition Lender, Borrower and Co-Borrower were parties to that certain Credit Agreement, dated as of September 3, 2021, as amended by certain amendments, the most recent of which is the Twenty-Third Amendment to Credit Agreement dated as of October 2, 2025 (and as may be further amended, supplemented, restated or otherwise modified from time to time and including all exhibits, attachments and appendices thereto, the "<u>Prepetition Credit Agreement</u>," and the related facility, the "<u>Prepetition Facility</u>").

b.    Prior to the Petition Date, the Prepetition Lender, Borrower, Co-Borrower, and Parent were parties to that certain Guarantee and Collateral Agreement, dated as of September 3, 2021 (the "<u>Guarantee Agreement</u>"), pursuant to which, among other things, (a) Parent guaranteed the obligations of Borrower and Co-Borrower under the Prepetition Credit Agreement; and (b) Borrower, Co-Borrower, and Parent granted the Prepetition Lender a security interest in substantially all of the property of Borrower, Co-Borrower, and Parent. Prive and KLD (collectively with Borrower, Co-Borrower, Parent, and Prive, the "<u>Prepetition Obligors</u>") were added by joinder to the Guarantee Agreement (together, the "<u>Joinders</u>") to jointly and severally guarantee to the Prepetition Lender the prompt and complete payment and performance by Borrower and



Co-Borrower when due of Borrower's and Co-Borrower's liabilities, indebtedness, and obligations (whether monetary or otherwise) owed to the Prepetition Lender.

c.      Prior to the Petition Date, the Prepetition Obligors and Prepetition Lender executed that certain Forbearance Agreement dated as of August 29, 2025, as amended by certain amendments, the most recent of which is the Third Amendment to Forbearance Agreement dated as of October 10, 2025 (collectively with the Prepetition Credit Agreement, Guarantee Agreement, Joinders, and any related documents, agreements, or instruments, the "Prepetition Loan Documents"), whereby the Prepetition Lender agreed to temporarily forbear from exercising remedies against the Prepetition Obligors on account of their various defaults under the Prepetition Credit Agreement and the Prepetition Obligors executed a confession of judgment confessing that the Prepetition Obligors owed the Prepetition Lender $701,317,337.03 pursuant to the Prepetition Credit Agreement and related promissory note and loan documents.

d.      As of the Petition Date, the Prepetition Obligors were jointly and severally indebted and liable, without defense, counterclaim, or offset of any kind to the Prepetition Lender with respect to the Prepetition Loan Documents in the aggregate principal amount of not less than $718,222,591.91, plus accrued and unpaid interest thereon and all other fees (including attorneys' fees), costs, expenses, indemnification obligations, reimbursement obligations, charges, premiums, additional interest, and any other obligations thereunder (the "Prepetition Obligations").  The Prepetition Obligations constitute legal, valid,

binding, and non-avoidable obligations against each of the Prepetition Obligors and are not subject to any avoidance, recharacterization, effect, counterclaim, defense, offset, recoupment, subordination, other claim, cause of action, or other challenge of any kind under the Bankruptcy Code, under applicable non-bankruptcy law, or otherwise. No payments or transfers made to or for the benefit of (or obligations incurred to or for the benefit of) the Prepetition Lender by or on behalf of any of the Debtors prior to the Petition Date under or in connection with the Prepetition Loan Documents are subject to avoidance, recharacterization, effect, counterclaim, defense, offset, subordination, other claim, cause of action, or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise.

e.    The Prepetition Obligations are secured by valid, binding, perfected, and enforceable liens on and security interests in (the "Prepetition Liens") the enumerated property and assets of the Prepetition Obligors under the Prepetition Loan Documents (all such property and assets in their capacity as security for the Prepetition Obligations, the "Prepetition Collateral"). As of the Petition Date: (A) the Prepetition Liens were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition Lender for fair consideration and reasonably equivalent value; (B) the Prepetition Liens were senior in priority over any and all other liens on the Prepetition Collateral other than any lien over the assets of the Debtors senior by operation of law or otherwise expressly permitted to be senior by the Prepetition Loan Documents; (C) no offsets, recoupments, challenges, objections, defenses,



claims, or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Obligations exist, and no portion of the Prepetition Liens or Prepetition Obligations is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (D) the Debtors and their estates have no claims, objections, challenges, causes of action, or choses in action (including claims and causes of action under sections 502(d), 544, 545, 547, 548, and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code), whether pursuant to federal law or applicable state law or applicable state law equivalents, or actions for recovery or disgorgement, against the Prepetition Lender or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or with respect to the Prepetition Loan Documents and the Prepetition Obligations; and (E) the Debtors waive, discharge, and release any right to challenge or seek to recharacterize or subordinate any of the Prepetition Obligations, the priority of the applicable Debtors' obligations thereunder, and the validity, perfection, extent, and priority of the Prepetition Liens securing the Prepetition Obligations.

ii.    <u>Cash Collateral</u>.  The Debtors' cash, including cash and other amounts on deposit or maintained in any account or accounts by the Debtors, existing as of the Petition Date, and any amounts generated by the collection of accounts receivable or other disposition of the Prepetition Collateral, existing as of the Petition Date, and the proceeds of any of the foregoing, wherever located, is the Prepetition Lender's cash



collateral within the meaning of section 363(a) of the Bankruptcy Code (the "<u>Cash Collateral</u>").

      iii.   <u>No Control</u>.  As of the Petition Date, the Prepetition Lender did not and does not control the Debtors or their properties or operations or have authority to determine the manner in which any Debtor's operations are conducted; *provided*, *however*, that Compass Group Diversified Holdings LLC does not dispute that it owns a direct or indirect controlling interest in each of the Debtors.

G.    <u>Findings Regarding the DIP Facility and Use of Cash Collateral</u>.

      i.   Good and sufficient cause has been shown for the entry of this Interim Order and for authorizing the Debtors to obtain financing pursuant to the DIP Term Sheet and DIP Credit Agreement, to use the Cash Collateral, and to authorize the provision of adequate protection as a proper exercise of the Debtors' business judgment and to avoid immediate and irreparable loss or damage to the Debtors and the estates.

      ii.   As set forth in the Motion and the First Day Declaration, the Debtors have an ongoing and immediate need to continue to use Cash Collateral and to obtain credit pursuant to the DIP Facility: (A) for working capital and general corporate purposes, and (B) to fund (1) the administration of the Bankruptcy Cases, (2) the sales of the Debtors' assets, including the consummation of the Sales Plan (as defined below) and the chapter 11 plan process, (3) the Carve-Out and the Fee Escrow Accounts (as defined below), and (4) the payments due to Agent (as defined below) under the Agency Agreement (as defined below), all in strict accordance with the Approved Budget (as defined below) or as otherwise approved by the DIP Lender in writing in its sole discretion.  The Debtors will not have sufficient sources of working capital to operate their businesses in the



ordinary course of business during these Bankruptcy Cases without the use of Cash Collateral and the extension of the DIP Facility. Absent granting the relief set forth in this Interim Order, the Debtors' estates and their businesses will be irreparably harmed.

iii.    As set forth in the Motion and the First Day Declaration, the Debtors are unable to obtain postpetition financing or other financial accommodations on more favorable terms under the circumstances from sources other than the DIP Lender pursuant to the terms and provisions of the DIP Term Sheet, the DIP Credit Agreement, and the other DIP Documents, and are unable to obtain satisfactory unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code. The Debtors are also unable to obtain secured credit with liens equal or junior to existing liens allowable under sections 364(c)(2) or 364(c)(3) of the Bankruptcy Code and, therefore, must grant, for the benefit of the DIP Lender, liens that are priming or *pari passu* to the Prepetition Liens under section 364(d)(1) of the Bankruptcy Code and a DIP Superpriority Claim (as defined below) on the terms and conditions set forth in this Interim Order and the DIP Documents. The Roll-Up DIP Loan, as provided for under the DIP Facility and pursuant to this Interim Order and the Final Order, is appropriate because the DIP Lender is not willing to provide the DIP Facility or extend postpetition credit to the Debtors thereunder without the inclusion of the Roll-Up DIP Loan within the DIP Facility.

iv.    Based upon the Motion, the First Day Declaration and the record presented to the Court at the Interim Hearing, the terms of the DIP Term Sheet, the DIP Credit Agreement, and the other DIP Documents, and the terms of the adequate protection granted to the Prepetition Lender as provided in this Interim Order, are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business



judgment consistent with the Debtors' fiduciary duties, and provide the Debtors reasonably equivalent value and fair consideration.

v.     The Prepetition Lender has not objected to entry of this Interim Order, the Debtors' entry into the DIP Facility, including the granting of priming liens and claims in connection therewith and the continued use of Cash Collateral, and has consented to such relief only on the terms and conditions set forth in this Interim Order.

vi.    The DIP Facility and the use of Prepetition Collateral (including Cash Collateral) to, among other things, fund the administration of the Bankruptcy Cases and for working capital and general corporate purposes, and the incurrence and payment of any Adequate Protection Obligations pursuant to this Interim Order, the DIP Term Sheet, the DIP Credit Agreement, and the other DIP Documents, have been negotiated in good faith and at arm's-length among the Debtors and the DIP Lender, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the DIP Facility, the DIP Term Sheet, the DIP Credit Agreement, and the other DIP Documents, including, without limitation, all loans made to, and guarantees issued by, the Debtors pursuant to the DIP Term Sheet, the DIP Credit Agreement, and the other DIP Documents, and any DIP Obligations, shall be deemed to have been extended by the DIP Lender in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Lender (and its successors and assigns) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is reversed or modified on appeal.



H.    <u>Sections 506(c) and 552(b)</u>.  Subject to entry of the Final Order, and to the extent provided therein, the Debtors and the DIP Lender have agreed, as a condition to the DIP Lender extending postpetition financing to the Debtors under the DIP Facility, a material inducement to the DIP Lender to agree to provide the DIP Loans and enter into the DIP Facility, and in exchange for (a) the DIP Lender's willingness to provide the DIP Facility to the extent set forth herein, (b) the DIP Lender's agreement to subordinate its DIP Liens and superpriority claims granted hereunder to the Carve-Out, and (c) the consensual use of Cash Collateral consistent with the Approved Budget and the terms of this Interim Order, the DIP Lender and Prepetition Lender have negotiated for, and the Debtors intend to seek, (1) a waiver of any equities of the case exceptions or claims under section 552(b) and a waiver of unjust enrichment and similar equitable relief as set forth below, and (b) a waiver of the provisions of section 506(c) of the Bankruptcy Code subject to the terms hereof.

I.    <u>Immediate Entry</u>.  Good and sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).  Consummation of the DIP Facility and the use of Cash Collateral in accordance with this Interim Order, the DIP Term Sheet, the DIP Credit Agreement, and the other DIP Documents is in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.  There is an immediate need for the relief provided herein and, accordingly, it is necessary to waive the 14-day stay of certain orders otherwise provided in the Bankruptcy Rules.

Based upon the foregoing findings and conclusions, the Motion and the record before this Court with respect to the Motion, and after due consideration, and good and sufficient cause appearing therefor,


33769084.1
33769084.2

**IT IS HEREBY ORDERED THAT:**

1.    <u>Motion Granted</u>.  The Motion is granted on an interim basis to the extent set forth herein.  The Debtors are authorized to borrow from the DIP Facility on an interim basis, subject to the terms of this Interim Order.  The use of Cash Collateral on an interim basis is authorized, subject to the terms of this Interim Order.

2.    <u>Objections Overruled</u>.  Any and all objections to this Interim Order, to the extent not withdrawn, waived, settled, or otherwise resolved, and all reservations of rights included therein, are hereby overruled on the merits.  This Interim Order shall become effective immediately upon its entry.

3.    <u>Authorization of the DIP Facility and the DIP Documents</u>.

(a)    The Debtors are hereby expressly authorized and directed to execute, enter into and perform all obligations under the DIP Term Sheet, the DIP Credit Agreement, and the other DIP Documents.

(b)    The DIP Lender's obligations to make any Draws under the DIP Loans, whether pursuant to the Interim Draw(s) or Subsequent Draws, shall be expressly subject to the DIP Lender's receipt of a certificate signed by the Debtors' CEO, CFO or CRO confirming that the following conditions precedent are satisfied:  (i) there shall exist no Default or Event of Default under and defined in the DIP Credit Agreement; (ii) the representations and warranties of the Debtors therein shall be true and correct in all material respects (except with respect to representations and warranties that include materiality qualifiers, which representations and warranties will be true and correct in all respects) immediately prior to, and after giving effect to, such funding; (iii) the making of such Draw shall not violate any requirement of law and shall not be enjoined, temporarily, preliminarily, or permanently; (iv) the Debtors shall be in



compliance with the Approved Budget (subject to Permitted Variances (as defined below)) in all respects; (v) this Interim Order (unless superseded by the Final Order) shall be in full force and effect and shall not have been vacated, reversed, modified, amended, or stayed in any respect without the prior written consent of the DIP Lender and the Debtors unless superseded by the Final Order; (vi) the Debtors' cash balance, after giving pro forma effect to the request, does not exceed the amount of cash required to adhere to the Approved Budget for the following two weeks; and (vii) the amount of such Draw will be reflected in any then Approved Budget.

(c)     Upon the first business day following entry of this Interim Order, the Debtors are immediately authorized, subject to the terms and conditions of this Interim Order, the DIP Term Sheet, the DIP Credit Agreement, and the other DIP Documents, to borrow the Interim Draw(s) under the DIP Loans and to incur and pay the principal, interest, premium, fees, expenses and other amounts provided for in the DIP Term Sheet, DIP Credit Agreement, the other DIP Documents, and this Interim Order, pursuant to the terms and provisions thereof, subject to any limitations on availability or borrowing under the DIP Term Sheet, the DIP Credit Agreement, the other DIP Documents, and this Interim Order, which borrowings shall be used for all purposes as permitted under the DIP Term Sheet, the DIP Credit Agreement, the other DIP Documents, and this Interim Order (including pursuant to the Approved Budget).

(d)     In furtherance of the foregoing, and without further approval of this Court, the Debtors are authorized to perform all acts, to make, execute, and deliver all instruments, certificates, agreements, and documents (including, without limitation, the execution or recordation of pledge and security agreements, financing statements, and other similar documents) and to pay all fees, expenses, and other amounts authorized by the DIP Term Sheet, the DIP Credit Agreement, the other DIP Documents, and this Interim Order, appropriate or


33769084.1
33769084.2

desirable for the Debtors' performance of their obligations under or related to the DIP Facility, including, without limitation:

(i)      the execution and delivery of, and performance under, each of the DIP Term Sheet, the DIP Credit Agreement, and the other DIP Documents and any collateral documents contemplated thereby;

(ii)     the granting of all liens and claims with respect to, and the making of any payments in respect of, the Adequate Protection Obligations to the extent provided for in this Interim Order; and

(iii)    the performance of all other acts necessary, appropriate, or desirable under, or in connection with, the DIP Term Sheet and the other DIP Documents.

4.      <u>DIP Obligations</u>.  Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute legal, valid, binding, and non-avoidable obligations of the Debtors, enforceable in accordance with the terms of this Interim Order, the DIP Term Sheet, the DIP Credit Agreement, and the other DIP Documents, against the Debtors and their estates and any successors thereto, including any trustee appointed in the Bankruptcy Cases, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Bankruptcy Cases, or in any other proceedings superseding or related to any of the foregoing.  The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall cease on the Maturity Date (as defined below) or the occurrence of any event or condition set forth in paragraph 18 of this Interim Order; *provided, however*, that the Debtors may utilize Cash Collateral in amounts not to exceed the Approved Budget pending a hearing, if any, on the Debtors' challenge to the occurrence of any event or condition set forth in paragraph 18 of this Interim Order.  Except as permitted by this Interim Order, no authorized obligation, payment,



transfer, or grant of security hereunder or under the DIP Term Sheet, the DIP Credit Agreement, or the other DIP Documents to the DIP Lender shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code, or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or challenge, whether under the Bankruptcy Code or any other applicable law or regulation by any person or entity for any reason.

5.      <u>DIP Liens</u>.  Subject and subordinate only to the Carve-Out and to the exceptions set forth in the DIP Documents, and exclusive of the Retained Actions (defined below) and proceeds thereof, effective and automatically perfected upon entry of this Interim Order, the DIP Obligations shall be secured by valid, binding, continuing, enforceable, fully-perfected, non-avoidable, automatically and properly perfected liens on, and security interests in (such liens and security interests granted with respect to the DIP Facility and the DIP Loans thereunder, collectively, the "<u>DIP Lien</u>") (a) all assets (whether tangible, intangible, real, personal, or mixed) of the Debtors (and their bankruptcy estates) of any nature whatsoever and wherever located, whether first arising prior to or following the Petition Date (including the Prepetition Collateral), now owned or hereafter acquired, including all accounts, chattel paper, claims and causes of action, deposit accounts, documents, equipment, general intangibles, goods (including fixtures), instruments, inventory, investment property, money, cash, cash equivalents, and all deposit accounts, securities accounts, commodities accounts, and lockboxes, together with all money,


33769084.1
33769084.2

cash, securities, and other investment property on deposit from time to time therein, letters of credit, letter-of-credit rights, and other supporting obligations, real property, books and records, and to the extent not otherwise included, all substitutions, replacements, accessions, products, and other proceeds and products (whether tangible or intangible and including, without limitation, insurance proceeds (including all proceeds from any directors'/officers' liability insurance policies payable directly to such officers and directors), licenses, royalties, income, payments, claims, damages, and proceeds of suit) of any and all of the foregoing, and all collateral security and guarantees given by any person with respect to any of the foregoing, the right, title, or interest in any capital stock, investment property, partnership, membership, or other equity or similar interests in any entity (whether or not such entity is a Debtor), including all capital stock, securities accounts, investment property, partnership, and membership, other equity or similar interests (and including all rights, beneficial interests, causes of action, and choses of action related thereto) of the Debtors, whether existing as of the Petition Date or after acquired, including, upon entry of the Final Order (x) the proceeds or property recovered, whether by judgment, settlement, or otherwise, unencumbered or otherwise, of any claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550, 551, or 553(b) of the Bankruptcy Code ("Avoidance Actions"), (y) the proceeds of property recovered, whether by judgment, settlement, or otherwise from all claims and causes of action under section 549 of the Bankruptcy Code to recover any postpetition transfer of DIP Collateral, and (z) all amounts recovered by the Debtors' estates under section 506(c) of the Bankruptcy Code ((x) through (z), the "Recovery Actions," and the proceeds of property recovered, whether by judgment, settlement, or otherwise from Recovery Actions ("Recovery Action Proceeds")); and (b) all Prepetition Collateral (all such property, excluding the Encumbered Collateral (as defined


33769084.1
33769084.2

below), the Retained Actions, and proceeds from the Retained Actions, collectively, the "DIP Collateral").  Notwithstanding anything in this Interim Order to the contrary, the DIP Collateral shall exclude, and the Debtors shall retain for the benefit of their estates, any claims or cause of action (whether at law, in equity, or otherwise) against (i) Compass Group Diversified Holdings LLC, solely in its capacities as shareholder, officer, director, manager under the Management Agreement, or controlling person of the Debtors; and (ii) any corporate affiliate(s) of Compass Group Diversified Holdings LLC to the extent such affiliate(s) were or acted as shareholders, officers, directors, managers under the Management Agreement, or controlling persons of the Debtors (collectively "Retained Actions").  For the avoidance of doubt, the DIP Collateral shall also exclude any Additional Agent Goods Proceeds (as defined in the Agency Agreement) held in the Designated Deposit Accounts, if any, prior to the daily transfer of such funds into accounts of the Agent as provided in the Agency Agreement.  Notwithstanding anything to the contrary herein, the DIP Collateral shall also exclude  (1) any nonresidential real property leases of the Debtors (but shall include any proceeds from the sale or other disposition of such leases) and no liens granted pursuant to this Interim Order shall attach to the Debtors' leasehold interests, (2) any security deposits (in possession of the landlord) or the Debtors' interests, if any, in any pre-paid rent, unless liens on such security deposits or pre-paid rent are expressly permitted pursuant to the underlying lease documents; or (3) any insurance proceeds that are paid for damage to a landlord's property in accordance with the terms of the underlying leases.  Subject only to the Carve-Out, and exclusive of the Retained Actions and proceeds thereof, the DIP Liens will otherwise have the following priorities:

> (a)    *First Priority Liens on Unencumbered Collateral*.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected,


33769084.1
33769084.2

first-priority senior security interest in and lien upon all of the DIP Collateral, including, without limitation, all prepetition and postpetition property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to Prepetition Liens or any other valid, perfected, and unavoidable lien that was in existence immediately prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) including, upon entry of this Interim Order and the Final Order, the Recovery Action Proceeds (collectively, the "364(c)(2) Collateral").

(b)     *Junior Liens on Encumbered Property*.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, junior security interest in and lien on and security interest in all of the Debtors' property, wherever located, that is subject to a valid, perfected, and unavoidable lien in favor of third parties that were in existence immediately prior to the Petition Date (collectively, the "Encumbered Collateral").

(c)     *Priming Liens on Prepetition Collateral and Encumbered Collateral*. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected, first-priority priming security interest and lien (the "Priming Liens") on all Prepetition Collateral that is not 364(c)(2) Collateral or Encumbered Collateral.  The Priming Liens shall prime and be senior in all respects to the liens and security interests in such property of the Prepetition Lenders with respect to the Prepetition Loan Documents.

(d)     *No Senior Liens*.  Except to the extent permitted hereunder, the DIP Liens shall not be made subject or subordinate to or made *pari passu* with (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors or their estates under section 551 of the Bankruptcy Code, (ii) any liens or security interests granted in favor of any federal, state, municipal, or other governmental unit (including any regulatory body), commission, board,


33769084.1
33769084.2

or court for any liability of the DIP Lender, (iii) any intercompany or affiliate claim, lien, or security interest of the DIP Lender or its affiliates, or (iv) any other lien, security interest, or claim arising under section 363 or 364 of the Bankruptcy Code granted on or after the entry of this Interim Order.

(e)    *Agency Agreement*.  Pursuant to that certain Agency Agreement, dated as of November 16, 2025 (the "Agency Agreement") executed by and between Borrower and Enhanced Retail Funding, LLC ("Agent"), Borrower shall establish depository accounts designated solely for the deposit of Proceeds, Additional Agent Goods Proceeds, other amounts contemplated by the Agency Agreement (as each term is defined in the Agency Agreement) and the disbursement of amounts payable to or by Agent (such accounts, the "Designated Deposit Accounts").  Agent shall have authority to sweep amounts on deposit in the Designated Deposit Accounts on a daily basis.  Upon transfer of amounts in the Designated Deposit Accounts to accounts maintained by Agent in accordance with the Agency Agreement, title to such funds shall automatically transfer to the Sale Agent, subject solely to Agent's obligations to make required payments to the Borrower or the DIP Lender under the Agency Agreement. Notwithstanding anything to the contrary in this order or the Agency Agreement, Agent shall not be entitled to or granted any lien on or security interest in any of the Debtors' assets, including the DIP Collateral, Prepetition Collateral, or the Retained Actions.

6.    DIP Superpriority Claims.  Subject only to the Carve-Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the Debtors on a joint and several basis (without the need to file any proof of claim) with priority over any and all claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation,


33769084.1
33769084.2

all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims ("Administrative Expense Claims") arising under or ordered pursuant to sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c) (subject to entry of the Final Order to the extent set forth therein), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations (as defined below)), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed claims (the "DIP Superpriority Claims") shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from, and have recourse to, all of the DIP Collateral and all proceeds thereof in accordance with the DIP Term Sheet, the DIP Credit Agreement, the other DIP Documents, and this Interim Order, subject only to payment in full of the Carve-Out.  The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code if this Interim Order or any provision hereof is reversed or modified on appeal. Notwithstanding the foregoing, the DIP Superpriority Claims shall not be payable from the proceeds of any of the Retained Actions.



7.      <u>Approved Budget Compliance and Reporting</u>.

(a)      Attached to this Interim Order as **<u>Exhibit 2</u>** is a minimum 13-week cash flow forecast beginning the week in which the Petition Date occurs, in form and substance acceptable to the DIP Lender, setting forth, among other things, the Debtors' cash, revenue, cash flow, and net operating cash flow, trade payables, ordinary course expenses, total expenses, capital expenditures (if applicable), vendor disbursements, working capital, Consulting Fees (as defined in the Agency Agreement) and expenses due to Agent under the Agency Agreement, and fees and expenses of the DIP Facility and the Bankruptcy Cases (including categories for each professional for the Debtors, including Agent, Special Committee, and Committee) during such minimum 13-week period that the Debtors are authorized to use proceeds of the DIP Loan (each budget, an "<u>Approved Budget</u>").  The Approved Budget shall be revised on a four-week cycle (*i.e.*, every four weeks a new minimum 13-week cash flow forecast will be delivered to the DIP Lender), unless otherwise required under the DIP Credit Agreement, and shall be subject to the advance written approval of the DIP Lender.

(b)      Any amendments, supplements, or modifications to the Approved Budget or Budget Variance Report (as defined below) shall be subject to the prior written approval of the DIP Lender (email being sufficient), in its sole discretion, prior to the implementation thereof.

(c)      The Debtors shall at all times comply with the Approved Budget, subject to the Permitted Variances.  Commencing on the fourth Friday following the entry of this Interim Order (or the successive business day if such Friday is not a business day) and continuing every week thereafter (by 12:00 p.m. (prevailing Eastern Time) on each such applicable Friday (or the successive business day if such Friday is not a business day)), the Debtors shall deliver by email to the DIP Lender a variance report (each, a "<u>Budget Variance Report</u>") for the immediately


33769084.1
33769084.2

preceding four-week period then ended (the "Variance Period") setting forth the difference between, on a line-by-line and aggregate basis, (i) actual operating disbursements, non-operating activities, and first day motion relief and budgeted operating disbursements, non-operating activities, and first day motion relief, (ii) actual operating receipts and budgeted operating receipts, and (iii) actual professional fees and budgeted professional fees and describing in adequate detail all material variances for such Variance Period.  The actual variances for each Variance Period (excluding, for purposes of determining Approved Budget compliance and calculation of the Permitted Variance (as defined below), fees for Debtors' Professionals, Special Committee's Professionals, and Committee Professionals (if any) (each as defined below), Lender's Professional Fees (as defined below), Consulting Fees (as defined in the Agency Agreement) and expenses of Agent, and interest and fees under the DIP Credit Agreement) shall not reflect (a) total receipts of less than 75% of projected receipts for the Variance Period or (b) more than 110% of projected total payments for the Variance Period (the "Permitted Variance"); *provided* that a breach of the Permitted Variance shall not constitute an Event of Default, so long as the Debtors' ending cash is within $200,000 of the ending cash indicated at the end of the Variance Period.

(d)      Except as otherwise agreed to by the DIP Lender, the Debtors' use of the proceeds of the DIP Loans and Cash Collateral shall only be permitted pursuant to the terms of, and in accordance with, the Approved Budget, subject to the Permitted Variances.  The DIP Lender and Prepetition Lender shall have no obligation with respect to the Debtors' use of the proceeds of the DIP Loans and Cash Collateral, and shall not be obligated to ensure or monitor the Debtors' compliance with the Approved Budget or to pay (directly or indirectly from the DIP Loans or Cash Collateral) any expenses incurred or authorized to be incurred pursuant to the



Approved Budget.   The consent of the DIP Lender and Prepetition Lender to the use of DIP Loans or Cash Collateral pursuant to this Interim Order and the DIP Documents shall not be construed as consent to the use of any DIP Loans or Cash Collateral after the occurrence of an Event of Default (other than funding the Carve-Out as set forth herein or otherwise provided in this Interim Order), regardless of whether the aggregate funds shown on the Approved Budget have been expended.   The Debtors shall provide the DIP Lender with all reporting and other information required to be provided to the DIP Lender under the DIP Term Sheet, the DIP Credit Agreement, and the other DIP Documents.   In addition to, and without limiting, whatever rights to access the DIP Lender or the Prepetition Lender have under the DIP Term Sheet, the DIP Credit Agreement, the other DIP Documents, or the Prepetition Facility, upon reasonable notice, at reasonable times during normal business hours, the Debtors (or any successor thereto, including, but not limited to, a chapter 11 or chapter 7 trustee) shall permit representatives, advisors, agents, and employees of the DIP Lender or the Prepetition Lender to:  (i) have access to and inspect the Debtors' books and records; and (ii) discuss the Debtors' affairs, financings, and conditions with the Debtors' attorneys, financial advisors and employees (the "Access Rights") and the Debtors (or any successor thereto, including, but not limited to, a chapter 11 or chapter 7 trustee) shall cooperate with such Access Rights; provided, however, that neither the DIP Lender nor the Prepetition Lender shall have any rights to access materials created or maintained by, or any work product of, the Special Committee.



8.      <u>Carve-Out</u>.


33769084.1
33769084.2

(a)      Carve-Out.  As used in this Interim Order, the "Carve-Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $10,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed by the Court, all unpaid fees and expenses incurred at any time by persons or firms retained or to be retained, pursuant to sections 327, 328, or 363 of the Bankruptcy Code, by (x) the Debtors (the "Debtors' Professionals") or (y) the Special Committee (as defined below) (the "Special Committee's Professionals") and such fees and expenses of the Debtors' Professionals and Special Committee Professionals, the "Allowed Debtor Professional Fees," which amounts are limited to those contained in the Approved Budgets and incurred at any time before or on the first business day following delivery by the DIP Lender of a Carve-Out Trigger Notice (as defined below) whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice; (iv) to the extent allowed by the Court, all unpaid fees and expenses incurred at any time by persons or firms retained or to be retained, pursuant to sections 327, 328, or 1103 of the Bankruptcy Code, by the Committee (the "Committee Professionals") and such fees and expenses of the Committee Professionals, the "Allowed Committee Professional Fees" (together with the Allowed Debtor Professional Fees, the "Allowed Professional Fees"), which amounts are limited to those contained in the Approved Budgets and incurred at any time before or on the first business day following delivery by the DIP Lender of a Carve-Out Trigger Notice (as defined below) whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice; (v) Allowed Debtor Professional Fees incurred after the first business day following delivery by the DIP Lender of the Carve-Out



Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise in an aggregate amount of $100,000; (vi) Allowed Committee Professional Fees incurred after the first business day following delivery by DIP Lender of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise in an aggregate amount of $25,000 (the amounts set forth in clauses ((v) and (vi) being the "Post Carve-Out Trigger Notice Cap"); and (vii) to the extent the Agency Agreement is approved by the Court pursuant an interim order, all unpaid fees and expenses, due at any time to Agent under the Agency Agreement, including the Agency Protections (as defined in the Agency Agreement), whether incurred prior to or after delivery of a Carve-Out Trigger Notice (the "Agent Fees"). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Lender to the Debtors (with the Debtors to promptly provide a copy of such notice to counsel to the Committee (if any) and the U.S. Trustee) (collectively, the "Notice Parties"), which notice may be delivered following the occurrence of an Event of Default, stating that the Post-Carve-Out Trigger Notice Cap has been invoked.

(b)      No Direct Obligation to Pay Allowed Professional Fees. Neither the DIP Lender nor the Prepetition Lender shall be responsible for the payment or reimbursement of any fees or disbursements of any Debtors' Professionals, Special Committee's Professionals, Committee Professionals, or Agent (collectively, and including any other professional for a statutory or court-appointed group or individual, including a trustee or examiner, in the Bankruptcy Cases, collectively, the "Professionals") incurred in connection with the Bankruptcy Cases or any successor cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Lender, in any way, to pay

33769084.1
33769084.2

compensation to, or to reimburse expenses of, any Professional or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(c)    Fee Escrow Accounts. Subject to paragraph 3(b) of this Interim Order, on the first Friday following entry of this Interim Order, and thereafter every Friday prior to the Maturity Date , the DIP Lender shall deposit into three (3) separate escrow accounts the following: (i) the aggregate amount of the fees and disbursements allocated to the Debtors' Professionals and the Special Committee's Professionals for the week immediately following the deposit date beginning on Monday,  as set forth in the Approved Budget (the "Debtors' Fee Escrow Account"); (ii) the aggregate amount of the fees and disbursements allocated to the Committee's Professionals for the week immediately following the deposit date beginning on Monday as set forth in the Approved Budget (the "Committee Fee Escrow Account"); and (iii) the aggregate amount of any Consulting Fees (as defined in the Agency Agreement) and expenses due to Agent under the Agency Agreement for the week immediately following the deposit date beginning on Monday as set forth in the Approved Budget (the "Agent Fee Escrow Account" and together with the Debtors' Fee Escrow Account and the Committee Fee Escrow Account, the "Fee Escrow Accounts").  None of the Fee Escrow Accounts shall be subject to any liens or claims of the DIP Lender or the Prepetition Lender, including any liens or claims under the DIP Order, the Prepetition Loan Documents, the DIP Documents, or the DIP Facility, up to and including the Allowed Debtor Professional Fees, the Allowed Committee Professional Fees, and amount of the Agent Fees contained in the Approved Budgets , respectively*; provided, however*, the DIP Liens, DIP Superpriority Claims, and all other claims of the DIP Lender under this Interim Order shall attach to amounts in the applicable Fee Escrow Accounts that, as applicable, (i) exceed the amounts set forth in the Approved Budget, (ii) after orders with respect


33769084.1
33769084.2

to final fee applications become final and non-appealable, are otherwise not used or ordered to be used to pay the Allowed Debtor Professional Fees or the Allowed Committee Professional Fees (as applicable), or (iii) with respect to amounts in the Agent Fee Escrow Account, after the conclusion of the Final Reconciliation (as defined in the Agency Agreement) are not used or necessary to pay amounts outstanding to Agent under the Agency Agreement.   The Debtors Professionals' fees and expenses shall be paid from the Debtors' Fee Escrow Account and the Committee Professionals' fees and expenses shall be paid from the Committee Fee Escrow Account as provided for by an order of the Court.   The Agent Fees shall be paid from the Agent Fee Escrow Account to the extent permitted under the Agency Agreement and any Court order approving such agreement.   Upon the Maturity Date and subject to the Carve-Out, the Debtors shall pay the DIP Lender, without further order from the Court, any excess amounts remaining in (x) the Debtors' Fee Escrow Account and/or the Committee Fee Escrow Account that (i) exceed the amounts set forth in the Approved Budget or (ii) after orders with respect to final fee applications become final and non-appealable, are otherwise not used or ordered to be used to pay the Allowed Debtor Professional Fees or the Allowed Committee Professional Fees, and (y) the Agent Fee Escrow Account that after the conclusion of the Final Reconciliation (as defined in the Agency Agreement) are not used or necessary to pay amounts outstanding to Agent under the Agency Agreement.

9.      Limitation on Charging Expenses against Collateral.   Upon entry of the Final Order to the extent provided therein, in light of the agreement of the DIP Lender and Prepetition Lender to (a) provide the DIP Loans, (b) allow the Debtors to use Cash Collateral as provided for herein, and (c) allow for the Carve-Out and the funding of the Fee Escrow Accounts, no costs or expenses of administration of these Bankruptcy Cases or future proceeding that may result



therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral or the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lender, and no consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender, and nothing contained in this Interim Order shall be deemed to be a consent by the DIP Lender to any charge, lien, assessment, or claims against the DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise.

10.     <u>No Marshaling/Application of Proceeds</u>.  Upon entry of the Final Order, the DIP Lender and Prepetition Lender shall be entitled to apply the payments or proceeds of the DIP Collateral and the Prepetition Collateral in accordance with the provisions of the Final Order and in no event shall the DIP Lender and Prepetition Lender be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral, as applicable, *provided that* Recovery Action Proceeds may only be applied in satisfaction of the DIP Obligations or the Prepetition Obligations after the DIP Lender and the Prepetition Lender have exhausted all other sources of recovery for repayment of such claims.

11.     <u>Equities of the Case</u>.  Upon entry of the Final Order and to the extent provided therein, in light of, among other things, the agreement of the DIP Lender and Prepetition Lender to provide the DIP Loans and allow the Debtors to use Cash Collateral on the terms set forth herein, (a) the DIP Lender and Prepetition Lender shall be entitled to the rights and benefits of section 552(b) of the Bankruptcy Code, if any, and (b) in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to any person asserting a prepetition



lien on property of the estates under section 541 of the Bankruptcy Code with respect to proceeds, products, offspring, or profits of such property.

12.    <u>Payments Free and Clear</u>.  Subject and subordinate to the Carve-Out and subject to paragraph 27 of this Interim Order and the provisions of this Interim Order relating to Retained Actions, any and all authorized payments or authorized proceeds remitted to the DIP Lender and the Prepetition Lender pursuant to the provisions of this Interim Order, the DIP Term Sheet, the DIP Credit Agreement, and any other DIP Document or any subsequent order of this Court shall be irrevocable, received free and clear of any claim, charge, assessment, or other liability, including, without limitation, and upon entry of the Final Order to the extent provided therein, any claim or charge arising out of or based on, directly or indirectly, sections 506(c) or 552(b) of the Bankruptcy Code, whether asserted or assessed by, through, or on behalf of the Debtors.

13.    <u>Use of Cash Collateral</u>.  The Debtors are hereby authorized to use all Cash Collateral solely in accordance with this Interim Order, the DIP Term Sheet, the DIP Credit Agreement, and the other DIP Documents, to the extent set forth in the Approved Budget, including, without limitation, to make payments on account of the Adequate Protection Obligations and other obligations provided for in this Interim Order, the DIP Term Sheet, the DIP Credit Agreement, and the other DIP Documents.  Except as authorized pursuant to (a) the Approved Budget, (b) the terms and conditions of this Interim Order, (c) an order of the Court, or (d) as otherwise agreed to by the DIP Lender, prior to payment in full in cash of the DIP Obligations and termination of the DIP Facility, the Debtors shall be prohibited from at any time using the Cash Collateral.



33769084.1
33769084.2

14.    <u>Adequate Protection for the Prepetition Lender</u>.  Subject and subordinate only to the Carve-Out, the DIP Liens on the DIP Collateral, DIP Superpriority Claims, and the terms of this Interim Order, and excluding the Retained Actions and proceeds thereof, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, as adequate protection of the Prepetition Lender's interests in the Prepetition Collateral (including Cash Collateral), for any postpetition diminution in value of such interests (such diminution, exclusive of any diminution arising as a result of the Roll-Up DIP Loan, a "<u>Diminution in Value</u>") resulting from the incurrence of additional debt and the imposition of the Priming Liens on the Prepetition Collateral, the Carve-Out, the imposition of the automatic stay, the sale, lease, or use of the Prepetition Collateral (including Cash Collateral), or any other reason for which adequate protection may be granted under the Bankruptcy Code, the Prepetition Lender is hereby granted the following (collectively, the "<u>Adequate Protection Obligations</u>"), and the adequate protection will otherwise include:

(a)    <u>Adequate Protection Liens</u>.  As security for and solely to the extent of any Diminution in Value, (i) continued valid, binding, enforceable, and perfected additional and replacement mortgages, pledges, liens, and security interests in all DIP Collateral and the proceeds, rents, products, and profits therefrom, whether acquired or arising before or after the Petition Date, to the same extent, priority, and validity that existed as of the Petition Date (the "<u>Rollover Liens</u>"), and (ii) subject to entry of the Final Order, valid, perfected, and enforceable continuing supplemental lien on, and security interest in, all of the assets of the Debtors (excluding the Retained Actions and any proceeds therefrom) of any kind or nature whatsoever within the meaning of section 541 of the Bankruptcy Code, whether acquired or arising before or after the Petition Date, and the proceeds, rents, products, and profits therefrom, inclusive of the


33769084.1
33769084.2

Avoidance Actions and any proceeds therefrom (the "Supplemental Liens," together with the Rollover Liens, the "Adequate Protection Liens"), without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, intellectual property filings, mortgages, deeds of trust, notices of lien, or other similar instruments or documents.  The Adequate Protection Liens shall be (i) subject and subordinate to the Carve-Out and the DIP Liens on the DIP Collateral, and (ii) senior to any and all other liens and security interests in the DIP Collateral.

(b)    Prepetition Superpriority Claims. As additional adequate protection for any Diminution in Value, and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Bankruptcy Cases of each of the Debtors and payable from the proceeds of all assets of the Debtors' estates except any proceeds of the Retained Actions (the "Prepetition Superpriority Claims").  The Prepetition Superpriority Claims shall have priority over any and all other unpaid administrative expenses now existing or hereafter arising, of any kind whatsoever, of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, any successor trustee, or any creditor in the Bankruptcy Cases or any subsequent proceedings under the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment; *provided, however*, the Prepetition Superpriority Claims shall be subject to the DIP Liens on the DIP Collateral, DIP Superpriority Claims, and the Carve-Out.



(c)    <u>Fees and Expenses</u>.  As additional adequate protection, on the Maturity Date (or a date otherwise mutually agreeable to the Debtors and the DIP Lender), and in no event prior to the date provided for below with regard to the Fee Objection Period (or any objection to such fees and expenses), the Debtors are authorized and directed to pay, without further Court order, the reasonable and documented fees and expenses (the "<u>Adequate Protection Fees</u>"), whether incurred before or after the Petition Date, of the Prepetition Lender, to the extent set forth in the DIP Term Sheet, the other DIP Documents, and this Interim Order.  The Adequate Protection Fees shall include, without limitation, the reasonable documented fees, costs, and expenses of (i) Squire Patton Boggs (US) LLP, as counsel to the DIP Lender and Prepetition Lender, (ii) Polsinelli PC, as Delaware counsel to the DIP Lender and Prepetition Lender, and (iii) Ankura Consulting Group, LLC, as financial advisors to the DIP Lender and Prepetition Lender (collectively, the "<u>Lender's Professionals</u>"); *provided, however*, that any time prior the Maturity Date that such professionals seek the payment of fees and expenses from the Debtors, each professional shall provide a summary invoice (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine) to counsel to the Debtors, the U.S. Trustee, and counsel to any Committee (collectively, the "<u>Fee Notice Parties</u>").  If no objection to payment of the requested Adequate Protection Fees is made, in writing, by any of the Fee Notice Parties within ten (10) business days after delivery of such invoices (the "<u>Fee Objection Period</u>"), then such invoice shall be promptly paid by the Debtors on the Maturity Date (or a date otherwise mutually agreeable to the Debtors and the DIP Lender),


33769084.1
33769084.2

without further order of, or application to, this Court or notice to any other party, and, in any case, within five (5) business days following the expiration of the Fee Objection Period.  For the avoidance of doubt, the provisions of such invoices shall not constitute a waiver of attorney-client privilege or any benefits of the attorney work product doctrine.  If, within the Fee Objection Period, a Fee Notice Party sends to the affected professional a written objection to such invoice, then only the disputed portion of such Adequate Protection Fees shall not be paid as set forth above until the objection is resolved by the applicable parties in good faith or, if no resolution can be achieved after good faith discussions, by order of this Court, and any undisputed portion shall be paid as soon as reasonably practicable and, in any case, within five (5) business days following the expiration of the Fee Objection Period and shall not be subject to any further review, challenge, or disgorgement.  Subject to the terms hereof, the Debtors are authorized, without further notice or hearing, to pay all reasonable and documented fees, costs, and out-of-pocket expenses of the Prepetition Lender.  Subject to paragraph 27 of this Interim Order, any and all fees, costs, and expenses paid prior to the Petition Date by any of the Debtors to the DIP Lender (solely in its capacity as DIP Lender and in no other capacity) are hereby approved in full and shall not be subject to recharacterization, avoidance, subordination, disgorgement, or any similar form of recovery by the Debtors or any other person.

(d)    <u>Intercompany Liens</u>.  All intercompany liens of the Debtors and their affiliates, if any, are hereby subordinated to the DIP Liens and the Adequate Protection Liens.



15.     <u>Perfection of DIP Liens and Adequate Protection Liens</u>.

33769084.1
33769084.2

(a)    The DIP Lender and Prepetition Lender is hereby authorized, but not required, without any action by any other person, to file or record (and to execute in the name of the Debtors, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) security agreements, pledge agreements, financing statements, intellectual property filings, deeds of trust, mortgages, depository account control agreements, notices of lien, or similar instruments in any jurisdiction, or take possession of or control over cash or securities, equity certificates or promissory notes, or take any other action in order to validate and perfect the DIP Liens and the Adequate Protection Liens.  Whether or not the DIP Lender and/or Prepetition Lender shall, in its discretion, choose to file such security agreements, pledge agreements, financing statements, intellectual property filings, deeds of trust, mortgages, depository account control agreements, notices of lien, or similar instruments or documents, or take possession of or control over cash or securities, equity certificates or promissory notes, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such DIP Liens and Adequate Protection Liens shall be deemed valid, automatically perfected, allowed, enforceable, non-avoidable and effective by operation of law, and not subject to challenge, dispute, or subordination (subject to the priorities set forth in this Interim Order), at the time and on the date of the entry of this Interim Order, in any jurisdiction (domestic and foreign), without the need of any further action of any kind.  This Interim Order shall be sufficient and conclusive evidence of the creation, validity, automatic perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any security agreements, pledge agreements, financing statement, intellectual property filing, deed of trust, mortgage, depository account control agreement, notice of lien, or other instrument or document which my otherwise be required under the law of any



jurisdiction or the taking of any other action to create, attach, validate or perfect the DIP Liens and the Adequate Protection Liens or to entitle the DIP Liens and the Adequate Protection Liens to the priorities granted herein.  Upon the request of DIP Lender and/or Prepetition Lender, as applicable, the Debtors, without any further consent of any party, is authorized to, and shall, take, execute, deliver, and file such instruments to enable the DIP Lender and/or Prepetition Lender, as applicable, to further validate, perfect, preserve, and enforce the DIP Liens and Adequate Protection Liens, respectively, at the Debtors' sole cost and expense.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b)	A copy of this Interim Order may, in the discretion of the DIP Lender or Prepetition Lender, as applicable, be filed with or recorded in filing or recording offices in addition to, or in lieu of, such security agreements, pledge agreements, financing statements, intellectual property filings, mortgages, depository account control agreement, deeds of trust, notices of lien, or similar instruments, and all filing offices in all jurisdictions (domestic and foreign) are hereby authorized to accept such certified copy of this Interim Order for filing and/or recording, as applicable.  The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Lender and/or Prepetition Lender to take all actions, as applicable, in this subparagraph (b) and the immediately preceding subparagraph (a).

(c) Subject to entry of the Final Order, and to the extent provided therein, any provision of any lease or other license, contract, or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any the Debtors' interests in any lease, license, or other agreement, or the proceeds thereof, or other collateral related thereto, in connection with the granting of the DIP Liens and the Adequate



Protection Liens, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code.  Thereupon, any such provision shall have no force and effect with respect to the granting of the DIP Liens and the Adequate Protection Liens on the Debtors' interests in any lease, license, or other agreement, or the proceeds of any assignment and/or sale thereof by any Debtor in accordance with the terms of the DIP Term Sheet, the other DIP Documents, or this Interim Order.

16.  <u>Section 507(b) Reservation</u>.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event the Adequate Protection Obligations provided to the Prepetition Lender are insufficient to compensate for any Diminution in Value of their interests in the Prepetition Collateral during the Bankruptcy Cases.  Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by the Prepetition Lender, that the adequate protection granted herein does in fact adequately protect against any Diminution in Value of the Prepetition Lender's interests in the Prepetition Collateral (including the Cash Collateral).



17.    <u>DIP Facility Maturity Date</u>.

(a)    The term of the DIP Loan shall commence upon the entry of this Interim Order through the earliest of the foregoing to occur (the "<u>Maturity Date</u>"): (i) May 31, 2026, which date may be extended at the sole discretion of the DIP Lender; (ii) an Event of Default; (iii) ten (10) calendar days after the occurrence of the effective date of any chapter 11 plan acceptable to DIP Lender in its sole discretion (an "<u>Acceptable Plan</u>"); (iv) the failure of the Final Order to be entered within thirty (30) calendar days after the filing of the Motion (unless otherwise agreed in writing by the DIP Lender in its sole discretion); and (v) the closing of the sale(s) of substantially all of the Debtors' assets.

(b)    Upon the Maturity Date, (i) all the DIP Lender's commitments under the DIP Term Sheet, DIP Credit Agreement, other DIP Documents, and this Interim Order shall terminate and be of no further force or effect upon the Maturity Date, and no further amounts of the DIP Loans shall be available to be drawn under the DIP Facility; and (ii) the Prepetition Lender's consent to the use of Cash Collateral shall terminate.

18.    <u>Events of Default and Remedies</u>.

(a)    As used herein, an "<u>Event of Default</u>" shall mean the occurrence of any of the following events, unless waived in writing by the DIP Lender, in the DIP Lender's sole discretion:

(i)    Failure of the Debtors to make payments on any of the DIP Obligations, including Mandatory Prepayments, as and when due;

(ii)    Failure of the Debtors to pay all of their undisputed administrative expenses in full in accordance with and subject to the terms as provided for in the Approved Budget and such failure shall not have been remedied or waived within five (5) calendar days



after the earlier of (A) the date upon which an authorized agent of the Debtors had knowledge of such default and (B) the date upon which notice thereof is given to the Debtors by the DIP Lender;

      (iii)    Failure of the Debtors to pay any of the undisputed Adequate Protection Fees or Lender's Professional Fees when due;

      (iv)    Failure of the Debtors to perform or comply with any of their affirmative or negative covenants in the DIP Credit Agreement, this Interim Order, or the Final Order;

      (v)    Any representation, warranty, certification or other statement made or deemed made by the Debtors in the DIP Credit Agreement or in any statement or certificate at any time given by the Debtors in writing, pursuant hereto or thereto or in connection herewith or therewith shall be false in any material respect as of the date made or deemed made;

      (vi)    This Interim Order or Final Order becomes stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the DIP Lender, except by the Final Order;

      (vii)    The Debtors shall default in the performance of or compliance with any term contained in the DIP Credit Agreement, this Interim Order, or the Final Order;

      (viii)    The entry of an order dismissing any Bankruptcy Case or converting any Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code, or the Debtors file, without the prior written consent of the DIP Lender, a motion or other pleading seeking entry of such an order or supports or fails to timely oppose such dismissal or conversion;

      (ix)    A trustee, responsible officer, or an examiner having expanded powers under section 1104 of the Bankruptcy Code (other than (A) a fee examiner or (B) for


33769084.1
33769084.2

purposes of an investigation pursuant to sections 1106(a)(3) and (4) of the Bankruptcy Code) is appointed or elected in the Bankruptcy Cases, or the Debtors apply for, consent to, support, acquiesce in, or fail to timely oppose, any such appointment, or the Bankruptcy Court shall have entered an order providing for such appointment, in each case without the prior written consent of the DIP Lender in the DIP Lender's sole discretion;

(x)     The Debtors take any action to, or fail to take all reasonable actions necessary to oppose any action by any other person (including, but not limited to, (A) challenging the standing of such party to bring any such action, (B) filing pleadings, providing evidentiary support, and appearing in court to support and present the same in opposition of such party's action, and (C) timely prosecuting all available appeals of any order or decision authorizing such party's actions or approving relief granted to such party or timely opposing all appeals (or attempts to appeal) of decisions denying standing or relief to such party), in each case, except as expressly permitted hereunder and in the DIP Orders, (i) impair any of the material rights and remedies of the DIP Lender under the DIP Credit Agreement, or (ii) avoid, subordinate, disallow, or require disgorgement by the DIP Lender or the Prepetition Lender of any amount received in respect of the DIP Obligations, the Adequate Protection Obligations, or under this Interim Order or the Final Order;

(xi)     At any time after the execution and delivery thereof, (A) the DIP Credit Agreement ceases to be in full force and effect (other than by reason of a release of DIP Collateral in satisfaction in full of the DIP Obligations in accordance with the terms hereof) or shall be declared null and void, or the DIP Lender shall not have or shall cease to have a valid and perfected first priority DIP Liens, subject only to the Carve-Out, in any material portion of DIP Collateral purported to be covered by the DIP Credit Agreement or (B) the Debtors shall



contest the validity or enforceability of the DIP Credit Agreement, other DIP Documents, or the Prepetition Loan Documents in writing or deny in writing that it has any liability under the DIP Credit Agreement, other DIP Documents, or the Prepetition Loan Documents;

        (xii)    At any time after the execution and delivery thereof, the DIP Liens created by the DIP Credit Agreement shall not constitute a valid and perfected first priority lien on the DIP Collateral intended to be covered thereby (to the extent perfection by filing, registration, recordation or possession is required herein or therein) in favor of the DIP Lender, free and clear of all other liens (other than the Carve-Out and liens permitted by the DIP Credit Agreement), or, except for expiration in accordance with its terms, the DIP Credit Agreement shall for whatever reason be terminated or cease to be in full force and effect, or the enforceability thereof shall be contested by the Debtors;

        (xiii)   Any super-priority administrative expense claim or lien (other than the Carve-Out) that is *pari passu* with or senior to the DIP Superpriority Claims, Prepetition Superpriority Claims, DIP Liens, Adequate Protection Liens, Prepetition Liens, and/or claims of the DIP Lender in connection with the DIP Loans shall have arisen or been authorized or allowed;

        (xiv)   Any judicial process, condemnation, or forfeiture proceedings is brought against any material item or portion of the DIP Collateral or any rights therein shall be subject to such judicial process, condemnation, or forfeiture proceedings and such judicial process, condemnation, or foreclosure proceeding is not stayed within five (5) business days, or any order is entered adversely affecting the DIP Lender's rights with respect to any material item or portion of the DIP Collateral;



(xv)    The filing of a motion, pleading, or proceeding by the Debtors which could reasonably be expected to result in a material impairment of the rights or interests of the DIP Lender under the DIP Credit Agreement or any DIP Orders or a determination by a court with respect to a motion, pleading, or proceeding brought by another party which results in such a material impairment;

(xvi)    The Debtors seek entry of an order seeking confirmation of a Chapter 11 plan other than an Acceptable Plan;

(xvii)    The failure of the Debtors to comply with any of the Milestones (as defined below);

(xviii) The Debtors make any payments of principal or interest or otherwise on account of any prepetition claims other than payments authorized by the Approved Budget and/or the Court in respect of "first day orders" or other orders entered upon pleadings in form and substance reasonably satisfactory to the DIP Lender;

(xix)    The Court shall enter an order or orders granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code to any creditor or party in interest (other than the DIP Lender) (i) to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of any Debtor, or (ii) to permit other actions that, in each case, the DIP Lender may, in the DIP Lender's sole discretion, deem to have a Material Adverse Effect;

(xx)    Any Governmental Authority (as defined in the DIP Credit Agreement), by a final, nonappealable order, ruling or other action, shall prevent the Debtors from conducting any material part of the Debtors' business, to the extent such prevention could reasonably be expected to result in a Material Adverse Effect;


33769084.1
33769084.2

(xxi)    The loss, revocation, or termination of any license, permit, lease, or agreement necessary or material to the Debtors' business, or the cessation of any material part of the Debtors' business, to the extent such loss, revocation, or termination could reasonably be expected to result in a Material Adverse Effect;

(xxii)    Any judgments which are in the aggregate in excess of $25,000 as to any postpetition obligation shall be rendered against the Debtors and the enforcement thereof shall not be stayed (by operation of law, the rules or orders of a court with jurisdiction over the matter or by consent of the party litigants); or there shall be rendered against the Debtors a nonmonetary judgment with respect to a postpetition event which causes or would reasonably be expected to cause a Material Adverse Effect;

(xxiii)    Resignation or termination of the Debtors' Chief Restructuring Officer ("CRO") if a replacement is not identified within five (5) business days of such resignation or termination and such replacement is not acceptable to the DIP Lender in its sole discretion;

(xxiv)    An application shall be filed by the Debtors for the approval of, or an order of the Court shall be entered granting, any liens in the Bankruptcy Cases that are *pari passu* with or senior to the DIP Liens or Prepetition Liens (other than the Carve-Out);

(xxv)    Any claims (as such word is defined in the Bankruptcy Code) senior to or *pari passu* with the DIP Lender's DIP Superpriority Claims, other than the Carve-Out and the Adequate Protection Obligations owed to the Prepetition Lender;

(xxvi)    Any claims (as such word is defined in the Bankruptcy Code) senior to or *pari passu* with the Prepetition Lender's Prepetition Superpriority Claims, other than the Carve-Out and the DIP Obligations owed to the DIP Lender;



(xxvii) An order shall be entered by the Court terminating any of the Debtors' exclusive periods for proposing a chapter 11 plan;

(xxviii)        Dismissal or conversion of any of the Bankruptcy Cases;

(xxix) Allowance of a claim under section 506(c) of the Bankruptcy Code;

(xxx)   An amendment or modification to, or revocation or termination of, the letter of credit issued for the benefit of any Debtor in connection with the Sales Plan;

(xxxi)  The Debtors pursue a sale that is not acceptable to the DIP Lender in the DIP Lender's sole discretion; or

(xxxii) The Debtors file or support any pleading seeking relief the granting of which would give rise to an Event of Default.

(b)        Upon the occurrence of an Event of Default, the DIP Lender may, but is not required to, exercise all rights and remedies provided for in the DIP Credit Agreement, this Interim Order, and the Final Order, and may declare (i) the termination, reduction, or restriction of (A) any further DIP Loan or Draw commitment to the Debtors and/or (B) the Debtors' use of Cash Collateral; (ii) all obligations to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Debtors, and (iii) the termination of the commitments under the DIP Loan as to any future liability or obligation of the DIP Lender, but without affecting any of the DIP Liens, the Adequate Protection Liens, or the liabilities or obligations of the Debtors; *provided that* upon the occurrence and during the continuance of an Event of Default, prior to the exercise of any enforcement or liquidation remedies by the DIP Lender, the DIP Lender shall be required to


33769084.1
33769084.2

provide to the Notice Parties with five (5) calendar days' written notice (the "Remedies Notice Period"), which may be by email (the "Enforcement Notice").

(c)     Upon delivery of an Enforcement Notice, any Notice Party or other party in interest may request an expedited hearing, and each of the DIP Lender, the Prepetition Lender, the Debtors, and the Committee (if any), as applicable, consent to a hearing on an expedited basis; *provided* that if a request for such hearing is made prior to the end of the Remedies Notice Period, then the Remedies Notice Period shall be continued until the Court hears and rules with respect thereto. During the Remedies Notice Period, (i) the DIP Lender may not exercise any rights or remedies to satisfy the DIP Obligations, including any rights and remedies against the DIP Collateral; (ii) the Prepetition Lender may not exercise any rights or remedies to satisfy the Prepetition Obligations and the Adequate Protection Obligations, including any rights or remedies against the Prepetition Collateral; and (iii) the Debtors shall continue to have the right to use the proceeds of the DIP Facility (the "DIP Proceeds") and the Cash Collateral solely to fund the Carve-Out and expenses critically necessary to preserve the value of the Debtors' businesses and the DIP Collateral and to pay employee-related expenses incurred through and including the expiration of the Remedies Notice Period, which expenses shall be incurred in accordance with the terms of this Interim Order and the Approved Budget. At the end of the Remedies Notice Period, unless the Court has entered an order to the contrary or otherwise fashioned an appropriate remedy, the Debtors' right to use the DIP Proceeds and the Cash Collateral shall immediately cease, unless otherwise provided herein, and the Prepetition Lender and the DIP Lender shall have the rights set forth in paragraph I.18(b), without the necessity of seeking relief from the automatic stay.


33769084.1
33769084.2

(d)      Notwithstanding the foregoing, and irrespective of the Remedies Notice Period, but except solely as otherwise expressly provided with respect to the Carve-Out, the DIP Lender shall not be obligated to provide any DIP Loans, fund amounts into the Fee Escrow Accounts, or execute Draws at any time a Default (as defined in the DIP Credit Agreement) or Event of Default has occurred and is continuing or after the Maturity Date.

(e)      Notwithstanding the foregoing, the DIP Lender may only enter upon a leased premises of the Debtors after an Event of Default in accordance with (i) a separate written agreement among the DIP Lender and the applicable landlord for the leased premises, (ii) any pre-existing rights of the DIP Lender under applicable non-bankruptcy law, (iii) written consent of the applicable landlord for the leased premises, or (iv) entry of an order by this Court approving such access to the leased premises after notice and an opportunity to be heard for the applicable landlord for the leased premises.

19.    Milestones.    The Debtors shall comply with the following deadlines ("Milestones"), unless otherwise waived by the DIP Lender in the DIP Lender's sole discretion:

(a)      the Court shall have entered the Interim Order, in a form and substance acceptable to the DIP Lender in the DIP Lender's sole discretion, no later than three (3) business days after the Petition Date;

(b)      within ten (10) calendar days after the Petition Date, the Debtors shall have filed with the Court a motion to retain the CRO and support personnel;

(c)      within ten (10) calendar days after the Petition Date, the Debtors shall have filed with the Court a motion to retain Agent to sell the Debtors' assets, upon terms acceptable to the DIP Lender in its sole discretion, to advise on and execute a sales plan detailing the proposed process for the orderly sale of the Debtors' assets ("Sales Plan");



(d)      within ten (10) calendar days after the Petition Date, the Debtors shall file with the Court a motion for entry of an order approving the procedures and process by which the Debtors will implement and execute on the Sales Plan, which order shall be acceptable to the DIP Lender in its sole discretion; and

(e)      the Court shall have entered the Final Order, in form and substance acceptable to the DIP Lender in the DIP Lender's sole discretion, no later than thirty (30) calendar days after the Petition Date.

20.      <u>Reporting Covenants</u>. The Debtors shall comply with the following reporting requirements:

(a)      delivery by the Debtors or their advisors to the DIP Lender of a confidential weekly report summarizing weekly sales and results of the implementation of the Sales Plan, including delivery of bank statements and other information available regarding the Designated Deposit Accounts;

(b)      within one (1) business day of receipt, the Debtors will provide to the DIP Lender or their advisors copies of all indications of interest, letters of intent, or draft purchase agreements received from any third-party;

(c)      the Debtors and their advisors will hold a weekly call with the DIP Lender and their advisors to provide an update on the implementation of the Sales Plan; and

(d)      weekly collateral (accounts receivable, inventory, and cash) reporting.

21.      <u>Joint and Several</u>.  The Debtors are jointly and severally liable for the DIP Obligations, the Adequate Protection Obligations, and all other obligations hereunder owed to the DIP Lender and Prepetition Lender.



22.     <u>No Waiver for Failure to Seek Relief</u>.  No failure or delay on the part of the DIP Lender to exercise any rights under the DIP Credit Agreement shall operate as a waiver thereof, nor shall any single or partial exercise by DIP Lender of any right under the DIP Credit Agreement preclude any further exercise thereof, or the exercise of any other right.  Each and every right or remedy granted under the DIP Credit Agreement or any final order relating to the DIP Loan or under any document delivered thereunder or in connection therewith or allowed to the DIP Lender in law or equity shall be deemed cumulative and may be exercised from time to time.

23.     <u>Preservation of Rights Granted Under this Interim Order</u>.

(a)     Subject and subordinate in all cases to the Carve-Out, and other than as otherwise set forth in this Interim Order, neither the DIP Liens nor, subject to paragraph 27 of this Interim Order, the Adequate Protection Liens shall be made subject or subordinate to, or *pari passu* with, any lien or security interest granted in any of the Bankruptcy Cases or arising after the Petition Date, and neither the DIP Liens nor the Adequate Protection Liens shall be subject or subordinate to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code.

(b)     In the event that this Interim Order or any provision hereof is reversed or modified on appeal, the validity and priority of any liens or claims granted to the Prepetition Lender hereunder arising prior to the effective date of any such reversal or modification of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges, and benefits granted herein, and the Prepetition Lender shall be entitled to the protections afforded in section 364(e) of the Bankruptcy Code.



(c)      Notwithstanding any order dismissing any of the Bankruptcy Cases under section 1112 of the Bankruptcy Code or otherwise entered at any time:  (i) the Carve-Out, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Prepetition Superpriority Claims, and the other administrative claims granted pursuant to this Interim Order shall continue in full force and effect, and shall maintain their relative priorities as provided in this Interim Order until all DIP Obligations and Adequate Protection Obligations are indefeasibly paid in full, in cash (and such DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, Prepetition Superpriority  Claims, and other administrative claims granted pursuant to this Interim Order shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the other rights granted by this Interim Order shall not be affected; and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in this paragraph and otherwise in this Interim Order.

(d)      Notwithstanding anything to the contrary in this Interim Order, the DIP Term Sheet, the DIP Credit Agreement, or the other DIP Documents, nothing in this Interim Order, the DIP Term Sheet, the DIP Credit Agreement, or the other DIP Documents shall affect any right of the DIP Lender to object, in its sole discretion, to any sale of the Debtors' assets or any chapter 11 plan that does not pay the DIP Obligations in full, and all such rights are expressly preserved.

24.      <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order</u>. The DIP Lender and Prepetition Lender have acted in good faith in connection with this Interim Order and are entitled to rely upon the protections granted herein and by section 364(e) of the Bankruptcy Code.  Based upon the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of



the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter reversed or modified on appeal, the DIP Lender and Prepetition Lender are entitled to the protections provided in section 364(e) of the Bankruptcy Code.  Any such reversal or modification on appeal shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim, or priority authorized or created hereby.

       25.    <u>Expenses and Indemnification of the DIP Lender</u>.

       (a)    On the Maturity Date (or such other date as agreed to by the Debtors and the DIP Lender), the Debtors are authorized and directed to pay, without further Court order, the reasonable and documented fees and expenses, whether incurred before or after the Petition Date, by professionals or consultants retained by the DIP Lender (as specifically set forth in the DIP Term Sheet, the DIP Credit Agreement, or herein), including, for the avoidance of doubt, the fees and expenses of the Lender's Professionals, incurred in connection with the Bankruptcy Cases (in any capacity) and the DIP Facility, including in connection with (i) the discussion, negotiation, preparation, execution, and delivery of any documents in connection with the DIP Loans, DIP Credit Agreement, and the DIP Orders, and (ii) the wind-down, sale, liquidation, reorganization or other disposition of any or all of the Debtors' assets (collectively, the "<u>Lender's Professional Fees</u>").  The Lender's Professionals shall not be required to file motions or applications with respect to the Lender's Professional Fees but shall comply with the notice requirements set forth in paragraph 14(c) of this Interim Order.

       26.    <u>Limitation on Use of DIP Facility Proceeds, DIP Collateral, and Cash Collateral</u>. Subject to paragraph 27 hereof, none of the DIP Facility, the DIP Collateral, the Prepetition Collateral, or the proceeds thereof, including Cash Collateral, or the Carve-Out may be used: (a) to investigate, initiate, prosecute, join, or finance the initiation or prosecution of any claim,


33769084.1
33769084.2

counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, or other litigation of any type, including any Retained Actions solely to the extent any Retained Action falls within the scope of the actions described in this paragraph 26, (i) against the DIP Lender or the Prepetition Lender under the DIP Documents, this Interim Order, or the Prepetition Loan Documents, including, without limitation, for the payment of any services rendered by the Debtors' Professionals, the Special Committee's Professionals, or the Committee Professionals (if any) in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration, or similar relief that would impair the ability of the DIP Lender or the Prepetition Lender to recover on the DIP Collateral or the Prepetition Collateral, or seeking affirmative relief against the DIP Lender or the Prepetition Lender related to the DIP Obligations or the Prepetition Obligations, (ii) seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the DIP Obligations, the DIP Superpriority Claims, or the DIP Liens in the DIP Collateral, the Adequate Protection Obligations, Adequate Protection Liens, the Prepetition Obligations, or the Prepetition Liens in the Prepetition Collateral, or (iii) for monetary, injunctive, or other affirmative relief against the DIP Lender or the Prepetition Lender, or their respective liens on, or security interests in, the DIP Collateral or the Prepetition Collateral, the Prepetition Superpriority Claims or the DIP Superpriority Claims, or the DIP Obligations, Prepetition Obligations, Adequate Protection Liens, or Adequate Protection Obligations, in each case that would impair the ability of the DIP Lender of Prepetition Lender to assert or enforce any lien, claim, right, or security interest, or to realize or recover on the DIP Obligations, the Prepetition Obligations, or the Adequate Protection Obligations to the extent permitted or provided hereunder; (b) for



objecting to or challenging in any way, the legality, amount, validity, extent, priority, perfection, or enforceability of the claims, liens, or interests (including the Prepetition Liens) held by or on behalf of the Prepetition Lender related to the Prepetition Obligations or the Adequate Protection Obligations or by or on behalf of the DIP Lender related to the DIP Obligations; (c) for asserting, commencing, or prosecuting any claims or causes of action whatsoever, including, without limitation, any Recovery Actions, to the extent such claims or causes of action are related to the DIP Obligations, the DIP Superpriority Claims, the DIP Liens, the Prepetition Superpriority Claims, the Adequate Protection Obligations, the Adequate Protection Liens, the Prepetition Obligations, or the Prepetition Liens; and (d) for prosecuting an objection to, contesting in any manner or raising any defenses to, the legality, validity, extent, amount, perfection, priority, or enforceability of:  (i) any of the DIP Liens, the DIP Superpriority Claims, or any other rights or interests of the DIP Lender related to the DIP Obligations or the DIP Liens or (ii) through any Retained Actions or otherwise, any of the Prepetition Liens or any other rights or interests of the Prepetition Lender related to the Prepetition Obligations, the Prepetition Superpriority Claims, or the Adequate Protection Obligations; *provided* that the DIP Facility, the DIP Collateral, the Prepetition Collateral, including Cash Collateral, and the proceeds thereof used to fund the Carve-Out, may be used to pay the (y) allowed fees and expenses, in an amount no more than $25,000 (the "Investigation Budget"), incurred solely by the Committee (if any) to investigate, but not to prepare, initiate, litigate, prosecute, object to, or otherwise pursue a Challenge (as defined below), the claims, causes of action, adversary proceedings, or other litigation against the Prepetition Lender solely concerning the validity, priority, perfection, enforceability, or extent of the claims, liens, or interests (including the Prepetition Liens) held by or on behalf of the Prepetition Lender related to the Prepetition Obligations; and (z) fees and expenses, in an


33769084.1
33769084.2

amount not to exceed the amount set forth in the Approved Budgets, incurred by the Special Committee of the Board of Directors of Borrower (the "Special Committee") (including the fees and expenses of the Special Committee's Professionals as set forth in the Approved Budgets) in connection with its investigation of any claims, including Retained Actions, relating to fraud allegations associated with the Borrower's prepetition operations.

27.    Effect of Stipulations on Third Parties.

(a)    The stipulations, admissions, waivers, and releases contained in paragraph F hereof shall be binding upon the Debtors (including their representatives) and any successors or assigns thereto upon entry of this Interim Order.  The stipulations, admissions, waivers, and releases contained in this Interim Order shall also be binding upon all other parties in interest, including or any statutory or non-statutory committees appointed or formed in the Bankruptcy Cases, including the Special Committee and the Committee (if any), or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "Trustee"), unless (i) such party with requisite standing has duly filed an appropriate pleading challenging the legality, amount, validity, perfection, priority, extent, or enforceability of the Prepetition Liens or the Prepetition Obligations, or otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims, or causes of action, objections, contests, or defenses against the Prepetition Lender or any such parties' affiliates or representatives in connection with any matter related solely to the Prepetition Loan Documents, the Prepetition Collateral, the Prepetition Liens, or the Prepetition Obligations (each such proceeding or contested matter, a "Challenge") by no later than the date that is seventy-five (75) days from entry of the Interim Order, subject to further extension (A) by written agreement (which writing may be in the form of e-mail by counsel) of the Debtors and the Prepetition Lender, each in their sole discretion, or (B) by this Court for



good cause shown pursuant to an application filed and served by a party in interest prior to the expiration of the Challenge Period (the "Challenge Period"); *provided*, in the event that, prior to the expiration of the Challenge Period, (1) the Bankruptcy Cases are converted to cases under chapter 7 of the Bankruptcy Code or (2) a chapter 11 trustee is appointed in the Bankruptcy Cases, then in each such case, the Challenge Period shall be extended for a period of thirty (30) calendar days solely with respect to any Trustee, commencing on the occurrence of either of the events described in the foregoing clauses (1) and (2); and (ii) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such Challenge or claim in any such duly filed adversary proceeding or contested matter.  If no such adversary proceeding or contested matter is timely filed prior to the expiration of the Challenge Period, without further order of this Court: (i) the Prepetition Obligations shall constitute allowed claims, not subject to any Challenge (whether characterized as a counterclaim, setoff, subordination, recharacterization, defense, avoidance, contest, attack, objection, recoupment, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined by section 101(5) of the Bankruptcy Code), impairment, subordination (whether equitable, contractual or otherwise), or other challenge of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law), for all purposes in the Bankruptcy Cases and any subsequent chapter 7 cases, if any; (ii) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, and of the priority specified in paragraph F hereof, not subject to setoff, subordination, defense, avoidance, impairment, disallowance, recharacterization, reduction, recoupment, or recovery; and (iii) the Prepetition Obligations, the Prepetition Liens on the Prepetition Collateral, and the Prepetition Lender shall not be subject to any other or further Challenge, and any party in interest shall be forever barred



from seeking to exercise the rights of the Debtors' estates or taking any such action, including any successor thereto (including any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period).  If any adversary proceeding or contested matter is timely filed by a party that has standing as provided above and in accordance with applicable law prior to the expiration of the Challenge Period, (i) the stipulations and admissions contained in this Interim Order shall nonetheless remain binding and preclusive on all other parties in interest, including any Trustee, except with respect to any party that timely files a Challenge and solely as to any stipulations or admissions that are specifically and expressly challenged in such adversary proceeding or contested matter; and (ii) any Challenge not brought in such adversary proceeding or contested matter shall be forever barred; *provided* that if and to the extent any Challenges to a particular stipulation or admission are withdrawn, denied, or overruled by a final non-appealable order, such stipulation shall also be binding on the Debtors' estates and all parties in interest.  For the avoidance of doubt, none of the DIP Collateral (including any proceeds thereof) shall be used to fund any professional fees or expenses of any party in connection with any Challenge (other than such fees and expenses of the Committee Professionals which, subject to entry of the Final Order (to the extent provided therein), shall not exceed the Investigation Budget) whether pursuant to this Interim Order or otherwise.  Additionally, the Prepetition Lenders, the DIP Lenders, and, to the extent necessary, the Debtors, waive any right to contest the Committee's ability to obtain standing on grounds that the Committee cannot obtain standing as a matter of law because the applicable Debtor is a limited liability company and applicable non-bankruptcy law prohibits a party other than the Debtors from bringing claims on behalf of such an entity.



(b)      Nothing in this Interim Order vests or confers on any person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any claims or causes of action belonging to the Debtors or their estates, including, without limitation, any Challenge with respect to the Prepetition Loan Documents or the Prepetition Obligations, and all rights to object to such standing are expressly reserved.

28.      <u>Release</u>.  Effective upon entry of the Final Order, and subject to the rights of parties in interest, other than the Debtors, pursuant to paragraphs 26 and 27 of this Interim Order, each of the Debtors, on their own behalf and on behalf of its past, present, and future predecessors, successors, heirs, subsidiaries, and assigns, hereby absolutely, unconditionally, and irrevocably releases and forever discharges and acquits the DIP Lender, Prepetition Lender, and their respective affiliates, and each of their respective former or current officers, partners, directors, managers, owners, members, principals, employees, agents, related funds, investors, financing sources, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, and the respective successors and assigns thereof, solely in their capacities as such (collectively, the "<u>Released Parties</u>"), from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions, and causes of action arising prior to the Petition Date of any kind, nature, or description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or in equity, upon contract, tort, or under any state or federal law or otherwise, to the extent arising out of or related to the DIP Facility, the DIP Obligations, the DIP Loans, the DIP Liens, the DIP Term Sheet, the DIP Credit Agreement, the other DIP Documents,


33769084.1
33769084.2

the DIP Superpriority Claims, the Prepetition Facility, the Prepetition Obligations, the Prepetition Liens, the Prepetition Superpriority Claims, and all other obligations owing and financial obligations made under such facilities and agreements, and the negotiation of any of the foregoing, in each case that the Debtors at any time had, now have, or may have, or that their successors or assigns hereafter can or may have, against any of the Released Parties for or by reason of any act, omission, matter, cause, or thing whatsoever arising at any time on or prior to the date of this Interim Order; *provided that* nothing herein shall relieve the Released Parties from fulfilling their obligations under the DIP Term Sheet, the DIP Credit Agreement, the other DIP Documents, and this Interim Order; and *provided further* that notwithstanding anything to the contrary in this Interim Order or the Final Order (including this paragraph 28), none of the Debtors are releasing any Retained Actions against any party nor shall anything impair the rights of the Special Committee to pursue such Retained Actions*; provided, however*, to the extent a Retained Action falls within the scope of the actions described in paragraph 27, then such Retained Action is subject to the mechanics of a Challenge as provided for in paragraphs 26 and 27 of this Interim Order.

29.    <u>Turnover</u>.  Except as expressly permitted in this Interim Order, any "first day order," or the DIP Documents, and except with respect to the DIP Lender, in the event that any person or entity receives any payment on account of a security interest in the DIP Collateral (other than with respect to the Carve-Out or any preexisting perfected, valid, and not avoidable liens senior to the DIP Liens), receives any DIP Collateral or any proceeds of the DIP Collateral or receives any other payment or distribution with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations, such person or entity shall be deemed to have received, and shall hold, any such DIP Collateral or any payment on account or proceeds



thereof in trust for the benefit of the DIP Lender and, upon the indefeasible payment in full in cash of the DIP Obligations, such person or entity shall immediately turn over such collateral, proceeds, payment, or distribution to the DIP Lender for application in accordance with the applicable DIP Documents and this Interim Order, in the same form as received, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct. The DIP Lender is hereby authorized to make any such endorsements as agent for such person or entity, and such authorization is coupled with an interest and is irrevocable.

30. <u>Priming Liens</u>. The Prepetition Lender is authorized and directed to take all steps required to give full force and effect to the DIP Lender's Priming Liens granted pursuant to the terms of this Interim Order which may include, but not be limited to: (a) entering into and adhering to one or more intercreditor agreements (and any ancillary documents that are necessary or desirable in connection therewith) with the DIP Lender on terms sufficient to: (i) acknowledge or consent to, and otherwise give full force and effect in all jurisdictions (domestic and foreign) to, the priority of the Priming Liens provided for in this Interim Order over any other competing lien, security interest, or encumbrance of any kind or nature (including Prepetition Liens); and (ii) implement the turnover provisions provided for in this Interim Order or any other DIP Documents; and (b) facilitating in all respects the effective registration and priority of the DIP Liens in all relevant jurisdictions (including non-U.S. jurisdictions) on any and all DIP Collateral envisaged by and required under the DIP Term Sheet, DIP Credit Agreement, and the other DIP Documents (including this Interim Order).

31. <u>Insurance</u>. At all times the Debtors shall maintain casualty and loss insurance coverage for the Prepetition Collateral and the DIP Collateral on substantially the same basis as maintained prior to the Petition Date. Upon entry of this Interim Order, the DIP Lender is, and


33769084.1
33769084.2

will be deemed to be, without any further action or notice, named as an additional insureds and lender's loss payees on each insurance policy maintained by the Debtors which in any way relates to the DIP Collateral, *provided, that the rights or liens granted hereunder shall not interfere with any rights held by a landlord to insurance proceeds for damages to a landlord's property*.

32.     Loss or Damage to Collateral.  The DIP Lender and Prepetition Lender shall not, in any way or manner, be liable or responsible for (a) the safekeeping of the DIP Collateral or Prepetition Collateral, as applicable, (b) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (c) any diminution in value thereof, or (d) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person.  All risks of loss, damage, or destruction of DIP Collateral or Prepetition Collateral shall be borne by the Debtors.

33.     No Requirement to Accept Title to Collateral. Except as may be otherwise agreed in writing, the DIP Lender and Prepetition Lender shall not be obligated to accept title to any portion of the respective DIP Collateral or Prepetition Collateral in the payment of the indebtedness owed to such parties by the Debtors, in lieu of payment in cash or cash equivalents, nor shall the DIP Lender or Prepetition Lender be obligated to accept payment in cash or cash equivalents that is encumbered by any interest of any person or entity other than the DIP Lender or Prepetition Lender.

34.     Roll-Up of Certain Prepetition Obligations.

(a)     Upon the entry of this Interim Order, the Roll-Up DIP Loan is approved.

(b)     The Roll-Up DIP Loan shall be, on a cashless basis, automatically "rolled-up" and substituted and deemed to constitute DIP Obligations (on a dollar-for-dollar basis) which shall be due and payable in accordance with the terms and conditions set forth in



the DIP Credit Agreement as if originally funded on the date of the entry of the Interim Order, and from and after the entry of this Interim Order, the Prepetition Obligations shall be automatically and irrevocably reduced by the amount of the Roll-Up DIP Loan.

(c)     The cashless substitution and exchange of Prepetition Obligations by "rolling-up" such amounts into DIP Obligations shall be authorized as compensation for, in consideration for, as a necessary inducement for, and on account of the agreement of the DIP Lender to fund the DIP Loans and not as adequate protection for, or otherwise on account of, the Prepetition Obligations.  Notwithstanding anything to the contrary herein or in the DIP Credit Agreement, the claims and liens in respect of the Roll-Up DIP Loan shall (i) to the same extent as the DIP Loan, be subject and subordinate to the Carve-Out, (ii) be subject to the Challenge Period, and (c) not attach to or be payable from the proceeds of the Retained Actions.

35.     <u>No Obligation to Extend Credit</u>.  The DIP Lender shall have no obligation to make any loan or advance under the DIP Term Sheet, the DIP Credit Agreement, or the DIP Documents unless all of the applicable conditions precedent (as applicable) under the DIP Term Sheet, the DIP Credit Agreement, the DIP Documents, and this Interim Order have been satisfied in full or waived by the DIP Lender and in accordance with the terms of the DIP Term Sheet, the DIP Credit Agreement, this Interim Order, and the other applicable DIP Documents.

36.     <u>Restrictions on Transfer of DIP Collateral or Prepetition Collateral to Non-Debtor Affiliates</u>.  The Debtors shall not transfer or use any DIP Collateral or Prepetition Collateral, including Cash Collateral, to or for the benefit of any direct or indirect non-debtor affiliate or subsidiary of the Debtors, including Lugano Diamonds UK, Ltd, absent the express written consent of the DIP Lender or as set forth in the Approved Budget or otherwise engage in a liability management exercise to the detriment of the DIP Lender or Prepetition Lender.



37.    <u>No Waiver by Failure to Seek Relief</u>. The failure of the Debtors, DIP Lender, or Prepetition Lender to seek relief or otherwise exercise their rights and remedies under this Interim Order, the DIP Term Sheet, the DIP Credit Agreement, the other DIP Documents, the Prepetition Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise.

38.    <u>Binding Effect; Successors and Assigns</u>.    Subject to paragraph 27(a) of this Interim Order, the DIP Term Sheet, the DIP Credit Agreement, the other DIP Documents, and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in the Bankruptcy Cases, including, without limitation, the DIP Lender, the Prepetition Lender, the Committee (if appointed), and the Debtors and their respective successors and assigns (including any trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), and shall inure to the benefit of the DIP Lender and the Prepetition Lender; *provided* neither the DIP Lender nor Prepetition Lender shall have any obligation to permit the use of DIP Collateral or Prepetition Collateral (including Cash Collateral) or to extend any financing to any trustee or similar responsible person appointed for the estates of the Debtors.

39.    <u>Limitation of Liability</u>.    Solely in determining to make any loan under the DIP Term Sheet, the DIP Credit Agreement, and the other DIP Documents, permitting the use of Cash Collateral, or exercising any rights or remedies (excluding any actions taken after an exercise of remedies) as and when permitted pursuant to this Interim Order, the DIP Term Sheet, the DIP Credit Agreement, the other DIP Documents, or the Prepetition Loan Documents, the



DIP Lender and Prepetition Lender shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors or their respective business, nor shall they owe any fiduciary duty to any of the Debtors, their creditors, or estates, or constitute or be deemed to constitute a joint venture or partnership with any of the Debtors; *provided* that the Court may assess conduct referenced in the foregoing after it occurs and act accordingly.  Furthermore, nothing in this Interim Order, the DIP Term Sheet, the DIP Credit Agreement, the other DIP Documents, or the Prepetition Loan Documents shall in any way be construed or interpreted to impose or to allow the imposition upon the DIP Lender or the Prepetition Lender of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code); *provided, however*, that nothing in this Interim Order shall prohibit the assertion of any Retained Actions against any party.

40.     <u>Amendment of the DIP Documents</u>.   The DIP Term Sheet, the DIP Credit Agreement, and the other DIP Documents may from time to time be amended, restated, waived, modified, or supplemented by the Debtors and the DIP Lender in accordance with the terms and conditions of this Interim Order and such DIP Documents, without further order of the Court, if the amendment, restatement, waiver, modification, or supplement does not (a) shorten the original stated maturity of the DIP Loans, (b) increase the aggregate commitments or the rate of interest payable thereunder, or (c) amend the Events of Default or covenants under the DIP Term Sheet, the DIP Credit Agreement, or the other DIP Documents to be materially more restrictive to the Debtors (taken as a whole) (such amendment, restatement, waiver, modification or supplement, an "<u>Approved Modification</u>"); *provided, that*, for the avoidance of doubt, other than


33769084.1
33769084.2

as explicitly set forth herein, in the DIP Term Sheet, the DIP Credit Agreement, or another DIP Document, updates and supplements to the Approved Budget required to be delivered by the Debtors under the DIP Term Sheet, the DIP Credit Agreement, or this Interim Order shall not require further order of the Court. Before or promptly after the effectiveness of any Approved Modification, the Debtors shall provide notice (which may be provided through email) to counsel to the Committee (if appointed), the U.S. Trustee, the DIP Lender, and the Prepetition Lender. In the case of an amendment, restatement, waiver, supplement, or other modification of the DIP Term Sheet, the DIP Credit Agreement, or any other DIP Documents that is not an Approved Modification, the Debtors shall (a) provide notice (which may be provided through email) to counsel to the Committee (if appointed), the U.S. Trustee, the DIP Lender, and Prepetition Lender and (b) obtain approval of the Court.

41. _Master Proofs of Claim_. The DIP Lender and Prepetition Lender shall not be required to file proofs of claim in any of the Bankruptcy Cases or any successor cases for any claim allowed herein, and the entry of the Final Order shall be deemed to constitute a timely filed proof of claim with respect to the DIP Loans against each of the applicable Debtors in the Bankruptcy Cases. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Bankruptcy Cases or any successor cases to the contrary, the DIP Lender and/or Prepetition Lender are authorized and entitled, but not directed or required, to file jointly or separately (and amend and/or supplement, as the respective agents see fit) one master proof of claim on account of any and all of the respective claims arising under the DIP Facility or Prepetition Facility, as applicable (the "Master Proof of Claim"). For administrative convenience, any Master Proof of Claim authorized herein may be filed in the claims register in the case of Debtor Lugano Diamonds & Jewelry, Inc. with respect to all



amounts asserted in such Master Proof of Claim, and such Master Proof of Claim shall be deemed to be filed and asserted by the applicable entity or entities against every Debtor asserted to be liable for the applicable claim.  For the avoidance of doubt, the provisions set forth in this paragraph and any Master Proof of Claim filed pursuant to the terms hereof are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party in interest or their respective successors in interest, including, without limitation, the numerosity requirements set forth in section 1126 of the Bankruptcy Code.  Neither the DIP Lender nor Prepetition Lender, as applicable, shall be required to attach any instruments, agreements, or other documents evidencing the obligations owing by each of the Debtors to the DIP Lender or Prepetition Lender, as applicable, which instruments, agreements, or other documents will be provided upon written request to counsel to the DIP Lender or Prepetition Lender, as applicable.  Any order entered by the Court in relation to the establishment of a bar date for any claim (including any administrative claim) in any of the Bankruptcy Cases or any successor cases shall not apply to the DIP Lender or Prepetition Lender.  For the avoidance of doubt, neither the DIP Lender nor Prepetition Lender will be required to file any request for allowance and/or payment of any administrative expenses authorized under this Interim Order.

42.  <u>Reservation of Rights</u>.  Nothing in this Interim Order shall be construed as consent to the allowance of any fees, expenses, reimbursement, or compensation sought by any Professional, and the DIP Lender and Prepetition Lender reserve the right to review and object to any fee statement, interim application, monthly application, or final application issued or filed by any Professional.  Notwithstanding anything to the contrary herein or in the DIP Documents, (a) in no event shall the DIP Lender be required to fund any amounts in excess of the DIP Loans, or be required to fund after the DIP Obligations have been repaid and the DIP Lender's



commitments under the DIP Facility have been terminated, and (b) the payment of any Allowed Professional Fees pursuant to the Carve-Out shall not (i) reduce any Debtor's obligations owed to the DIP Lender or the Prepetition Lender (whether under this Interim Order or otherwise) or (ii) modify, alter, or otherwise affect any of the liens and security interests of such parties (whether granted under this Interim Order or otherwise) in the DIP Collateral or Prepetition Collateral.

43.     <u>Automatic Stay Modified</u>.  To the extent not otherwise provided, the automatic stay imposed under section 362(a)(2) of the Bankruptcy Code shall be modified pursuant to the Final Order as necessary for the relevant parties to effectuate all of the terms and provisions of the Final Order.  The automatic stay provisions of section 362 of the Bankruptcy Code or otherwise are vacated and modified to the extent necessary to permit the DIP Lender and Prepetition Lender to exercise immediately upon an Event of Default, the Maturity Date as well as all rights and remedies under this Interim Order and the Final Order.

44.     <u>Cash Management Collections and Remittances</u>.  Pursuant to a "first day motion," the Debtors shall seek authority, and obtain relief from the Court related to, maintaining their existing, prepetition cash management system.  Any material changes from such prepetition cash management system must be acceptable to the DIP Lender in the DIP Lender's sole discretion. This Interim Order and the Final Order shall grant the DIP Lender the DIP Liens on the cash held in the Debtors' bank accounts to secure repayment of the DIP Loan.

45.     <u>Necessary Action</u>. The Debtors are authorized to take any and all such actions and to make, execute, and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Interim Order and the transactions contemplated hereby.



46.  <u>Right to Seek Additional Adequate Protection</u>. This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Lender to request additional forms of adequate protection at any time, subject to the consent of the DIP Lender and any party in interest's right to object thereto. Nothing herein shall be deemed a finding by the Court or an acknowledgment by the Prepetition Lender that the Adequate Protection Obligations granted herein do in fact adequately protect the Prepetition Lender against any Diminution in Value.

47.  <u>Effectiveness</u>. This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

48.  <u>Interim Order Governs</u>. In the event of any inconsistency or conflict between the express terms or provisions of the DIP Documents and this Interim Order, the provisions of this Interim Order shall govern.

49.  <u>Bankruptcy Rules</u>. The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

50.  <u>Final Hearing</u>. A final hearing on the Motion will be held on November __, 2025, at _:__ _.m., prevailing Eastern Time. The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the final hearing) to the parties having been given notice of the Hearing, and to any other party that has filed a request for notices with this Court. Any objections or responses to entry of the Final Order shall be filed on or before _:__



_.m., prevailing Eastern Time, on November __, 2025; *provided* that the Final Hearing may be adjourned or otherwise postponed upon the Debtors' filing of a notice of such adjournment with the DIP Lender's prior written consent.

51.    <u>Notice of Entry of Interim Order</u>.  The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court, and to the Committee, if and after the same has been appointed.

52.    <u>Retention of Jurisdiction</u>.  The Court shall retain jurisdiction to resolve any and all disputes arising under or related to the DIP Obligations, the DIP Credit Agreement, the DIP Term Sheet, the other DIP Documents, and/or the provisions of this Interim Order, and to enforce all of the conditions of the DIP Credit Agreement, the DIP Term Sheet, the other DIP Documents, and this Interim Order.



# EXHIBIT 1

## DIP Credit Agreement



**EXHIBIT 2**

**13-Week Cashflow**



**<u>EXHIBIT 3</u>**

**Sale Motion Interim Order Blackline**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| LUGANO DIAMONDS & JEWELRY INC., *et al.*,[1] | Case No. 25-12055 (——BLS) |
|  | (Jointly Administered) |
| Debtors. | **Ref. Docket No. 13** |

**INTERIM APPROVAL ORDER (I) AUTHORIZING THE DEBTORS TO PERFORM UNDER THE AGENCY AGREEMENT, (II) APPROVING THE SALE GUIDELINES, DISPUTE RESOLUTION PROCEDURES, WAIVER OF VARIOUS LEASE RESTRICTIONS, AND MODIFICATIONS TO THE DEBTORS' CUSTOMER PROGRAMS, (III) SCHEDULING, IF NECESSARY AND PRIOR TO ANY AUCTION, THE AGENT PROTECTIONS HEARING TO CONSIDER ENTRY OF THE AGENT PROTECTIONS ORDER (1) APPROVING THE AGENT PROTECTIONS, (2) SCHEDULING, IF NECESSARY, THE AUCTION, AND (3) APPROVING (X) THE BIDDING PROCEDURES, AND (Y) THE SALE NOTICE; (IV) AUTHORIZING, IF NECESSARY, THE DEBTORS TO EXECUTE AN ALTERNATIVE TRANSACTION AGREEMENT, (V) SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") for, among other things, entry of an interim order (this "<u>Interim Approval Order</u>"):  authorizing the Debtors to perform, on an interim basis, under the Agency Agreement; (b) approving the Sale Guidelines, Dispute Resolution Procedures, waiver of various restrictions under the Debtors' real property leases, and modifications to the Debtors' customer programs; (c) scheduling, if necessary and prior to any Auction, the Agent

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's U.S. federal tax identification number, to the extent applicable, are as follows:  Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc. (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308).  The notice address for the Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, California 92660.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Agency Agreement, as applicable.



Protections Hearing to consider entry of the Agent Protections Order (i) approving the Agent Protections, (ii) scheduling, if necessary, the Auction, and (iii) approving (1) the Bidding Procedures, and (2) the Sale Notice; (d) authorizing, if necessary, the Debtors to enter into an Alternative Transaction Agreement; (e) scheduling the Final Approval Hearing; and (f) granting related relief; and upon the First Day Declaration and the Perison Declaration; and upon the statements of counsel made in support of the relief requested in the Motion at the hearing before this Court on November [●], 2025 (the "Interim Hearing"); and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated February 29, 2012; and it appearing that venue of the Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that it may enter a final order consistent with Article III of the United States Constitution; and it appearing that proper and adequate notice of the Motion has been given under the circumstances and in accordance with the Bankruptcy Rules and Local Rules and that no other or further notice is necessary; and after due deliberation thereon; and this Court having found that the relief herein is in the best interests of the Debtors' estates; and good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND, CONCLUDED, AND DETERMINED THAT:**[3]

A.    The Debtors' decision to enter into, perform under, and make payments required by the Agency Agreement, a copy of which is attached hereto as **Exhibit 1**, is a reasonable

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.


33769091.1
33769091.2

exercise of the Debtors' sound business judgment, consistent with their fiduciary duties, and is in the best interests of the Debtors, their estates, their creditors, and all parties in interest.

B.      The Agency Agreement, and the consideration to be paid thereunder, was negotiated, proposed, and entered into by Agent and the Debtors without collusion, in good faith, and from arm's-length bargaining positions.  The terms and conditions set forth in the Agency Agreement are fair and reasonable under these circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying, or defrauding the Debtors or their creditors under any applicable laws.

C.      The Sale Guidelines, a copy of which is attached hereto as **Exhibit 2**, are reasonable and appropriate, will provide an efficient means for the Debtors to sell and/or dispose of the Agency Assets, and are in the best interest of the Debtors' estates.

D.      Subject to the Debtors' reservation of the ability to solicit one or more Alternative Transactions in accordance with the Agency Agreement, the sale of the Agency Assets (the "Interim Sale") contemplated therein when conducted in accordance with the Agency Agreement, the Sale Guidelines, and this Interim Approval Order, and with the assistance of Agent, will provide an efficient means for the Debtors to sell and/or dispose of the Agency Assets as quickly and effectively as possible, and are in the best interest of the Debtors' estates.

E.      The Debtors and Agent may sell the Agency Assets and Additional Agent Goods free and clear of all liens, claims, encumbrances, and interests (the "Interests") as provided for herein because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code have been satisfied with any such Interest additional to the proceeds of the sale with the same validity, priority, extent, and nature as existed in the Agency Assets; *provided* that with respect to the Additional Agent Goods, only with respect to those Interests in the Debtors'


33769091.1
33769091.2

assets.  Those holders of any such Interests who did not object, or who withdrew their objections, to the entry of this Interim Approval Order are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of any such Interests who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having such Interests attach to the Debtors' share of proceeds from the sale of the applicable Agency Assets with the same validity and priority and to the same extent and amount that any such Interests had with respect to such Agency Assets.

F.     The Dispute Resolution Procedures are fair and reasonable and comply with applicable law.

G.     The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and the Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

H.     Agent is not an "insider" of the Debtors as such term is defined in section 101(31) of the Bankruptcy Code.  No common identity of directors or controlling shareholders exists between Agent and the Debtors.

I.     The entry of this Interim Approval Order is in the best interest of the Debtors and their estates, creditors, and all other parties in interest herein.

J.     Time is of the essence in effectuating the Agency Agreement and the Interim Sale contemplated therein without interruption pending the Final Approval Hearing.  The Interim Sale under the Agency Agreement must be permitted, on an interim basis, to maximize the value that Agent may realize from the Interim Sale and the value that the Debtors may realize from operating under the Agency Agreement.



K.      The Debtors have represented that, pursuant to the Motion, they are not seeking to either sell or lease personally identifiable information during the course of the Interim Sale or that the Debtors' privacy parties permit the sale or lease of such information.

L.      No sale, transfer, or other disposition of the Agency Assets pursuant to the Agency Agreement, or entry into the Agency Agreement, will subject Agent, solely in its capacity as Agent under the Agency Agreement, to any liability for claims, obligations, or Interests asserted against the Debtors or the Debtors' interests in such Agency Assets by reason of such transfer under any laws, including, without limitation, any bulk-transfer laws or any theory of successor or transferee liability, antitrust, environmental, product line, de facto merger or substantial continuity or similar theories.  Agent, in its capacity as Agent under the Agency Agreement, is not a successor to the Debtors or their respective estates.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED, on an interim basis, as provided herein.

2.      A final hearing on the relief sought in the Motion shall be conducted on **[_____], 2025, at [_____] (ET)** (the "Final Approval Hearing").  Any party-in-interest objecting to the relief sought at the Final Approval Hearing or the Final Approval Order shall file and serve a written objection, which objection shall be served upon (a) proposed counsel for the Debtors (i) Keller Benvenutti Kim LLP, 101 Montgomery Street, Suite 1950, San Francisco, CA 94104, Attn: Tobias S. Keller (tkeller@kbkllp.com) and Scott J. Friedman (sfriedman@kbkllp.com), and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn:  Edmon L. Morton, Esq. (emorton@ycst.com), Sean M. Beach (sbeach@ycst.com), and Timothy R. Powell (tpowell@ycst.com); (b) counsel to any official committee appointed in the Chapter 11 Cases



(each, a "<u>Committee</u>"); (c) the Office of the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>"), J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Timothy Fox (timothy.fox@usdoj.com); (d) counsel to Compass Group Diversified Holdings LLC, the Debtors' prepetition secured lender and postpetition secured lender, (i) Squire Patton Boggs (US) LLP, 1000 Key Tower 127 Public Square, Cleveland, OH 44114, Attn:  Peter R. Morrison, Esq. (peter.morrison@squirepb.com), and (ii) Polsinelli PC, as Delaware counsel to the DIP Lender and Prepetition Lender, 222 Delaware Avenue, Suite 1101, Wilmington, DE 19801, Attn: Shanti Katona (skatona@polsinelli.com); and (e)  counsel to Agent, (i) Riemer & Braunstein LLP, Times Square Tower, Seven Times Square, Suite 2506, New York, NY 10036, Attn:  Steven E. Fox (sfox@riemerlaw.com), and (ii) Ashby & Geddes, P.A., 500 Delaware Avenue, P.O. Box 1150, Wilmington, DE 19899, Attn:  Gregory A. Taylor (gtaylor@ashby-geddes.com), in each case no later than _____, 2025, at 4:00 p.m. (ET).  If no objections to the entry of the Final Approval Order are timely filed, this Court may enter the Final Approval Order without further notice or a hearing.

3. A special hearing, if necessary, shall be conducted on **[_____], 2025, at [_____] (ET)** (the "<u>Agent Protections Hearing</u>") to consider entry of an order (a) approving the Agent Protections; (b) scheduling, if necessary, an Auction; and (c) approving (i) the Bidding Procedures, and (ii) the Sale Notice.

4. The Debtors and Agent are authorized and empowered to take any and all further actions as may be reasonably necessary or appropriate to give effect to this Interim Approval Order.



A.    <u>Effectiveness and Authority to Perform Under the Agency Agreement</u>

5.    The Debtors are authorized to act and perform in accordance with the terms of the Agency Agreement pursuant to sections 363 of the Bankruptcy Code, including making payments required by the Agency Agreement, including, without limitation, the payment of Tier 1 Consulting Fees and proceeds of sales of Additional Agent Goods, if any, and reimbursement of Tier 1 Expenses to Agent, in each case without the need for any application of Agent or a further order of this Court, and such amounts shall be paid free and clear of any and all Interests of whatever kind or nature.  Agent's fees and expenses shall be paid from the gross proceeds of the Interim Sale (including proceeds of sales of Additional Agent Goods, if any), but shall be subject to the terms of the Agency Agreement itself, including as to any expense budget attached thereto.

6.    Subject to this Interim Approval Order and the Sale Guidelines, the Debtors and Agent hereby are authorized to take any and all actions as may be necessary or desirable to implement the Agency Agreement and the Interim Sale, and the automatic stay under section 362(a) of the Bankruptcy Code is hereby modified to the extent necessary or appropriate to allow the Debtors and Agent to effectuate the Interim Sale and other transactions provided for in the Agency Agreement.  Each of the transactions contemplated by the Agency Agreement and any actions taken by the Debtors and Agent necessary or desirable to implement the Agency Agreement and/or the Interim Sale prior to the date of this Interim Approval Order hereby are approved.

7.    The Debtors are authorized to amend the Agency Agreement from time to time in accordance with its terms, including by extending the Sale Term, without further order of this



Court; *provided* that any such amendment is not materially adverse to the Debtors or their estates, and such amendment is consented to by the DIP Lender.

8.      Notwithstanding anything to the contrary in the Agency Agreement, the Debtors and their estates shall not indemnify Agent for any damages arising primarily out of Agent's fraud, willful misconduct, or gross negligence.

B.      Interim Approval Order Binding

9.      This Interim Approval Order shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Agency Assets.

10.      This Interim Approval Order and, subject to approval on a final basis of the assumption of the Agency Agreement, the terms and provisions of the Agency Agreement shall be binding on all of the Debtors' creditors (whether known or unknown), the Debtors, Agent, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting an interest in the Agency Assets, notwithstanding any subsequent appointment of any trustee, party, entity, or other fiduciary under any section of the Bankruptcy Code with respect to the forgoing parties, and as to such trustee, party, entity, or other fiduciary, such terms and provisions likewise shall be binding.  The provisions of this Interim Approval Order and the terms and provisions of the Agency Agreement, and any actions taken pursuant hereto or thereto shall survive the entry of any order which may be entered ~~confirming or~~



~~consummating any plan(s) of the Debtors or~~ converting the Debtors' cases from chapter 11 to chapter 7, and the terms and provisions of the Agency Agreement, as well as the rights and interests granted pursuant to this Interim Approval Order and the Agency Agreement, shall continue in these or any superseding cases and shall be binding upon the Debtors, Agent, and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.  Any trustee appointed in the Chapter 11 Cases shall be and hereby is authorized to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of this Interim Approval Order and the Agency Agreement, and Agent and the trustee shall be and hereby are authorized to perform under the Agency Agreement upon the appointment of the trustee without the need for further order of this Court.

C.    <u>Authority to Engage in the Interim Sale</u>

11.    The Debtors and Agent are authorized, on an interim basis pending the Final Approval Hearing, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to immediately conduct the Interim Sale in accordance with this Interim Approval Order, the Sale Guidelines <u>(as may be modified by Side Letter (defined below))</u>, and the Agency Agreement.

12.    To facilitate the Interim Sale, the Sale Guidelines are approved in their entirety.

~~13. To facilitate the Interim Sale, the Debtors are authorized to make modifications to the programs contained in the *Motion of Debtors for Interim and Final Orders (A) Authorizing the Debtors to (I) Maintain and Administer Their Customer Programs, (II) Honor Prepetition Obligations, and (B) Granting Related Relief* [Docket No. [●]].~~

<u>13.</u>    ~~14.~~ All entities that are presently in possession of some or all of the Agency Assets in which the Debtors hold an interest that are or may be subject to the Agency Agreement



or this Interim Approval Order hereby are directed to surrender possession of such Agency Assets to the Debtors or Agent.

14.    ~~15. Neither~~Subject to the terms of this Interim Approval Order, neither the Debtors nor Agent, nor any of their officers, employees, or agents, shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit (as defined in section 101(27) of the Bankruptcy Code) or landlord, to conduct the Interim Sale and to take the related actions authorized herein.

D.    Conduct of the Interim Sale

15.    ~~16.~~All newspapers and other advertising media in which the Interim Sale may be advertised and all landlords are directed to accept this Interim Approval Order as binding authority so as to authorize the Debtors and Agent to conduct the Interim Sale and the sale of the Agency Assets and Additional Agent Goods pursuant to the Agency Agreement, including, without limitation, to conduct and advertise the sale of the Agency Assets and Additional Agent Goods in the manner contemplated by and in accordance with this Interim Approval Order, the Sale Guidelines (as may be modified by Side Letter), and the Agency Agreement.

16.    ~~17. The~~ Subject to the terms of this Interim Approval Order, the Debtors and Agent are hereby authorized to take such actions as may be necessary and appropriate to implement the Agency Agreement and to conduct the Interim Sale as provided in the Agency Agreement ~~or~~and the Sale Guidelines (as may be modified by Side Letter), without necessity of further order of this Court, including, without limitation, promotion the Interim Sale on a highly promotional basis utilizing sale themes as are customary in the industry, as determined by Agent from time to time in its discretion.  In furtherance of the foregoing and subject to any Side Letter, Agent shall be authorized to use sign-walkers, banners, or other advertising, and if the Debtors



and Agent are unable to consensually resolve any dispute arising from the use of such promotional activities in any particular location, any party may request an expedited telephonic hearing with this Court pursuant to this Interim Approval Order.

17.    ~~18.~~ Provided that the conduct of the Interim Sale is conducted in accordance with the terms of this Interim Approval Order, the Agency Agreement and the Sale Guidelines, any restrictive provision of any lease, sublease, restrictive covenant, or other agreement relative to occupancy affecting or purporting to restrict the conduct of the  Interim Sale (including the sale of the Agency Assets and Additional Agent Goods), ~~the rejection of leases,~~ abandonment of assets, or "going dark" provisions shall not be enforceable in conjunction with the Interim Sale or the transactions provided for in the Agency Agreement.  Breach of any such provisions in the Chapter 11 Cases in conjunction with the conduct of the Interim Sale in accordance with the term of this Approval Order, the Agency Agreement and the Sale Guidelines (as modified by Side Letter) shall not constitute a default under a lease or provide a basis to terminate the lease, absent further Order of the Court.

18.    ~~19.~~ The Debtors, Agent, and landlords of the Debtors' corporate offices and other operating locations (each, a "Sale Location," and collectively, the "Sale Locations"), with the consent of the DIP Lender are authorized to enter into agreements (each, a "Side Letter," and collectively, the "Side Letters") between themselves modifying the Sale Guidelines without further order of this Court, and such Side Letters shall be binding as among the Debtors, Agent, and any such landlords.

19.    ~~20.~~ Except as expressly provided for herein or in the Sale Guidelines, and except with respect to any Governmental Unit (as to which paragraphs 34-37 herein shall apply), no person or entity, including, but not limited to, any landlord, shopping center manager, licensor,



service provider, utility, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Interim Sale, or the sale of Agency Assets or Additional Agent Goods, or the advertising and promotion of such Interim Sale, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, service provider, utility, or creditor and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding, the Interim Sale and/or (b) instituting any action or proceeding in any court (other than in this Court), or administrative body seeking an order or judgment against, among others, the Debtors, Agent, or the landlords, at the Sale Locations that might in any way directly or indirectly obstruct, otherwise interfere with, or adversely affect the conduct of the Interim Sale, and/or seek to recover damages for breaches of covenants or other provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

20. ~~21.~~ In accordance with and subject to the terms and conditions of the Agency Agreement, Agent shall have the right to use the Sale Locations and all related services, FF&E, supplies, and other assets of the Debtors for the purpose of conducting the Interim Sale, free of any interference from any entity or person, subject to compliance with the Agency Agreement, Sale Guidelines, and this Interim Approval Order.

21. ~~22.~~ The Interim Sale of Agency Assets and Additional Agent Goods shall be "as is" and final. However, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."

22. ~~23.~~ Except as may otherwise expressly provided in the Agency Agreement, Agent shall not be liable for sales taxes (except with respect to sale of the Additional Agent Goods),



12

and the payment of any and all sales taxes (except with respect to the Additional Agent Goods) is the responsibility of the Debtors. The Debtors are directed to remit all taxes arising from the Interim Sale to the applicable Governmental Units as and when due; *provided* that in the case of a *bona fide* dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit. For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected. Agent shall collect, remit to the Debtors, and account for sales taxes as, and to the extent provided in, the Agency Agreement. This Interim Approval Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

23. ~~24.~~ Except as expressly provided for in the Agency Agreement, nothing in this Interim Approval Order or the Agency Agreement, and none of Agent's actions taken in respect of the Interim Sale shall be deemed to constitute an assumption by Agent of any of the Debtors' obligations relating to any of the Debtors' employees. Moreover, Agent shall not become liable under any collective bargaining or employment agreement or be deemed a joint or successor employer with respect to such employees.

24. ~~25.~~ Pursuant to section 363(f) of the Bankruptcy Code, Agent, on behalf of the Debtors, is authorized to sell the Agency Assets, and the Interim Sale of Agency Assets and Additional Agent Goods, whether by Agent or the Debtors, shall be free and clear of any and all Interests; *provided, however*, that any such Interests shall attach to the amounts to be received by the Debtors under the Agency Agreement that are not otherwise payable to Agent, in each case



with the same validity, in the amount, with the same priority as, and to the same extent that any such Interests have with respect to the Agency Assets, subject to any claims and defenses that the Debtors may possess with respect thereto; *provided* further, that with respect to the Additional Agents Goods, only with respect to those Interests in the Debtors' assets.

25.   ~~26.~~ To the extent that the Debtors propose to sell or abandon FF&E which may contain personal and/or confidential information about Debtors' employees and/or customers (the "Confidential Information"), the Debtors shall remove the Confidential Information from such items of FF&E before such sale or abandonment.

26.   ~~27.~~ The Debtors and/or Agent (as the case may be) are authorized and empowered to transfer Agency Assets and Additional Agent Goods among the Sale Locations.  Agent is hereby authorized to sell the Debtors' Owned FF&E and abandon the same, in each case, as provided for and in accordance with the terms of the Agency Agreement and Sale Guidelines (and any Side Letter, as applicable); *provided* that Agent and the Debtors are not authorized to abandon, and are directed to remove, any hazardous materials defined under applicable law from any leased premises as and to the extent they are required to do so by applicable law.

27.   ~~28.~~ Notwithstanding anything to the contrary in this Interim Approval Order or the Agency Agreement, the Debtors shall not sell or abandon any property that the Debtors know is not owned by a Debtor without the owner's consent; *provided* that the Debtors will work in good faith with the owner of any such property to arrange for the return of the property to the owner; *provided, further*, that the Debtors may abandon property owned by any landlord at the applicable Sale Location(s) in accordance with the terms of this Interim Approval Order.

28.   ~~29.~~ No later than seven days prior to the objection deadline to entry of the Final Approval Order, Agent shall file a declaration disclosing connections to the Debtors, their



creditors, and other parties in interest in the Chapter 11 Cases, and the Debtors shall serve the same on the U.S. Trustee, any Committee, and all parties who have filed requests for service under Bankruptcy Rule 2002, by email, or if the email address is not available to the Debtors, then by first-class mail.

29. ~~30.~~ Notwithstanding this or any other provision of this Interim Approval Order, nothing shall prevent or be construed to prevent Agent (individually, as part of a joint venture, or otherwise) or any of its affiliates from providing additional services to and/or bidding on the Debtors' assets not subject to the Agency Agreement pursuant to an agency agreement or otherwise ("Additional Assets").  Nothing contained in this Interim Approval Order shall be deemed to prohibit Agent (individually, as part of a joint venture, or otherwise) or any of its affiliates to bid on, guarantee, or otherwise acquire such Additional Assets, or offer to provide additional services, notwithstanding anything to the contrary in the Bankruptcy Code or other applicable law.

30. ~~31.~~ Nothing in this Interim Approval Order shall (a) alter or affect the Debtors' obligations to comply with section 365(d)(3) of the Bankruptcy Code or (b) alter or modify the rights of any lessor or other counterparty to a lease with the Debtors to file an appropriate motion or otherwise seek appropriate relief if the Debtors fail to comply with section 365(d)(3) of the Bankruptcy Code; *provided* that the conduct of the Interim Sale in accordance with the Sale Guidelines, as may have been modified by a Side Letter, shall not be a violation of section 365(d)(3) of the Bankruptcy Code.

31. ~~32.~~ During the Interim Sale, Agent shall be granted a limited license and right to use the Debtors' Intellectual Property, including, without limitation, trade names, logos, e-mail lists, mailing lists, customer lists, and e-commerce sites (including (without limitation) websites



and social media sites such as Facebook and X), relating to and used in connection with the operation of the Sale Locations as identified in the Agency Agreement, solely for the purpose of advertising the Interim Sale in accordance with the terms of the Agency Agreement, Sale Guidelines, and this Interim Approval Order; *provided, however,* that Agent shall not receive Personally Identifiable Information (as defined in section 101(41A) of the Bankruptcy Code) from the Debtors.

E.    Dispute Resolution Procedures with Governmental Units

34.    Nothing in this Interim Approval Order, the Agency Agreement, or the Sale Guidelines releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Interim Approval Order.  Nothing contained in this Interim Approval Order, the Agency Agreement, or the Sale Guidelines shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with its rights and obligations as debtor in possession under the Bankruptcy Code.  The Debtors' and Agent's conduct of the Interim Sale shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws").  Nothing in this Interim Approval Order, the Agency Agreement, or the Sale Guidelines shall alter or affect obligations to comply with all applicable federal safety laws and regulations. Nothing in this Interim Approval Order shall be deemed to bar any Governmental Unit from



enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' rights to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Interim Approval Order, or otherwise, pursuant to paragraph 36 herein. Notwithstanding any other provision in this Interim Approval Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Interim Approval Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Interim Approval Order shall be deemed to have made any rulings on any such issues.

35.     Provided that the Interim Sale is conducted in accordance with the terms of this Interim Approval Order, the Agency Agreement, and the Sale Guidelines, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, to the extent that the sale of Agency Assets is subject to any Liquidation Sale Laws, including any federal, state, or local statute, ordinance, or rule, or licensing requirement directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or fast pay laws, bulk sale laws, including laws restricting safe, professional, and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the Interim Sale and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply solely to the sale of the Agency Assets, the Debtors and Agent will be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Interim Sale in accordance with the terms of this Interim Approval Order, the Agency Agreement and the Sale Guidelines without the necessity of further showing compliance with any Liquidation Sale Laws.



36.     To the extent that between the Petition Date and the date of the entry of the Final Approval Order or Sale Order, as applicable, there is a dispute arising from or related to the manner in which the Interim Sale is being conducted pursuant to this Interim Approval Order, the Agency Agreement, or the Sale Guidelines, which disputes relate to any Liquidation Sales Laws, the following Dispute Resolution Procedures shall apply:

(a)     Within three business days after entry of this Interim Approval Order, the Debtors will serve by first-class mail copies of this Interim Approval Order, the Agency Agreement, and the Sale Guidelines on the following: (i) the Attorney General's office for each state where the Interim Sale is being held, (ii) the county consumer protection agency or similar agency for each county where the Interim Sale is being held, (iii) the division of consumer protection for each state where the Interim Sale are being held, (iv) the chief legal counsel for the local jurisdiction, and (E) the landlords for the Sale Locations (collectively, the "Dispute Notice Parties").

(b)     To the extent that there is a dispute arising from or relating to the Interim Sale, this Interim Approval Order, or the proposed Final Approval Order, as applicable, the Agency Agreement, or the Sale Guidelines, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), this Court shall retain jurisdiction to resolve the Reserved Dispute. Any time within 10 days following entry of this Interim Approval Order, any Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute (the "Dispute Notice"), explaining the nature of the dispute to: (i) proposed counsel to the Debtors (1) Keller Benvenutti Kim LLP, 101 Montgomery Street, Suite 1950, San Francisco, CA 94104, Attn: Tobias S. Keller, Esq. (tkeller@kbkllp.com) and Scott Friedman (sfriedman@kbkllp.com), and (2) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Edmon L. Morton, Esq. (emorton@ycst.com), Sean M. Beach (sbeach@ycst.com), and Timothy R. Powell (tpowell@ycst.com); (ii) counsel to Agent, (1) Riemer & Braunstein LLP, Times Square Tower, Seven Times Square, Suite 2506, New York, NY 10036, Attn: Steven E. Fox (sfox@riemerlaw.com), and (2) Ashby & Geddes, P.A., 500 Delaware Avenue, P.O. Box 1150, Wilmington, DE 19899, Attn: Gregory A. Taylor (gtaylor@ashby-geddes.com); (iii) the U.S. Trustee, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Timothy Fox (timothy.fox@usdoj.com); (iv) counsel to the DIP Lender and Prepetition Lender, (1) Squire Patton Boggs (US) LLP, 1000 Key Tower 127 Public Square, Cleveland, OH, 44114 Attn: Peter R. Morrison (peter.morrison@squirepb.com), and (2) Polsinelli PC,



18

222 Delaware Avenue, Suite 1101, Wilmington, DE 19801, Attn: Shanti Katona (skatona@polsinelli.com); ~~and~~ (v) counsel to any ~~Committeeany~~ Committee; and (vi) affected landlords at the notice address in the lease and their counsel of record (if known).  If the Debtors, Agent, and the Governmental Unit are unable to resolve the Reserved Dispute within 15 days after service of the Dispute Notice, the Governmental Unit may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

(c)     In the event that a Dispute Resolution Motion is filed, nothing in this Interim Approval Order shall preclude the Debtors, a landlord, or any other interested party from asserting (i) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (ii) that neither the terms of this Interim Approval Order nor the conduct of the Debtors pursuant to this Interim Approval Order violates such Liquidation Sale Laws.  Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of the Interim Approval Order or to limit or interfere with the Debtors' or Agent's ability to conduct or to continue to conduct the Interim Sale pursuant to this Interim Approval Order, absent further order of this Court.  Upon the entry of this Interim Approval Order this Court grants authority for the Debtors and Agent to conduct the Interim Sale pursuant to the terms of this Interim Approval Order, the Agency Agreement, and/or the Sale Guidelines and to take all actions reasonably related thereto or arising in connection therewith.  The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code.  Nothing in this Interim Approval Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

(d)     If, at any time, a dispute arises between the Debtors and/or Agent and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in this Interim Approval Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (b) and (c) above by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs.  Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*.

37.     Subject to paragraphs 34-36 above, each and every federal, state, or local agency, departmental or Governmental Unit with regulatory authority over the Interim Sale and all newspapers and other advertising media in which the Interim Sale are advertised shall



consider this Interim Approval Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall the Debtors or Agent be required to post any bond, to conduct the Interim Sale.

38. Within three business days of entry of this Interim Approval Order, the Debtors shall serve, or shall cause to be served, copies of this Interim Approval Order, the Agency Agreement, and the Sale Guidelines via email, facsimile or regular mail, on: (a) the U.S. Trustee; (b) the United States Attorney's Office for the District of Delaware; (c) those creditors holding the 30 largest unsecured claims against the Debtors' estates (on a consolidated basis); (d) counsel to Compass Group Diversified Holdings LLC, the Debtors' prepetition secured lender and postpetition secured lender, Squire Patton Boggs (US) LLP, 1000 Key Tower 127 Public Square, Cleveland, OH 44114, Attn: Peter Morrison, Esq. (peter.morrison@squirepb.com); (e) the Internal Revenue Service; (vi) the Attorney General's office for each state where the Interim Sale is being held; (f) the division of consumer protection for each state where the Interim Sale is being held; (g) the chief legal counsel for the local jurisdiction; (h) the landlords for the Sale Locations; and (i) the Securities and Exchange Commission. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

F. Other Provisions

39. The Debtors are authorized, but not directed, to implement and make payments under the Incentives Program (as defined in the *Motion of Debtors for Interim and Final Order (A) Authorizing the Debtors to (I) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses, and (II) Continue Employee Benefits Programs, and (B) Granting Related Relief* [Docket No. [●]]). For the avoidance of doubt, no Incentives



Program bonuses shall be paid to any executives, directors, or "insiders," as that term is defined in the Bankruptcy Code, absent further Court order.

40.        Agent is authorized to supplement the Merchandise in the Sale Locations with Additional Agent Goods; *provided* that any such Additional Agent Goods must be of like kind and no lesser quality than the Merchandise.  The Interim Sale of Additional Agent Goods shall be recorded through the Debtors' existing systems; *provided, however*, that Agent shall mark the Additional Agent Goods using either a "dummy" SKU or department number or in such other manner that shall distinguish the Additional Agent Goods from the Merchandise. Agent and the Debtors shall cooperate to ensure that the Additional Agent Goods are marked in such a way that a reasonable consumer could distinguish the Additional Agent Goods from the Merchandise.

41.        All transactions relating to the Additional Agent Goods are, shall be construed as, and are acknowledged by the Debtors to be, a true consignment from Agent to the Debtors under Article 9 of the Uniform Commercial Code in effect in the State of Delaware (the "UCC") and not a consignment for security purposes.

42.        Agent shall pay to the Debtors an amount equal to five percent of the gross proceeds (excluding sales taxes) from the Interim Sale of Additional Agent Goods completed during the Sale Term.  All remaining amounts from the Interim Sale of the Additional Agent Goods shall be the exclusive property of Agent, and no other person or entity shall have any claim against any of the Additional Agent Goods or their proceeds.  At Agent's sole cost and expense, the Debtors shall insure the Additional Agent Goods at Agent's request and, if required, promptly file any proofs of loss with regard to the same with the Debtors' insurers.  The Agent shall be responsible for payment of any deductible under any such insurance in the event of any



casualty affecting the Additional Agent Goods.

43.        The Additional Agent Goods are not and shall not be treated as property of the estate within the meaning of section 541 of the Bankruptcy Code.

44.        With respect to each Sale Locations, at the conclusion of the Interim Sale at such Sale Locations Agent shall vacate the Sale Locations; *provided* that Debtors or Agent may abandon any FF&E, including any Owned FF&E, not sold in the Interim Sale at such location at the conclusion of the Sale (the "<u>Termination Date</u>"), without cost or liability of any kind to Agent.  The Debtors will have the option to remove the FF&E prior to the Termination Date.  For the avoidance of doubt, as of the Termination Date with respect to each Sale Locations, Agent may abandon, in place and without further responsibility or liability of any kind, any FF&E.

45.        Agent shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Agent, in each case, other than as expressly provided for in the Agency Agreement, as modified by this Interim Approval Order.

46.        To the extent the Debtors are subject to any state "fast pay" laws in connection with the Interim Sale, the Debtors shall be presumed to be in compliance with such laws to the extent, in applicable states, such payroll payments are made by the later of:  (a) the Debtors' next regularly scheduled payroll; and (b) seven calendar days following the termination date of the relevant employee, and in all such cases consistent with, and subject to, any previous orders of this Court regarding payment of same.

47.        Notwithstanding the relief granted in this Interim Approval Order and any actions taken pursuant to such relief, nothing in this Interim Approval Order shall be deemed: (a) an admission as to the validity, priority, nature, or extent of any prepetition claim against a


33769091.1
33769091.2

Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Approval Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, other than assumption of the Agency Agreement (subject to entry of the Final Approval Order); (f) a waiver or limitation of the Debtors' rights or the rights of any other person under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

48.        Except as otherwise provided herein, nothing herein shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date (and nothing in this paragraph 48 shall be construed to supersede any provisions of the Interim DIP Order).

49.        Nothing herein, nor as a result of any payment made pursuant to this Interim Approval Order, shall be deemed or construed as a waiver of the right of Debtors, or shall impair the ability of Debtors to contest the validity and amount of any payment made pursuant to this Interim Approval Order (other than any payment in respect of the Tier 1 Consulting Fee and reimbursement of any Tier 1 Expenses as provided in the Agency Agreement).



50.        Nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

51.        Notwithstanding anything to the contrary set forth herein, any payment made, or authorization contained, hereunder shall be subject in all respects to the Approved Budget (as defined in Interim DIP Order or Final DIP Order).

52.        Cause exists to shorten the notice period set forth in Bankruptcy Rule 2002, to the extent possible.  Accordingly, notice of the Motion as provided therein is deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the local rules of this Court are satisfied by such notice.

53.        Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Approval Order are immediately effective and enforceable upon its entry.

54.        This Court shall retain jurisdiction with regard to all issues or disputes relating to this Interim Approval Order, the Agency Agreement, the Sale Guidelines, and any Side Letter, including, but not limited to, (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional, and non-deceptive manner, (b) any claim of the Debtors, the landlords of any Sale Locations and/or Agent for protection from interference with the conduct of the Interim Sale, (c) any other disputes related to the conduct of the Interim Sale, and (d) protect the Debtors and/or Agent against any assertions of any Interests.  No such parties or person shall take any action against the Debtors, Agent, the landlords of the Sale Locations, or the Interim Sale until this Court has resolved such dispute.  This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.



55. Upon entry of the Final Approval Order, nothing contained in any plan confirmed in the Chapter 11 Cases or any order of this Court confirming such plan or in any other order in the Chapter 11 Cases (including any order entered after any conversion of this case to a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Agency Agreement or the terms of this Interim Approval Order.

55.    56. Agent, solely in its capacity as Agent contemplated under the Agency Agreement and for exclusively the purposes contemplated therein, shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Agent, in each case, other than as expressly provided for in the Agency Agreement.  Agent, in the capacity described in this paragraph 56, shall have no successor liability whatsoever with respect to any Interests or claims of any nature that may exist against the Debtors, including, without limitation, Agent shall not be, or to be deemed to be (a) a successor in interest or within the meaning of any law, including any revenue, successor liability, pension, labor, ERISA, bulk transfer, products liability, tax or environmental law, rule or regulation, or any theory of successor or transferee liability, antitrust, environmental, product line, *de facto* merger or substantial continuity or similar theories, or (b) a joint employer, co-employer or successor employer with the Debtors, and the Agent shall have no obligation to pay the Debtors' wages, bonuses, severance pay, vacation pay, WARN act claims if any), benefits or any other payments to employees of the Debtors, including pursuant to any collective bargaining agreement, employee pension plan, or otherwise, except as expressly set forth in the Agency Agreement.

56.    57. In the event any of the provisions of this Interim Approval Order are modified, amended or vacated by a subsequent order of this Court or any other court, Agent shall be entitled to the protections provided in section 363(m) of the Bankruptcy Code, and no such



appeal, modification, amendment, or vacatur shall affect the validity and enforceability of the Interim Sale under the Agency Agreement or this Interim Approval Order.

57.       58. In the event of any conflict between the Interim Approval Order, the Sale Guidelines, the Agency Agreement, and any Side Letter with any landlord, the terms of such Side Letter shall control to govern the conduct of the sales at the Premises.  To the extent there is a conflict between either the Sale Guidelines, the Agency Agreement, or the Side Letter on the one hand, and this Interim Approval Order, this Interim Approval Order shall control.

