## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LUGANO DIAMONDS & JEWELRY INC., *et al.*,[1] | Case No. 25-12055 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline: December 5, 2025 at 4:00 p.m. (ET)[2]**<br>**Hearing Date:  December 11, 2025 at 11:00 a.m. (ET)** |
| | **Related to Docket Nos. 13 and 71** |

**OBJECTION OF 620 NCD LLC, 660 NEWPORT CENTER DRIVE LLC, FASHION ISLAND RETAIL LLC, IRVINE MANAGEMENT COMPANY, AND THE IRVINE COMPANY, LLC TO THE PROPOSED AGENT PROTECTIONS AND BIDDING PROCEDURES ORDER ATTACHED TO THE INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO PERFORM UNDER THE AGENCY AGREEMENT, (II) APPROVING THE SALE GUIDELINES, DISPUTE RESOLUTION PROCEDURES, WAIVER OF VARIOUS LEASE RESTRICTIONS, AND MODIFICATIONS TO THE DEBTORS' CUSTOMER PROGRAMS, (III) SCHEDULING, PRIOR TO ANY AUCTION, THE AGENT PROTECTIONS AND BIDDING PROCEDURES HEARING TO CONSIDER ENTRY OF THE AGENT PROTECTIONS ORDER; (IV) SCHEDULING THE AGENT PROTECTIONS AND BIDDING PROCEDURES HEARING, (V) SCHEDULING THE FINAL APPROVAL HEARING, AND (VI) GRANTING RELATED RELIEF**

620 NCD LLC, 660 Newport Center Drive LLC, Fashion Island Retail LLC, Irvine Management Company, and The Irvine Company, LLC (collectively, the "The Irvine Company" or "Landlord") hereby files this objection (the "Objection") to the proposed Agent Protections and form of Bidding Procedures Order, attached as Exhibit 5 (the "Agent Protections and Bidding Procedures") to the *Interim Order (I) Authorizing the Debtors to Perform Under the Agency*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's U.S. federal tax identification number, to the extent applicable, are as follows: Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc. (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308). The notice address for the Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, California 92660.

[2] Extended by agreement of the Debtors and Landlord.

*Agreement, (II) Approving the Sale Guidelines, Dispute Resolution Procedures, Waiver of Various Lease Restrictions, and Modifications to the Debtors' Customer Programs, (III) Scheduling, Prior to Any Auction, the Agent Protections and Bidding Procedures Hearing to Consider Entry of the Agent Protections Order; (IV) Scheduling the Agent Protections and Bidding Procedures Hearing, (V) Scheduling the Final Approval Hearing, and (VI) Granting Related Relief* [D.I. 71] (the "Interim Order") and respectfully represents as follows:

## I.    BACKGROUND FACTS

1.    On November 16, 2025 (the "Petition Date"), Lugano Diamonds & Jewelry Inc., and its affiliated co-debtors (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are authorized to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. [3]

2.    The Irvine Company is party to seven (7) unexpired nonresidential real property leases and one (1) executory contract with Debtors (collectively, the "Agreements"), including (i) an office lease for the Debtors' headquarters and design center located at 620 Newport Center Drive, Suites 100, 700 and 800, Newport Beach, California, (ii) a lease of retail space (the "Retail Lease") for the Debtors' boutique located at 545 Newport Center Drive, Newport Beach, California in the shopping center commonly known as Fashion Island (the "Center"), and (iii) a number of leases for storage space located at 660 Newport Center Drive, Newport Beach, California, Spaces ZB26, ZB04, ZB05, and ZB06, and at 545 Newport Center Drive, Newport Beach, California, Space 533S (collectively, the "Premises" and the "Leases").

3.    The Retail Lease is a lease "of real property in a shopping center" as that term is used in Section 365(b)(3). *See* In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-87 (3d Cir. 1990). [4]

---

[3]  Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

[4]  Although "shopping center" is not a term defined by the Bankruptcy Code, courts making the determination of what development constitutes a shopping center have considered a variety of factors. *See* Joshua Slocum, 922 F.2d at

4.     The Debtors filed the *Motion of Debtors for (A) an Interim Order (I) Authorizing the Debtors to Perform Under the Agency Agreement, (II) Approving the Sale Guidelines, Dispute Resolution Procedures, Waiver of Various Lease Restrictions, and Modifications to the Debtors' Customer Programs, (III) Scheduling, If Necessary and Prior to Any Auction, the Agent Protections Hearing to Consider Entry of the Agent Protections Order (1) Approving the Agent Protections, (2) Scheduling, If Necessary, the Auction, and (3) Approving (X) The Bidding Procedures, and (Y) The Sale Notice; (IV) Authorizing, If Necessary, the Debtors to Execute an Alternative Transaction Agreement, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief; and (B) a Final Order (I) Authorizing the Debtors to Assume (1) the Agency Agreement, or (2) an Alternative Transaction, (II) Authorizing (1) Agent to Sell the Agency Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, or Authorizing (2) Another Successful Bidder to Sell the Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, And (III)*

---

1086-1087, In re Sun TV and Appliances, Inc., 234 B.R. 356, 359 (Bankr. D. Del. 1999), and In re Goldblatt Bros., Inc., 766 F.2d 1136, 1140-41 (7th Cir. 1985).  The leading bankruptcy treatise found that "the most important characteristic will be a combination of leases held by a single landlord, leased to commercial retail distributors of goods, with the presence of a common parking area."  Joshua Slocum, 922 F.2d at 1088, *citing* 2 Collier on Bankruptcy ¶ 365.04[3].  Landlord has the initial burden of proving that the Center is a shopping center for purposes of Section 365(b)(3).  Courts making the determination of what development constitutes a shopping center have considered a variety of factors.  Those factors include, but are not limited to:

    (a) the existence of a combination of leases for the stores;
    (b) the fact that all leases are held by single landlord;
    (c) the fact that all tenants are engaged in commercial retail distribution of goods;
    (d) the presence of common parking area;
    (e) the purposeful development of premises as shopping center;
    (f) the existence of a master lease;
    (g) the existence of fixed hours during which all stores are open;
    (h) the existence of joint advertising;
    (i) the contractual interdependence of tenants, as evidenced by restrictive use provisions in their leases;
    (j) the existence of percentage rent provisions in leases;
    (k) the right of tenants to terminate their leases if anchor tenant terminates its lease;
    (l) the joint participation by tenants in trash removal and other maintenance;
    (m) existence of tenant mix, and
    (n) a contiguity of stores.

*See* Joshua Slocum, 922 F.2d at 1086-1087, and Sun TV and Appliances, Inc., 234 B.R. 356, and Goldblatt Bros., Inc., 766 F.2d at 1140-41.  The Retail Lease is a lease in a shopping center under the criteria set forth above, and if disputed, Landlord is prepared to establish that the Retail Lease is a shopping center lease as that term is used in Section 365, by either an offer of proof or direct testimony.

*Granting Related Relief  Agency Sale Motion* [D.I. 13] (the "Sale Motion")[5] on the Petition Date. The Sale Motion seeks a combination of two requests: (1) approval and assumption of an agency agreement pursuant to which the agent is being retained to consult, sell, and/or dispose of certain of a Debtors' assets; and (2) approval of bidding procedures and a formal bidding process for the sale of substantially all of the Debtors' assets through an auction process.  The Agency Agreement attached to the Sale Motion provides fir a hybrid-track structure for sales through: (i) an agency agreement, and (ii) an equity agreement subject to overbid and auction.

5.    On November 20, 2025, the Court entered the Interim Order, approving the Agency Agreement on an interim basis pending the final hearing, to permit Debtors and the Agent to immediately commence and conduct the Interim Sales in the ordinary course of the Debtors' business.

6.    The Interim Order also set a special hearing on December 11, 2025 to consider entry of an order (a) approving the Agent Protections; and (b) approving the Bidding Procedures, including, but not limited to, scheduling an Auction, if necessary, with objections to such relief due on December 4, 2025, which objection deadline was extended to December 5, 2025 for Landlord by agreement of Debtors and Landlord.

7.    A final hearing to approve the Agency Agreement on a final basis and to approve any sale to a Successful Bidder is currently set for December 17, 2025, with objections to that relief due on or before December 16, 2025 at 4:00 p.m. (the "Final Objection Deadline").  Other than objections to the Bidding Procedures set forth herein, Landlord reserves all rights to raise other and further objections to the relief sought by the Sale Motion and the Agency Agreement, by the Final Objection Deadline and does not waive its rights.

## II.    ARGUMENT

8.       Landlord does not object to a fair sale process that provides the Debtors an opportunity to maximize the value of their assets, including the Leases, but that process must

---

[5] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion and Interim Order as applicable.

adequately protect the rights of the Landlord under Section 365, as well as the Landlord's due process, legal and negotiated lease rights. The schedule set forth in the Bidding Procedures does not provide, among other things, the Landlord with sufficient time to assess and object (if necessary) to any proposed assumption and assignment of the Agreements, and it does not require any bidder to provide the adequate assurance of future performance information required under Section 365(b)(3)(A) – (D).  Nor does the proposed Bidding Procedures or sale timeline provide the Landlord with the protections to which it is entitled under the Leases and the Bankruptcy Code.  The Court should require the Debtors to modify the schedule consistent with this Objection to provide a reasonable timetable for the auction and sale process, and one which protects the rights of all parties.

      **A.**        **The Sale Process must protect Landlord's due process and Bankruptcy rights.**

      9.      Debtors propose the following auction and sale schedule in connection with the Sale of their Assets:

| Date | Deadline/Event |
|---|---|
| December 12, 2025, at 6:00 p.m. (ET) | Entry of Agent Protections and Bidding Procedures Order |
| December 12, 2025, at 10:00 p.m. (ET) | Bid Deadline |
| December 15, 2025, at 9:00 a.m. (ET) | Deadline for Debtors to notify Potential Bidders of whether their Bids are Qualified Bids |
| December 15, 2025, at 4:00 p.m. (ET) | Auction (if necessary) |
| December 15, 2025, at 4:00 p.m. (ET) | Deadline to file and serve Notice of Successful Bidder(s) |
| December 16, 2025, at 10:00 a.m. (ET) | Deadline to object to the (a) final approval of the Motion; (b) final approval of the Agency Agreement; (c) final approval of an Alternative Transaction Agreement; (d) conduct of the Auction; (e) proposed sale to the Successful Bidder; and (f) ability of the Successful Bidder to provide adequate assurance of future performance or the proposed form of adequate assurance of future performance |
| December 17, 2025 | Final Approval Hearing |

| December 17, 2025 | Entry of Final Approval Order or Sale Order |

10.    While the Bidding Procedures contemplate that the Bids must contain certain Adequate Assurance Information and that such information will be provided on a confidential basis to the affected Counterparties, the information is insufficient to satisfy the adequate assurance requirements for landlords under the Bankruptcy Code, including the heightened adequate assurance requirements in connection with any proposed assumption and/or assignment of the Retail Lease.  In addition, the Debtors propose that Landlord will have as little as sixteen (16) hours from receipt of the Notice of Successful Bidder to file any objection (and less than 24 hours until the Final Approval Hearing).  Even if Landlord receives the Adequate Assurance Information  concurrently with the Notice of Successful Bidder(s), there is no time for the Landlord to have a meaningful ability to review and raise any objections.  Landlord must receive the Adequate Assurance Information, and have sufficient time to assess such information, at least five (5) business days prior to **any** objection deadline.  Adequate Assurance Information which complies with the requirements of Section 365(b) is often voluminous, and the proposed sale timeline offers Landlord no meaningful opportunity to be heard on objections it may have to any Successful Bidder.  While the Landlord understands the need to facilitate a streamlined and expedient sale process, interests of expediency should not come at the expense of the Landlord's due process rights.

11.    Fundamental concepts of due process require that "notice must be reasonably calculated to apprise interested parties of the pendency of an action and to afford them an opportunity to present objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  *See also Sullivan v. Barnett*, 139 F.3d 158, 171 (3d Cir. 1998) (due process requires notice and a meaningful opportunity to be heard).  The Court should ensure that Landlord has the opportunity to assess the ability of any successful bidder to perform under the Agreements, and if necessary, file a substantive objection based upon the Adequate Assurance Information provided, conduct discovery, and have an evidentiary hearing on any contested

assignment.[6]  Therefore any schedule should require that Landlord receive adequate assurance of future performance information at least five (5) business days before any objection deadline or Final Approval Hearing.

### B.    The Debtors must provide Landlord with Adequate Assurance Information that satisfies Section 365(b)(1) & (b)(3) prior to any objection deadline.

12.    The Debtors must provide Adequate Assurance Information to Landlord in a timely fashion and with sufficient time to file any objections and prepare for the Sale Hearing.  While the Bidding Procedures do require Potential Bidders to submit financial information that they can consummate the proposed purchase, including financial and other information related to their ability to perform under any lease to be assumed and assigned to the Potential Bidder, the Bidding Procedures do not specify (a) the substance of the Adequate Assurance Information the Potential Bidders must provide to Landlord as adequate assurance of future performance under the Leases, or (b) the method of transmission and to whom any such Adequate Assurance Information will be disseminated, such that Landlord has a meaningful opportunity to review prior to any objection deadline.

13.    The Debtors may not assume and assign the Leases unless and until they demonstrate adequate assurance of future performance. 11 U.S.C. § 365(b)(1)(C); *see also* 11 U.S.C. § 365(f)(2).  Providing adequate assurance of future performance is an affirmative duty of the Debtors, and the Debtors bear the ultimate burden of persuasion as to issues under Section 365. *See In re Rachels Industries, Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985).  The obligation to comply with Section 365(b) and Section 365(f) is unaffected by maneuvering the

---

[6]  To the extent the Sale Motion contemplates the assumption and assignment of the Lease, it initiates a contested hearing subject to Rule 9014 of the Federal Rules of Bankruptcy Procedure ("FRBP").  *See* FRBP 6006(a).  Any evidentiary hearing will include witness testimony, and under FRBP 9014, the Court should establish procedures to provide parties a reasonable time to schedule an evidentiary hearing where witnesses will testify.  *See* FRBP 9014(e).  Any final schedule must establish a reasonable time to deal with evidentiary hearings relating to the assumption and assignment of Lease.

assumption and assignment process through a sale under Section 363.  Courts require a specific factual showing through competent evidence to determine whether a debtor demonstrates adequate assurance of future performance. *See, e.g.*, *Matter of Haute Cuisine, Inc.*, 58 B.R. 390 (Bankr. M.D. Fla. 1986) (even though experts presented cash flow projections, the court found that insufficient documentary evidence had been presented).  To determine whether a party provides adequate assurance of future performance under Section 365(b), courts have looked to sufficient economic backing, economic conditions, certificates, credit reports, escrow deposits or other similar forms of security or guarantee.  *In re Belize Airways*, 5 B.R. 152 (Bankr. S.D. Fla. 1980); *In re Lafayette Radio Electronics Corp.*, 9 B.R. 993 (Bankr. E.D.N.Y. 1981).  Courts also look to the operating experience of the proposed assignee.  *In re Bygaph, Inc.*, 56 B.R. 596 (Bankr. S.D.N.Y. 1986).

14.    Section 365 requires that the Debtors provide adequate assurance of future performance information to carry their burden under Section 365, and without receipt of such information in a timely fashion, the Landlord cannot assess the *bona fides* of any proposed assignee.[7]

15.    As a practical matter, given the expedited sales process proposed by the Debtors, the Court should require the Debtors to provide all Adequate Assurance Information to the Landlord and its counsel of record by email, fax and/or overnight courier service within twenty-four (24) hours of the Debtors' receipt of a bid from any Potential Bidder, and in no event later than 24 Hours following the Bid Deadline and at least five (5) business days before any proposed objection deadline.

---

[7] If the Landlord does not have sufficient information (or time) to make a determination as to a proposed assignee, or if the proposed assignee is unacceptable, the Landlord must object to the proposed sale and prepare for an evidentiary hearing.  In preparation of such evidentiary hearing, Landlord must conduct expedited discovery, arrange for expert testimony, and file supplemental objections based upon the information gleaned from whatever information the Debtors, or any successful bidder, actually produces.

**C.      Contents of Adequate Assurance Information.**

16.      Adequate Assurance Information must address the ability of the proposed assignee to perform under the Leases in the future, and Landlord must receive, at a minimum, the following information, and be provided with a reasonable timeframe to review such information, if Debtors are to satisfy their burden:

(i)      the specific name of the proposed bidder, the proposed tenant that will act as the assignee, and the proposed name under which the assignee intends to operate at the Premises;

(ii)      the potential assignee's intended use for the space;

(iii)      audited financial statements and annual reports for the past three (3) years, including all supplements or amendments thereto;

(iv)      cash flow projections for the proposed assignee, the proposed assignee's most recent business plan, all cash flow projections for the Lease subject to the assignment request, and any financial projections, calculations and/or pro-formas prepared in contemplation of purchasing the Lease;

(v)      for the Retail Lease, all documents and other evidence of the potential assignee's retail experience and experience operating stores in a shopping center; and

(vi)      a contact person for the proposed assignee that Landlord may directly contact in connection with the adequate assurance of future performance.

17.      The above is a non-exclusive list of the minimum information that should be included in any bid package that Landlord will need to assess a potential assignee's viability, and the Bidding Procedures should be modified to include a list of the kinds of Adequate Assurance Information that must be provided by any Potential Bidder. Landlord reserves the right to request further information it deems necessary to make an informed decision as a potential assignee's ability to satisfy the requirements of Section 365.

18.      Finally, to the extent the Successful Bidder is a newly formed entity with no operational history, pursuant to Section 365(l), the Landlord may require a security deposit, letter of credit, or other credit enhancement such as a third party guaranty, as security for the performance of the assignee's obligations under the Leases in the event that such party fails to perform on a going-forward basis.

### D.    The Debtors must provide heightened Adequate Assurance Information required by Section 365(b)(3) for shopping center leases.

19.    The Retail Lease is a shopping center lease, requiring a heightened demonstration of adequate assurance of future performance than is required by the general provision of Section 365(b)(1)(C).    In re Sun TV and Appliances, Inc., 234 B.R. 356, 359 (Bankr. D. Del. 1999).    In order to assume and assign shopping center leases, the Debtors must satisfy the heightened requirements set forth in 11 U.S.C. § 365(b)(3)(A) - (D).    *See Joshua Slocum*, 922 F.2d at 1086; *see also L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.)*, 209 F.3d 291, 299 (3rd Cir. 2000).    The heightened adequate assurance requirements that Debtors must satisfy under Section 365(b)(3) include the following:

- the source of rent and that the financial condition and operating performance of the proposed assignee and its guarantors, if any, must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee.  *See* 11 U.S.C. § 365(b)(3)(A);
- that any percentage rent due under the lease will not decline substantially.  *See* 11 U.S.C. § 365(b)(3)(B);
- that assumption and assignment of the lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach of any such provision in any other lease, financing agreement, or master agreement relating to such shopping center.  *See* 11 U.S.C. § 365(b)(3)(C); and
- that assumption and assignment of the lease will not disrupt the tenant mix or balance in the shopping center.  *See* 11 U.S.C. § 365(b)(3)(D).

These heightened requirements must be satisfied in connection with an assumption and assignment under Section 365(f)(2)(B).  *Sun TV and Appliances, Inc.*, 234 B.R. at 370.  Courts also require a specific factual showing through competent evidence to determine whether the Debtors can satisfy Section 365(b)(3)'s heightened adequate assurance of future performance requirements. *Matter of Haute Cuisine, Inc.*, 58 B.R. at 394.  The Sale Motion fails to address this heightened standard, and the Bidding Procedures should advise bidders that they must satisfy this heightened standard in order to be eligible to take an assignment of the Lease.

**E.     Any assumption and assignment must comply with the terms of the Leases.**

20.     Through the BAPCPA[8] amendments, "Section 365(f)(1) is amended to make sure that all of the provisions of Section 365(b) are adhered to and that 365(f) of the code does not override Section 365(b)."  Floor Statement of Senator Orrin Hatch, 151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).  The BAPCPA clarified Section 365 to reflect the Congressional intent that the language of Section 365(f), and any ability to assume and assign the Lease, is subject to the protections of Section 365(b)(1) and (3).  It does not modify Section 365(b).  *Trak Auto Corp. v. West Town Ctr. LLC (In re Trak Auto Corp.)*, 367 F.3d 237, 243-44 (4th Cir. 2004) (bankruptcy courts could not use the general anti-assignment provision of Section 365(f)(1) to trump the specific protections granted to landlords in Section 365(b)(3)(C)).  Therefore, any assignment must remain subject to all provisions of the Leases, including but not limited to those provisions in the Retail Lease concerning use, radius, exclusivity, and tenant mix and balance.

21.     The revisions to Section 365 make it clear that the Debtors cannot use Section 365(f) to render lease provisions unenforceable.  While certain provisions may indirectly limit the assignment of the Lease, Section 365(b) specifically protects these provisions.  Provisions governing use, radius and the permitted conduct upon the Premises, therefore, are not anti-assignment provisions and Section 365(f) does not render them unenforceable.  These are provisions negotiated in good faith that legitimately preserve the Landlord's control over its shopping center.  Section 365(b)(3) no longer permits even insubstantial breaches of provisions such as use, radius, location or exclusivity.  These critical lease terms are enforceable under Section 365(b), and this Court should deny any attempted assignment that fails to strictly comply with such provisions, and strike any language in an order that prospectively renders such lease provisions unenforceable.

---

[8] On October 17, 2005, the Bankruptcy Abuse Prevention And Consumer Protection Act of 2005 (the "BAPCPA") went into effect, clarifying, *inter alia*, the protections that landlords are entitled to under 11 U.S.C. § 365.

**F.      Any sale must not be free and clear of obligations to pay all charges due under the Leases, including unbilled year-end adjustments and reconciliations.**

22.     The Sale Motion seeks authority for the sale the leases free and clear of liens, claims and encumbrances.  The Landlord objects to any sale free and clear of the obligations to satisfy unbilled taxes, reconciliations, percentage rent, or other year-end adjustments or unbilled charges that may have accrued under the Leases prior to the assignment of the Leases, but which have not yet been billed.  The Debtors continues to be responsible for all such unbilled charges as they come due under the Leases, and the Debtors, or an assignee, must continue to satisfy all charges due under the Leases, including charges which have not yet been billed, reconciled and/or adjusted from pre-petition (or even post-petition) periods.  Any assumption and assignment of the Leases cannot cut off the Landlord's right to recover unbilled charges that have accrued, or are accruing, under the Leases.  If the sale is not subject to these reconciliation and adjustment claims, it is unlikely that these legitimate lease charges will ever be paid to the Landlord.

23.     Finally, the Leases provide that the Debtors must indemnify and hold the Landlord harmless with respect to any existing claims which may not become known until after the assumption and assignment of the Leases, examples of which may include such claims as personal injuries at the Premises and damage to the Premises or Center by the Debtors or their agents.  Any order approving the assumption and assignment of the Leases must provide that the assumption and assignment is pursuant to the terms of the Leases, including that any assignee continues to be responsible for all such indemnification obligations, regardless of when they arose.  In the alternative, the Debtors must provide (by insurance or otherwise) that it can satisfy the indemnification obligations under the Leases for any such claims that relate to the period prior to any assumption and assignment of the Leases.

**G.      Sale to Next-Highest Bidder.**

24.     The Bidding Procedures propose that in the event that a Successful Bidder fails to close a sale prior to such date as specified in the applicable purchase agreement (or such date as may be extended by the Debtors), the Debtors, upon written notice to the Next-Highest Bidder, may designate the applicable Next-Highest Bid as the Successful Bid for some, or all, of the Assets, including assumption and assignment of Leases, to the Next-Highest Bidder without notice to Landlord or further hearing.  As with any initial successful bidder, the Landlord must be given notice of any alternate sale transaction to a Next-Highest Bidder, including sufficient time to investigate and review adequate assurance information for any such Next-Highest Bidder, and object, if necessary.  The Debtors must also schedule a separate hearing to approve any such Next-Highest Bidder on adequate notice to all parties.   In the event the Debtors need to pivot to a sale transaction to a Next-Highest Bidder,  the Bankruptcy Court should set a separate hearing to approve the Next-Highest Bidder after notice to all parties, and after Landlord has received adequate assurance information from such Next-Highest Bidder, with no less than five (5) business days to object to any proposed assumption and assignment of the Leases.

**H.      Landlord objects to any waiver of Rules 6004(h) and 6006(d).**

25.     The Landlord objects to any waiver of requirements of Federal Rule of Bankruptcy Procedure ("Rule") 6004(h) and 6006(d), especially to the extent it adversely affects the Landlord's appellate rights thereunder.  Such a waiver is unnecessary and inequitable.  These subsections were added to the Rules specifically to protect the rights of the objecting parties, and thus eliminate the "rush to the courthouse" to obtain stay orders by those parties adversely affected by entry of orders under Sections 363 or 365.  Landlord should not have its appellate rights compromised by an unnecessary and advance waiver of these protections, especially where the Debtors seek such a truncated sale process and where Debtors have not established any cause for such a waiver.

### III.    <u>RESERVATION OF RIGHTS</u>

26.    Landlord reserves the right to make such other and further objections as may be appropriate when a proposed assignee of its Lease is identified, or that must be raised by any subsequently established objection deadline, including the Final Objection Deadline.

### IV.    <u>JOINDER IN OBJECTIONS RAISED BY OTHER LANDLORDS</u>

27.    To the extent consistent with the objections expressed herein, Landlord also joins in the objections to the Motion of other landlords and the Committee.

*[Remainder of Page Intentionally Left Blank]*

## V.   CONCLUSION

WHEREFORE, the Landlord respectfully requests that the Court grant relief consistent with the foregoing objections; and such other and further relief as may be just and proper under all of the circumstances.

Dated:  December 5, 2025
Wilmington, Delaware

Respectfully submitted,

/s/Leslie C. Heilman
Leslie C. Heilman (DE No. 4716)
Laurel D. Roglen (DE No. 5759)
Margaret A. Vesper (DE No. 6995)
Erin L. Williamson (DE No. 7286)
**BALLARD SPAHR LLP**
919 Market Street, 11th Floor
Wilmington, DE  19801
Telephone: (302) 252-4446
Facsimile: (302) 252-4466
E-mail:  heilmanl@ballardspahr.com
            roglenl@ballardspahr.com
            vesperm@ballardspahr.com
            williamsone@ballardspahr.com

        -and-

Brian D. Huben (*pro hac vice* to be filed)
Dustin P. Branch (*pro hac vice* to be filed)
Nahal Zarnighian (*pro hac vice* to be filed)
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: (424) 204-4354
Facsimile: (424) 204-4350
E-mail:  hubenb@ballardspahr.com
            branchd @ballardspahr.com
            zarnighiann@ballardspahr.com

*Attorneys for 620 NCD LLC, 660 Newport Center Drive LLC, Fashion Island Retail LLC, Irvine Management Company, and The Irvine Company, LLC*