**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>LUGANO DIAMONDS & JEWELRY INC.,<br>*et al*.,[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 25-12055 (BLS)<br><br>(Jointly Administered)<br><br><br>**Re:  Docket No. 312**<br>**Hearing Date:**  April 20, 2026, at 11:00 a.m. (ET) |

**DEBTORS' OBJECTION TO MORDECHAI FERDER'S**
**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

The above-captioned debtors and debtors in possession (collectively, the "Debtors" or

"Lugano") hereby submit this objection (this "Objection") to the motion for relief from the

automatic stay [Docket No. 312] (the "Stay Relief Motion") filed by Mordechai Ferder,

individually and in his capacity as the Trustee of The Haim Family Trust ("Ferder").[2]  In support

of this Objection, the Debtors rely upon and incorporate by reference the *Declaration of Traci L.*

*Shafroth in Support of Debtors' Objection to Mordechai Ferder's Motion for Relief from the*

*Automatic Stay* (the "Shafroth Declaration"), filed contemporaneously herewith, and the

*Declaration of J. Michael Issa in Support of Chapter 11 Petitions and First Day Motions* [Docket

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's U.S. federal tax identification number, to the extent applicable, are as follows:  Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc.  (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308). The notice address for the Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, California 92660.

[2]    The Debtors consent to the entry of final orders or judgments by the United States Bankruptcy Court for the District of Delaware (the/this "Court") if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

No. 2] (the "First Day Declaration").[3]  In further support of this Objection, the Debtors respectfully represent and set forth as follows:

**PRELIMINARY STATEMENT**

1.      Lugano sued Ferder (the "Action") for perpetrating a massive fraud on the Debtors that precipitated these chapter 11 cases (the "Chapter 11 Cases") in the Superior Court of the State of California, County of Orange (the "State Court").  After Lugano filed the Chapter 11 Cases, Lugano removed the Action to the United States District Court for the Central District of California (the "California District Court") and filed a motion to transfer venue to the United States District Court for the District of Delaware so that all fraud related litigation could be heard in the same forum—this Court.  Ferder opposed the venue transfer, filed the Stay Relief Motion and a proof of claim in the Chapter 11 Cases, and successfully obtained a remand of the Action to State Court. *See Lugano Diamonds & Jewelry, Inc. v. Ferder*, 2026 U.S. Dist. LEXIS 54416 (C.D. Cal. March 13, 2026).

2.      Ferder's Stay Relief Motion requests relief from the automatic stay to allow him to prosecute his vaguely asserted Counterclaims (as defined below), some but not all of which are set forth in Ferder's Proof of Claim (as defined below).  Thus, the Stay Relief Motion, if granted, will require Lugano to object to the claims set forth in the Proof of Claim in the State Court rather through the claims reconciliation process in this Court, where all other claims against the Debtors' estates—including claims relating to the fraud—are being reconciled.

3.      Lugano's anticipated objections to the Proof of Claim (and likely any other Counterclaims) include defenses based in bankruptcy law—claims that may be exclusively within

---

[3]    Capitalized terms used but not otherwise defined herein have the meaning given to such terms in the First Day Declaration.

the jurisdiction of this Court.  If the Stay Relief Motion is granted, Lugano may be precluded from effectively asserting those claims, thus resulting in a windfall for Ferder and causing harm to Lugano's estates and their creditors.

4.    Moreover, the facts underlying the Counterclaims are not uniquely applicable to Ferder or the Counterclaims. Those same facts will likely be adjudicated in connection with (1) claims against Lugano by "investors" Ferder defrauded through his scheme, (2) Lugano's objections to related proofs of claim arising from Ferder's fraud, and (3) other claims that may be asserted against third parties.

5.    For these reasons, Ferder cannot establish that cause exists to lift the automatic stay under this District's three-pronged balancing test or the twelve factors (the "*Sonnax* Factors") set forth in *Sonnax Industries Inc. v. Tri Component Products Corp. (In re Sonnax Industries Inc.)*, 907 F.2d 1280 (2d Cir. 1990).  Allowing piecemeal litigation of these issues threatens inconsistent rulings, contradictory judgments, and increased, inefficient legal costs, unnecessarily depleting estate resources to the detriment of Lugano's creditors and defeating the automatic stay's purpose of avoiding "interference with the orderly liquidation or rehabilitation of the debtor."  *Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (quoting *Borman v. Raymark Ind., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991)) (internal quotation marks omitted).

**FACTUAL BACKGROUND**

I.    **General Background**

6.    On May 7, 2025, the Debtors' majority shareholder Compass Diversified Holdings LLC ("CODI"), and its parent Compass Diversified Holding, disclosed that they had commenced an internal investigation into the financing, accounting, and inventory practices of Lugano Holding (defined below) and that, in connection with that investigation, Ferder had resigned from his

3

position as Chief Executive Officer of Lugano Holding, and from all offices and directorships previously held with Lugano and its subsidiaries and affiliates. First Day Decl. ¶ 30.

7.   Within weeks of those disclosures, the Debtors heard from close to sixty persons asserting substantial claims relating to alleged transactions (the "Investment Contracts") entered into by Ferder. *Id*. at ¶ 31.  The Investment Contracts, which were outside Lugano's ordinary course of business, were generally joint investment agreements in which a third party would co-invest in a loose diamond, ostensibly for resale at a significant profit. *Id*.  More than a dozen parties have commenced lawsuits arising out of the Investment Contracts against Lugano, Ferder, and/or other parties. *Id*.

8.   Six months after the public disclosure, on November 16, 2025 (the "Petition Date"), Lugano commenced the Chapter 11 Cases.

## II.   The Action

### A.   Lugano Sues Ferder

9.   On June 24, 2025, Lugano commenced the Action against Ferder and the Haim Family Trust in the State Court.  Lugano filed its *First Amended Complaint* in the Action on November 26, 2025 (the "FAC").  The FAC includes claims for fraud, concealment, constructive fraud, and breach of fiduciary duty. *See generally* Shafroth Declaration, Ex. A (FAC).  As alleged in the FAC, Ferder, as Lugano's then-Chief Executive Officer, conspired to engage in fraudulent schemes outside of Lugano's retail business to steal millions of dollars from it and exposed it to significant potential liabilities and reputational harm. *Id.* ¶ 2.

10.   Although the specific terms of the Investment Contracts that underlay the fraud varied, they adhered to a common scheme orchestrated by Ferder. *Id*. ¶ 18.  In each instance, Ferder represented to the third party that Lugano already owned or intended to acquire a specific diamond—purportedly verified by a unique identification number—and expected to sell it at a

significant profit.  *Id*.  Ferder typically proposed that Lugano and the third party each contribute a percentage of the purchase price, with anticipated profits from the sale of the diamond to be shared pro rata with the third party.  *Id*.  Ferder promised that Lugano would return the third party's funds at any time, along with interest payments at rates substantially above market.  *Id*.  Ferder deliberately concealed the true nature of the Investment Contracts from Lugano by disguising them as part of Lugano's robust, legitimate retail business.  *Id*. ¶ 19.  He falsely claimed to Lugano personnel that these were ordinary sales—transactions in which Lugano sold diamonds outright to third parties—then manipulated Lugano's internal accounting records to characterize the incoming funds as revenue, rather than liabilities.  *Id*.  By doing so, Ferder misled internal stakeholders and auditors regarding Lugano's actual performance and valuation.  *Id*.

> **B.      Removal to and Motion Practice in the California District Court**

11.      On December 22, 2025, Lugano filed the Notice of Removal, removing the Action from the State Court to the California District Court.

12.      On January 27, 2026, Lugano filed a motion to transfer venue to the United States District Court for the District of Delaware (the "Venue Transfer Motion") and Ferder filed a motion to remand the Action to the State Court (the "Remand Motion").  The parties filed their oppositions and replies on February 18, 2026, and March 3, 2026, respectively.

**III.   The Stay Relief Motion, Ferder's Proof of Claim, and Other Fraud-Related Claims**

13.      Also on January 27, 2026, Ferder filed the Stay Relief Motion and a proof of claim (Claim No. 160, the "Proof of Claim") in the Chapter 11 Cases.

14.      Pursuant to the Stay Relief Motion, Ferder seeks to modify the automatic stay to assert Counterclaims against Lugano in the Action, as well as against other third parties.  *See* Stay Relief Motion ¶ 15.  Ferder's asserted claims against Lugano include, among others, defamation

per se, breach of contract, breach of the implied covenant of good faith and fair dealing, equitable indemnity, and California Labor Code claims (collectively, the "Counterclaims"). *Id.* In addition, Ferder asks the Court to grant relief from the automatic stay to allow him to assert any right of setoff or recoupment in connection with the Counterclaims against Lugano. *Id.* ¶¶ 57 & 64; *id.* Ex. A (Proposed Order).

15.   The Proof of Claim provides more detail about the Counterclaims that Ferder intends to pursue. It asserts claims against the Debtors exceeding $36 million, including:

- $6.4 million that Lugano allegedly received from Ferder in connection with certain Investment Contracts;
- $29,624,500 that Ferder allegedly paid to parties to Investment Contracts, as well as other parties, from his own funds;
- unliquidated claims relating to alleged wrongful termination and California law violations; and
- indemnification claims.[4]

Shafroth Decl. Ex. B (Proof of Claim).

16.   The Proof of Claim is not the only proof of claim implicated by Ferder's fraud. Approximately fifty claimants filed proofs of claim related to Investment Contracts, asserting claims against the Debtors in excess of $160 million.[5] Based on the Debtors' preliminary estimates, these claims and the Proof of Claim represent (approximately) more than half of the unsecured claims currently asserted against the Debtors (excluding any intercompany claims and CODI deficiency claim) on a consolidated basis.[6] In addition, the Debtors believe that Ferder's fraud may give rise to claims (or defenses to asserted claims) against other parties.

---

[4]   The Proof of Claim does not assert any claims for defamation or breach of an implied covenant of good faith and fair dealing.

[5]   This total includes claims related to "secured promissory notes" where the claimant purportedly was entitled to repayment of principal and a "profit share." *See* Shafroth Decl. Ex. C (*Complaint* in *Avina, LLC, et al. v. Lugano Diamonds & Jewelry, Inc., et al.* Case No. 30-2025-01495834-CU-FR-WJF (Cal. Super. Ct., Orange Cty., July 9, 2025)), ¶ 96 and Exs. A–N).

[6]   For purposes of these calculations, one claim filed against multiple Debtors is counted as a single claim.

**IV.     The Stipulation and Remand**

17.     After Ferder filed the Stay Relief Motion, Lugano and Ferder entered into a Court-approved stipulation (the "Stipulation") to adjourn the Stay Relief Motion pending a ruling by the California District Court [Docket No. 424].  Under the Stipulation, the Stay Relief Motion was adjourned until after the California District Court entered an order on the Venue Transfer Motion and the automatic stay was modified to let Ferder file, but not prosecute, the Counterclaims in the Action.

18.     On March 13, 2026, the California District Court granted the Remand Motion and denied the Venue Transfer Motion as moot (the "Remand Decision").  *See Lugano Diamonds & Jewelry, Inc. v. Ferder*, 2026 U.S. Dist. LEXIS 54416 (C.D. Cal. March 13, 2026).  The California District Court found that the equities favored remand under 28 U.S.C. § 1452(b) for the following reasons:

- The FAC "only alleges claims under California law." *Id.* at *7.

- The "parties entered an Employment Agreement which requires that '[al]l disputes relating to this [a]greement, [Defendant]'s employment, or other service with Company . . . shall be to be heard in the state or federal courts[']'" in Orange County. *Id*.

- "[J]udicial economy and efficient administration of justice weigh in favor of remanding [the] case" in light of Ferder having cited "eight other related cases pending in" the State Court, leading the District Court to conclude that remanding the Action back to the State Court "would avoid piecemeal litigation . . . ." *Id*. at *8.

- "Plaintiff alleges California state law claims related to Defendant's conduct as the CEO of Plaintiff which is not necessarily implicated by the Proof of Claim seeking reimbursements from Plaintiff." *Id*. at *9.

- "[A] party's jury trial right weighs strongly in favor of remand." *Id*. at *10.

7

**ARGUMENT**

**I.     The Court should deny the Stay Relief Motion.**

  **A.     The three-pronged balancing test weighs against granting relief from the automatic stay.**

19.     To obtain relief from the automatic stay, Ferder must make a *prima facie* showing that he is entitled to such relief and must demonstrate "cause" to warrant such relief.  *In re Aleris Int'l, Inc.*, 456 B.R. 35, 46 (Bankr. D. Del. 2011).  Cause is not defined in the Bankruptcy Code,[7] and courts should consider the "totality of circumstances" in making a determination that cause exists to grant relief from the automatic stay.  *Id.* at 47.  Ferder must show that the "balance of hardships from not obtaining stay relief tips significantly in [his] favor."  *Id.* (internal quotation marks omitted).

20.     Courts in this District have applied a three-pronged balancing test in determining whether to grant relief from the automatic stay, evaluating:

> (1) whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit, (2) whether the hardship to the nonbankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and (3) the probability of the creditor prevailing on the merits.

*Id.; Rexene*, 141 B.R. at 576.  The balancing of these factors weighs heavily against lifting the automatic stay here.

    **1.     Allowing the Action to proceed outside this Court would prejudice the Debtors.**

      **a.     The Counterclaims are intricately intertwined with the central issues in the Chapter 11 Cases.**

21.     The Stay Relief Motion is not the type of garden-variety motion that one generally sees in chapter 11 cases.  Unlike a typical motion for relief from stay, Ferder's motion implicates

---

[7]     All references to the "Bankruptcy Code" refer to title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

the allowance of third-party claims representing more than half of the currently asserted unsecured claims (other than deficiency and intercompany claims) and potentially many millions of dollars in actions against third parties.

22.    The facts underlying the Counterclaims asserted by Ferder are at the heart of the Chapter 11 Cases—namely, Ferder's fraud—and likely will determine what, if any, recoveries unsecured creditors may receive beyond recoveries from the Action.  *First*, the presence or absence of the fraud, how Ferder implemented his scheme, and payments made or received by Ferder will have consequences for the Investment Contract-related claims and whether actions can be brought against parties to Investment Contracts.   *Second*, the facts underlying the fraud and the Counterclaims may have ramifications for any potential litigation against CODI that may be brought in accordance with the interim DIP order and cash collateral order [Docket Nos. 66 & 364].  CODI's asserted claims against the Debtors' estates are approximately two-thirds of the total asserted claims (other than intercompany claims).  *Third*, other claimants or transferees of claimants may be affected as well.

23.    Moreover, the Proof of Claim itself is material, representing more than 10% of the currently estimated unsecured claims asserted in the Chapter 11 Cases.  If Lugano prevails in establishing Ferder's fraud, his amorphous defamation claim likely fails, as do many—if not all— of the claims asserted in the Proof of Claim.  Furthermore, establishing Ferder's fraud may result in the disallowance or subordination of his claims against the estates, including pursuant to certain bankruptcy-related defenses available under section 502(b) and (d) of the Bankruptcy Code, as well as recharacterization and equitable subordination.

24.     Thus, the factual disputes at issue in litigating the Counterclaims and Proof of Claim may very well determine the extent to which there are any unencumbered assets available

for distributions to unsecured creditors, the amount of those assets, and the size of the unsecured claims pool.

           **b.**        **Granting relief from the automatic stay may preclude the Debtors from asserting certain defenses to the Counterclaims.**

25.     Ferder seeks stay relief to prosecute all Counterclaims in the Action, whether or not those Counterclaims are compulsory. *See* Stay Relief Motion, Ex. A (*Proposed Order*) ¶ 2. But granting such relief would potentially require the Debtors to litigate core bankruptcy issues in the State Court.

26.     Worse yet, lifting the stay might cause the Debtors to lose their ability to raise defenses to Ferder's Counterclaims. While the Debtors do not concede that the remedies, defenses, and claims objections fall within this Court's exclusive jurisdiction, if a determination is made that this Court does in fact have exclusive jurisdiction over those issues, the Debtors would be precluded from bringing them in the State Court. *See*, *e.g., Garner v. Knoll, Inc. (In re Tusa-Expo Holdings, Inc.),* Nos. 08-45057-dml-7, 13-4087-DML, 2014 Bankr. LEXIS 4326, at *13 (Bankr. N.D. Tex. Oct. 8, 2014) (stating that the bankruptcy court has exclusive jurisdiction over equitable subordination actions); *Logan v. Credit Gen. Ins. Co. (In re PRS Ins. Grp., Inc.),* 335 B.R. 77, 84 (Bankr. D. Del. 2005) (stating that "the allowance and disallowance of claims . . . fall within the exclusive jurisdiction of the bankruptcy courts"). Under those circumstances, the Debtors could lose potential remedies, defenses, and claims objections to the extent that, e.g., a setoff is allowed by a nonbankruptcy court. This is the case even though no claims objection deadline has been set by this Court and the statute of limitations for certain additional claims against Ferder does not expire until November 2027 at the earliest.

27.     On the same day he filed the Stay Relief Motion, Ferder filed his Proof of Claim. Ferder's filing of the Proof of Claim in the Chapter 11 Cases invoked the claims allowance process,

rendering "core" all of the counterclaims that bear directly on the claims-allowance process.  *See In re Exide Techs.*, 544 F.3d 196, 214 (3d Cir. 2008); *see also Picard v. Greiff*, 617 B.R. 198, 204-05 (S.D.N.Y. 2020).

28.     Further, by seeking to assert setoff claims against Lugano, Ferder is invoking this Court's core jurisdiction.  *Souther v. Bacon Cty. Health Servs. (In re Matrix Imaging Servs.)*, 479 B.R. 182, 191 (Bankr. S.D. Ga. 2012) ("By pleading setoff, Bacon County has asserted a 'right to payment'— a 'claim' under the Bankruptcy Code.  The assertion of a claim invokes the claims allowance process, which is a core proceeding under 28 U.S.C. § 157(b)(2)(B).")[8]

29.     For Ferder to be able to assert setoff, his counterclaims and setoff rights must be enforceable under nonbankruptcy law and allowable under the Bankruptcy Code.  If Ferder does not have a claim, or if the claim is disallowed, he cannot assert a right of setoff.  *See* 11 U.S.C. § 553(a)(1).  The Debtors have numerous bankruptcy-related defenses to the Proof of Claim (in addition to nonbankruptcy law defenses), including those detailed below.

30.     *First*, the Proof of Claim asserts that Ferder paid to Lugano or third parties on behalf of Lugano more than $36 million.  But the Proof of Claim attaches no loan documents or other evidence that these asserted cash infusions (if they exist) are a "debt" that is not subject to recharacterization.  Recharacterization, like equitable subordination, is "grounded in [the] bankruptcy courts' equitable authority to ensure that substance will not give way to form, that technical considerations will not prevent substantial justice from being done."  *Cohen v. KB Mezzanine Fund II, LP (In re SubMicron Sys. Corp.)*, 432 F.3d 448, 454 (3d Cir. 2006) (internal quotation marks omitted).  Recharacterization is an equitable remedy that focuses on "whether a

---

[8]   There is no need for the Court to determine at this time the extent to which Lugano's claims in the Action may be rendered "core" as a result of the assertion of any right of setoff.

debt actually exists." *Id.* (internal quotation marks omitted).  If any obligations to Ferder are recharacterized, there will be no debt, and thus no claim, that can be set off.  *See Cohen v. Sav. Bldg. & Loan Co. (In re Bevill, Bresler & Schulman Asset Mgmt. Corp.)*, 896, F.2d 54, 57 (3d Cir. 1990) ("The right of setoff depends on the existence of mutual debts and claims between creditor and debtor.").  Because recharacterization is based on similar equitable principles as equitable subordination, bankruptcy-based recharacterization defenses may be unavailable in the State Court.

31.    *Second*, Ferder's claim may be disallowed, in whole or in part, pursuant to sections 502(b)(4), 502(b)(7), 502(b)(9), and/or 502(d) of the Bankruptcy Code.[9]   Since Ferder was an insider of the Debtors,[10] pursuant to section 502(b)(4) of the Bankruptcy Code, his claims must be disallowed to the extent that the claims exceed the reasonable value of the services he rendered.  Under section 502(b)(7) of the Bankruptcy Code, claims based on the termination of his employment are limited to one year's compensation.  Section 502(b)(9) of the Bankruptcy Code

---

[9]    Section 502(b) of the Bankruptcy Code disallows the amount of a claim to the extent that "(4) if such claim is for services of an insider . . . such claim exceeds the reasonable value of such services; . . . (7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds . . . the compensation provided by such contract, without acceleration, for one year . . . plus . . . any unpaid compensation due under such contract; or "(9) proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) or under the Federal Rules of Bankruptcy Procedure, except" in certain cases not applicable here.  11 U.S.C. § 502(b)(4), (7), and (9).

Section 502(d) of the Bankruptcy Code provides that "the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable."  11 U.S.C. § 502(d).

[10]    According to the bankruptcy petition of Simba IL Holdings, LLC ("Simba"), Ferder, together with his wife, own 99% of Simba as community property.  Shafroth Decl. Ex. D (Voluntary Pet., *In re Simba IL Holdings, LLC*, Case No. 8:25-bk-12616-MH (C.D. Cal. Sept. 16, 2025) [Docket No. 1]) at 16.  Simba, in turn, owns more than 20% of Lugano Holding, Inc. ("Lugano Holding") stock.  First Day Decl. ¶ 28.  Accordingly, Ferder is an affiliate of Lugano Holding and thus an insider of Lugano Holding.  11 U.S.C. §§ 101(2), 101(31)(E).  Ferder is an insider of Lugano Diamonds & Jewelry Inc. because he is an insider of Lugano Holding, and Lugano Holding is an affiliate of Lugano Diamonds & Jewelry Inc.  11 U.S.C. § 101(31)(E); First Day Decl. ¶ 24 ("Lugano Holding is the sole shareholder of Lugano Buyer, and Lugano Buyer is the sole shareholder of Lugano Diamonds.").

may require the disallowance of his vague Counterclaims asserted in the Stay Relief Motion (e.g., defamation) that were not set forth in, and not fairly encompassed by, the Proof of Claim. *See In re Maxus Energy Corp.,* Case No. 16-11501 (CTG), 2023 Bankr. LEXIS 2117, at \*13 (Bankr. D. Del. Aug. 28, 2023). And section 502(d) of the Bankruptcy Code disallows claims by entities that do not return property of the estate, as well as voidable transfers; here, the Debtors' books and records show Ferder holding more than $100,000 of property and receiving payments in excess of $1 million within one year of the Petition Date.[11]   Additionally, the Debtors' continuing investigation may uncover transfers of property that may be avoidable pursuant to chapter 5 of the Bankruptcy Code. Thus, Ferder's claims cannot be allowed until those potential objections are resolved.

32.     The allowance or disallowance of a claim (rather than liquidation of a claim) against the Debtors' estates is within the exclusive jurisdiction of this Court. If setoff is allowed by the State Court, however, the Debtors' path to assert defenses under section 553 of the Bankruptcy Code is unclear and likely subject to further litigation.

33.     *Third*, Ferder's claims may be equitably subordinated. Claims may be equitably subordinated if (1) the claimant "engaged in some type of inequitable conduct;" (2) the "misconduct . . . resulted in injury to the creditors of the [debtor] or conferred an unfair advantage on the claimant;" and (3) "equitable subordination of the claim [is not] inconsistent with the provisions of the Bankruptcy Code." *Shubert v. Lucent Techs. Inc. (In re Winstar Commc'ns, Inc.)*, 554 F.3d 382, 411 (3d Cir. 2009) (quoting *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 699-700 (5th Cir. 1977)).

---

[11]     *See* Lugano Diamonds & Jewelry Inc., Case No. 25-12055, Statement of Financial Affairs ("SOFA"), SOFA 4 and SOFA 21 [Docket No. 207-1].

34.     *Finally*, even if Ferder does have a right of setoff, the Court must determine the extent to which section 553 of the Bankruptcy Code would permit the equitable remedy of setoff in light of Ferder's inequitable conduct.  *See., e.g., Hi. Airlines, Inc. v. United States (In re HAL, Inc.)*, 122 F.3d 851, 854 (9th Cir. 1997) ("We have held that setoff will not be permitted when it would be inequitable or contrary to public policy to do so." (internal quotation marks omitted)).[12]

35.     Because many of the Debtors' defenses to Ferder's claim and assertion of setoff may be subject to the exclusive jurisdiction of this Court, the Debtors may lose the ability to assert such defenses if the Stay Relief Motion is granted and Ferder is permitted to pursue his expansive Counterclaims in the State Court.  For example, if, in the State Court, (1) Lugano prevails on its claims against Ferder, (2) Ferder prevails on a counterclaim that he provided $6.4 million to Lugano, (3) the State Court determines that recharacterization defenses can only be brought in this Court, and (4) the State Court reduces the judgment in Lugano's favor by that amount, Lugano may have lost its recharacterization defense or may need to navigate a procedural and jurisdictional quagmire to unwind the setoff.

36.     Consequently, for all of the foregoing reasons, the potential for "great prejudice to either the bankrupt estate or the debtor" resulting from continuation of the civil suit exists. *In re Aleris Int'l, Inc*., 456 B.R. at 47.

### 2.     Any hardship to Ferder is self-imposed.

37.     Ferder asserts that he will be harmed if the automatic stay is not modified because he would be "unable to fully defend himself" in the Action and assert claims against Lugano (and others).  That is not the case.  Ferder can fully defend himself on the merits in the Action.  What

---

[12]   Similarly, the Court may need to consider the Debtors' ability to set off claims they have against Ferder against any claims that Feder may be determined to have against the Debtors under section 558 of the Bankruptcy Code, and the Debtors reserve all rights with respect thereto.

he cannot do is prosecute any Counterclaim or setoff in the State Court. Any Counterclaim and setoff can be—and has been—asserted in this Court, subject to the right of parties in interest to object or to commence adversary proceedings in response to the claims asserted.

38.     Ferder also argues that relief from the automatic stay should be granted because he could forever lose the ability to assert the Counterclaims under California's entire controversy doctrine. As many of the Counterclaims are subject to the Proof of Claim, it is unclear that such doctrine would preclude his ability to assert them in this Court. *See In re Promise Healthcare Grp., LLC*, 130 F.4th 56, 64 (3d Cir. 2025). In any event, the Stipulation permits Ferder to file the Counterclaims in the Action and, regardless, those Counterclaims can still be addressed in the claims allowance process in this Court.

39.     For these reasons, any hardship to Ferder by maintenance of the stay does not "considerably outweigh[] the hardship to" Lugano. *In re Aleris Int'l, Inc.*, 456 B.R. at 47. This factor therefore favors Lugano.

### 3.     Ferder is unlikely to prevail on the merits.

40.     While there has been no discovery in the Action, Lugano has been assisting with the internal investigation of Ferder's fraud and is confident that it will prevail on the merits of its claims against Ferder.

41.     As part of CODI's acquisition of a majority interest in Lugano, Lugano agreed not to procure outside investments or financing without CODI's approval. Shafroth Declaration, Ex. A (FAC) ¶ 15. Yet, Ferder entered myriad unauthorized Investment Contracts, which he alone signed. Ferder has never asserted that he obtained authorization from CODI to enter these contracts—nor could he.

42.     Moreover, Ferder misrepresented the Investment Contracts as revenue-generating sales rather than liability-generating financing arrangements, manipulating Lugano's internal

accounting records and misleading internal stakeholders and the outside auditors regarding Lugano's actual revenues, profits, and valuation. Ferder supported these misrepresentations with forged invoices, sham shipments, and other inaccurate documentation.

43.    Once his scheme was discovered, Ferder, who was in Israel at the time, preemptively resigned.[13]  Ferder also moved quickly to attempt to liquidate his assets and move them out of the country, out of the reach of third parties who sought orders granting liens on his property to satisfy the obligations under the Investment Contracts.

44.    In light of the above, this factor weighs in favor of denying the Stay Relief Motion.

**B.    The *Sonnax* Factors also weigh in favor of denying Ferder's request for stay relief.**

45.    In addition to the three-pronged balancing test, courts in this District have considered the following 12 *Sonnax* Factors in evaluating whether to grant relief from the automatic stay:

> 1) whether relief would result in a partial or complete resolution of the issues;
>
> 2) lack of any connection with or interference with the bankruptcy case;
>
> 3) whether the other proceeding involves the debtor as a fiduciary;
>
> 4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
>
> 5) whether the debtor's insurer has assumed full responsibility for defending it;
>
> 6) whether the action primarily involves third parties;
>
> 7) whether litigation in another forum would prejudice the interests of other creditors;

---

[13]    To the best of the Debtors' knowledge, Ferder remains in Israel.

8) whether the judgment claim arising from the other action is subject to equitable subordination;

9) whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor;

10) the interests of judicial economy and the expeditious and economical resolution of litigation;

11) whether the parties are ready for trial in the other proceeding; and

12) impact of the stay on the parties and the balance of the harms.

*See, e.g., In re SCO Group, Inc.*, 395 B.R. 852, 857 (Bankr. D. Del. 2007) (citing *Sonnax*, 907 F.2d at 1287).

46.     The *Sonnax* Factors established by the Second Circuit, as adopted by some courts within the Third Circuit, guide courts in exercising discretion to permit litigation to go forward in another forum.  The *Sonnax* Factors on balance weigh  against granting relief from the automatic stay.

### 1.     Granting stay relief would not result in a complete resolution of the issues.

47.     Granting Ferder's Stay Relief Motion would not completely resolve the issues between the parties because there are bankruptcy-related objections and defenses available to Lugano that are appropriately (if not exclusively) brought before this Court through the claims allowance process, such as those available under section 502(b) and (d) of the Bankruptcy Code, in addition to recharacterization, and equitable subordination.  *See supra* Section I.A.1.b.[14]  For these reasons, this factor weighs in favor of denying Ferder's request for stay relief.

---

[14]   To the extent that, as Ferder suggests, the other state court actions set forth in footnote 2 of the Stay Relief Motion are relevant, those claims will also be resolved through the claims allowance process.  Each of those plaintiffs (or their assignees) filed a proof of claim in the Chapter 11 Cases, to which Lugano may have valid objections that might only be viable if heard by this Court.  For example, with respect to the claims premised on an Investment Contract, those claims may be in the nature of an equity interest or otherwise subject to subordination under section 510 of the Bankruptcy Code, which are appropriately, if not exclusively, within the purview of this Court.

*(cont'd)*

### 2.    The underlying facts are central to the Chapter 11 Cases.

48.    As discussed above in Section I.A.1.a, the Debtors expect that the facts underlying the Counterclaims are applicable to a significant percentage of the dollar amount of asserted claims against the Debtors and may very well determine whether there are any unencumbered assets available for distributions to unsecured creditors, as well as the size of the unsecured claims pool. For these reasons, this factor favors denial of the Stay Relief Motion.

### 3.    The Counterclaims do not involve the Debtor as a fiduciary.

49.    Because the Action does not involve Lugano as a fiduciary, this factor is inapplicable.

### 4.    This Court is the proper tribunal to hear the Counterclaims.

50.    The Counterclaims have not yet been filed, and the State Court is not a specialized tribunal. Further, given the bankruptcy-specific defenses that Lugano anticipates asserting against the Counterclaims, this Court has greater expertise with those matters and, indeed, may be the only appropriate forum to bring them. Thus, this factor also favors denial of the Stay Relief Motion.

### 5.    The Counterclaims have not yet been filed, so Lugano has not tendered those claims to its insurer.

51.    Because Ferder has not yet filed his Counterclaims, Lugano has not tendered those claims to its insurer. Yet, while Lugano does not have definitive information regarding whether its insurer will agree to assume full responsibility for defending Lugano against the Counterclaims, Lugano has filed an adversary proceeding against its insurer for failure to fully defend it against

---

Further, it makes little sense for those cases to be heard outside of this Court, when dozens of other Investment Contract-related claims are to be resolved in this Court.

the lawsuits filed against Lugano as a result of Ferder's fraud.[15]  Accordingly, to the extent that this factor is applicable, it weighs in favor of denial of the Relief Stay Motion.

### 6. The Counterclaims primarily involve Lugano and Ferder.

52.    While the Counterclaims are only vaguely described and, other than the Proof of Claim, Lugano has no information about Ferder's asserted damages, the Counterclaims against non-Debtor parties are likely related to Ferder's fraudulent activities and therefore to the Chapter 11 Cases.  As the Third Circuit has emphasized, "the proceeding need not necessarily be against the debtor or against the debtor's property" to be related to the bankruptcy.  *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).  "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action" and if it "in any way impacts upon the handling and administration of the bankruptcy estate."  *Id*.  Consequently, this factor also strongly favors denying the Stay Relief Motion.

### 7. Allowing the Counterclaims to proceed in the State Court would prejudice the interests of other creditors.

53.    The Counterclaims represent the second largest unsecured claim (other than any CODI deficiency claim) asserted against Lugano.  And various defenses to the Counterclaims will need to be litigated in this Court.  Forcing Lugano to litigate the Counterclaims in the State Court and bring bankruptcy defenses in this Court will significantly increase litigation expenses, unnecessarily depleting estate resources and harming other creditors.

54.    Moreover, if the Debtors are unable to assert claim disallowance defenses against Ferder's Counterclaims in the State Court and such court allows a setoff (e.g., because it does not consider recharacterization and bankruptcy-related claims objections), the Debtors may lose the

---

15    *See Lugano Diamonds & Jewelry Inc. v. Travelers Casualty and Surety Co. of Am. (In re Lugano Diamonds & Jewelry Inc.)*, Adv. Pro. No. 26-50036 (BLS), Case No. 25-12055 (BLS) (Bankr. D. Del.).

ability to assert such bankruptcy-related defenses in this Court.  At the very least, the Debtors would be required to expend potentially significant resources to address an inappropriate ruling regarding setoff.  Furthermore, to the extent that the foregoing issues result in a negative resolution for the Debtors, that outcome may negatively impact the Debtors' claims and defenses against certain other creditors (e.g., those who are parties to Investment Contracts).  This in turn may affect the recoveries of all creditors.

55.    For these reasons, this factor also strongly weighs in favor of denying Ferder's request for stay relief.

**8.    Ferder's claims are all subject to equitable subordination.**

56.    Given the extensive fraud allegations against Ferder—by both the Debtors and numerous parties to the Investment Contracts—all of Ferder's claims are subject to equitable subordination under section 510(c)(1) of the Bankruptcy Code.

57.    While Ferder asserts that he is not seeking to enforce any monetary judgment against the Debtors—only to liquidate his Counterclaims—he acknowledges that the setoff of any such judgment would reduce the Debtors' recovery.  Allowing his Counterclaims to proceed in the State Court therefore would require the Debtors to commence a separate equitable subordination action in this Court.  And this Court, not the State Court, should determine whether the equitable subordination of a claim precludes setoff.

58.    This factor therefore also favors denial of the Stay Relief Motion.

**9.    Ferder asserts that he is not seeking relief from the stay to enforce a judgment or otherwise obtain an avoidable judicial lien.**

59.    In light of Ferder's position, this factor is inapplicable.

20

**10.    Adjudicating the Counterclaims in this Court would serve the interests of judicial economy and the expeditious and economical resolution of the litigation.**

60.    As this Court has emphasized, "Congress has created a federal bankruptcy system which is designed to provide one forum for adjudicating almost all disputes arising in or out of a particular case." *Zazzali v. 1031 Exch. Group LLC (In re DBSI, Inc.)*, 467 B.R. 309, 316 (Bankr. Del. 2012) (internal quotation marks omitted).  This Court is the most efficient tribunal to hear all of the Counterclaims and the Debtors' defenses thereto.

61.    Ferder's prosecution of the Counterclaims and his purported setoff right and Lugano's bankruptcy-related defenses mean the Action will not involve purely state law claims. The State Court may not have jurisdiction to resolve the bankruptcy-related matters between Lugano and Ferder, or between Ferder and third parties, to the extent that they are related to the Debtors' estates, thus requiring Lugano to litigate those issues before this Court.  In addition, separating the Counterclaims from the Debtors' bankruptcy-related defenses may give rise to a host of complex jurisdictional and appellate issues.  Exploring these academic questions is not an efficient use of Lugano's funds and is likely to deplete recoveries available to the Debtors' legitimate creditors.

62.    Moreover, Ferder states that the Action "is one of eight pending actions in State Court involving materially the same core set of facts and which arise out of certain [Investment Contracts] that are at issue in the [Action]."  Stay Relief Motion at ¶ 59.  Yet, those cases are stayed as to Lugano, and those plaintiffs' claims against Lugano should ultimately be decided by this Court through the claims allowance process.  In any event, there are approximately 40 other Investment Contract claims that have been filed in this Court and potentially estate causes of action against various parties.  Indeed, most of the claims against the Debtors' estates (by amount) likely will be affected by litigation that relates to Ferder's fraud.

21

63.     For these reasons, this factor also favors denial of the Relief Stay Motion.

**11.     The Counterclaims are still at the early pleading stage.**

64.     Far from being ready for trial, Ferder has not yet filed an answer in the Action or asserted the Counterclaims. No discovery has been conducted, and the only motion practice has been the filing of the Venue Transfer and Remand Motions.  This factor therefore  favors the denial of the Motion.  *See In re Chan*, 355 B.R. 494, 501-02 (Bankr. E.D. Pa. 2006) (declining to lift the stay where the state court litigation had not progressed to any substantial degree and would not materially expedite the resolution of the bankruptcy case.).

**12.     The balance of the harms favor denying the Stay Relief Motion, as granting the requested relief would significantly prejudice Lugano, while denying it will not prejudice Ferder.**

65.     As discussed above in Sections I.A.1 & 2, Lugano faces significantly more potential harm than Ferder, as it would likely lose available relief, objections, and defenses if the Counterclaims were adjudicated in the State Court.  In contrast, Ferder will suffer no such harms if the Counterclaims are heard here, as this Court has jurisdiction to resolve all of the issues between the parties.  Accordingly, this factor likewise favors denial of the Stay Relief Motion.

**II.     Contrary to the findings of the Remand Order, this Court should adjudicate the Counterclaims.**

66.     Many of the California District Court's findings supporting the remand to State Court are inconsistent with litigating the Proof of Claim (or any Counterclaims) in the State Court.

67.     *First*, the California District Court believed that Lugano's state claims are not necessarily implicated by the Proof of Claim "seeking reimbursement from" Lugano.  Had the Counterclaims been asserted, the Proof of Claim would have been directly implicated in the Action.

22

68. *Second*, the California District Court noted that the FAC only alleged claims under California law.  However, defenses to the Proof of Claim (and any Counterclaims) and Ferder's alleged set off rights will necessarily involve bankruptcy law considerations (e.g., sections 502(b), 502(d), 510(c), and 553 of the Bankruptcy Code).

69. *Third*, the California District Court noted that the remand would avoid piecemeal litigation because there are eight other pending cases in Orange County.  The opposite is true. Those cases are stayed and the plaintiffs have filed proofs of claim in the Chapter 11 Cases, meaning that their claims will likely be adjudicated in this Court.  Moreover, those claims share common issues with approximately 40 other claims filed in this Court.  Accordingly, the issues common to all of these claims can most efficiently be adjudicated here, in a single omnibus objection.  *See* Del. Bankr. L.R. 3007-1.

70. *Fourth*, the California District Court noted that a party's right to a jury trial weighs strongly in favor of remand.  But here, Ferder filed the Proof of Claim, vitiating his right to a jury trial.

71. Accordingly, the Counterclaims, which are subsumed in the Proof of Claim, should be adjudicated in this Court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court deny the Stay Relief Motion and grant to the Debtors such other relief as is appropriate.

*[Remainder of Page Intentionally Left Blank]*

Dated: March 30, 2026
      Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Shella Borovinskaya*
Edmon L. Morton (Del. No. 3856)
Sean M. Beach (Del. No. 4070)
Shella Borovinskaya (Del. No. 6758)
Brynna M. Gaffney (Del. No. 7402)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  emorton@ycst.com
      sbeach@ycst.com
      sborovinskaya@ycst.com
      bgaffney@ycst.com


-and-

**KELLER BENVENUTTI KIM LLP**
Tobias S. Keller (admitted *pro hac vice*)
Traci L. Shafroth (admitted *pro hac vice*)
Scott Friedman (admitted *pro hac vice*)
101 Montgomery Street, Suite 1950
San Francisco, California 94104
Telephone:  (415) 496-6723
Facsimile:  (650) 636-9251
Email:  tkeller@kbkllp.com
      tshafroth@kbkllp.com
      sfriedman@kbkllp.com

*Attorneys for Debtors*
*and Debtors-in-Possession*