**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Lugano Diamonds & Jewelry Inc., *et al.*,[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 25-12055 (BLS)<br><br>(Jointly Administered)<br><br>**Re: Docket No. 312**<br>**Hearing Date: June 22, 2026 at 10:00 a.m. ET** |

**OMNIBUS REPLY OF MORDECHAI FERDER, INDIVIDUALLY AND IN HIS CAPACITY AS TRUSTEE OF THE HAIM FAMILY TRUST, TO DEBTORS' OBJECTION AND JOINDERS IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

Mordechai Ferder, Individually and in his capacity as trustee of the Haim Family Trust ("**Ferder**"), by and through undersigned counsel, respectfully submits this Omnibus Reply in further support of Freder's Motion For Relief from the Automatic Stay [Docket No. 312] ("**Stay Relief Motion**") and in reply to the Debtors' Objection [Docket No. 450] ("**Objection**"), the Joinder of the Official Committee of Unsecured Creditors [Dkt. No. 452] ("**Committee Joinder**"), and the Joinder of Compass Group Diversified Holdings LLC ("**Compass**") [Docket No. 459] (the "**Compass Joinder**," and together with the Objection and Committee Joinder, the "**Objections**"). In support of this Omnibus Reply, Ferder respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.      The Debtors' Objection and the Joinders fundamentally mischaracterize the nature and scope of the Stay Relief Motion. Ferder does not seek to raid the bankruptcy estate or circumvent this Court's jurisdiction over claims administration. Ferder seeks only to defend himself—fully and fairly—in litigation that the Debtors themselves initiated against him. In fact, it is not entirely clear

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' U.S. federal tax identification number, to the extent applicable, are as follows: Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc. (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308). The notice address for the Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, CA 92660.

that stay relief is necessary to assert defensive counterclaims or claims against third parties. Ferder filed his Motion out of an abundance of caution. The automatic stay was never intended to serve as a sword enabling a debtor to prosecute affirmative claims against a defendant while simultaneously precluding that defendant from asserting compulsory counterclaims.  Yet that is precisely what the Debtors ask this Court to sanction.

2.      The Debtors commenced the State Court Action against Ferder in the Superior Court of the State of California, County of Orange, alleging fraud, concealment, breach of fiduciary duty, and other California state law claims.  The Debtors chose the forum.  The Debtors selected the battlefield.  Now, having filed this bankruptcy case after initiating that litigation, the Debtors seek to use the automatic stay as a litigation weapon—to prevent Ferder from filing compulsory counterclaims that, under California law, will be lost forever if not asserted in the pending action.

3.      The situation here "warrants a very thoughtful scrutiny." *In re Saxon Indus., Inc.*, 43 B.R. 64, 67 (S.D.N.Y. 1984) (quoting *Matter of Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1168 (2d Cir. 1979)).  Where a debtor "brings a lawsuit and then invokes the automatic stay to prevent the defendant from asserting counterclaims," courts have consistently found it "inequitable to prevent the defendant from pressing counterclaims." *Masterwear Corp. v. Bernard*, 6 Misc. 3d 1006(A) (N.Y. Sup. Ct. 2004) (citing *In re Saxon Indus.*, 43 B.R. at 67).

4.      The Debtors' primary argument—that the Counterclaims are "intricately intertwined" with the Chapter 11 Cases—ignores the fundamental distinction between liquidating a claim and enforcing a judgment.  It similarly ignores that this very argument was already rejected by the District Court when it granted Ferder's motion for remand of the very action that the Debtors removed that is now at issue in this Motion.  Ferder is not seeking stay relief to collect against the estate.  Ferder seeks only to adjudicate the parties' respective rights in the forum that the Debtors chose, so that the claims may be liquidated, leaving enforcement and collection to this Court's jurisdiction and the claims allowance process.

5.      The Committee Joinder resorts to inflammatory rhetoric, labeling Ferder an "unrepentant fraudster" and one who "absconded to Israel."  These are nothing more than hyperbole

and unproven allegations. Ferder vigorously disputes the allegations and the financing arrangements at issue benefited Lugano.  This Court cannot assume fraud will be established.  *In re SN Liquidation, Inc.*, 388 B.R. 579, 584 n. 5 (Bankr. D. Del. 2008) ("For the present, the Court cannot assume Icon will establish fraud and therefore cannot assume that Debtors do not have indemnification obligations").

## ARGUMENT

### I. THE THREE-PRONGED BALANCING TEST STRONGLY FAVORS GRANTING RELIEF FROM THE AUTOMATIC STAY.

6.      The standard for "cause" under § 362(d)(1) is "a flexible one" that requires courts to engage in a "case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007).  The three-pronged balancing test evaluates: (1) whether any great prejudice to either the bankrupt estate or the debtor will result from lifting the stay; (2) whether the hardship to the nonbankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and (3) the probability of the creditor prevailing on the merits.  *Izzarelli v. Rexene (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992).  Each factor weighs heavily in Ferder's favor.

### A. The Debtors Will Not Suffer Great Prejudice from Continuation of the State Court Action That They Commenced.

7.      The Debtors' assertions of prejudice ring hollow because Lugano is the plaintiff in the State Court Action.  The Debtors chose to initiate this litigation.  The Debtors chose the California state forum. The Debtors are actively prosecuting their claims against Ferder.  Under these circumstances, the Debtors cannot credibly claim that permitting Ferder to assert counterclaims in the same action will cause "great prejudice" to the estate.  As the court held in *In re Pro Football Weekly, Inc.*, 60 B.R. 824, 826 (N.D. Ill. 1986), the court "does not foresee any hardship" on the debtor where the debtor's action against defendant was not affected by the automatic stay and would continue regardless.  The court found no hardship to debtor "if all these claims are adjudicated in one proceeding." *Id.*

3

8.      The Debtors' argument that granting stay relief would require them to litigate "core bankruptcy issues" in the State Court misapprehends the scope of the relief sought.  Ferder seeks to file and prosecute compulsory counterclaims—that is, to liquidate his claims so they may be quantified.  Ferder is not seeking stay relief to collect against the estate or to enforce any judgment against the Debtors. Any determination by this Court regarding claim allowance, disallowance, equitable subordination, or recharacterization would remain within this Court's exclusive jurisdiction and would not be affected by the adjudication of the underlying merits of the parties' claims in the State Court.

9.      The Debtors assert that their "bankruptcy-related defenses"—recharacterization, equitable subordination, and disallowance under sections 502(b) and 502(d) of the Bankruptcy Code—might be lost if the Counterclaims are prosecuted in the State Court.  This argument conflates claim liquidation with claim allowance.  The State Court will adjudicate the merits of the parties' respective claims under California law.  This Court will determine whether, and to what extent, any resulting claim is allowable, subject to subordination, or otherwise limited by the Bankruptcy Code. There is no conflict.  Courts routinely lift the stay to allow claims to be liquidated in non-bankruptcy forums, while reserving to the bankruptcy court the determination of claim allowance and distribution.  *See In re Rexene Prods. Co.*, 141 B.R. at 576-78 (granting relief to allow claim liquidation in another forum while reserving enforcement to the bankruptcy court).

10.      Moreover, the Debtors' purported concern about losing their ability to assert bankruptcy-related defenses is speculative and premature.  No claims objection deadline has been set.  The Debtors acknowledge that the statute of limitations for certain claims against Ferder does not expire until November 2027 at the earliest.  The Debtors will have ample opportunity to assert any bankruptcy-related objections to Ferder's claim through the claims allowance process in this Court, regardless of whether the underlying factual disputes are adjudicated in the State Court.

**B. The Hardship to Ferder Considerably Outweighs Any Hardship to the Debtors.**

11.      The hardship to Ferder from maintenance of the stay is severe and immediate.  Under California law, cross-complaints (the California equivalent of counterclaims) are mandatory for any

4

related cause of action that arises out of the same transaction, occurrence, or series of transactions or occurrences as the original cause of action and is in existence at the time of the original complaint. Cal. Civ. Proc. Code §§ 428.10, 428.30(a). If Ferder does not file his compulsory cross-complaint, he may forever lose the ability to assert those claims under California's entire controversy doctrine. The Debtors' suggestion that the Stipulation permitting Ferder to file (but not prosecute) the Counterclaims avoids this problem is illusory—a filed but unprosecuted cross-complaint that cannot be adjudicated provides Ferder no meaningful relief.

12.    Ferder has no fewer than eight affirmative claims against Lugano and other parties, including claims for defamation per se, breach of contract, intentional interference with contractual relations, intentional interference with prospective economic advantage, breach of fiduciary duty, equitable indemnity, California Labor Code violations, and declaratory relief. These claims arise out of the same transactions and occurrences as the Debtors' claims against Ferder and are compulsory under California law. Additionally, Ferder may be irreparable harmed by denial of the Motion with respect to the equitable indemnity claim in particular by virtue of Section 502(e)(1)(B) of the Bankruptcy Code. If these defensive claims are not asserted in the State Court Action, they could be lost forever.

13.    The Debtors assert that Ferder "can fully defend himself on the merits in the Action" and that what he "cannot do is prosecute any Counterclaim or setoff in the State Court." But this ignores the fundamental nature of compulsory counterclaims. In California, affirmative relief may not be claimed in the answer; it must be asserted by cross-complaint. Cal. Civ. Proc. Code § 428.50(a). A defendant who fails to assert related claims in the pending action may be barred from ever bringing those claims. Thus, the Debtors' position would permanently extinguish Ferder's affirmative claims, not merely delay them.

14.    By contrast, the Debtors will suffer no prejudice. They are already litigating the State Court Action as plaintiff. They have already expended resources prosecuting their claims against Ferder. Permitting Ferder to assert counterclaims in the same action will not impose any additional burden on the estate beyond what the Debtors themselves chose to undertake when they filed suit.

Indeed, where a debtor has initiated an action, all the claims were adjudicated in the one forum which it chose, and there is no hardship foreseeable to debtor. *See In re Pro Football Weekly*, 60 B.R. at 826.

15.    The Debtors further contend that Ferder's hardship is "self-imposed."  This is meritless.  Ferder did not commence the State Court Action—the Debtors did.  Ferder did not choose the forum—the Debtors did.  Ferder did not file this bankruptcy case—the Debtors did.  The hardship Ferder faces arises solely from the Debtors' decision to sue him and then invoke the automatic stay to prevent him from defending himself fully.  Courts have recognized that this is precisely the type of inequitable conduct that warrants stay relief.  *See Bohack Corp.*, 599 F.2d at 1168 (noting that a debtor who "moves outside the confines of the bankruptcy court" to litigate claims cannot use the stay to "reap the benefits but circumvent the burdens" of that litigation).

### C.  Ferder Has a Probability of Prevailing on the Merits.

16.    "Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case." *In re Cont'l Airlines, Inc.*, 152 B.R. 420, 426 (D. Del. 1993).  The showing "merely requires a showing that the claim is not frivolous." *In re Levitz*, 267 B.R. 516, 523 (Bankr. D. Del. 2000).  Here, Ferder more than satisfies this slight threshold.

17.    At all times relevant to the State Court Action, Ferder acted in his capacity as CEO of Lugano.  The proceeds from the financing arrangements at issue all went to Lugano and were used for Lugano business purposes—including to buy inventory, meet payroll, fund marketing, pay creditors, and satisfy accounts payable obligations.  Lugano was a party to, and obligor on, the Investment Contracts. These facts support Ferder's claims for equitable indemnity, breach of contract, breach of fiduciary duty, and related causes of action.

18.    The Debtors' assertion that they are "confident" they will prevail on the merits is conclusory and unsupported.  No discovery has been conducted.  No evidence has been presented to this Court.  The allegations of fraud are just that—allegations—and they remain strenuously disputed.  This Court should not credit the Debtors' one-sided characterization of disputed facts in

determining whether Ferder has met the "very slight" threshold for demonstrating probability of success. *See In re Rexene Prods. Co.*, 141 B.R. at 578 ("The required showing is very slight.").

## II. THE SONNAX FACTORS WEIGH IN FAVOR OF GRANTING STAY RELIEF.

19.    The twelve factors established in *Sonnax Industries Inc. v. Tri Component Products Corp. (In re Sonnax Industries Inc.)*, 907 F.2d 1280, 1286-87 (2d Cir. 1990), guide courts in exercising discretion regarding stay relief.  As the court held in *In re Countryside Manor, Inc.*, 188 B.R. 489, 491 (Bankr. D. Conn. 1995), the considerations are the same regardless of whether the issue is whether to allow the filing of a counterclaim against the debtor, as opposed to whether to modify the stay in order to allow a party to proceed with a state court action against a debtor.  The applicable factors weigh strongly in Ferder's favor.

### 1. Relief from Stay Will Result in Complete Resolution of the Issues.

20.    There are eight related actions pending in the Orange County Superior Court, each involving the same core set of facts and all stemming from the Investment Contracts.  Permitting Ferder to assert his counterclaims will allow the State Court to completely resolve and determine the merits of all claims between the parties by way of a final decision.  The Debtors' argument that stay relief will not result in "complete resolution" because of bankruptcy-related defenses confuses the liquidation of claims with the allowance process.  Those are separate inquiries that can proceed independently.

### 2. Granting Stay Relief Will Not Interfere with the Bankruptcy Case.

21.    The State Court Action involves purely California state law claims.  The Debtor admitted in its own judicial admission that the action is a "non-core" proceeding within the meaning of 28 U.S.C. § 157(c).  The sale of substantially all of the Debtors' assets has already been approved.  Lifting the stay to allow the State Court Action to proceed to full adjudication will not impede the Debtors' progress toward plan confirmation.

22.    The Debtors contend that the facts underlying the Counterclaims are central to the Chapter 11 Cases.  But the fact that common factual issues exist does not mean that the State Court

7

Action will interfere with the bankruptcy case.  The claims allowance process and the State Court adjudication can proceed on parallel tracks.  The State Court will determine the merits of the parties' respective claims under California law, and this Court will determine the treatment of those claims in the bankruptcy case.

**3. The State Court Action Does Not Involve the Debtor as Fiduciary.**

23.    This factor is inapplicable.

**4. The State Court Is the Proper Forum.**

24.    The State Court is familiar with the parties, the issues, and the eight related actions pending before it.  All claims in the State Court Action involve purely state law issues.  The California District Court itself recognized that "judicial economy and efficient administration of justice weigh in favor of remanding [the] case" to the State Court in light of the eight related pending cases, concluding that remand "would avoid piecemeal litigation." *Lugano Diamonds & Jewelry, Inc. v. Ferder*, 2026 U.S. Dist. LEXIS 54416, at *8 (C.D. Cal. Mar. 13, 2026).  This Court should give appropriate weight to the California District Court's finding regarding the proper forum for adjudication of the underlying merits.

25.    The Debtors argue that because they anticipate asserting "bankruptcy-specific defenses," this Court has "greater expertise."  But the underlying merits of the parties' claims—fraud, breach of fiduciary duty, defamation, equitable indemnity—are quintessential state law issues.  The bankruptcy-specific defenses (equitable subordination, recharacterization, disallowance) go to claim allowance, not to the underlying merits, and will be adjudicated by this Court through the claims allowance process regardless of where the merits are determined.

**5. Insurance Coverage.**

26.    The Debtors argue that because Ferder has not yet filed his Counterclaims, Lugano has not tendered those claims to its insurer, and that this factor therefore weighs in favor of denying stay relief.  This argument is entirely circular.  The only reason Ferder has not filed his Counterclaims is the Debtors' contention that the automatic stay prevents him from doing so.  It is a contradiction to permit the Debtors to use the stay to block the filing of Counterclaims, on the one hand, and then

cite the absence of those Counterclaims as a reason to maintain the stay, on the other hand. Moreover, the Debtors acknowledge that they have filed an adversary proceeding against their own insurer for failure to fully defend Lugano against lawsuits arising from the very same conduct at issue here. The Debtors' own coverage dispute with their insurer is a matter entirely within their control and has no bearing on whether Ferder should be permitted to assert his compulsory counterclaims. If anything, the Debtors' uncertain insurance situation demonstrates that the estate's litigation costs in the State Court Action will be borne regardless of whether Ferder is permitted to file counterclaims. This factor is, at best, neutral and does not support denying stay relief.

**6. The Action Involves Third Parties.**

27.     Ferder intends to assert counterclaims not only against Lugano but also against Compass, Elias Sabo, and Joshua Gaynor—non-debtor third parties who reside and/or work in Orange County, California. These third-party claims cannot be adjudicated in this Court, as this Court has no jurisdiction over claims between non-debtor parties. The State Court is the only forum in which Ferder can assert all of his claims against all parties in a single proceeding. The presence of non-debtor third parties strongly supports stay relief. *See In re Pro Football Weekly*, 60 B.R. at 826-27 (finding that modification for the stay in order to allow the joint adjudication of the claims was supported by their interrelatedness).

**7. Stay Relief Will Not Prejudice Other Creditors.**

28.     Ferder is not seeking stay relief to collect against the Debtors. Any judgment Ferder obtains against the Debtors will be subject to the claims allowance process in this Court. The Debtors' argument that permitting Ferder to prosecute his counterclaims will "significantly increase litigation expenses" is unavailing—the Debtors are already incurring those expenses by prosecuting their own claims against Ferder. Counterclaims arise from the same facts and will add minimal incremental cost to the litigation the Debtors have already chosen to pursue.

**8. Equitable Subordination.**

29.     The Debtors assert that "all of Ferder's claims are subject to equitable subordination." This is speculative and conclusory. No determination of inequitable conduct has been made. Ferder

vigorously disputes the fraud allegations, and the question of equitable subordination is premature. In any event, equitable subordination goes to the priority of a claim in distribution, not to whether the claim exists.  The State Court can liquidate Ferder's claims, and this Court can thereafter determine their priority.  These are separate inquiries.

**9. Avoidable Judicial Lien.**

30.    This factor is inapplicable.  Ferder is not seeking relief from stay to enforce a judgment or obtain a lien.

**10. Judicial Economy Favors Relief.**

31.    Judicial economy strongly favors permitting the State Court Action to proceed with all claims and counterclaims in a single proceeding.  The court in *In re Countryside Manor* emphasized that "the administration of justice, convenience of the parties and judicial economy are better served by having all the claims and counterclaims resolved by the same court—in this instance, the state court."  *In re Countryside Manor*, 188 B.R. at 492.  The same is true here.  Forcing the parties to litigate the Debtors' claims in the State Court while adjudicating Ferder's counterclaims in this Court would result in precisely the "piecemeal litigation" that the California District Court sought to avoid.

32.    Contrary to the Debtors' argument, adjudicating the Counterclaims in this Court would not serve judicial economy.  Doing so would require this Court to conduct a full trial on complex state law claims involving multiple third parties located in California, with witnesses primarily located in California, arising under California law—all while the Debtors are simultaneously litigating the same facts in the State Court.  The result would be duplicative proceedings in two forums, not efficiency.

**11. Readiness for Trial.**

33.    While the State Court Action is not yet at trial, this factor does not weigh against stay relief.  Lugano is the plaintiff.  It chose to file this action. It is actively litigating.  The Debtors removed the State Court Action, and it was remanded by the District Court, which rejected the very same arguments that the Debtors attempt to use in their opposition to stay relief. The litigation will

proceed regardless of whether Ferder is permitted to assert his counterclaims. The question is not whether the case is trial-ready, but whether Ferder should be permitted to participate fully as a defendant.

**12. Balance of Harms.**

34.     As discussed above, denying stay relief will permanently deprive Ferder of his compulsory counterclaims under California's entire controversy doctrine, while granting stay relief will cause no cognizable harm to the Debtors. The balance of harms overwhelmingly favors Ferder.

**III. THE DEBTORS' RELIANCE ON THE REMAND DECISION DOES NOT SUPPORT DENYING STAY RELIEF**.

35.     The Debtors argue that the Counterclaims should be adjudicated in this Court, asserting that the California District Court's findings supporting remand are "inconsistent" with litigating the Counterclaims in State Court. The Debtors are effectively asking this Court to act as a review court for the District Court and effectively overturn its decision. It is quintessential end-run and should not be countenanced by this Court. Regardless, each of the four arguments the Debtors advance regarding the Remand Decision is without merit.

36.     First, the California District Court's Finding That the FAC Is "Not Necessarily Implicated" by the Proof of Claim actually supports stay relief. The Debtors contend that the California District Court believed Lugano's state law claims were "not necessarily implicated by the Proof of Claim seeking reimbursement from" Lugano, and that, had the Counterclaims been asserted, the Proof of Claim would have been "directly implicated in the Action." This argument proves Ferder's point, not the Debtors'. The California District Court recognized that Lugano's affirmative claims against Ferder and Ferder's Proof of Claim are distinct matters—precisely because Lugano's claims are rooted in California state law, while the Proof of Claim involves separate questions of claim allowance that belong in this Court. The assertion of Counterclaims in the State Court Action would not transform the State Court into a forum for adjudicating the Proof of Claim. The Counterclaims seek to liquidate Ferder's affirmative claims against Lugano and third parties; any

resulting judgment would still be subject to the claims allowance process in this Court. The Debtors' argument assumes that Counterclaims and the Proof of Claim are one and the same—they are not. The Counterclaims seek adjudication of the merits of Ferder's affirmative claims under California law; the Proof of Claim invokes the bankruptcy claims process for allowance and distribution purposes.

37. Second, the presence of California state law claims supports adjudication in the State Court, not in this Court. The Debtors argue that, although the FAC alleges only California state law claims, the defenses to the Proof of Claim and Counterclaims will necessarily involve bankruptcy law considerations under sections 502(b), 502(d), 510(c), and 553 of the Bankruptcy Code. This argument, once again, conflates the liquidation of claims with the allowance of claims. The State Court will adjudicate the underlying merits of the parties' respective claims under California law— fraud, breach of fiduciary duty, defamation, equitable indemnity, and the like. This Court will separately adjudicate any bankruptcy-related defenses through the claims allowance process. The fact that this Court may ultimately need to apply bankruptcy-specific provisions to Ferder's claim does not mean that the underlying factual merits of the parties' California state law claims must be adjudicated here. Courts routinely permit claims to be liquidated in non-bankruptcy forums while reserving bankruptcy-specific determinations to the bankruptcy court. Indeed, the California District Court's recognition that the FAC "only alleges claims under California law" underscores that the State Court is the more appropriate forum for resolving the merits of these disputes.

38. Third, adjudicating the counterclaims in the State Court will avoid piecemeal litigation. The Debtors argue that the California District Court's finding that remand would avoid piecemeal litigation was incorrect because the eight related state court actions are stayed as to Lugano and those plaintiffs have filed proofs of claim in the Chapter 11 Cases. The Debtors contend that approximately 40 other Investment Contract claims have been filed in this Court, and therefore all claims should be resolved here. This argument misunderstands the nature of the relief sought and the practical reality of the litigation. The eight related state court actions involve the same core set of facts, the same witnesses, and the same conduct. The California District Court correctly

recognized that having all of these matters before a single state court judge promotes efficiency and avoids inconsistent results on the factual merits.  The fact that Investment Contract claimants have also filed proofs of claim in this Court does not change the calculus.  Those proofs of claim will be addressed through the claims allowance process in this Court—a process that is entirely separate from the merits adjudication in the State Court.  Far from creating piecemeal litigation, granting stay relief will ensure that all claims and counterclaims between Ferder and the Debtors are adjudicated together in the forum the Debtors themselves chose.  Denying stay relief, by contrast, would create the very piecemeal litigation the Debtors claim to oppose: the Debtors' affirmative claims against Ferder would proceed in the State Court, while Ferder's compulsory counterclaims would be relegated to this Court—requiring duplicative proceedings, duplicative discovery, and the risk of inconsistent factual findings.

39.     Fourth, Ferder's jury trial right is not vitiated by filing a proof of claim.  The Debtors argue that Ferder's filing of the Proof of Claim vitiated his right to a jury trial, and that this undermines the California District Court's finding that a party's jury trial right weighs strongly in favor of remand.  Here again, the parties seek and end-run around the District Court ruling. This argument is misplaced for several reasons.  First, even assuming that filing a proof of claim waives the right to a jury trial on claims that are adjudicated through the bankruptcy claims allowance process, it does not follow that Ferder waived his right to a jury trial on the Counterclaims he seeks to assert in the State Court Action. The Counterclaims are affirmative claims against Lugano and non-debtor third parties—Compass, Sabo, and Gaynor—that arise under California state law. Ferder's right to a jury trial on those claims in the State Court is independent of his filing of a proof of claim in this Court.  Second, even if Ferder's jury trial right were limited with respect to claims against the Debtors, that would not affect his right to a jury trial on his claims against the non-debtor third parties, over whom this Court has no jurisdiction and who are not parties to the bankruptcy case.  Third, the California District Court's observation about jury trial rights was one of several factors supporting remand, and the court's overall conclusion—that the equities favor adjudication in the State Court—remains sound regardless of the jury trial issue.

13

**IV. THE COMMITTEE JOINDER AND COMPASS JOINDER ADD NO INDEPENDENT LEGAL ARGUMENT.**

40.     The Committee Joinder simply adopts the Debtors' arguments and adds inflammatory rhetoric about Ferder being an "unrepentant fraudster" who "absconded to Israel." These characterizations are based on unproven allegations and have no place in legal argument before this Court.  The Committee offers no independent legal basis for denying the Stay Relief Motion that is not already addressed by the Debtors' Objection.

41.     TheCompass Joinder contains no independent legal argument whatsoever.  Compass merely "joins" the Objection and "reserves all rights." Compass's interest in keeping Ferder from asserting counterclaims is self-evident: Ferder intends to assert claims against Compass for intentional interference with contractual relations, intentional interference with prospective economic advantage, and breach of fiduciary duty.  Compass's joinder should be given no weight.

CONCLUSION

WHEREFORE, Ferder respectfully requests that the Court (i) grant the Stay Relief Motion; (ii) waive the fourteen (14) day stay under Federal Rule of Bankruptcy Procedure 4001(a)(3); and (iii) grant such other and further relief as is just and proper.

Dated: June 16, 2026

> */s/ Jeffrey M. Schlerf*
> Jeffrey M. Schlerf (No. 3047)
> STINSON LLP
> 1007 N. Orange St.
> 3rd Floor #127
> Wilmington, DE 19801
> Telephone: (302) 509-4634
> Email: jeffrey.schlerf@stinson.com
>
>  -and-
>
> Sandford L. Frey (admitted pro hac vice))
> STINSON, LLP

14

15

1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067
Telephone: (310) 730-7020
Email:  sandford.frey@stinson.com