**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| LUGANO DIAMONDS & JEWELRY INC., *et al.*,[1] | Case No. 25-12055 (BLS) |
|  | (Jointly Administered) |
| Debtors. | **Ref. Docket Nos. 612 & 614** |

### NOTICE OF FILING OF LIQUIDATION ANALYSIS

**PLEASE TAKE NOTICE** that, on June 24, 2026, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Chapter 11 Plan of Liquidation of Lugano Diamonds & Jewelry Inc. and Its Affiliated Debtors* [Docket No. 612] (as may be amended, modified, or supplemented from time to time, the "Plan") and the accompanying *Disclosure Statement for the Chapter 11 Plan of Liquidation of Lugano Diamonds & Jewelry Inc. and its Affiliated Debtors* [Docket No. 614] (as may be amended, modified, or supplemented from time to time, the "Disclosure Statement") with the United States Bankruptcy Court for the District of Delaware.

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file the liquidation analysis (the "Liquidation Analysis"), which is Exhibit B to the Disclosure Statement.  A copy of the Liquidation Analysis is attached hereto as **Exhibit 1**.

**PLEASE TAKE FURTHER NOTICE** that the Plan, Disclosure Statement, and Liquidation Analysis remain subject to review and revision in all respects by the Debtors.  To the extent that the Plan, Disclosure Statement, or Liquidation Analysis are revised, the Debtors will file a revised copy of such at the appropriate time.

*[Remainder of Page Intentionally Left Blank]*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's U.S. federal tax identification number, to the extent applicable, are as follows:  Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc.  (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308). The notice address for the Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, California 92660.

Dated: July 7, 2026
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Shella Borovinskaya*
Edmon L. Morton (Del. No. 3856)
Sean M. Beach (Del. No. 4070)
Shella Borovinskaya (Del. No. 6758)
Brynna M. Gaffney (Del. No. 7402)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:   emorton@ycst.com
      sbeach@ycst.com
      sborovinskaya@ycst.com
      bgaffney@ycst.com

-and-

**KELLER BENVENUTTI KIM LLP**
Tobias S. Keller (admitted *pro hac vice*)
Traci L. Shafroth (admitted *pro hac vice*)
Scott Friedman (admitted *pro hac vice*)
101 Montgomery Street, Suite 1950
San Francisco, California 94104
Telephone:  (415) 496-6723
Facsimile:  (650) 636-9251
Email:   tkeller@kbkllp.com
      tshafroth@kbkllp.com
      sfriedman@kbkllp.com

*Attorneys for Debtors
and Debtors-in-Possession*

## Exhibit 1

## Liquidation Analysis

**Lugano Diamonds & Jewelry Inc., et al.**
**United States Bankruptcy Court - District of Delaware**
**Case No. 25-12055 BLS (Jointly Administered)**
Debtors' Liquidation Analysis
As of Effective Date: September 04, 2026
All Amounts Estimated

| | Chapter 11 Plan of Liquidation [1] | | Chapter 7 Liquidation [2] | |
|---|---|---|---|---|
| | Low | High | Low | High |
| **Assets** | | | | |
| Cash as of 7/3/26 [3] | $ 7,896,581 | $ 7,896,581 | $ 7,896,581 | $ 7,896,581 |
| Cash Reduction through 8/28/26 [4] | (2,918,568) | (2,918,568) | (2,918,568) | (2,918,568) |
| Payment from ERF/GB [5] | 52,552,895 | 52,552,895 | 52,552,895 | 52,552,895 |
| Additional Sharing ERF/GB [5] | - | 9,777,200 | - | 9,777,200 |
| Tax Refund [6] | 67,634,161 | 67,634,161 | 67,634,161 | 67,634,161 |
| Litigation Causes of Action + Other Assets [7] | TBD | TBD | TBD | TBD |
| **Total Sources of Recovery** | **$ 125,165,068** | **$ 134,942,268** | **$ 125,165,068** | **$ 134,942,268** |
| | | | | |
| **Liquidation Costs** | | | | |
| Liquidating Trustee & Oversight Board Costs [8] | $ 1,620,000 | $ 1,620,000 | $ 0 | $ 0 |
| Trust Professional Fees [8] | 6,380,000 | 2,380,000 | | - |
| Chapter 7 Trustee Statutory Commission [2] | - | - | 4,071,600 | 3,778,300 |
| Chapter 7 Trustee's Professional Fees [9] | - | - | 12,123,000 | 5,928,000 |
| Contingency Counsel Fees for CODI Litigation [9] | - | - | 10,000,000 | 5,000,000 |
| Administrative/UST Fees | 491,100 | 442,000 | 1,690 | 1,690 |
| **Total Administrative Costs** | **8,491,100** | **4,442,000** | **26,196,290** | **14,707,990** |
| | | | | |
| **Assets Available for Distribution to Creditors** | **116,673,968** | **130,500,268** | **98,968,778** | **120,234,278** |
| **Claims** | | | | |
| Administrative Claims (other than professional fees) | 101,737 | 11,737 | 101,737 | 11,737 |
| Priority Claims | 1,347,590 | 1,347,590 | 1,347,590 | 1,347,590 |
| CODI [10] | 718,222,592 | 718,222,592 | 718,222,592 | 718,222,592 |
| Convenience Claims [11] | 317,000 | 317,000 | - | - |
| General Unsecured Creditor Claims [12] | 259,205,595 | 212,106,442 | 259,522,595 | 212,423,442 |
| **Total Claims** | **$ 979,194,514** | **$ 932,005,361** | **$ 979,194,514** | **$ 932,005,361** |
| | | | | |
| **CODI [10]** | | | | |
| **CODI Recovery** | **$ 42,814,711** | **$ 46,264,591** | **$ 38,144,609** | **$ 43,418,947** |
| CODI Recovery % | 5.96% | 6.44% | 5.31% | 6.05% |
| | | | | |
| **Convenience Class Creditor Recovery [11]** | **158,500** | **158,500** | **-** | **-** |
| Convenience Class Creditor Recovery % [11] | 50% | 50% | No convenience class in chapter 7 | |
| | | | | |
| **General Unsecured Creditor Recovery [12]** | **72,251,431** | **82,717,850** | **55,895,843** | **73,716,505** |
| General Unsecured Creditor Recovery % | 27.87% | 39.00% | 21.54% | 34.70% |

**Lugano Diamonds & Jewelry Inc., et al.**
**United States Bankruptcy Court - District of Delaware**
**Case No. 25-12055 BLS (Jointly Administered)**
Debtors' Liquidation Analysis
As of Effective Date: September 04, 2026
All Amounts Estimated

___

**Notes:**

[1] The Chapter 11 columns reflect the settlement economics embodied in the Plan and the Settlement Agreement. Effective Date Reserves — including Administrative Claims, Priority Claims, the Convenience Class payment, and Administrative/UST Fees — are funded before allocation, and the remaining estate value subject to the Settlement Agreement allocation is divided 65.21% to the Liquidation Trust for the benefit of Holders of General Unsecured Claims and 34.79% to CODI. Liquidation Trust expenses, including the costs of the Liquidating Trustee, the Oversight Board, and Trust Professionals, are borne solely by the General Unsecured Creditors' allocation. Net Proceeds of GT Claims and other Causes of Action are allocated as described in the Plan.

[2] The Chapter 7 columns assume the Settlement Agreement's economic allocation is preserved or replicated following conversion. The trustee's statutory commission and UST fees are deducted before that allocation (estate-level costs under sections 326 and 1930, borne ratably by both allocations); the fees of the trustee's professionals are borne by the General Unsecured Creditors' allocation, consistent with the treatment of Liquidation Trust professional costs under the Plan. The Debtors believe this is reasonable: even if a Chapter 7 trustee prevailed in litigation against CODI, the result — net of costs, delay, and risk — would be unlikely to materially improve upon the settlement allocation. The assumption remains subject to material uncertainty, however, because the Settlement Agreement would not take effect upon conversion; in a less favorable outcome, CODI's asserted lien and claim are not avoided or disallowed, leaving minimal or no recovery for General Unsecured Creditors. This is not a prediction of any negotiation or litigation outcome.

[3] Cash reflects the projected ending cash balance for the week ending 7/3/26 per the Debtors' cash collateral budget (5/15/26 - 8/28/26), which reflects only the funds held in the estate's U.S. Bank account ending in 8643.

[4] Reflects all remaining disbursements projected under the Debtors' cash collateral budget through 8/28/26. Costs of administering the Chapter 11 cases through the assumed Effective Date are provided for under the cash collateral budget; accordingly, no such amounts remain unpaid at the assumed Effective Date in either scenario.  If the Effective Date were 09/15/2026, any resulting variance in the projected cash balance would be minimal and not material to the analysis.

[5] Payment from ERF/GB reflects the remaining amounts projected to be received under the Agency Agreement, pursuant to which the Debtors' inventory is being monetized through a sale process conducted by the agent. The Debtors' recovery consists of (a) the remaining guaranteed amount under the Agency Agreement, which is secured by a letter of credit; and (b) Additional Sharing, representing the Debtors' share of projected profits from the sale process after recovery of the guaranteed amount and sale-related expenses. Because any recovery above the guaranteed amount depends on sales performance through the conclusion of the sale process, expense levels subject to recoupment, any extension of the sale term, and final reconciliations and true-ups under the Agency Agreement, the low estimate assumes no Additional Sharing is realized; the high estimate reflects the agent's current projection of the maximum profit sharing under the sale process. Actual amounts realized under the Agency Agreement may differ materially from the estimates shown.

[6] The Tax Refund reflects the estimated recovery of federal and state income taxes paid by the Debtors for prior tax years based on the Debtors' restated financial results. The refund process is in progress: amended returns for certain prior years are in final preparation, and a refund claim for certain years has been filed and is pending with the IRS, which has opened an examination. Refunds of this size are also subject to review by the Joint Committee on Taxation. The IRS has filed a claim for estimated taxes that may offset refunds until the Debtors' most recent returns, which are expected to reflect a loss, are filed and processed. State refunds across multiple jurisdictions remain subject to separate processing. The estimate is based on income tax balances reflected on the Debtors' balance sheet as of 6/23/26. Actual refunds may differ materially from the amounts shown. The Tax Refund is presented net of estimated professional fees associated with its collection.

[7] Litigation Causes of Action + Other Assets consist of all Causes of Action (as defined in the Plan) and all other assets of the Debtors, other than the assets separately presented above (Cash, amounts payable under the Agency Agreement, and the Tax Refund), whose allocation is already reflected in this analysis.  The sharing of net proceeds of litigation Causes of Action between CODI and the estate are set forth in the Plan.

**Lugano Diamonds & Jewelry Inc., et al.**
**United States Bankruptcy Court - District of Delaware**
**Case No. 25-12055 BLS (Jointly Administered)**
Debtors' Liquidation Analysis
As of Effective Date: September 04, 2026
All Amounts Estimated

---

[8] Liquidating Trustee fees and Oversight Board costs are estimated at fixed monthly amounts over an assumed three-year term of the Liquidation Trust, plus estimated fees of professionals retained by the Liquidation Trust.  The amounts exclude fees of litigation counsel retained to prosecute Causes of Action, which are assumed to be engaged on a contingency basis, and fees associated with collection of the Tax Refund, which are netted against the Tax Refund line (see note [6]).

[9] Represents the estimated fees of counsel and financial advisors retained by a Chapter 7 trustee following conversion, which is assumed to occur on or about the assumed Effective Date. Estimated on a task basis consistent with the Liquidation Trust cost estimate in note [8]: (a) a three-month transition period during which the trustee's professionals become familiar with the Debtors' affairs, the Tax Refund, and potential Causes of Action; (b) base administration over the remainder of an assumed 36-month wind-down, including oversight of tax refund collection and distributions; and (c) claims objections and investigation of the co-investment scheme, estimated at a premium to the corresponding Liquidation Trust estimates to reflect professionals without prior knowledge of the Debtors' affairs. In addition to the Chapter 7 trustee's statutory commission, which is shown separately, and fees associated with collection of the Tax Refund, which are netted against the Tax Refund line (see note [6]), the Chapter 7 trustee would need to engage litigation counsel to pursue Causes of Action. Amounts reflected here assume all litigation counsel would be engaged on a contingency basis, which would not necessarily be possible under all circumstances. Fees for non-contingency litigation counsel would be materially higher than the amounts reflected here.

[10] The CODI claim is Allowed under the Plan and the Settlement Agreement in the amount of CODI's filed proof of claim, is presented at the same amount in all cases. CODI's recovery reflects the 34.79% allocation of the estate value subject to the Settlement Agreement allocation (see note [1]), and the CODI Recovery % divides CODI's recovery by CODI's Allowed Claim.

[11] Under the Plan, Holders of Convenience Claims receive the Convenience Class payment shown above. Convenience-class treatment exists only under the Plan. Upon a conversion to Chapter 7, the Convenience Class falls away and the underlying claims are treated as General Unsecured Claims and are included in the Chapter 7 General Unsecured Claims pool. The Convenience Class Creditor Recovery % shown in the Chapter 7 columns is therefore the General Unsecured Creditor recovery rate.

[12] Claim amounts are based on the claims analysis as of June 30, 2026, reflecting reconciled estimates of Allowed Claims after elimination of duplicate claims, reconciliation of filed proofs of claim to the Debtors' schedules, and anticipated claim objections. Columns are presented on a consistent worst-to-best basis for creditors: the Low case reflects the higher claims estimates, including asserted interest, profit share, damages, and fee components of diamond claimant claims; the High case assumes diamond claimant claims are allowed at principal/investment amounts only. The Debtors and the Liquidation Trust reserve the right to object to and challenge any and all claims on any and all bases, whether or not identified in the claims analysis, and nothing in this analysis constitutes an allowance of, or an admission with respect to, any claim. Allowed Claims may be materially higher or lower than the amounts shown. The General Unsecured Creditor Recovery % divides the General Unsecured Creditor recovery by the General Unsecured Claims pool for the applicable case, which in the Chapter 7 columns includes Convenience Claims (see note [11]).