**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| LUGANO DIAMONDS & JEWELRY INC., *et al*.,[1] | Case No. 25-12055 (BLS) |
|  | (Jointly Administered) |
| Debtors. |  |

**COMPASS GROUP DIVERSIFIED HOLDINGS LLC**
**OMNIBUS REPLY TO OBJECTIONS TO THE APPROVAL OF**
**DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) APPROVING THE**
**DISCLOSURE STATEMENT ON AN INTERIM BASIS; (B) ESTABLISHING**
**SOLICITATION AND TABULATION PROCEDURES; (C) APPROVING THE**
**FORMS OF BALLOTS AND SOLICITATION MATERIALS; (D) ESTABLISHING**
**THE VOTING RECORD DATE; (E) FIXING THE DATE, TIME AND PLACE**
**FOR THE COMBINED CONFIRMATION HEARING AND THE DEADLINE**
**FOR FILING OBJECTIONS THERETO; AND (F) GRANTING RELATED RELIEF**

Compass Group Diversified Holdings LLC ("***CODI***") hereby files this reply (the "***Reply***") in support of the *Debtors' Motion for Entry of an Order (A) Approving the Disclosure Statement on an Interim Basis; (B) Establishing Solicitation and Tabulation Procedures; (C) Approving the Forms of Ballots and Solicitation Materials; (D) Establishing the Voting Record Date; (E) Fixing the Date, Time and Place for the Combined Confirmation Hearing and the Deadline for Filing Objections Thereto; and (F) Granting Related Relief* [Docket No. 615] (the "***Procedures Motion***") and in response to the (i) *Objection of the United States Trustee to Approval of Solicitation Procedures* [Docket No. 638] (the "***UST Objection***") and (ii) *Objection of the Ferder Parties to the Approval of the Debtors' Disclosure Statement for the Chapter 11 Plan of Liquidation of*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's U.S. federal tax identification number, to the extent applicable, are as follows:  Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc.  (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308). The notice address for the Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, California 92660.

*Lugano Diamonds & Jewelry Inc. and its Affiliated Debtors* [Docket No. 637] (the "***Ferder Objection***," together with the UST Objection, the "***Objections***"). In support hereof, CODI respectfully states as follows:

### PRELIMINARY STATEMENT

1.     The Objections do not identify or support grounds that justify denying approval of the Procedures Motion or prohibiting the Debtors[2] from distributing the Disclosure Statement and soliciting votes to accept or reject the Plan. The Ferder Objection primarily consists of salacious, unsupportable factual contentions relating to objections to the proposed Plan, not the adequacy of the Disclosure Statement. The Plan and the corresponding Disclosure Statement fully satisfy the requirements of the Bankruptcy Code and are the product of arms'-length, good faith negotiations, including a mediation with a neutral mediator with significant expertise in bankruptcy disputes (the "***Mediation***"), which resulted in the proposed settlement between the Debtors (as represented by the Special Committee), the Official Committee of Unsecured Creditors (the "***Committee***") and CODI.

2.     While the Ferder Objection contains many calculated misstatements, it does contain one basic fact with which CODI agrees: CODI, as the Debtors' secured creditor, is paying for these Chapter 11 cases and any delay further erodes CODI's already compromised recovery and diminishes the assets available for distribution to all creditors. As this Court is aware, the Debtors, including the Special Committee and the Committee, are subsisting through the consensual use of CODI's cash collateral. This unremarkable fact does not, despite Ferder's unsupported accusations, call into question the arms-length nature of the Settlement or the hotly contested negotiations leading to it.

---

[2]     Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed thereto in the *Chapter 11 Plan of Liquidation of Lugano Diamonds & Jewelry Inc. and its Affiliated Debtors* [Docket No. 612] (the "***Plan***").

3.    The terms of the Settlement confirm this.  The CODI Settlement does not give the majority of value under the Plan to CODI.  Rather, as illustrated by the Liquidation Analysis [Docket No. 636] (the "*Liquidation Analysis*"), the Debtors estimate that CODI will recover between 5.96% and 6.44% on its over $718 million secured claim while general unsecured creditors will recover between 27.87% and 39.00%.  It is disingenuous for Ferder to allege that the proposed settlement is some "sweetheart settlement" when CODI, as a **secured** creditor, is estimated to recover only a fraction of what general **unsecured** creditors will recover.  This is especially true given that the guardian of the unsecured creditors, the Committee, was intimately involved in both investigating potential estate claims against CODI and the mediation that resulted in the settlement.  It is clear that Ferder is using his objection not to address the adequacy of the Disclosure Statement but rather as an opportunity to promote a self-serving narrative and to deflect blame from his perpetration of the fraud leading to the Debtors' collapse.

4.    CODI engaged in the Mediation to reach finality with the Debtors and the Committee and to avoid the significant expense of protracted litigation.  The CODI Settlement does just that—it provides a process and a fair division of proceeds that allows the Debtors to quickly exit the chapter 11 process while preserving the Estates' claims and causes of action that will be monetized by an independent third-party liquidation trustee.  And, again, the value that CODI is receiving as a result of this settlement and the proposed plan is less than the value junior creditors are expected to receive.  Yet, CODI agreed to the settlement and supports confirmation of the Plan because it recognizes that litigation over the CODI Claim and CODI's alleged role in Ferder's fraud will benefit no party and will substantially diminish value that could be paid to creditors.  Thus, CODI supports entry of an order granting the Procedures Motion and approving the Disclosure Statement.

**BACKGROUND**

5.      From the outset of this case, the Special Committee (comprised of two professional independent directors) and the Committee made it clear that they were investigating claims and causes of action against CODI.  CODI has always denied (and still does) that there is a basis for any actionable claim against it.  Nonetheless, CODI (i) provided an initial DIP loan and (ii) consented to the Debtors' use of cash collateral that funded these investigations as it recognized the need to move the bankruptcy process forward in an efficient manner.

6.      During the course of the Committee and Special Committee investigations, CODI produced over a million pages of documents for review and the Special Committee and Committee interviewed numerous current and former CODI employees, including some on multiple occasions.  *See* Disclosure Statement, III.F.4.  As a result of this comprehensive investigation, the Special Committee and the Committee, as detailed in the Disclosure Statement, asserted that they could bring colorable claims against CODI and its affiliates.  *See id.*  CODI strongly disagreed with that conclusion.  CODI, and presumably the Special Committee and Committee—recognizing that litigation of disputed claims would be protracted, could cost tens of millions in legal, expert, and other fees, and would likely substantially delay these proceedings—agreed to participate in the Mediation.

7.      In early May 2026, CODI, the Debtors (through the Special Committee), and the Committee participated in the JAMS-administered Mediation with the Honorable Lee R. Bogdanoff (Retired) as the mediator.  The Mediation was contentious but all parties participated in good faith despite their significant disagreements.  Ultimately, the Mediation resulted in the terms of the CODI Settlement.

8.    Thereafter, the Debtors, the Committee and CODI worked cooperatively to draft and finalize the documentation memorializing the CODI Settlement, which include the CODI Settlement Agreement, the Plan Support Agreement, the Plan and the Disclosure Statement (collectively, the "**Plan Documents**"), which the Debtors filed on June 24, 2026.

9.    In addition, on June 24, 2026, the Debtors filed the Procedures Motion seeking, *inter alia*, conditional approval of the Disclosure Statement and authority to solicit votes on the Plan.

10.    It is CODI's understanding that the Office of the United States Trustee (the "**UST**") provided informal comments to the Plan Documents to which the Debtors' responded and revised the relevant documents.  Nonetheless, the UST filed the UST Objection raising issues with the opt-out mechanics of the proposed third-party releases.

11.    Further, it is CODI's understanding that the Debtors and the Committee had discussions with Ferder's counsel regarding his objection to the Plan Documents, but Ferder proceeded with filing his Objection.

## REPLY

12.    Section 1125 of the Bankruptcy Code requires the Court to find that the Disclosure Statement contains "adequate information" for holders of impaired claims and interests to vote on the plan.  *See* 11 U.S.C. § 1125.  As set forth more fully in the Procedures Motion, the Disclosure Statement clearly contains adequate information, and for the reasons discussed in the Procedures Motion and in this Reply, the Objections should be overruled.

13.    Importantly, the Debtors are only seeking **conditional** approval of the Disclosure Statement.  *See* Procedures Motion, Exhibit A (Proposed Order), ¶ 2.  The Debtors propose to seek final approval of the Disclosure Statement at the Combined Hearing.  *See id* at ¶ 3.  As a result,

the rights of each of the objectors, including Ferder, are preserved even if the Court grants the Procedures Motion and permits solicitation of the Plan.

14.     With respect to substance, the Objections argue at great length regarding the alleged impermissibility of the scope and breadth of the releases and other related Plan provisions.  These are confirmation objections, not objections that speak to the adequacy of the Disclosure Statement. All parties acknowledge that the Plan must comply with the requirements in section 1129 of the Bankruptcy Code in order to be confirmed.  But disputes as to compliance with Section 1129's requirements are distinct from assessing whether a disclosure statement contains "adequate information."[3]  Courts agree that a disclosure statement that adequately describes the chapter 11 plan at issue should be approved absent the exceedingly rare circumstance where a disclosure statement "describes a plan of reorganization which is so fatally flawed that confirmation is impossible . . . ."[4] "A plan is patently unconfirmable where (1) confirmation defects [cannot be] overcome by creditor voting results and (2) those defects concern matters upon which all material facts are not in dispute

---

[3]    *See, e.g.*, *In re Am. Capital Equip., LLC*, 688 F.3d 145, 153–54 (3d Cir. 2012) ("Ordinarily, confirmation issues are reserved for the confirmation hearing and not addressed at the disclosure statement stage.") (citation omitted); *In re Monroe Well Serv., Inc.*, 80 B.R. 324, 333 (Bankr. E.D. Pa. 1987) (stating that a court may disapprove a disclosure statement "when a court is convinced that the plan could not possibly be confirmed," but must "not [] convert the disclosure statement hearing into a confirmation hearing, and [must] insure that due process concerns are protected."); *In re Smallhold, Inc.*, 665 B.R. 704, 715 (Bankr. D. Del. 2024) ("[t]here are certainly occasions when parties object to release language at the stage of a bankruptcy case when a debtor seeks approval of a disclosure statement and solicitation procedures, and courts overrule those objections on the ground that those are matters that are more appropriately raised as confirmation issues."); *In re Spiegel*, 662 B.R. 666, 693–94 (Bankr. N.D. Ill. 2024) (declining to consider confirmation-related objections as part of its assessment of a disclosure statement in part because "[d]efects in plans are ordinarily not considered to be germane when considering the sufficiency of a disclosure statement"); *In re Quigley Co., Inc.*, 377 B.R. 110, 119 (Bankr. S.D.N.Y. 2007) (approving the disclosure statement while acknowledging that the objectors raised "several confirmation issues"). S*ee also* 7 Collier on Bankruptcy ¶ 1125.03 (16th ed. 2023) ("At disclosure statement hearings, courts should refuse to hear issues that are confirmation rather than disclosure issues, such as classification of claims, feasibility . . . or whether a plan is fair and equitable.").

[4]    *In re Cardinal Congregate I*, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990) (overruling objections to issues including treatment of claims and feasibility); *see also In re Phoenix Petroleum Co.*, 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001) ("the disclosure statement should be disapproved at the threshold only where the plan it describes displays fatal facial deficiencies or the stark absence of good faith.").

or have been fully developed at the disclosure statement hearing."[5]  The Plan is not fatally flawed such that confirmation is impossible.

15.    The focus in the Objections on the propriety of the third-party releases and the injunctions (including the scope thereof) are issues for the confirmation hearing and are not necessary for the Court to resolve to grant the relief requested in the Procedures Motion.  CODI asserts that the third-party releases are appropriately tailored and consensual and the use of a customary opt-out mechanism for creditors to preserve any claims they may have against the Released Parties is appropriate and valid under applicable law.  All relevant holders of Claims will receive broad, actual, and constructive notice of the releases (including on the Ballots and the Opt-Out Forms, as applicable) as well as an opportunity to decide whether to opt out of the third-party releases.  The Disclosure Statement and the proposed solicitation procedures provide such parties with sufficient information and instructions on how to preserve their rights in light of the proposed releases.  In any event, these confirmation issues do not need to be decided now and they should not prevent the Debtors' solicitation of the Plan.

16.    The other issues raised in the Ferder Objection likewise can and should be addressed at the Combined Hearing.  For example, Ferder asserts that the Debtors cannot satisfy the feasibility test set forth in Section 1129(a)(11) of the Bankruptcy Code or the best interest test under Section 1129(a)(7) of the Bankruptcy Code.  *See* Ferder Objection, ¶¶ 65 and 71.  Ferder's objections on these grounds, as well as the other grounds set forth in paragraphs 61-72 of the Ferder Objection, are purely confirmation objections that can be overcome by creditor voting results and/or by the Debtors' *prima facie* case at the Combined Hearing.  They should be heard at that hearing, not now.

---

[5]    *Am. Cap. Equip.*, 688 F.3d at 154–55.

17.     Finally, CODI has no objection to Ferder proposing reasonable language to include in the Disclosure Statement regarding his denial of fraud and liability.  The language Ferder proposed in paragraph 81 of his objection, however, is **not** accurate or reasonable and CODI objects to its inclusion.  Ultimately, CODI supports the inclusion of appropriate and reasonable disclosures of various parties' positions and intends to work with the Debtors to ensure such disclosures are provided in the Disclosure Statement.

18.     Accordingly, CODI respectfully requests that the Court overrule the Objections and grant the relief requested in the Procedures Motion.

### **RESERVATION OF RIGHTS**

19.     CODI reserves its rights to present additional evidence and legal argument at the hearing on the Procedures Motion, or any other hearing in these Chapter 11 Cases.

### **CONCLUSION**

**WHEREFORE**, CODI respectfully request that the Court (a) overrule the Objections to the approval of the Disclosure Statement, (b) approve the Disclosure Statement on a conditional basis, (c) enter the proposed order affixed the Procedures Motion and (d) grant such other and further relief as this Court deems just and appropriate.

[*Remainder of page intentionally left blank*]

Dated:  July 9, 2026

**BAYARD P.A.**

/s/ Ericka F. Johnson
Ericka F. Johnson (DE Bar No. 5024)
600 N. King Street
Suite 400
Wilmington, DE 19899
ejohnson@bayardlaw.com

- and -

Stephen D. Lerner (admitted *pro hac vice*)
SQUIRE PATTON BOGGS (US) LLP
201 E. Fourth Street, Suite 1900
Cincinnati, OH 45202
Telephone: (513) 361-1200
stephen.lerner@squirepb.com

- and -

Peter R. Morrison (admitted *pro hac vice*)
SQUIRE PATTON BOGGS (US) LLP
1000 Key Tower
127 Public Square
Cleveland, OH 44114
Telephone: (216) 479-8500
peter.morrison@squirepb.com

- and -

Jeffrey N. Rothleder (admitted *pro hac vice*)
SQUIRE PATTON BOGGS (US) LLP
2550 M Street NW
Washington, D.C. 20037
Telephone: (202) 457-6000
jeffrey.rothleder@squirepb.com

*Counsel to Compass Group Diversified
Holdings LLC*