**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>**LUGANO DIAMONDS & JEWELRY INC., *et al.*,**[1]<br><br>*Debtors.* | Chapter 11<br><br>Case No. 25-12055 (BLS)<br><br>(Jointly Administered)<br><br>**Objection Deadline: August 21, 2026**<br>**Hearing: TBD** |

**MORDECHAI FERDER, INDIVIDUALLY AND IN HIS CAPACITY AS TRUSTEE OF THE HAIM FAMILY TRUST'S MOTION TO ESTIMATE CLAIM FOR VOTING PURPOSES PURSUANT TO BANKRUPTCY RULE 3018(a)**

Mordechai Ferder, individually and as Trustee of the Haim Family Trust (collectively, "**Ferder**" or the "**Movant**"), by and through his undersigned counsel, hereby submits this motion ("**Motion**"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* ("**Bankruptcy Code**"), Rule 3018(a) of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), 11 U.S.C. § 502(c), and Paragraph 20 of this Court's *Order (A) Approving the Disclosure Statement on an Interim Basis; (B) Establishing Solicitation and Tabulation Procedures; (C) Approving Forms of Ballots; (D) Establishing Voting Record Date; (E) Fixing Combined Confirmation Hearing Date and Objection Deadline; and (F) Granting Related Relief* [Docket No. 661] ("**Disclosure Statement Order**"), for entry of an order temporarily allowing Proof of Claim No. 160 ("**Claim**") in the amount of $32,176,566.76, or such other amount as the Court deems appropriate, solely for purposes of voting to accept or reject the *Plan of Liquidation of Lugano Diamonds & Jewelry Inc., et al.* [Docket Nos. 612, 649] (as may be amended, modified, or supplemented, "**Plan**"), substantially

[1] Debtors in these chapter 11 cases, along with the last four digits of each Debtor's U.S. federal tax identification number, to the extent applicable, are as follows: Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc. (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308). The notice address for Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, California 92660.

in the form of the proposed order attached hereto as **Exhibit 1** (“**Proposed Order**”). In support of this Motion, Movant respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. Mordechai Ferder founded Lugano Diamonds & Jewelry, Inc. (“**Lugano**”) in Newport Beach, California in 2005, and served as its Chief Executive Officer for nearly two decades. In 2021, Compass Diversified Holdings, Inc. (“**Compass**”), a publicly traded company [CODI], acquired a 60% stake in Lugano, while Mr. Ferder retained a 40% beneficial ownership interest and continued as CEO under an Employment Agreement dated September 3, 2021. Mr. Ferder’s Claim, filed in the amount of $36,024,500.00, reflects documented personal advances made from his own accounts to fund Lugano’s operations and to pay on Diamond Contracts that Lugano was obligated to pay.

2. On June 24, 2026, Debtors filed a single document as a Complaint and Objection to Mr. Ferder’s Proof of Claim [Dkt. No. 611], asserting nineteen counts and seeking to disallow the Claim entirely. Debtors take the position that serving this combined Complaint and Objection on Mr. Ferder’s counsel, not on Mr. Ferder as is required for adversary actions, constitutes a validly served Objection. Under the tabulation procedures established by the Disclosure Statement Order, Debtors claim the filing of this objection temporarily disallows Mr. Ferder’s Claim for voting purposes unless otherwise ordered by this Court. To avoid any ambiguity regarding Mr. Ferder’s right to vote, this Motion seeks to confirm Mr. Ferder’s right to vote on the Plan in an amount that fairly reflects the documented, liquidated core of his Claim.

3. To the extent service of a combined Complaint seeking affirmative relief and Objection on counsel alone constitutes service of an Objection, Mr. Ferder proposes that his Claim be temporarily allowed in the amount of $32,176,566.76 for voting purposes only. This amount is derived from Mr. Ferder’s total documented advances and payments

($29,624,500.00 in personal advances plus $6,411,316.76 in Diamond Contract payments, totaling $36,035,816.76), less a voluntary, non-prejudicial credit of $3,859,250.00 extended solely for purposes of this estimation, without any admission that he is not entitled to recover the full face amount of the Claim ($36,024,500.00). The proposed estimate is conservative, well-documented, and ensures that a creditor holding one of the largest claims in these cases is not disenfranchised from meaningful participation in the confirmation process by the mere filing of an objection. Notably, the proposed credit corresponds to the full amount of disbursements Debtors themselves have alleged Mr. Ferder received from Lugano, meaning the proposed estimate does not ask the Court to resolve any disputed issue in Mr. Ferder's favor, but instead already accounts for the single largest specific dollar figure Debtors have raised against the Claim.

## JURISDICTION AND VENUE

4. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5. Venue of the above-captioned chapter 11 cases and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory and legal predicates for the relief requested herein are Federal Rule of Bankruptcy Procedure 3018(a), sections 105(a) and 502(c) of the Bankruptcy Code, and Paragraph 20 of this Court's Disclosure Statement Order [Dkt. No. 661].

7. On November 16, 2025 ("**Petition Date**"), each of Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code ("**Chapter 11 Cases**").

## GENERAL BACKGROUND

8. On June 24, 2026, Debtors filed the Plan of Liquidation [Dkt. No. 612] and the Disclosure Statement [Dkt. No. 614], as amended on July 9, 2026 [Dkt. Nos. 649, 651].

9. On July 14, 2026, the Court entered the Disclosure Statement Order [Dkt. No. 661], which, among other things, approved the Disclosure Statement on an interim basis, established solicitation and tabulation procedures, set a Voting Record Date of July 14, 2026, and scheduled the Combined Confirmation Hearing for August 31, 2026.

10. Relevant to this Motion, Paragraph 20 of the Disclosure Statement Order provides:

> If any Holder of a Claim seeks to challenge the allowance of its Claim for voting purposes in accordance with the Tabulation Procedures, such Holder must file a motion, pursuant to Bankruptcy Rule 3018(a), for an order temporarily allowing its claim in a different amount or classification for purposes of voting to accept or reject the Plan (a "Rule 3018 Motion") no later than **<u>August 4, 2026, at 4:00 p.m. (prevailing Eastern Time)</u>** and serve the Rule 3018 Motion on the Notice Parties.

Disclosure Statement Order, ¶ 20.

11. The Disclosure Statement Order further provides that Debtors' deadline to respond to any Rule 3018 Motion is August 21, 2026, and that all Rule 3018 Motions must be resolved before the Combined Confirmation Hearing scheduled for August 31, 2026. This Motion is timely filed within the August 4, 2026 deadline established by Paragraph 20 of the Disclosure Statement Order.

12. Additionally, under the tabulation procedures established by the Disclosure Statement Order, a Claim that is subject to an objection served by July 21, 2026, is temporarily disallowed for voting purposes unless otherwise ordered by the Court. Debtors' combined

affirmative Complaint and Objection was filed on June 24, 2026, and served on Mr. Ferder's counsel before July 21, 2026. As a result, Debtors' counsel suggest that they have timely served their objection such that Mr. Ferder's Claim has been temporarily disallowed for voting purposes. Mr. Ferder disagrees that serving counsel with a combined adversary Complaint and Objection is sufficient. But to avoid litigating that issue during plan confirmation, Mr. Ferder brings this Motion to clarify Mr. Ferder's ability to participate in the voting process.

**Mordechai Ferder's Claim and Debtors' Objection**

***A. The Proof of Claim***

13. On January 27, 2026, Mr. Ferder timely filed Proof of Claim No. 160 in the amount of $36,024,500.00 (subject to amendment). The Claim was duly executed and filed in accordance with the Bankruptcy Rules and is supported by extensive documentation, including bank records, wire transfer confirmations, and contract documents. Copies of Mr. Ferder's Bank of America records reflecting the transfers referenced in the Claim are attached hereto as **Exhibit 2**. Evidence of the $6,411,316.76 transfer made directly to Lugano is attached hereto as **Exhibit 3**.

14. The Claim reflects the following principal components:

(a) Documented personal advances totaling $29,624,500.00, consisting of $27,672,500.00 from Mr. Ferder's Charles Schwab account (22 separate transfers from September 8, 2021 through February 11, 2025) and $1,952,000.00 from Mr. Ferder's Bank of America account (5 transfers from April 1, 2024 through March 31, 2025) (*see* **Exhibit 2**), each documented in Addenda A and B to the Proof of Claim;

(b) Additional documented funds in the amount of $6,411,316.76 paid by Mr. Ferder to Lugano related to a Diamond Contract obligation that Lugano has

since disavowed, meaning that Lugano should repay those monies to Mr. Ferder (*see* **Exhibit 3**);

(c) California Labor Code violations and wrongful termination claims under Cal. Lab. Code §§ 201–203, 2802 (unliquidated, reserved);

(d) Indemnity claims arising from eight pending Orange County Superior Court actions brought by Diamond Contractors against Mr. Ferder (unliquidated, reserved);

(e) Setoff and recoupment claims (unliquidated, reserved); and

(f) Claim of interest in Lugano.

15. The Claim's face amount of $36,024,500.00 reconciles to the documented personal advances for Lugano's business expenses and Diamond Contracts that Lugano was obligated to pay. The unliquidated components described in subparagraphs (c) through (f) above are reserved and not included in the face amount.

### *B. Debtors' Objection*

16. On June 24, 2026, Debtors, through the Special Committee of the Board of Directors, filed a Complaint and Objection to Proof of Claim No. 160, initiating Adversary Proceeding No. 26-50528-BLS [Dkt. No. 611] ("**Adversary Complaint**"). The Adversary Complaint asserts nineteen counts, including: (i) objection to allowance under 11 U.S.C. § 502 and Fed. R. Bankr. P. 3001(f); (ii) equitable subordination under 11 U.S.C. § 510(c); (iii) objection under 11 U.S.C. § 502(d) based on pending avoidance actions; (iv) objection under 11 U.S.C. § 502(b)(4); (v) setoff and recoupment defenses; (vi) avoidance of alleged preferences and fraudulent transfers under 11 U.S.C. §§ 547, 548, and Cal. Civil Code § 3439; (vii) fraud claims; and (viii) turnover under 11 U.S.C. § 542. Debtors' prayer for relief seeks disallowance of the Claim, equitable subordination, and various money judgments against Mr. Ferder.

17. Mr. Ferder vigorously disputes the allegations in the Adversary Complaint, which he contends are unfounded and unsupported. Debtors have not effectuated service of the Adversary Complaint on Mr. Ferder.

## RELIEF REQUESTED

18. By this Motion, Mr. Ferder respectfully requests that the Court enter the Proposed Order, pursuant to Bankruptcy Rule 3018(a), Section 105(a) of the Bankruptcy Code, Section 502(c) of the Bankruptcy Code, and Paragraph 20 of the Disclosure Statement Order, temporarily allowing the Claim in the amount of $32,176,566.76, or such other amount as the Court deems appropriate, solely for purposes of voting to accept or reject the Plan.

19. Through this Motion, Mr. Ferder seeks estimation of the Claim solely for purposes of voting to accept or reject the Plan, and neither the filing of this Motion nor a ruling by the Court on this Motion shall affect any right or ability of any party in interest in these Chapter 11 Cases to later object to any claim for any other purposes, including, without limitation, allowance and distribution under the Plan. Any ruling by the Court on this Motion shall be considered a ruling with respect to the temporary allowance of the Claim under Bankruptcy Rule 3018 solely for the purpose of accepting or rejecting the Plan.

20. Prior to filing this Motion, Mr. Ferder made efforts to resolve this matter consensually with Debtors, but those efforts were unsuccessful. To the extent the Court determines that further support is warranted before ruling on this Motion, Mr. Ferder respectfully requests that the Court permit expedited, limited discovery of Debtors' own books and records concerning the transactions at issue, rather than deny the Motion outright, so that Mr. Ferder is not disenfranchised from voting based solely on information asymmetries created by Debtors. In addition, certain records related to the payments from Charles Schwab can only be obtained from Charles Schwab and Mr. Ferder's former financial advisor by subpoena, which cannot be accomplished prior to the August 31, 2026 confirmation hearing date.

**BASIS FOR RELIEF**

21. Bankruptcy Rule 3018(a) provides in relevant part that "[e]ven if an objection to a claim or interest has been filed, the court may, after notice and a hearing, temporarily allow a claim or interest in an amount that the court considers proper for voting to accept or reject a plan." Fed. R. Bankr. P. 3018(a)(4).

22. Section 105(a) of the Bankruptcy Code, meanwhile, authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." Section 105(a) of the Bankruptcy Code grants "bankruptcy courts, as courts of equity . . . broad authority to modify creditor-debtor relationships." *United States v. Energy Resources Co.*, 495 U.S. 545, 549 (1990).

23. Section 502(c) of the Bankruptcy Code independently permits the Court to estimate any contingent or unliquidated claim, or any claim the fixing or liquidation of which would unduly delay the administration of the case. 11 U.S.C. § 502(c). The Court may use "whatever method is best suited to the particular contingencies at issue" to estimate claims. *Bittner v. Borne Chemical Co.*, 691 F.2d 134, 135 (3d Cir. 1982).

24. The purpose of estimation under Rule 3018(a) is to prevent the disenfranchisement of creditors whose claims are disputed from participating meaningfully in the plan-confirmation process. A creditor should not be deprived of its right to vote on a plan of reorganization or liquidation by the mere filing of an objection to its claim. Estimation for voting purposes is expressly without prejudice to the ultimate resolution of the claim objection on the merits.

25. A proof of claim executed and filed in accordance with the Bankruptcy Rules constitutes prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f); *see also* 11 U.S.C. § 502(a) (a filed claim is "deemed allowed" unless a party in interest objects).

26. That presumption arises from the claim's own factual allegations -- it does not depend on the claimant having attached every underlying invoice or wire confirmation to the proof of claim itself. Mr. Ferder's Claim identifies the specific advances at issue, when they were made, from which accounts, and in what amounts, including the itemized addenda listing every Schwab and Bank of America transfer by date and amount. It is respectfully submitted that this is more than sufficient to satisfy Mr. Ferder's initial burden to allege facts sufficient to support the claim under prevailing law. See, *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991). Once that threshold is met, it is the objecting party's burden to come forward with evidence "tending to defeat the claim by probative force equal to that of the allegations of the proof of claim." *Id*.

27. Debtors have filed a complaint appended to a claim objection. But, a mere formal objection is insufficient. *Id*. This is not a Ninth Circuit outlier -- the Third Circuit applies an identical standard pursuant to *In re Allegheny International, Inc*., 954 F.2d 167, 173-74 (3d Cir. 1992) (objector must "produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency"; only then does "the burden revert[] to the claimant to prove the validity of the claim by a preponderance of the evidence"; "[t]he burden of persuasion is always on the claimant").

28. The Complaint's Count I objection is framed as a documentation-sufficiency challenge to the proof of claim rather than an evidentiary showing that any specific listed transfer did not occur, was not made for Lugano's benefit, or is otherwise invalid. This document-sufficiency challenge does not meet Debtors' burden of production under either line of authority, and it does not require Mr. Ferder to substantiate the claim any further before the claim can be estimated for voting purposes.

29. There is also a distinction between Count I and the Complaint's other theories. The equitable subordination, Section 502(d), and setoff/recoupment counts, rest on

unadjudicated allegations of fraud and misconduct that Lugano will have to prove in the adversary proceeding -- they are not themselves sufficient under Section 502(d) and/or evidence that negates the sworn facts underlying the claim. In other words, unadjudicated pleading allegations do not carry the probative force required under *Holm* and *Allegheny* to shift the burden back to Mr. Ferder. Estimating the claim for voting purposes under Rule 3018(a) does not require the Court (or the parties) to resolve those merits disputes in advance of temporary allowance. Indeed, even if ultimately established, equitable subordination and the fraud-based avoidance theories would bear on the disallowance or subordination of the Claim in a final judgment -- not on Mr. Ferder's threshold right to vote in the interim -- because Rule 3018(a) is expressly designed to separate the voting inquiry from the merits inquiry that remains pending in the adversary proceeding.

30. Section 502(c) estimation exists precisely so that disputed, unliquidated, or contested claims do not disenfranchise creditors from the plan process while the underlying disputes are litigated to conclusion. Accordingly, because Debtors' Objection amounts to a documentation-sufficiency challenge rather than evidence rebutting any specific transfer identified in the Claim, Debtors have not met their burden of production under *Holm* and *Allegheny*, and the Claim's prima facie presumption of validity remains intact for purposes of this Motion.

31. The Claim was duly and timely filed with extensive supporting documentation --including twenty-seven documented wire transfers totaling $29,624,500.00 -- and therefore enjoys a presumption of validity that the Debtor bears the burden to rebut.

32. The proposed estimated amount of $32,176,566.76 is calculated as follows:

| | |
|---|---|
| Documented personal advances (Addenda A & B) | $29,624,500.00 |
| Additional Diamond Contract amount paid by Ferder | + $6,411,316.76 |
| Subtotal (total documented amounts) | $36,035,816.76 |

| | |
|---|---|
| Less: Voluntary credit for estimation purposes | – $3,859,250.00 |
| **Net Proposed Estimated Amount for Voting** | **$32,176,566.76** |

33. This proposed estimate: (i) is based on documented, itemized personal advances from Mr. Ferder's own bank accounts; (ii) does not separately add the business-expense component (thereby avoiding any possibility of double-counting), nor the unliquidated components (California Labor Code claims, indemnity claims, and setoff/recoupment rights), all of which are expressly reserved; and (iii) reflects a voluntary, non-prejudicial credit of $3,859,250.00 extended solely for purposes of this estimation.

34. The voluntary credit of $3,859,250.00 corresponds to Debtors' allegation in their Objection (¶ 38 & Exhibit C thereto) that Mr. Ferder received disbursements from Lugano totaling "as much as nearly $4 million" (net total per Exhibit C of $3,859,250.00). Mr. Ferder disputes that he received these funds and does not concede the accuracy of Debtors' allegation. The credit is extended solely for purposes of this estimation motion, without waiver of any rights, and may not be used as an admission in any subsequent proceeding.

35. With respect to further evidence of the transactions, Mr. Ferder no longer has access to his Lugano emails because Lugano cut off his access upon his resignation from the company in May of 2025. But his personal emails, in Debtors' possession, reflect his instructions to send personal funds to satisfy Lugano obligations. To the extent Debtors want records or context concerning to whom transfers were made, the purpose of specific transactions, or the Diamond Contracts arrangements referenced in the Claim, those are matters within Lugano's own books and records and, in many instances, within Lugano's knowledge as a direct participant in the transactions -- not solely within Mr. Ferder's possession. All of this information would surely have been gleaned by Lugano during the investigations it conducted.

36. Lugano also has access to information demonstrating that Mr. Ferder personally paid off Diamond Contracts with his personal funds, all for the benefit of Lugano. The mechanics for these payments invariably involved Mr. Ferder giving instructions to his financial advisors at Beacon Point, or to his financial institutions, including Bank of America and Schwab, directing them to send Mr. Ferder's personal funds to those Diamond Contract parties to satisfy Lugano's corporate debt to those parties. Mr. Ferder has evidence from Bank of America reflecting those transfers, which is attached as **Exhibit 2**. He also has evidence of the $6,411,316.76 transfer that he made directly to Lugano, which is attached as **Exhibit 3**. The only records he was not able to obtain in this limited period are those already in Lugano's possession that he has no access to, and those related to the Charles Schwab payments where Mr. Ferder will need sufficient time to subpoena such parties.

37. Regardless, the burden of reconstructing Lugano's own transactional history should not be shifted to Mr. Ferder based solely on the objection as a precondition to a stipulated voting amount. In fact, there is an inherent unfairness about Lugano depriving Mr. Ferder access to the very information that it now demands he produce, and requiring that he produce it in time to meet the voting deadline for an August 31 confirmation hearing This prejudice is compounded by the compressed timeline Debtors themselves created: the Objection was filed on June 24, 2026, in near lockstep with the Plan and Disclosure Statement, leaving Mr. Ferder a narrow window to respond to nineteen counts while being denied access to the very books and records that would allow him to do so before the August 31, 2026 Combined Confirmation Hearing.

38. Estimating the Claim in the proposed amount ensures that Mr. Ferder's substantial economic stake -- as the holder of one of the largest claims in these cases, constituting a Class 4 General Unsecured Claim -- is appropriately represented in any vote on

the Plan, consistent with the equitable purposes of the Bankruptcy Code and the protections afforded by Rule 3018(a).

**RESERVATION OF RIGHTS**

39. Nothing in this Motion or any order granting it shall constitute a waiver of, or shall prejudice in any manner, any of Mr. Ferder's rights, including, without limitation:

(a) Mr. Ferder's right to seek a higher estimated or allowed amount for the Claim in any subsequent proceeding;

(b) Mr. Ferder's right to contest and defend against Debtors' Objection in full;

(c) All rights asserted in and arising under the Proof of Claim, including all additional claim components (California Labor Code claims, indemnity claims, setoff and recoupment rights, and the claim of interest in Lugano);

(d) Mr. Ferder's right to pursue the Claim to final allowance up to and including the full $36,024,500.00 face amount (or such greater amount as may be asserted in any amendment), plus any additional amounts to which he may be entitled; and

(e) All other rights, claims, and defenses of Mr. Ferder, whether at law or in equity, in these Chapter 11 Cases or otherwise.

40. The voluntary credit of $3,859,250.00 reflected in the proposed estimation amount is extended without prejudice, without waiver, and without any admission of liability, and may not be cited, referenced, or used as an admission in any subsequent proceeding, including without limitation the adjudication of Debtors' Objection, any adversary proceeding, or any proceeding concerning the final allowance of the Claim.

**CONCLUSION**

**WHEREFORE**, Mr. Ferder respectfully requests that the Court enter an order, substantially in the form attached as **Exhibit 1**, granting the relief requested herein, temporarily allowing Proof of Claim No. 160 in the amount of $32,176,566.76, or such other amount as the

Court deems appropriate, solely for purposes of voting to accept or reject the Plan, and such other and further relief as the Court may deem just and proper.

Dated: August 4, 2026

*/s/ Jeffrey M. Schlerf*
Jeffrey M. Schlerf (No. 3047)
STINSON LLP
1007 N. Orange St.
3rd Floor #127
Wilmington, DE 19801
Telephone: (302) 509-4634
Email: jeffrey.schlerf@stinson.com
*Counsel to Mordechai Ferder individually and as Trustee of the Haim Family Trust*

Sandford L. Frey (CA Bar No. 117058)
STINSON, LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067
Telephone: (310) 730-7020
Email: Sandford.frey@stinson.com
*Admitted Pro Hac Vice*
*Counsel to Mordechai Ferder individually and as Trustee of the Haim Family Trust*

Jeffrey Reeves (CA Bar No. 156648)
Daniel Weiss (CA Bar No. 242022)
REEVES & WEISS LLP
3333 Michelson Dr.
Suite 300
Irvine, California 92612
Telephone: (818) 554-7601
Email: JReeves@reevesandweiss.com
DWeiss@reevesandweiss.com
*Admitted Pro Hac Vice*
*Counsel to Mordechai Ferder individually and as Trustee of the Haim Family Trust*