**Exhibit A**

***Objection of the United States Trustee to Approval of Solicitation Procedures* [D.I. 638] (filed July 7, 2026)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| LUGANO DIAMONDS & JEWELRY INC., *et al.*,[1] | Case No. 25-12055 (BLS)<br>(Jointly administered) |
| Debtors. | Re: D.I. 612, 614 & 615<br>**Hearing Date: July 14, 2026, at 10:00 a.m.**<br>**Objections Due: July 7, 2026, at 4:00 p.m.** |

**OBJECTION OF THE UNITED STATES TRUSTEE**
**TO APPROVAL OF SOLICITATION PROCEDURES**

Andrew R. Vara, the United States Trustee for Region 3 (the "U.S. Trustee"), through his undersigned counsel, objects to *Debtors' Motion for Entry of an Order (A) Approving the Disclosure Statement on an Interim Basis; (B) Establishing Solicitation and Tabulation Procedures; (C) Approving the Forms of Ballots and Solicitation Materials; (D) Establishing the Voting Record Date; (E) Fixing the Date, Time, and Place for the Combined Confirmation Hearing and the Deadline for Filing Objections Thereto; and (F) Granting Related Relief* [D.I. 615] (the "Motion"), and in support of his objection respectfully states:

## PRELIMINARY STATEMENT

1. The Court should deny the Motion because the Debtors' plan includes opt-out third-party releases. The U.S. Trustee respectfully submits that such releases are non-consensual and as such are prohibited under *Purdue*. The need for opt-in releases is especially

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's U.S. federal tax identification number, to the extent applicable, are as follows: Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc. (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308). The notice address for the Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, CA 92660.

pronounced in this case, where (i) the record indicates the Debtors' bankruptcy cases were precipitated, at least in part, by alleged prepetition fraud; and (ii) unsecured creditor recoveries are uncertain and contingent on successfully liquidating estate causes of action. The Court should decide this issue now, before ballots and notices are sent to creditors.

**JURISDICTION AND STANDING**

2. This Court has jurisdiction to hear and determine the Motion and this objection pursuant to: (i) 28 U.S.C. § 1334; (ii) applicable orders of the United States District Court of the District of Delaware issued pursuant to 28 U.S.C. § 157(a); and (iii) 28 U.S.C. § 157(b)(2).

3. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of chapter 11 cases filed in this judicial district. This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the Courts. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog"). Under 28 U.S.C. § 586(a)(3)(B) the U.S. Trustee has the duty to monitor and comment on plans and disclosure statements filed in chapter 11 cases.

4. The U.S. Trustee has standing to be heard concerning the Motion and this objection pursuant to 11 U.S.C. § 307. *See U.S. Tr. v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under section 307, which goes beyond mere pecuniary interest).

**BACKGROUND**

5. On November 16, 2025, the above-captioned debtors (the "Debtors") filed chapter 11 petitions in this Court. The Debtors were a jewelry retailer.

6. The record indicates the Debtors' bankruptcy cases were precipitated, at least in part, by alleged prepetition fraud. *See Declaration of J. Michael Issa in Support of Chapter 11 Petitions and First Day Motions* [D.I. 2] ¶¶ 32, 36, 42 & 44. *See also* D.I. 614 §§ II.C & III.F.4.

7. On November 25, 2025, the U.S. Trustee appointed an official committee of unsecured creditors. *See* D.I. 88.

8. On June 24, 2026, the Debtors filed the *Chapter 11 Plan of Liquidation of Lugano Diamonds & Jewelry Inc. and Its Affiliated Debtors* [D.I. 612] (the "Plan"), the *Disclosure Statement for the Chapter 11 Plan of Liquidation of Lugano Diamonds & Jewelry Inc. and Its Affiliated Debtors* [D.I. 614] (the "Disclosure Statement"), and the Motion.

9. Plan § I.128 defines "Releasing Parties" to mean:

> Each of, and in each case in its capacity as such: (a) the Debtors and each of the Estates; (b) L. Spencer Wells and Thomas FitzGerald; (c) any successor to the Debtors or any other representative of the Estates pursuant to Bankruptcy Code § 1123(b)(3), including the Liquidation Trust; (d) all holders of Claims, other than holders of Claims only in Classes 6 and 7, who do not make an Opt-Out Election; (e) each Released Party; and (f) each Related Party of each entity in clauses (a) – (e) solely to the extent such Related Party may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an entity in clauses (a) – (e); *provided* that, in each case, an entity is not a Releasing Party if it makes an Opt-Out Election; *provided* further that no Excluded Party is a Releasing Party.

10. The proposed form of order filed with the Motion approves the forms ballot. *See* Motion Ex. A ¶ 5. The class 4 ballot, class 5 ballot, and opt-out form have opt-out boxes. *See id.* Exs. 1B, 1C & 4A.

11. As of June 17, 2026, about 230 claims had been filed against the Debtors totaling about $2,600,000,000. *See* Disclosure Statement § III.E. The Debtors expect claims will total about $1,100,000,000 if the cases are substantively consolidated. *See id.*

12. The liquidating trust agreement attached to the Plan suggests there could be causes of action "relating to a potential Ponzi scheme or other fraud" in respect of investment contracts allegedly entered into outside the Debtors' ordinary course of business. *See* Plan Ex. B § 4.6(b)(ii).

13. The currently filed version of the Disclosure Statement does not estimate the size of the general unsecured claims pool, or project a recovery percentage for general unsecured creditors. *See* Disclosure Statement §§ I.A.3 & III.E. Monetizing the estates' causes of action—one of three groups of assets that could provide a recovery for creditors—"is inherently uncertain and subject to material risk. There can be no assurance that the Liquidation Trust will prevail in any such prosecution and the amount of any such proceeds." *Id.* § V.F.

14. On June 30, 2026, the U.S. Trustee's counsel sent Debtors' counsel informal comments about the Plan, Disclosure Statement, and Motion. On July 6, 2026, Debtors' counsel provided responses. Based on those responses, and subject to a review of revised documents, the U.S. Trustee's other informal comments have been resolved for purposes of the July 14, 2026 hearing. The U.S. Trustee reserves all of his rights and objections regarding confirmation.

## OBJECTION

15. The Court should deny the Motion. The U.S. Trustee respectfully submits that third-party releases based on a failure to opt out are not consensual. The Plan's third-party releases should be changed to opt-in.

### I. The Plan is Not Confirmable Because It Proposes Nonconsensual Third-Party Releases That Are Not Authorized Under the Bankruptcy Code.

16. The Court should deny the Motion because the Plan contains nonconsensual third-party releases.

17. Plan § I.128 defines "Releasing Parties" to include: "(d) all holders of Claims, other than holders of Claims only in Classes 6 and 7, who do not make an Opt-Out Election[.]"

18. Generally, Plan § 11.09 would cause Releasing Parties to release claims and causes of action they have against the Released Parties.

19. The Court should decline to approve the above third-party releases because they are nonconsensual.

20. The United States Supreme Court held in *Harrington v. Purdue Pharma L.P.* that bankruptcy courts cannot involuntarily alter relationships between non-debtors by imposing nonconsensual releases of, or injunctions barring, claims between them. 603 U.S. 204, 209, 227 (2024). The Court did not prohibit chapter 11 plans from memorializing consensual third-party releases, and it did not "express a view on what qualifies as a consensual release." *Id*. at 226.

21. A consensual third-party release is a separate agreement between non-debtors governed by nonbankruptcy law. As the Supreme Court recognized in *Purdue*, a release is a type of settlement agreement. *Purdue*, 603 U.S. at 223 (explaining that what the

Sacklers sought was not "a traditional release" because "settlements are, by definition, consensual") (cleaned up). A bankruptcy court can acknowledge parties' agreement to a third-party release, but the authority for a consensual release is the agreement itself, not the Bankruptcy Code. If a claim has been extinguished by virtue of the agreement of the parties, then the court is not using the forcible authority of the Bankruptcy Code or the bankruptcy court to extinguish the property right.

22. Here, there is no existing release agreement as to creditors who fail to opt out. A confirmation order effectuating third-party releases based on creditors' failure to opt out would impermissibly alter the relations between non-debtors because a valid release does not exist under nonbankruptcy law.

23. State law governs whether non-debtors have agreed to release each other. *See infra* Part A. Nothing in the Bankruptcy Code allows parties to disregard state law when debtors seek to impose third-party releases in their plans. Under Delaware law (*see* Plan § 11.16), as in other states, silence is not acceptance of an offer other than in limited circumstances inapplicable here. The Debtors thus cannot deem creditors to have released their claims based on their failure to opt out on their ballots or opt-out forms. Those creditors have not agreed to the third-party release under state law.

**A. State Contract Law Applies.**

24. "[T]he basic federal rule in bankruptcy is that state law governs the substance of claims." *Travelers Cas. & Sur. Co. of America v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450-451 (2007) (cleaned up); *accord Butner v. United States*, 440 U.S. 48 (1979). Thus, courts apply state law when the question is whether a debtor has entered into a valid settlement agreement. *See Houston v. Holder (In re Omni Video, Inc.)*, 60 F.3d 230, 232 (5th Cir. 1995) ("Federal bankruptcy law fails to address the validity of settlements and this gap should be

filled by state law."); *De La Fuente v. Wells Fargo Bank, N.A. (In re De La Fuente)*, 409 B.R. 842, 845 (Bankr. S.D. Tex. 2009) ("Where the United States is not a party, it is well established that settlement agreements in pending bankruptcy cases are considered contract matters governed by state law.").

25. The rule is no different for third-party releases. They are separate agreements between non-debtors governed by state law. Unlike a bankruptcy discharge, which "is an involuntary release by operation of law," "[i]n the case of voluntary releases, the nondebtor is released from a debt, not by virtue of 11 U.S.C. § 1141(b), but because the *creditor agrees to do so*." *In re Arrowmill Dev. Corp.*, 211 B.R. 497, 503, 507 (Bankr. D.N.J. 1997) (emphasis in original). *See also Continental Airlines Corp. v. Air Line Pilots Assn., Int'l (In re Continental Airlines Corp.)*, 907 F.2d 1500, 1508 (5th Cir. 1990) (holding that for settlement provisions "unrelated to substantive provisions of the Bankruptcy Code," "the settlement itself is the source of the bankruptcy court's authority"). Thus, "the Bankruptcy Code has not altered the contractual obligations of third parties, the parties themselves have so agreed." *Arrowmill*, 211 B.R. at 507.

26. Because the Bankruptcy Code does not authorize the imposition of an involuntary release, *Purdue*, 603 U.S. at 209, 227, the release must be consensual under non-bankruptcy law. There is no Bankruptcy Code provision that preempts otherwise applicable state contract law governing releases between non-debtors. *See*, *e.g.*, *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 416 (2010) (plurality) ("For where neither the Constitution, a treaty, nor a statute provides the rule of decision or authorizes a federal court to supply one, 'state law must govern because there can be no other law.'") (quoting *Hanna v. Plumer*, 380 U.S. 460, 471-72 (1965)); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)

("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."). Section 105(a), for example, "serves only to carry out authorities expressly conferred elsewhere in the code." *Purdue*, 603 U.S. at 216 n.2 (quotation marks omitted). But the Bankruptcy Code does not confer any authority to impose a release of claims between non-debtors that would not be valid under state law. The Bankruptcy Code does not define a "consensual release." *See* 11 U.S.C. § 101. "There is no rule that specifies an 'opt out' mechanism or a 'deemed consent' mechanism" for third-party releases in chapter 11 plans. *In re Chassix Holdings, Inc.*, 533 B.R. 64, 78 (Bankr. S.D.N.Y. 2015). And no Bankruptcy Code provision authorizes bankruptcy courts to deem a non-debtor to have consented to release claims against other non-debtors where such consent would not exist as a matter of state law.

27. Some courts have held that federal rather than state law applies to determine whether a third-party release is consensual. But because there is no applicable Bankruptcy Code provision, whether a non-debtor has consented to release another non-debtor is not, as one court concluded, a "matter of federal bankruptcy law." *In re Spirit Airlines, Inc.*, 668 B.R. 689, 716, 720-21 (Bankr. S.D.N.Y. 2025); *see also In re Robertshaw US Holding Corp.*, 662 B.R. 300, 323 (Bankr. S.D. Tex. 2024) (relying on caselaw in the district rather than any provision of the Bankruptcy Code). Absent express authority in the Bankruptcy Code, federal courts cannot simply make up their own rules for when parties have given up property rights by releasing claims. Bankruptcy courts cannot "create substantive rights that are otherwise unavailable under applicable law," nor do they possess a "roving commission to do equity." *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir. 2003) (quotation omitted). Indeed, nearly a hundred years ago, the Supreme Court rejected the notion that

federal courts can displace state law as "an unconstitutional assumption of powers by the Courts of the United States which no lapse of time or respectable array of opinion should make us hesitate to correct." *Erie*, 304 U.S. at 79 (cleaned up); *accord Rodriguez v. FDIC*, 589 U.S. 132, 133 (2020) (holding state law applies to determine allocation of federal tax refund resulting from consolidated tax return). Courts thus may not invent their own rule for when parties may be "deemed" to have given up property rights by releasing claims.

28. Accordingly, state law contract principles govern whether a third-party release is consensual. *See*, *e.g.*, *Patterson v. Mahwah Bergen Ret. Grp., Inc.*, 636 B.R. 641, 684-85 (E.D. Va. 2022) (describing bankruptcy court as "look[ing] to the principles of contract law rather than the bankruptcy court's confirmation authority to conclude that the validity of the releases requires affirmative consent"); *In re Smallhold, Inc.*, 665 B.R. 704, 720 (Bankr. D. Del. 2024) (recognizing that "some sort of affirmative expression of consent that would be sufficient as a matter of contract law" is required); *In re SunEdison, Inc.,* 576 B.R. 453, 458 (Bankr. S.D.N.Y. 2017) ("Courts generally apply contract principles in deciding whether a creditor consents to a third-party release."); *Arrowmill*, 211 B.R. at 506, 507 (explaining that a third-party release "is no different from any other settlement or contract" and thus "the validity of the release . . . hinge[s] upon principles of straight contract law or quasi-contract law rather than upon the bankruptcy court's confirmation order") (internal quotation marks omitted) (alterations in original). Because "'nothing in the bankruptcy code contemplates (much less authorizes it)' . . . any proposal for a non-debtor release is an ancillary offer that becomes a contract upon acceptance and consent." *In re Tonawanda Coke Corp*., 662 B.R. 220, 222 (Bankr. W.D.N.Y. 2024) (quoting *Purdue*, 603 U.S. at 223). And "any such consensual agreement would be governed by state law." *Id.*

29. Even if federal law applied, however, it would not lead to a different result. That is because "federal contract law is largely indistinguishable from general contract principles under state common law." *Young v. BP Expl. & Prod., Inc. (In re Deepwater Horizon)*, 786 F.3d 344, 354 (5th Cir 2015) (cleaned up). *See also Deville v. United States*, 202 F. App'x 761, 763 n.3 (5th Cir. 2006) ("The federal law that governs whether a contract exists 'uses the core principles of the common law of contracts that are in force in most states.' . . . These core principles can be derived from the Restatements.") (quoting *Smith v. United States*, 328 F.3d 760, 767 n.8 (5th Cir. 2003)); *In re Gol Linhas Aereas Inteligentes S.A.*, 675 B.R. 125, 130 (S.D.N.Y. 2025) ("[I]t is not necessary to decide whether federal or state law controls. . . . Here, the same general principles of contract law apply under both federal and state law, so there is no conflict. Those principles indicate that the third-party releases at issue here are nonconsensual and, thus, barred by the Supreme Court in *Purdue*.") (appeal pending sub nom. *In re Gol Linhas Aereas Inteligentes S.A.*, 26-49 (2d Cir.)).

**B. Under State Law, Silence Is Not Acceptance.**

30. The Debtors bear the burden to prove that the Plan is confirmable. *See In re American Cap. Equip., LLC*, 688 F.3d 145, 155 (3d Cir. 2012). The Debtors have not met that burden because they have not established that the third-party release is consensual under applicable state law.

31. Under Delaware law, an agreement to release claims—like any other contract—requires a manifestation of assent to that agreement. *See*, *e.g.*, Restatement (Second) of Contracts § 17(1) ("[T]he formation of a contract requires a bargain in which there is manifestation of mutual assent to the exchange and a consideration."); *In re Hertz Corp.*, 120 F.4th 1181, 1192 (3d Cir. 2024) ("Contract law does not bind parties to promises they did not make."); *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1229 (Del. 2018) ("Under

Delaware law, overt manifestation of assent . . . controls the formation of a contract.") (cleaned up).

32. Thus, "[o]rdinarily[,] an offeror does not have power to cause the silence of the offeree to operate as acceptance." Restatement (Second) of Contracts § 69 cmt. a (1981). *See also Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022) ("[T]he offeror cannot prescribe conditions so as to turn silence into acceptance."); *Jacques v. Solomon & Solomon P.C.*, 886 F. Supp. 2d 429, 433 n.3 (D. Del. 2012) ("Merely sending an unsolicited offer does not impose upon the party receiving it any duty to speak or deprive the party of its privilege of remaining silent without accepting."); *Elfar v. Wilmington Trust, N.A.*, No. 20-0273, 2020 WL 7074609, at *2 n.3 (E.D. Cal. Dec. 3, 2020) ("The court is aware of no jurisdiction whose contract law construes silence as acceptance of an offer, as the general rule."), *adopted by* 2020 WL 1700778, at *1 (E.D. Cal. Feb. 11, 2021); *In re Gol Linhas*, 675 B.R. at 131 ("the general principles of contract law, as embodied in the Restatement of Contracts, establish that, outside of rare exceptions, consent cannot be implied from silence."); *accord* 1 Corbin on Contracts § 3.19 (2018); 4 Williston on Contracts § 6:67 (4th ed.).

33. There are only very limited exceptions to the "general rule of contracts . . . that silence cannot manifest consent." *Patterson*, 636 B.R. at 686; *see also*, *e.g.*, *McGurn v. Bell Microproducts, Inc.*, 284 F.3d 86, 90 (1st Cir. 2002) (recognizing "general rule" that "silence in response to an offer . . . does not constitute acceptance of the offer"). "[T]he exceptional cases where silence is acceptance fall into two main classes: those where the offeree silently takes offered benefits, and those where one party relies on the other party's manifestation of intention that silence may operate as acceptance. Even in those cases the

contract may be unenforceable under the Statute of Frauds." Restatement (Second) of Contracts § 69 cmt. a.

34. But absent such extraordinary circumstances, "[t]he mere receipt of an unsolicited offer does not impair the offeree's freedom of action or inaction or impose on him any duty to speak." *Id.* And "[t]he mere fact that an offeror states that silence will constitute acceptance does not deprive the offeree of his privilege to remain silent without accepting." *Id.* § 69, cmt. c; *see also Patterson*, 636 B.R. at 686 (explaining how contract law does not support deeming consent based upon a failure to opt out); *Jacques*, 886 F. Supp. 2d at 433 n.3.

**C. Not Voting and Not Opting Out Do Not Constitute Consent.**

35. Third-party releases cannot be imposed on those who do not vote and do not opt out. *See Smallhold*, 665 B.R. at 709, 716; *SunEdison*, 576 B.R. at 458–61; *Chassix*, 533 B.R. at 81–82; *In re Wash. Mut., Inc.*, 442 B.R. 314, 355 (Bankr. D. Del. 2011). Here, the Plan would impose third-party releases on: (i) creditors who are unimpaired or unclassified under the Plan and do not opt-out; (ii) general unsecured creditors (class 4) and convenience class creditors (class 5) who are eligible to vote but do not opt out; and (iii) three dozen categories of related parties. There is no basis to infer consent by those parties based on their inaction regarding the Plan.

36. Even where there are conspicuous warnings that a party will be bound if they remain silent, that is not sufficient to recast a party's silence as consent to a third-party release. *SunEdison*, 576 B.R. at 458–61. Creditors have no legal duty to vote on a plan, much less to respond to an offer to release non-debtors included in a plan solicitation. *See*, *e.g.*, 11 U.S.C. § 1126(a) (providing that creditors "may" vote on a plan); *SunEdison*, 576 B.R. at 460–61 (recognizing that creditors have no duty to speak regarding a plan that would allow a court

to infer consent to third-party releases from silence). Consent thus cannot be inferred from their silence because "[t]he mere fact that an offeror states that silence will constitute acceptance does not deprive the offeree of his privilege to remain silent without accepting." RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. c (1981). Nor can it "impose on him any duty to speak." *Id.* § 69 cmt. a.

37. Further, "[w]hen the circumstances are equally consistent with either of two facts, neither fact may be inferred." *See In re Couture Hotel Corp.*, 554 B.R. 369, 383 n.80 (Bankr. N.D. Tex. 2016). Consent thus cannot be inferred here because parties who are solicited but do not vote may have failed to vote for reasons other than an intention to asset to the releases. *SunEdison*, 576 B.R. at 461. This is especially true for those whose votes are not solicited at all, but who are instead sent a notice informing them they cannot vote plus an opt-out form that they must return to avoid being bound by the third-party release.

38. "Charging all inactive creditors with full knowledge of the scope and implications of the proposed third-party releases, and implying a 'consent' to the third-party releases based on the creditors' inaction, is simply not realistic or fair and would stretch the meaning of 'consent' beyond the breaking point." *Chassix*, 533 B.R. at 81. "It is reasonable to require creditors to pay attention to what the debtor is doing in bankruptcy as it relates to the creditor's rights against the debtor. But as to the creditor's rights against third parties—which belong to the creditor and not the bankruptcy estate—a creditor should not expect that those rights are even subject to being given away through the debtor's bankruptcy." *Smallhold*, 665 B.R. at 721; *see also id.* at 719-20 (discussing *Chassix*). "A party's receipt of a notice imposing an artificial opt-out requirement, the recipient's *possible* understanding of the meaning and ramifications of such notice, and the recipient's failure to opt-out simply do not

qualify" as consent. *Emerge Energy Services, LP*, No. 19-11563, 2019 WL 7634308, at *18 (Bankr. D. Del. Dec. 5, 2019) (emphasis in original). "[B]asic contract principles" require affirmative assent, not inferences drawn from inaction that in fact may reflect only "[c]arelessness, inattentiveness, or mistake." *Id.*

39. Simply put, an "opt out mechanism is not sufficient to support the third-party releases . . . particularly with respect to parties who do not return a ballot (or are not entitled to vote in the first place)." *In re Wash. Mut., Inc.*, 442 B.R. at 355; *see also Chassix*, 533 B.R. at 81–82.

**C. Voting To Reject and Not Opting Out Does Not Manifest Consent to a Third-Party Release.**

40. People who vote to reject the Plan are not consenting to third-party releases by failing to mark an opt-out box. Not only is there no "mutual agreement" as to the Plan, much less the third-party release, but also the creditor has expressly stated its rejection of the Plan. As the court in *Chassix* reasoned: "[A] creditor who votes to reject a plan should also be presumed to have rejected the proposed third-party releases that are set forth in the plan. *The additional 'opt out' requirement, in the context of this case, would have been little more than a Court-endorsed trap for the careless or inattentive creditor.*" 533 B.R. at 79 (emphasis added).

**D. This Case Does Not Fit the Taking-Offered-Benefits Exception to the Rule that Silence Is Not Consent.**

41. This case does not fit within the exception to the rule that silence is not consent based on the taking of offered benefits. Receiving distributions under a chapter 11 plan cannot be treated as taking offered benefits in way that manifests consent to a third-party

release.[2] Because creditors are legally entitled to receive distributions allocated to them under a chapter 11 plan, receiving those benefits while remaining silent about a third-party release is not a manifestation of consent to release non-debtors. Critically, "[t]he mere fact that an offeror states that silence will constitute acceptance does not deprive the offeree of his privilege to remain silent without accepting." Restatement (Second) of Contracts § 69 cmt. c (1981). Rather, for the taking-benefits exception to apply, three things must be true, none of which are true here.

42. First, consent cannot be inferred from taking benefits unless the offeree could reject the offered benefits and thereby avoid accepting the offer. *See*, *e.g.*, *id*. § 69(1)(a) (requiring a "reasonable opportunity to reject" benefit); *accord* 2 Richard A. Lord, Williston on Contracts § 6:9 (4th ed. 1991); *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1230 (9th Cir. 2022); *Register.com, Inc. v. Verio, Inc.*, 365 F.3d 393, 403 (2d Cir. 2004). But claim and interest holders do not have an opportunity to reject Plan distributions (if any) and thereby avoid being bound by the third-party release.[3] Even if a claim holder could decline their Plan distribution, that person would still be deemed bound by the third-party release despite their silence.

43. Second, an offeree is not "retaining" benefits from the offeror when the offeree is entitled to those benefits regardless of whether the offeree rejects the offer. *See*

---

[2] The bankruptcy court in *Spirit* reasoned that there was consent because the released third parties were providing value to the bankruptcy estate with the "understanding that the Third Party Releases are being requested in the form of an opt-out," and that value was then passed on to creditors through the chapter 11 plan. *In re Spirit Airlines, Inc.*, 668 B.R. at 717-18. But the mere receipt of this second-hand benefit via a chapter 11 plan cannot reasonably be interpreted as manifesting consent to an offer to release non-debtors for the reasons stated herein.

[3] Nor could the Plan make distributions contingent on acceptance of a third-party release because section 1123(a)(4) requires that a plan "provide the same treatment for each claim or interest of a particular class." 11 U.S.C. § 1123(a)(4).

*Norcia v. Samsung Telecom. Am., LLC*, 845 F.3d 1279, 1286 (9th Cir. 2017). That is the case here, where a given creditor's Plan distributions are not contingent on how they voted on the Plan. Put differently, accepting "benefits" to which an offeree is otherwise entitled cannot provide a basis for inferring consent because an offeree cannot be required to give up rights in order to reject the offer. *See Reichert*, 56 F.4th at 1230-31 (using card to access one's own cash did not support inference of consent). Thus, creditors cannot be required to give up their rights to distributions under a chapter 11 plan in order to reject the third-party release.

44. The *Reichert* case is illustrative. There, the plaintiff had cash confiscated when he was jailed. *Id*. at 1224. Upon release, he was issued a debit card to access the confiscated cash. *Id*. He was given no alternative way to access his money. *Id*. The Ninth Circuit held that use of the debit card did not constitute an agreement to the card's Account Agreement, despite a clear statement on the card that "by using this card, you agree to the Account Agreement." *Id*. The court explained that the plaintiff's "decision to withdraw his own money cannot reasonably be understood to manifest assent to the contract." *Id*. at 1228.

45. Similarly, creditors are effectively accessing their own money when they accept distributions under a chapter 11 plan. Creditors had prepetition rights against the Debtors. The Bankruptcy Code permits debtors to impair those rights if Bankruptcy Code requirements are met, including through a confirmed chapter 11 plan. Once a chapter 11 plan is confirmed, creditors are entitled to recover whatever distributions the plan allocates to them. But the distributions they receive are no more than what they were entitled to prepetition, and often are much less. Merely receiving these distributions—to which claim and interest holders have a statutory right—cannot reasonably be understood as manifesting consent to release third-party non-debtors.

46. Third, to infer consent from a receipt of benefits, the offeror must have a right to preclude the offeree from receiving the benefits. *Reichert*, 56 F.4th at 1228 (holding accessing one's own funds does not constitute accepting benefits for purposes of this exception); *R.R. Mgmt. Co., L.L.C. v. CFS La. Midstream Co*., 428 F.3d 214, 223 (5th Cir. 2005) (holding "no reasonable jury could conclude" there was consent to a contract despite the offeror's statement it would view the offeree's failure to remove a pipeline from certain land as consent when there was no evidence the offeror had "the right to exclude" the offeree from the property or that the offeree "accepted any service or thing of value from" the offeror). But the non-debtor releasees have no right to preclude the Debtors' creditors from receiving distributions under the Plan.

47. For the above reasons, the U.S. Trustee respectfully submits that the Plan's opt-out releases are nonconsensual. The Court should deny the Motion unless Plan § I.128 is revised (and the ballots and opt-out form and are conformed) to provide:

> Each of, and in each case in its capacity as such: (a) the Debtors and each of the Estates; (b) L. Spencer Wells and Thomas FitzGerald; (c) any successor to the Debtors or any other representative of the Estates pursuant to Bankruptcy Code § 1123(b)(3), including the Liquidation Trust; (d) all holders of Claims, other than holders of Claims only in Classes 6 and 7, who ~~do not make an Opt-Out~~ make an Opt-In Election; (e) each Released Party; and (f) each Related Party of each entity in clauses (a) – (e) solely to the extent such Related Party may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an entity in clauses (a) – (e) and solely to the extent that the Releasing Party can legally bind the Related Party under applicable non-bankruptcy law; *provided* that, in each case, an entity is not a Releasing Party if it ~~makes an Opt-Out~~ does not make an Opt-In Election; *provided* further that no Excluded Party is a Releasing Party.

## CONCLUSION

WHEREFORE, the U.S. Trustee respectfully requests that the Court deny the Motion and grant such other relief as the Court deems fair and just.

Dated: July 7, 2026
Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE,**
**REGIONS 3 & 9**

By: *<u>/s/ Benjamin Hackman</u>*
Benjamin A. Hackman (DE #7702)
Trial Attorney
Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
benjamin.a.hackman@usdoj.gov

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| LUGANO DIAMONDS & JEWELRY INC., *et al.*,[1] | Case No. 25-12055 (BLS)<br>(Jointly administered) |
| Debtors. | Re: D.I. 612, 614 & 615<br>**Hearing Date: July 14, 2026, at 10:00 a.m.**<br>**Objections Due: July 7, 2026, at 4:00 p.m.** |

**CERTIFICATE OF SERVICE**

I certify that on July 7, 2026, I caused to be served a copy of the *Objection of the United States Trustee to Approval of Solicitation Procedures* in the above-entitled action through the CM/ECF notification system, with courtesy copies upon the following via e-mail:

Keller Benvenutti Kim LLP
Attn: Tobias S. Keller, Esq.
Scott J. Friedman, Esq.
E-mail: tkeller@kbkllp.com
sfriedman@kbkllp.com

Young Conaway Stargatt & Taylor, LLP
Attn: Edmon L.Morton, Esq.
Sean M. Beach, Esq.
Shella Borovinskaya, Esq.
E-mail: emorton@ycst.com
sbeach@ycst.com
sborovinskaya@ycst.com

Squire Patton Boggs (US) LLP
Attn: Stephen D. Lerner
Peter R. Morrison, Esq.
Jeffrey N. Rothleder
E-mail: stephen.lerner@squirepb.com
peter.morrison@squirepb.com
jeffrey.rothleder@squirepb.com

Bayard, P.A.
Attn: Erika F. Johnson, Esq.
E-mail: ejohnson@bayardlaw.com

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's U.S. federal tax identification number, to the extent applicable, are as follows: Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc. (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308). The notice address for the Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, CA 92660.

Pachulski Stang Ziehl & Jones LLP
Attn: James E. O'Neill, Esq.
Jeffrey N. Pomerantz, Esq.
John A. Morris, Esq.
Jordan A. Kroop, Esq.
E-mail: joneill@pszjlaw.com
jpomerantz@pszjlaw.com
jmorris@pszjlaw.com
jkroop@pszjlaw.com

Dated: July 7, 2026
Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE,**
**REGIONS 3 & 9**

By: *<u>/s/ Benjamin Hackman</u>*
Benjamin A. Hackman (DE #7702)
Trial Attorney
Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
benjamin.a.hackman@usdoj.gov