**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>LUGANO DIAMONDS & JEWELRY INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-12055 (BLS)<br><br>(Jointly Administered)<br><br>**Hearing Date:**<br><br>**August 31, 2026 at 11:00 a.m. (ET)** |

**OBJECTION OF DEBTORS AND DEBTORS IN POSSESSION TO MOTION OF MORDECHAI FERDER, INDIVIDUALLY AND IN HIS CAPACITY AS TRUSTEE OF THE HAIM FAMILY TRUST, TO ESTIMATE CLAIM FOR VOTING PURPOSES PURSUANT TO BANKRUPTCY RULE 3018(a)**

The debtors and debtors in possession in the above-captioned chapter 11 cases, acting through the Special Committee of the Board of Directors of Debtor Lugano Diamonds & Jewelry Inc. (the "Special Committee"),[2] by and through their undersigned counsel, file this objection (the "Objection") to the *Motion of Mordechai Ferder, Individually and in His Capacity as Trustee of the Haim Family Trust, to Estimate Claim for Voting Purposes Pursuant to Bankruptcy Rule 3018(a)* [D.I. 765] (the "3018 Motion"). In support of this Objection, the Debtors respectfully state as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's U.S. federal tax identification number, to the extent applicable, are as follows: Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc. (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308). The notice address for the Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, California 92660.

[2] This Objection states the position of the Debtors. It is filed by the Special Committee given the Special Committee's mandate from the Board of Directors of Lugano Diamonds & Jewelry Inc. ("Lugano") to "oversee the commencement, prosecution, settlement, or discontinuation of any action or proceeding against any individuals or entities (including, without limitation, Mr. Ferder, investors (whether or not customers), professionals, and/or CODI or its affiliates) relating to any matters addressed by, or causes of action that may be supported by facts developed in, [its] Investigation…" *See Declaration of Spencer Wells in Support of the Application for Entry of an Order Authorizing the Retention and Employment of Barnes & Thornburg LLP as Special Counsel to the Special Committee of the Board of Directors of Lugano Diamonds & Jewelry Inc. Effective as of the Petition Date* [D.I 105-3] at ¶ 8.

## SUMMARY OF ARGUMENT

1. The 3018 Motion should be denied in its entirety on several independent grounds. First, it is academic. Although the final certification of ballots is not yet available, preliminary results show that the Class of General Unsecured Claims under the Plan voted to accept the Plan by 95.8% percent in number and 99.9% in amount (excluding any amount for Mr. Ferder's objected-to claim). Even if the 3018 Motion were granted and Mr. Ferder's claim temporarily allowed to vote as he seeks, Class 4 General Unsecured Claims would still comfortably vote (by almost 85%) to accept the Plan.

2. The 3018 Motion fails substantively as well. Mr. Ferder asks for temporary allowance of an over-$32 million claim for voting purposes. That claim is supported only by an unverified list of payments purportedly made for the Debtors' benefit over a four-year period. It does not identify the purpose of the payments, why they were for the Debtors' benefit, or, most notably, why they give rise to a right of payment in favor of Mr. Ferder. In most cases, the recipient is not even identified. There are no documents nor testimony from Mr. Ferder before the Court that any of those alleged payments conferred any benefit on the Debtors, that Mr. Ferder properly has a right to payment on account of them, or, in most cases, whether Mr. Ferder even made the payments.

3. Evidence developed by the Debtors reinforces the conclusion that his claim is properly disallowed for voting purposes. No obligations of the Debtors were satisfied by any of Mr. Ferder's purported payments. The only payment described with any specificity in the Motion, moreover, is a $6.4 million payment by Mr. Ferder to Lugano that appears to have related to a non-existent diamond transaction – the very sort of suspicious transaction that led to the filing of these chapter 11 cases. There is no legally cognizable basis for Mr. Ferder to be allowed a vote on the

Plan in amounts relating to the very harms he perpetuated on the Debtors and their stakeholders. His 3018 Motion should be denied.

## LEGAL BACKGROUND

4. The Motion and this Objection are governed by Fed. R. Bankr. P. 3018(a), which provides in relevant part that "…the court after notice and a hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a).[3]

5. Neither the Bankruptcy Code nor the Bankruptcy Rules provide guidance on the methodology to be used in evaluating whether temporary allowance is appropriate and, if so, in what amount. *See In re Pacific Sunwear of Calif., Inc.* Case No. 16-10882 (LSS), 2016 WL 3250681 at *3 (Bankr. D. Del. Aug. 8, 2016). Instead, the determination of whether a claim should be temporarily allowed for voting purposes (and, if so, in what amount) is left to the court's discretion. *See id.* (*citing In re Quigley Co.*, 346 B.R. 647, 653 (Bankr. S.D.N.Y. 2006)); *cf. Bittner v. Borne Chemical Co.*, 691 F.2d 134, 135-36 (3d Cir. 1982) (courts have broad discretion as to the method used in estimating claims).

6. Courts have adopted a variety of approaches in exercising that discretion. However, those approaches tend to have several common factors. Courts tend to evaluate the likely merits of the parties' competing positions. In doing so, they consider "the likelihood that

---

[3] Mr. Ferder seems to suggest that the Debtors' Objection to his claim has not been validly served. *See* 3018 Motion at ¶ 2 ("Debtors take the position that serving this combined Complaint and Objection on Mr. Ferder's counsel, not on Mr. Ferder as is required for adversary actions, constitutes a validly-served Objection"). The Debtors indeed assert that the objection has been properly served. That assertion is based on the plain language of Fed. R. Bankr. P. 3007, which provides that service of objection to a claim may be made by serving the claimant by first-class mail at the address on his or her proof of claim, as the Debtors have done. *See* Fed. R. Bankr. P. 3007(2)(A). Although Mr. Ferder left the United States for Israel following his resignation as the Debtors' CEO and the Debtors understand he has not been successfully served with any of the numerous pending complaints against him while he has been there, he has unquestionably invoked this Court's jurisdiction over his claim by filing his proof of claim and therefore is properly served with the Objection in accordance with Fed. R. Bankr. P. 3007.

each party's version might or might not be accepted by a trier of fact," and estimate the claim by discounting the asserted amount to reflect the probability that the claim may be sustained only in part, or not at all. *See, e.g., In re Frascella Enters., Inc.*, 360 B.R. 435, 458 (Bankr. E.D. Pa. 2007) (*quoting In re Ralph Lauren Womenswear, Inc.*, 197 B.R. 771, 775 (Bankr. S.D.N.Y. 1996)); *In re Innovasystems, Inc.*, No. 13-12499, 2014 WL 7235527, at *7 (Bankr. D.N.J. Dec. 18, 2014).

7. In *Quigley*, the Bankruptcy Court for the Southern District of New York suggested that a Rule 3018 determination "should ensure that the voting power is commensurate with the creditor's economic interest in the case." *Quigley*, 346 B.R. at 654; *see also Pacific Sunwear*, Case No. 16-10882 at *6; *Innovasystems*, 2014 WL 7235527 at *7-9 (discounting claim to $0 for voting purposes where the court found it unlikely the claimant would succeed on the merits).

8. The Debtors submit that this approach is correct. The Court should follow the reasoning of *Quigley*, *Pacific Sunwear*, and similar decisions and ensure that the allowed amount of Mr. Ferder's claim for voting purposes is commensurate with his legitimate economic interest in the Debtors' cases, taking into account all relevant factors and evidence before the Court. As the Debtors establish below, Mr. Ferder's legitimate economic interest is zero.[4]

9. In making its determination, the Court should also follow most courts in employing a summary evidentiary process rather than a full claim objection trial. While – as noted above – a bankruptcy judge may employ whatever estimation method is best suited to the circumstances,

[4] Mr. Ferder argues that a more mechanical process similar to the burden-shifting approach applied to the allowance of claims for distribution purposes under section 502(c) of the Bankruptcy Claim is required for motions under Rule 3018(a). See Motion at ¶¶ 25-30. Nothing in applicable case law requires this, and the Debtors submit that the Court is not so limited in making its determination as to the temporary allowance of claims for voting purposes. However, even if the Court applied such a standard, the Court should not conclude that Mr. Ferder's proof of claim, which was submitted without evidentiary support, should be entitled to a presumption of allowance. Furthermore, if his proof of claim were so entitled, the Debtors' multi-count objection and assertion of defenses thereto – which includes an objection to the lack of evidence supporting Mr. Ferder's claim – is more than sufficient to shift the burden back to Mr. Ferder to demonstrate his entitlement to a claim.

some form of "summary type hearing" is generally required unless the motion can be resolved on undisputed facts. *See In re Zolner*, 173 B.R. 629, 633 (Bankr. N.D. Ill. 1994); *In re FRG, Inc.*, 121 B.R. 451, 456 (Bankr. E.D. Pa. 1990). Where the underlying facts are disputed, the parties are expected to present evidence addressing both liability and amount. The Debtors now turn to the evidence respecting Mr. Ferder's claim.

**MR. FERDER HAS FAILED TO SUBMIT EVIDENCE**
**SUPPORTING A VALID CLAIM AGAINST THE DEBTORS**

10. The evidence submitted by Mr. Ferder in support of his requested $32 million claim for voting purposes consists of: (i) lists of amounts alleged to have been paid by Mr. Ferder out of his Charles Schwab and Bank of America accounts "to pay obligations of Lugano Diamonds & Jewelry, Inc.," together with the dates of such alleged payments; (ii) Bank of America account statements showing five transfers in an aggregate amount of $1.95 million (approximately six percent of the amount Mr. Ferder seeks to vote); and (iii) a wire transfer statement showing a transfer of $6.4 million from Mr. Ferder to Lugano Diamonds & Jewelry, Inc. on March 11, 2025. *See* Proof of Claim, Addenda A & B (lists of payments), 3018 Motion at Exhibits 2 & 3 (Bank of America statements and wire transfer records). No information has been submitted by Mr. Ferder either to the Debtors or the Court to establish how such payments create any obligation of the Debtors to Mr. Ferder. In particular, Mr. Ferder fails to identify, let alone establish: (a) the parties to whom those payments were made (other than in a handful of cases), (b) the reason those payments were made, (c) the transactions to which those payments relate, (d) any benefit to the Debtors or their estates from such payments, and (e) most crucially, why any of those payments gives rise to a right of payment in favor of Mr. Ferder.

11. This falls far short of Mr. Ferder's burden to demonstrate entitlement to vote any claim, let alone a $32 million one. The list of payments alleged to have been made from Mr.

Ferder's Charles Schwab account (totaling $27.7 million of his claimed amount) is simply a list of dates and payments with no supporting documentation or verification. The Debtors have repeatedly requested supporting documentation from Mr. Ferder, and Mr. Ferder has repeatedly declined to provide it.[5] Mr. Ferder also did not submit an affidavit or declaration with the Motion that could have addressed these points.

12. Understanding the counterparties to these alleged transfers and their purposes, as well as why Mr. Ferder argues he is entitled to payment on account of them, is fundamental to the legitimacy of Mr. Ferder's request. Mr. Ferder apparently believes that the Debtors and the Court must, in effect, take his word for it. It is difficult to imagine a clearer failure of proof.

13. The additional documentation submitted with the 3018 Motion does little to help. The Bank of America statements evidence only that transfers were made on the dates and in the amounts set forth on Addendum B to Mr. Ferder's proof of claim, with summary references to the recipients. They do not explain why the transfers were made, how they benefited the Debtors or their estates, or why Mr. Ferder is entitled to payment of those amounts. No reasonable person can believe that Mr. Ferder made over $29 million in legitimate transfers of personal funds to satisfy obligations of the Debtors without documentation and without a clear understanding that

[5] The list of dates and payments was surely compiled with reference to some source, but no such source has been provided to the Debtors or the Court, despite the Debtors' repeated requests.

he would be repaid those amounts by the Debtors.[6] Mr. Ferder does nothing to demonstrate that any of those facts exist, and that failure is fatal to the 3018 Motion.[7]

14. The Debtors have attempted to determine whether Mr. Ferder's claims are legitimate. All available information shows they are not. Specifically, given Mr. Ferder's assertion that the payments were "to pay obligations of Lugano Diamonds & Jewelry, Inc." (Proof of Claim, Addenda A & B), the Debtors reviewed their accounts payable to identify any obligations that might have been satisfied by the payments Mr. Ferder alleges he made for the Debtors' benefit. *See* Declaration of Joseph Pope ("Pope Decl.") at ¶ 4. No such payments were identified. *See id.* at ¶ 5.

15. In fact, the only payment out of the $29.6 million in transfers identified by Mr. Ferder that could be located was a $2.5 million payment on February 7, 2025, which was made to Lugano Diamonds & Jewelry Inc. (not to pay an obligation on its behalf), and was credited to the accounts receivable balance of [redacted]. (*See* discussion at ¶¶ 18-24, *infra*.) No other payments were found in Lugano's bank transactions, and no decreases in Lugano obligations matched any of the alleged payments. It is hard to fathom that Mr. Ferder, the Debtors' CEO, legitimately advanced over $29 million in personal funds to the Debtors, some of which was outstanding for over four years, and entirely failed to have the purpose of such advances or the fact that he was owed repayment of that money reflected in the Debtors' books and records.[8]

---

[6] Several aspects of the claimed transfers cast doubt on their legitimacy. For example, the first five of the transfers listed on Addendum A to Mr. Ferder's proof of claim, totaling $6.75 million, were made within three weeks after CODI acquired its controlling interest in the Debtors. These include one transfer for $875,000 allegedly made by Mr. Ferder the day after the acquisition. It strains belief that Mr. Ferder sold a controlling interest in Lugano in a highly-negotiated, large-dollar transaction one day and then legitimately need to front personal funds to pay Lugano's obligations *the very next day*. It is even more unbelievable that Mr. Ferder claims entitlement to be paid and to vote such amounts with no supporting documentation or evidence.

[7] Given the facts and circumstances surrounding the $6.4 million sought by Mr. Ferder and the Debtors' findings relating to that, the Debtors discuss that transfer separately at ¶¶ 18-24 below.

[8] The Debtors continue to show an account receivable due from Mr. Ferder for $107,394.37. This amount does not appear to be related to any of the amounts referenced in Mr. Ferder's proof of claim or the 3018 Motion; however,

16. Mr. Ferder attempts to overcome the near-total absence of documentation respecting the $29 million in payments he alleges to have made on the Debtors' behalf by repeatedly – and baselessly – contending that they are well documented. *See* 3018 Motion at ¶¶ 3 ("documented advances and payments," "well-documented"), 13 ("extensive documentation"), 14(a) ("documented personal advances totaling $29,624,500.00"), 31 ("twenty-seven documented wire transfers totaling $29,624,500.00"), 33 ("documented, itemized personal advances from Mr. Ferder's own bank accounts"). These conclusory allegations are insufficient, contrary to the available facts, and far short of legitimate support for a large-dollar claim.

17. Mr. Ferder's failure to provide appropriate proof speaks for itself. He has the burden to show his entitlement to vote a $32 million claim. Nothing in his proof of claim or the 3018 Motion comes close to meeting that burden, and his request for a $32 million vote should accordingly be denied.

**THE TRANSFERS RELATING TO [redacted]**
**HIGHLIGHT THE ILLEGITIMACY OF MR. FERDER'S CLAIM**

18. Mr. Ferder asserts that $6.4 million of the claim he seeks to vote relates to a wire transfer made by him to Lugano on March 11, 2025. *See* 3018 Motion at ¶ 14(b) *and* Exhibit 3. The 3018 Motion refers to this as "[a]dditional documented funds in the amount of $6,411,316.76 paid by Mr. Ferder to Lugano related to a Diamond Contract obligation that Lugano has since disavowed, meaning that Lugano should repay those monies to Mr. Ferder (see Exhibit 3)." 3018 Motion at ¶ 14(b).[9]

it reflects that there were some recorded transactions between Mr. Ferder and the Debtors. *See* Pope Decl. at ¶ 6. This makes his claim that there were over $29 million in completely unrecorded transactions in his favor even less believable.

[9] The 3018 Motion seeks a voting amount of $6,411,316.76 relating to this wire transfer, while Exhibit 3 to the Motion provides the transfer was in an amount of $6,441,316.76 (i.e., $30,000 more). This discrepancy does not affect the analysis herein.

19. Unlike the other transactions alleged by Mr. Ferder, the Debtors' books and records reflect that transfer, as well as a related $2.5 million transfer on February 7, 2025 that is also part of Mr. Ferder's claim.[10] Lugano's Chief Financial Officer, Christoph Pachler, and its Controller, David Ford, sought additional information from Mr. Ferder about the transaction a few days later. *See* Declaration of Christoph Pachler ("Pachler Decl.") at ¶ 4 and Exhibits A-B.

20. Mr. Pachler and Mr. Ford pieced together the following alleged facts relating to the $2.5 million and $6.4 million transfers, which Mr. Ferder confirmed:

- [redacted] purchased an item from Lugano for $8.8 million on July 22, 2024.
- [redacted] did not pay for the item at that time. Instead, Mr. Ferder entered into an agreement to personally loan the purchase price to [redacted].
- The proceeds of Mr. Ferder's loan to [redacted] were paid to Lugano by Mr. Ferder from accounts that he owns or controls to satisfy the $8.8 million receivable on Lugano's books.
- Lugano had no involvement with Mr. Ferder's loan to [redacted] or any other financial arrangements that Mr. Ferder had with [redacted].

*See* Pachler Decl. at Exhibit A. Mr. Ferder responded to this recitation of facts with "[t]his is correct." *Id.* Mr. Ferder later confirmed that the loan from Mr. Ferder to [redacted] was undocumented, would be repaid by [redacted] to Mr. Ferder upon completion of an initial purchase offering for his business, [redacted];[11] and that there was no collateral for the loan apart from the stone. *See* Pachler Decl. at Exhibit B.

---

10 The $2.5 million payment and similar payments are alleged in Mr. Ferder's proof of claim to have been made from his Charles Schwab account to pay "a number of the Diamond Contractors and other obligations of Lugano from his own personal funds." *See* Proof of Claim at 7. As shown herein, the $2.5 million payment was made *to* Lugano, and did not either satisfy an obligation of Lugano nor was it made to a Diamond Contractor.

11 Mr. Ferder provided as support for this transaction an email dated March 12, 2025, in which Mr. Ferder purportedly confirmed to [redacted] that Lugano had received the $6.4 million wire and that it would be

21. If these facts – as Mr. Ferder contemporaneously confirmed them - are believed, then [redacted] would have received an $8.8 million stone from Lugano. Mr. Ferder would have loaned [redacted] $8.8 million and paid that directly to Lugano on [redacted] behalf to satisfy [redacted] debt to Lugano. The only remaining aspect of the transaction would be that [redacted] would owe Mr. Ferder $8.8 million. Lugano would not owe Mr. Ferder – or anyone – anything.

22. However, the Debtors were unable to verify the alleged transactions involving [redacted] and Mr. Ferder's statements could not be relied upon. As Mr. Ferder states in the 3018 Motion, the transaction was "disavowed." 3018 Motion at ¶ 14(b). In fact, the transaction was investigated following the discovery of Lugano's financial irregularities and Mr. Ferder's resignation and found not to be legitimate. [redacted] – contrary to Mr. Ferder's representations – never agreed to purchase a stone and was never party to a loan agreement with Mr. Ferder.

23. This conclusion is supported by, among other things, the fact that [redacted] have no scheduled claim or proof of claim on file. They are not parties to pending litigation with the Debtors. While Mr. Ferder appears to believe that the Debtors owe [redacted] either a stone or $8.8 million, [redacted] does not. There is also no evidence that Mr. Ferder is attempting to collect on his alleged loan to [redacted], which would – presumably – eliminate that portion of his claim against the Debtors.

24. Mr. Ferder fails to mention any of this in his proof of claim or the 3018 Motion. More critically, Mr. Ferder provides no basis as to ***why*** these transfers (which he has alleged were

---

applied to [redacted]'s outstanding amounts owed to Lugano. [redacted] then purportedly confirmed to Mr. Ferder that the arrangement was correct. The confirming email, however, may have been manufactured. It was allegedly sent from [redacted] The correct domain name for [redacted]'s business, however, is [redacted] rather than [redacted], however, and there is an extra space at the beginning of [redacted]'s purported email address in the copy provided by Mr. Ferder. Both of these facts cast doubt on the legitimacy of the "confirming" email.

loan proceeds) should be repaid to him. If there were a legitimate transaction, then [redacted] has a right to repayment, not Mr. Ferder. If there were not, then Mr. Ferder has failed to articulate any basis on which he is entitled to repayment on a transfer made in furtherance of a fraudulent transaction. He has not done so, and instead says merely that "Lugano should repay those monies to Mr. Ferder." 3018 Motion at ¶ 14(b).

25. That assertion, in circumstances that are suspicious at best, cannot provide a presumption of legitimacy for voting purposes. Moreover, the irregular circumstances surrounding these transfers cast doubt on all of Mr. Ferder's claim. While litigating that claim for purposes of distribution is a matter for another proceeding currently pending before the Court, the absence of credible evidence provided by Mr. Ferder to support his claim and the clear evidence that a much of that claim is based on no cognizable right to payment – and may well be based on improprieties – all support denial of the 3018 Motion.

**CONCLUSION**

26. The 3018 Motion is academic because almost every creditor in these cases apart from Mr. Ferder supports the Plan. While that alone warrants denying the Motion, Mr. Ferder's failure to introduce appropriate evidence to support his claim, and the irregularities relating to those portions of his claim as to which the Debtors have been able to locate information, independently compel denial of the 3018 Motion as well.

Dated: August 21, 2026

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Edmon L. Morton*
Edmon L. Morton (Del. No. 3856)
Sean M. Beach (Del. No. 4070)
Shella Borovinskaya (Del. No. 6758)
Brynna M. Gaffney (Del. No. 7402)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: emorton@ycst.com
sbeach@ycst.com
sborovinskaya@ycst.com
bgaffney@ycst.com

-and-

**STEPTOE LLP**
Vincent P. (Trace) Schmeltz III (admitted *pro hac vice*)
Kenneth P. Kansa (admitted *pro hac vice)*
227 West Monroe Street, Suite 4700
Chicago, IL 60606
Telephone: (312) 577-1227
Email: tschmeltz@steptoe.com
kkansa@steptoe.com

*Attorneys for the Special Committee of the Board of Directors of Lugano Diamonds & Jewelry Inc.*