**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>LUGANO DIAMONDS & JEWELRY INC., *et al.*,[1]<br><br>*Debtors.* | Chapter 11<br><br>Case No. 25-12055 (BLS)<br><br>(Jointly Administered)<br><br>**Re: Docket No. 811** |

**REPLY OF THE FERDER PARTIES TO THE OBJECTION OF DEBTORS AND DEBTORS IN POSSESSION TO MOTION FOR MOREDECHAI FERDER, INDIVIDUALLY AND IN HIS CAPACITY AS TRUSTEE OF THE HAIM FAMILY TRUST, TO ESTIMATE CLAIM FOR VOTING PURPOSES PURSUANT TO BANKRTUPTCTY RULE 3018(A)**

Mordechai Ferder ("**Ferder**"), individually and in his capacity as Trustee of the Haim Family Trust (collectively, "**Movant**"), respectfully submits this Reply in further support of his Motion to Estimate Claim for Voting Purposes Pursuant to Bankruptcy Rule 3018(a) [Dkt. 765] ("**Motion**"), and in response to the Objection of the Debtors and Debtors in Possession [Dkt. 812] ("**Objection**").

The Debtors' own mootness argument is consistent with their uniform practice of refusing any accommodation to Mr. Ferder, no matter how minor. The Debtors represent that Mr. Ferder's vote will not influence the outcome, and their own preliminary tallies show that the Plan passes regardless. Yet, they file what they concede to be a pointless objection rather than simply allowing Mr. Ferder's vote to count and be outvoted. By the Debtors' own admissions in their Objection, granting the Motion would cause zero prejudice to the Debtors and preserve their right to object to Mr. Ferder's claim for purposes of allowance and distribution in the pending adversary proceeding. Nevertheless, the Debtors request that this Court deny the Motion entirely, thereby demonstrating that the Objection is motivated by sheer antagonism rather than a bona fide concern on the merits. More importantly, the Objection is a colossal waste of this Court's time and resources, particularly given the compressed confirmation timeline. The Objection demonstrates that there is no prejudice to the Debtors from allowing Mr. Ferder's vote to count because (a) the vote outcome is unaffected; and (b) the Debtors fully preserve their right to object to the Claim for purposes of allowance and distribution in the pending adversary proceeding.

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's U.S. federal tax identification number, to the extent applicable, are as follows: Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc. (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308). The notice address for the Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, California 92660.

The Debtors' position is part of a broader pattern. The Debtors, the Creditors' Committee, and the Special Committee have aligned themselves with the party that has funded this entire case, the deep-pocketed CODI. They have adopted CODI's self-serving mantra of blaming Mr. Ferder – and solely Mr. Ferder -- for Lugano's spiral into bankruptcy, with the intention of deflecting attention from themselves and obfuscating the Debtors' and CODI's own culpability in the events that led to these chapter 11 cases. To be clear, the evidence showing the Debtors' and CODI's role in the conduct that they now claim was wrongful is considerable and powerful, and will be presented at the appropriate time. This Objection is simply the latest example of these parties' outright refusal to cooperate with Mr. Ferder on any issue, no matter how immaterial (though they were happy to communicate with him when the Debtors, Creditors' Committee, and the Special Committee needed his cooperation to gain leverage against CODI for use in mediation). It also advances the Debtors' transparent strategy to silence the founder of this company and the holder of a large claim in this case from participating in the Plan confirmation process while they push through a plan of liquidation on a compressed timeline, having simultaneously denied Mr. Ferder access to the very records he needs to document his claim.

The Objection is remarkable for its omissions. The Objection does not deny that Mr. Ferder transferred tens of millions of dollars to or for the benefit of the Debtors. Instead, the Debtors demand that Mr. Ferder prove the purpose and legal theory behind each transfer at the voting-estimation stage, a standard that Rule 3018(a) of the Federal Rules of Bankruptcy Procedure ("**FRBP**") does not require and that no court has imposed.

As demonstrated below, the Motion should be granted because: (1) the right to vote is not contingent on whether a creditor's ballot would change the numerical outcome, and allowing Mr. Ferder's vote would cause no prejudice because the Debtors retain their right to object to the Claim for purposes of allowance and distribution; (2) Mr. Ferder has met his burden under FRBP 3001(f) and the Debtors have not met theirs under *Allegheny*; (3) the records the Debtors fault Mr. Ferder for not producing are in the Debtors' own possession; (4) the Debtors' own narrative regarding the $6.4 million transaction confirms that real value flowed to Lugano; and (5) the merits dispute the Debtors raise should be resolved in the pending adversary proceeding, once it is at issue, not at the estimation stage.

## ARGUMENT

### I. THE MOTION IS NOT ACADEMIC

The Debtors argue that the Motion is "academic" because preliminary vote tallies show that Class 4 General Unsecured Claims voted to accept the Plan by 95.8% in number and 99.9% in amount (excluding Mr. Ferder). (Obj. ¶¶ 1–2.) This argument fundamentally misapprehends the purpose of FRBP 3018(a) and the participatory framework of the Bankruptcy Code.

FRBP 3018(a) protects the fundamental right to vote. The right to vote on a plan is one of the most sacred entitlements that a creditor has in a chapter 11 case. *See In re Adelphia Commc'ns Corp.*, 359 B.R. 54, 61 (Bankr. S.D.N.Y. 2006). Disenfranchisement of a major

creditor undermines the integrity of the confirmation process regardless of vote margins. Estimation under FRBP 3018 serves the purpose of ensuring creditors are not disenfranchised simply because a debtor files an objection. The right to participate in the plan process should not be contingent on whether the claimant's ballot would change the numerical outcome of a class vote.

Moreover, preliminary tallies are not final; ballots have not been finally certified, and vote tallies could change before the confirmation hearing. If the Debtors' logic were accepted, any claimant whose vote would not swing the outcome could be silenced, which is a result fundamentally at odds with the participatory framework of the Bankruptcy Code. The Code protects the right of *every* creditor to cast a ballot, not merely those whose votes happen to be determinative. The Debtors cite no authority holding that a creditor may be disenfranchised simply because other creditors voted favorably.

## II. MOVANT HAS MET HIS BURDEN; DEBTORS HAVE NOT MET THEIRS

A properly executed and filed proof of claim constitutes prima facie evidence of the validity and amount of the claim. FRBP 3001(f); *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992). Mr. Ferder's Proof of Claim No. 160 ("**POC 160**") is supported by the following:

POC 160 itself includes:

An itemized addenda listing each transfer by date, amount, and originating account;

Bank of America statements showing actual wire transfers totaling $1,952,000;

Account records documenting $27,672,500 in transfers; and

A wire confirmation for the $6,411,316.76 Diamond Contract payment.

Here, Movant has established prima facie validity, at which point the burden shifts to the objecting party to "produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *Allegheny*, 954 F.2d at 173–74. The Debtors have not met this burden. They have not produced evidence that affirmatively rebuts the transfers themselves or demonstrates that *any* specific transfer did not occur. Their evidence is entirely negative – "we looked and didn't find matching entries". That is not sufficient to rebut Movant's prima facie showing.

Moreover, the Debtors' argument that a "documentation-sufficiency challenge" shifts the burden is legally incorrect. Under *Allegheny*, the objector is required to produce probative evidence, not merely complain about the format of the claimant's proof or demand additional documentation. *See id.* The Debtors have produced no affirmative evidence that Mr. Ferder's transfers did not occur; they have merely asserted that they cannot find corresponding entries in their own records. Further complicating this argument, as explained below, is the fact that Movant has been denied access to the Debtors' records since his resignation in May 2025, so he cannot search them himself to locate the information Movant contends exists in the company's records that would support his claim.

Even under the *Quigley* “commensurate with economic interest” standard that the Debtors invoke, the Court should account for the strong probability that at least a substantial portion of Mr. Ferder’s claim has merit, given documented transfers of real money from Mr. Ferder’s personal accounts to the Debtors’ or for the Debtors’ benefit. The fact that over $30 million in documented outflows from Mr. Ferder’s accounts has not been accounted for by the Debtors is powerful circumstantial evidence that the funds went to or for the benefit of Lugano.

## III. DEBTORS CONTROL THE VERY RECORDS THEY FAULT FERDER FOR NOT PRODUCING

The Debtors’ evidentiary criticism rings hollow given their control over the relevant documentation. Mr. Ferder served as CEO of Lugano from 2005 until his resignation in May 2025. Upon his departure, Lugano immediately terminated his access to all company email systems, financial records, and internal databases.

The records showing where payments were directed, to whom, and for what purpose, are in Lugano’s books and records under the Debtors’ exclusive control. Movant contends that Mr. Ferder’s personal emails, that he sent and received on Lugano’s email server, reflect his instructions to send personal funds to satisfy Lugano obligations. Those records are presently solely in the Debtors’ possession, having been maintained on Lugano’s email servers.

The Charles Schwab records that would provide further detail regarding the $27.7 million in transfers require a subpoena. Movant served a subpoena on Schwab on August 6, 2026, and Schwab recently responded with a voluminous 300-file production containing almost 3,500 pages of transfer records (which Movant’s counsel has shared with Debtors’ counsel). The response appears substantive and on-point, but given the compressed hearing schedule, the many depositions being taken, documents being produced, and other discovery exchanges and meet and confers that have been occurring over recent weeks, Movant has simply not yet had sufficient time to review and analyze the documents produced by Schwab in time to present them at or before the August 31, 2026 confirmation hearing.

It would be fundamentally inequitable to disenfranchise Mr. Ferder based on an information asymmetry and compressed hearing timeline that the Debtors themselves created. The Debtors’ Objection should not be countenanced where they cut off Mr. Ferder’s access to company records and then argue that Mr. Ferder’s claim should be disallowed because he has not supported the claim with the very documentation that is in their exclusive possession.

## IV. THE $6.4 MILLION TRANSACTION ACTUALLY SUPPORTS FERDER'S CLAIM

The Debtors devote substantial briefing to the $6.4 million Diamond Contract payment, arguing it relates to a transaction involving a customer who purchased an $8.8 million stone from Lugano and that this transaction was “found not to be legitimate.” (Obj. ¶¶

18–25.) This Court made no such finding or determination. Moreover, the Debtors' own narrative confirms Mr. Ferder's claim rather than undermines it.

Under *any* version of the facts, Mr. Ferder transferred $6.4 million (plus $2.5 million) to Lugano. The Debtors have put forth no evidence disputing that real money ($8.8 million) was paid to Lugano by or at the direction of Mr. Ferder. Whether the underlying customer transaction was "legitimate" or not, those funds were received by Lugano.

If the transaction was legitimate (as Mr. Ferder maintains), then Mr. Ferder paid a Lugano receivable from his personal funds and is entitled to repayment. If the transaction was *not* legitimate (as the Debtors contend), then Lugano received $8.8 million without providing consideration to any customer, making the claim for repayment to Mr. Ferder even stronger, not weaker. The Debtors should not be permitted to simultaneously assert that Mr. Ferder transferred $8.8 million to Lugano *and* that he has "zero economic interest." Those positions are irreconcilable.

The question of whether the underlying customer transaction was legitimate is a merits issue for the adversary proceeding not for FRBP 3018(a) estimation. At this stage, what matters is that documented transfers of real money occurred, and the Debtors have not refuted that fundamental fact.

## V. RULE 3018(a) ESTIMATION DOES NOT REQUIRE MERITS RESOLUTION

The fundamental purpose of Rule 3018(a) is to separate the voting inquiry from the merits inquiry. Estimation for voting purposes is a summary proceeding designed to prevent disenfranchisement pending full adjudication of disputed claims. The Debtors seek to have this Court summarily adjudicate their fraud allegations, subordination claims, and avoidance theories at the estimation stage. These are the very issues that will be litigated in the pending adversary proceeding, if and when it is at issue.

The Debtors' reliance on *Innovasystems, Inc. v. Ground Zero Museum Workshop (In re Ground Zero Museum Workshop)*[2] is inapposite. There, the court discounted the claim to $0 because the claimant's asserted damages were based on speculative future revenues with no supporting contract or documentation of any kind. In *Innovasystems*, the only foundation for the claimant's claim was a contempt order that had been vacated by the Federal Circuit Court. The Massachusetts District Court dissolved the injunction and acknowledged it could take no further action until appeals were exhausted. The court found that as of the estimation hearing the only basis on which to estimate the claim, which was the order of contempt and sanctions, no longer existed. *In re Frascella Enters., Inc.*, 360 B.R. 435, 458 (Bankr. E.D. Pa. 2007) cited by the Debtor is also not even remotely on point. In *Frascella Enters*, the claim was based upon an unadjudicated class action. Moreover, the Court found estimation was unnecessary because the plan in that case could not be confirmed regardless of the outcome of the vote.

---

[2] An unpublished opinion, although not noted in the Objection.

Here, by contrast, Mr. Ferder has documented transfers of actual money, over $30 million from his personal accounts, with dates, amounts, and originating account information. The two cases could not be more distinguishable.

The voluntary credit of $3,859,250 Movant has proposed already accounts for the full amount that the Debtors allege that Mr. Ferder purportedly received back from Lugano. Mr. Ferder has therefore voluntarily reduced his claim amount for voting purposes to reflect monies that the Debtors contend were returned to him (despite his vehement objection), eliminating any legitimate dispute regarding those funds from the estimation calculus.

The Debtors' invitation to what is tantamount to converting a FRBP 3018(a) estimation hearing into a mini-trial on the merits of a 19-count adversary complaint filed just weeks before confirmation, and not yet validly served, should be denied. The proper forum for those disputes is the adversary proceeding itself.

**CONCLUSION**

For the foregoing reasons, Movant respectfully requests that the Court grant the Motion and temporarily allow Proof of Claim No. 160 in the amount of $32,176,566.76 for voting purposes pursuant to Rule 3018(a) (or in such other amount as the Court deems appropriate) and compel the Debtors to count Mr. Ferder's vote not to accept the Plan in the tally of the Class 4 General Unsecured Claims.

In the alternative, if the Court believes further evidence is warranted, the Movant respectfully requests that the Court take confirmation of the Debtors' Plan under submission to permit Mr. Ferder due process and a full and fair opportunity to present further evidence from the records received from Schwab pursuant to his subpoena that will establish his right to vote.

Dated: August 26, 2026

*<u>/s/ Gregory W. Hauswirth</u>*
Gregory W. Hauswirth (DE Bar No. 5679)
**CAROTHERS & HAUSWIRTH LLP**
1007 N. Orange Street, 4th Floor
Wilmington, DE 19801
Telephone: 302 990-4850
Email: ghauswirth@ch-legal.com
*Counsel to Mordechai Ferder individually and as Trustee of the Haim Family Trust*

Sandford L. Frey (CA Bar No. 117058)
**STINSON, LLP**
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067

Telephone: (310) 730-7020
Email: Sandford.frey@stinson.com
*Admitted Pro Hac Vice*
*Counsel to Mordechai Ferder individually and as Trustee of the Haim Family Trust*

Jeffrey Reeves (CA Bar No. 156648)
Daniel Weiss (CA Bar No. 242022)
**REEVES & WEISS LLP**
3333 Michelson Dr.
Suite 300
Irvine, California 92612
Telephone: (818) 554-7601
Email: JReeves@reevesandweiss.com
DWeiss@reevesandweiss.com
*Admitted Pro Hac Vice*
*Counsel to Mordechai Ferder individually and as Trustee of the Haim Family Trust*