**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>LUGANO DIAMONDS & JEWELRY INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-12055 (BLS)<br><br>(Jointly Administered)<br><br>**Ref. Docket Nos. 612, 649 & 826** |

**NOTICE OF FILING OF BLACKLINE OF**
**SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION OF**
**LUGANO DIAMONDS & JEWELRY INC. AND ITS DEBTOR AFFILIATES**

**PLEASE TAKE NOTICE** that, on June 24, 2026, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Chapter 11 Plan of Liquidation of Lugano Diamonds & Jewelry Inc. and Its Debtor Affiliates* [Docket No. 612] with the United States Bankruptcy Court for the District of Delaware (the "Court"), which was amended on July 9, 2026 [Docket No. 649] (as may be amended, modified, or supplemented from time to time, the "Amended Plan").[2]

**PLEASE TAKE FURTHER NOTICE** that, contemporaneously herewith, the Debtors filed a further amended version of the Amended Plan (the "Second Amended Plan").

**PLEASE TAKE FURTHER NOTICE** that, for the convenience of the Court and all parties in interest, a changed pages only blackline comparing the Amended Plan against the Second Amended Plan is attached hereto as **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve all rights to further amend, supplement, or modify the Second Amended Plan and the exhibits thereto. Copies of the Second Amended Plan and other related documents in these chapter 11 cases are on file with the Clerk of Court, Third Floor, 824 North Market Street, Wilmington, Delaware 19801 and are available on the Debtors' claims and noticing agent's website free of charge at https://omniagentsolutions.com/Lugano.

---

1 The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's U.S. federal tax identification number, to the extent applicable, are as follows: Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc. (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308). The notice address for the Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, California 92660.

2 Capitalized terms used but not otherwise defined herein have the meaning given to such terms in the Plan.

Dated: August 27, 2026
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Shella Borovinskaya*
Edmon L. Morton (Del. No. 3856)
Sean M. Beach (Del. No. 4070)
Shella Borovinskaya (Del. No. 6758)
Brynna M. Gaffney (Del. No. 7402)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: emorton@ycst.com
sbeach@ycst.com
sborovinskaya@ycst.com
bgaffney@ycst.com

-and-

**KELLER BENVENUTTI KIM LLP**
Tobias S. Keller (admitted *pro hac vice*)
Traci L. Shafroth (admitted *pro hac vice*)
Scott Friedman (admitted *pro hac vice*)
101 Montgomery Street, Suite 1950
San Francisco, California 94104
Telephone: (415) 496-6723
Facsimile: (650) 636-9251
Email: tkeller@kbkllp.com
tshafroth@kbkllp.com
sfriedman@kbkllp.com

*Attorneys for Debtors*
*and Debtors-in-Possession*

# EXHIBIT A

## Changed Pages Only Blackline

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>LUGANO DIAMONDS & JEWELRY INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-12055 (BLS)<br><br>(Jointly Administered) |

# SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION OF LUGANO DIAMONDS & JEWELRY INC. AND ITS AFFILIATED DEBTORS

Dated: ~~July 9~~August 27, 2026

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Edmon L. Morton (Del. No. 3856)
Sean M. Beach (Del. No. 4070)
Shella Borovinskaya (Del. No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

**KELLER BENVENUTTI KIM LLP**
Tobias S. Keller (admitted *pro hac vice*)
Traci L. Shafroth (admitted *pro hac vice*)
Scott Friedman (admitted *pro hac vice*)
101 Montgomery Street, Suite 1950
San Francisco, California 94104
Telephone: (415) 496-6723
Facsimile: (650) 636-9251

*Attorneys for Debtors and Debtors-in-Possession*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's U.S. federal tax identification number, to the extent applicable, are as follows: Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc. (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308). The notice address for the Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, California 92660.

accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or entity's respective heirs, executors, estates, and nominees; *provided* that no Excluded Party is a Related Party. Related Parties of the Debtors include the Special Committee and its members, advisors, and attorneys.

127. **Released Parties:** Each of: (a) the Debtors and each of the Estates and any of their subsidiaries and retained Professionals and Ordinary Course Professionals and their following directors and officers: (i) Frederic Cumenal; (ii) David Arnold; (iii) L. Spencer Wells (including as a member of the Special Committee); (iv) Thomas FitzGerald (including as a member of the Special Committee); (v) Stuart Winston; (vi) Lisa Calvert; and (vii) Christoph Pachler; (b) the Creditors' Committee and its individual members solely in their capacities as members of the Creditors' Committee, together with all their retained Professionals, agents, and other representatives of the Creditors' Committee and its members solely in their capacities with respect to service on or representation of the Creditors' Committee; and (c) the CODI Parties and each of ~~their~~the Related Parties of the CODI Parties; *provided* that no Excluded Party is a Released Party.

128. **Releasing Parties**: Each of, and in each case in its capacity as such: (a) the Debtors and each of the Estates; (b) L. Spencer Wells and Thomas FitzGerald; (c) any successor to the Debtors or any other representative of the Estates pursuant to Bankruptcy Code § 1123(b)(3), including the Liquidation Trust; (d) all holders of Claims, other than holders of Claims only in Classes 6 and 7, who do not make an Opt-Out Election; (e) each Released Party; and (f) each Related Party of each entity in clauses (a) – (e) solely to the extent such Related Party may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an entity in clauses (a) – (e); *provided* that, in each case, an entity is not a Releasing Party if it makes an Opt-Out Election; *provided* further that no Excluded Party is a Releasing Party.

129. **Schedule of Assumed Agreements**: The schedule of executory contracts and unexpired leases, if any, that the Debtors have determined, in the Debtors' reasonable discretion, to assume or assume and assign on the Effective Date. The initial Schedule of Assumed Agreements, if any, included in the Plan Supplement, subject to any modifications that may be made prior to the Effective Date pursuant to ~~Section 6.01~~Section 6.01 of the Plan.

130. **Scheduled**: A Claim that is set forth in the Schedules.

131. **Schedules**: The Schedules of Assets and Liabilities initially Filed by the Debtors on December 13, 2025, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

132. **Section 503(b)(9) Claim**: A Claim arising under Bankruptcy Code § 503(b)(9).

133. **Secured Claim**: A Claim that is secured by a valid, perfected, and enforceable Lien on property in which the Debtors or the Estates have an interest, which Lien is valid, perfected, and enforceable under applicable law and not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law or that is subject to a valid right of setoff under Bankruptcy Code § 553. A Claim is a Secured Claim only to the extent of the value of the Holder's interest in the Debtors' interest in the Collateral or to the extent of the amount subject to setoff against a Cause of Action held by the Debtors, whichever is applicable, and as determined under Bankruptcy Code § 506(a). To the extent that the value of such interest in the Debtors' interest in the subject Collateral or the amount subject to setoff against a Cause of Action held by the Debtors (as applicable) is less than the amount of the Claim which has the benefit of such security or is supported by such setoff right, such portion of the Claim is unsecured and treated as a General Unsecured Claim (or, if applicable, a Convenience Class Claim) unless, in any such

Trustee, in accordance with Bankruptcy Code § 1129(a)(9)(C) as follows: (1) Cash from the Liquidation Trust equal to the unpaid portion of such Allowed Priority Tax Claim on the later of the Effective Date and 30 calendar days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; (2) in regular installment payments in Cash from the Liquidation Trust over a period not exceeding five years after the Petition Date, in the amount equal to the unpaid portion of such Allowed Priority Tax Claim, plus interest on the unpaid portion thereof at the rate determined under applicable nonbankruptcy law as of the calendar month in which the Effective Date occurs (*provided* that such election is without prejudice to the right to prepay any such Allowed Priority Tax Claim in full or in part without penalty); or (3) such other treatment as to which the Holder of an Allowed Priority Tax Claim and the Liquidation Trustee have agreed upon in writing, *provided* that Allowed Priority Tax Claims that are not due and payable on the Effective Date will be paid in the ordinary course by the Liquidation Trustee, and that, in the event an Allowed Priority Tax Claim is also an Other Secured Claim, such Claim, to the extent it is Allowed, is treated as an Other Secured Claim if such Claim is not otherwise paid in full.

(d) **DIP Claim.** Pursuant to the terms of the CODI Settlement, the DIP Claims do not receive a separate distribution but are deemed satisfied by the treatment provided to the CODI Claim as described in ~~Section 3.02(c)~~Section 3.02(c).

**Section 3.02 Classes.**

(a) **Class 1: Other Secured Claims**. Class 1 consists of all Other Secured Claims. Class 1 is Unimpaired under the Plan, is not entitled to vote to accept or reject the Plan, and is conclusively presumed to accept the Plan without voting under Bankruptcy Code § 1126(f). Unless the Holder of an Allowed Class 1 Other Secured Claim agrees to other treatment, on or as soon as reasonably practicable after the later of the Effective Date and the date on which an Other Secured Claim becomes an Allowed Claim, the Holder of such Allowed Other Secured Claim receives, in full satisfaction, settlement, and release of and in exchange for such Allowed Other Secured Claim, at the Liquidation Trustee's option: (i) Cash from the Liquidation Trust in the Allowed amount of such Holder's Allowed Class 1 Claim; (ii) the return of the Collateral securing such Allowed Class 1 Claim, without representation or warranty by any Person (and without recourse against any Person regarding such Other Secured Claim); or (iii) such other recovery necessary to satisfy Bankruptcy Code § 1129 to render such Claim Unimpaired.

(b) **Class 2: Priority Claims**. Class 2 consists of all Priority Claims. Class 2 is Unimpaired under the Plan, not entitled to vote to accept or reject the Plan, and is conclusively presumed to accept the Plan without voting under Bankruptcy Code § 1126(f). Unless the Holder of an Allowed Class 2 Priority Claim agrees to other treatment, on or as soon as reasonably practicable after the later of the Effective Date and the date on which a Priority Claim becomes an Allowed Claim, the Holder of such Allowed Priority Claim receives, in full satisfaction, settlement, and release of and in exchange for such Allowed Priority Claim, Cash from the Liquidation Trust equal to the unpaid portion of such Allowed Priority Claim.

(c) **Class 3: CODI Claim**. Class 3 consists of the CODI Claim. Class 3 is Impaired under the Plan and is entitled to vote on the Plan. Pursuant to the CODI Settlement Agreement, as of the Effective Date, the CODI Claim is Allowed and its Holder receives, in full satisfaction, settlement, and release of and in exchange for the CODI Claim, the Special Beneficial Interest in the Liquidation Trust. The Special Beneficial Interest provides the following consideration to the Holder of the CODI Claim:

(i) An initial Distribution from the Liquidation Trust on the Effective Date equal to 34.79% of the Effective Date Cash;

cancellation as may be appropriate in connection with dissolution of such Debtor. All existing Interests in the Debtors are cancelled as of the Effective Date.

(ii) *Post-Confirmation Debtor.* The Post-Confirmation Debtor continues and remains in existence on and after the Effective Date solely for implementation of the Post-Confirmation Debtor Functions. On the Effective Date, the 100% ownership interest in the Post-Confirmation Debtor is issued to the Liquidation Trust, and the Liquidation Trustee serves as the Post-Confirmation Debtor's sole board member and officer and performs the Post-Confirmation Debtor Functions. The charter of the Post-Confirmation Debtor is deemed amended to include a provision prohibiting the issuance of nonvoting equity securities and an appropriate distribution of voting power among the classes of equity securities. On the Effective Date, the certificate of incorporation and bylaws of the Post-Confirmation Debtor are deemed amended to the extent necessary to carry out the provisions of the Plan and for the Post-Confirmation Debtor to carry out the Post-Confirmation Debtor Functions.

(c) **Corporate Documents and Corporate Authority**. The entry of the Confirmation Order constitutes authorization for the Debtors to take or cause to be taken all actions (including, if applicable, Corporate Actions) necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on, and after the Effective Date and all such actions taken or caused to be taken are deemed to have been authorized and approved by the Bankruptcy Court without further approval, act, or action under any applicable law, order, rule, or regulation, including, without limitation, carrying out the Post-Confirmation Debtor Functions.

(d) **Vesting of Estate Assets**. On the Effective Date, all property of the Debtors' Estates, including the Specified Assets (but excluding the Tax Refund), all Causes of Action, and any Cash (including the Liquidation Trust Expense Reserve, but excluding the Effective Date Reserves and the Professional Fee Reserve), vests in the Liquidation Trust subject only to any Liens and the terms of the CODI Settlement. To the extent avoided, Liens are preserved for the benefit of the Liquidation Trust. The Tax Refund is vested in the Post-Confirmation Debtor on the Effective Date.

(e) **Disposal and Use of Property**. The Liquidation Trustee may use, acquire and dispose of property without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules (other than, to the extent applicable, Bankruptcy Rule 7023.1), other than those restrictions imposed by the Plan, the Liquidation Trust Agreement, any other documents in the Plan Supplement, or the Confirmation Order. The Liquidation Trustee (and, with respect to the Tax Refund, the Post-Confirmation Debtor), on and after the Effective Date, may conduct any sales, liquidations, or monetization of Estate Assets on any terms it deems without further order of the Bankruptcy Court, except as otherwise provided in the Plan, the Confirmation Order, or the Liquidation Trust Agreement.

(f) **Representative of the Estates.** The Liquidation Trustee is the successor to and representative of the Estates for purposes of Bankruptcy Code § 1123(b)(3)(B), including with respect to Avoidance Actions and any other Causes of Action, except for the Tax Refund for which the Post-Confirmation Debtor is the representative of the Estates for such purposes. Except as provided in the Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with Bankruptcy Code § 1123(b), the Liquidation Trustee retains and may enforce any claims, demands, rights and Causes of Action (including Avoidance Actions) that any Estate may hold against any Person to the extent not released under the Plan, *provided* that the Post-Confirmation Debtor may enforce such claims, demands, and Causes of Action with respect to the Tax Refund.

coverage solely on any basis regarding or related to the Chapter 11 Cases, the Plan or any provision within the Plan; *provided* that nothing in the Plan grants or should be deemed to grant any claimant relief from the automatic stay of Bankruptcy Code § 362(a) and the injunctions set forth in Article XI of the Plan, if applicable, to proceed with their claims (other than workers' compensation and direct action claims, as provided for in this Section 6.01(e)Section 6.01(e)) without first seeking and receiving relief from the Bankruptcy Court from the automatic stay and/or such injunctions, to the extent applicable; *provided further* Insurers may take any actions relating to the Insurance Contracts (including effectuating a setoff or recoupment), to the extent permissible in accordance with applicable law or the terms of the Insurance Contracts, *provided* that the Insurers must return any remaining collateral or security to the Liquidation Trust in accordance with the terms of the Insurance Contracts.

(v) *Insurance Rights Transfer Back-Up.* Except as otherwise expressly provided in the Plan, the Debtors will make the Insurance Rights Transfer to the Liquidation Trust as required by this Plan. If any entity or individual is, at any time, legally precluded from transferring its rights, titles, privileges, interests, claims, demands, or entitlements to any proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity, now existing or arising in the future, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, Disputed or undisputed, fixed or contingent, arising under or attributable to the insurance rights and interests subject to the Insurance Rights Transfer, then that entity or individual must: (A) take any actions reasonably requested by the Liquidation Trust to pursue any such insurance rights and interests for the benefit of the Liquidation Trust; and (B) promptly transfer to the Liquidation Trust any amounts recovered under or on account of any of such insurance rights and interests; *provided*, that while any such amounts are held by or under the control of any entity or individual, such amounts are held for the benefit of the Liquidation Trust.

(vi) *D&O Indemnification and Setoff Rights.* Nothing in this Plan (including Definitions 17 and 95, Sections 5.02(a), 5.06 5.07, 6.01(e), 10.01, 10.03,11.06(a),11.08, and 11.09, and 11.16) or the Liquidation Trust Agreement (including Sections 1.2(f) and (hhgg), 2.3(a), and 2.4(a)) has, or may be interpreted or deemed to have, any of the following effects: (a) transfer to the Liquidation Trust, impair, enjoin, or preclude any of the Debtors' current or former directors or officers from asserting any right of setoff,(i) to the extent set forth in a timely filed proof of claim, any counterclaim or cross-claim, (ii) to the extent permitted by Section 11.06(a) (iv) of the Plan, any setoff, or (iii) recoupment, or other defense (in each case, including any right arising from or related to any indemnification obligation, director and officer insurance coverage (the "**D&O Insurance**"), or any other agreement with the Debtors) in connection with any Cause of Action asserted against any such director or officer by or on behalf of the Debtors, the Estates, the Liquidation Trust, or any of their successors; (b) release, waive, impair, limit, extinguish, or otherwise affect any right of any of the Debtors' current or former directors or officers to access, claim, or receive the benefits of coverage under any D&O Insurance or other Insurance Contract and such director's or officer's rights to indemnification, advancement of expenses, exculpation, contribution, setoff, recoupment, or other defense arising under the Debtors' organizational documents, any agreement to which a Debtor is a party, or applicable law; *provided, however*, such rights to indemnification, advancement of expenses, exculpation, contribution, setoff, recoupment or other defenses are subject to the provisions of the Bar Date Order, this (to the extent applicable), as well as any requirement to assert any such right how and when either the Plan andor the Confirmation Order specify; (c) require any of the Debtors' current or former directors or officers to seek relief from the automatic stay, the injunctions contained in this Plan, or any other provision of this Plan as a precondition to accessing coverage under any D&O Insurance or other Insurance Contract; or (d) grant the Estates or the Liquidation Trust any interest in any payment to or on behalf of any of the

Debtors' directors and officers under a D&O Insurance or other Insurance Contract. Except as explicitly provided in this Plan, including in Article XI of this Plan, the Debtors, the Estates, and the Liquidation Trust reserve all rights to pursue any Causes of Action against any of the Debtors' current or former directors or officers and to oppose any such director's or officer's assertion of any setoff, recoupment, defense, indemnification, contribution, exculpation, or right under any D&O Insurance or other Insurance Contract.

**Section 6.02 Rejection of Executory Contracts and Unexpired Leases**.

(a) **Rejected Agreements.** On the Effective Date, all executory contracts and unexpired leases of the Debtors are rejected except for (i) executory contracts and unexpired leases that have been previously assumed or rejected by the Debtors, and (ii) executory contracts and unexpired leases that are set forth in the Schedule of Assumed Agreements. The Confirmation Order constitutes a Bankruptcy Court order approving the rejection, on the Effective Date, of the executory contracts and unexpired leases to be rejected under the Plan.

(b) **Rejection Claims Bar Date.** Any Rejection Claim or other Claim for damages arising from the rejection under the Plan of an executory contract or unexpired lease must be Filed and served no later than the Rejection Claims Bar Date. Any such Rejection Claims that are not timely Filed and served are forever disallowed, barred, and unenforceable, and Persons holding such Claims do not receive and are barred from receiving any Distributions on account of such untimely Claims. If one or more Rejection Claims are timely Filed, the Liquidation Trust may object to any Rejection Claim on or prior to the Claim Objection Deadline. The Rejection Claims Bar Date established by the Plan does not alter any rejection claims bar date established by a prior order of the Bankruptcy Court with respect to any executory contract or unexpired lease that was previously rejected in these Chapter 11 Cases.

## ARTICLE VII
## PROVISIONS GOVERNING DISTRIBUTIONS

**Section 7.01 Timing of Distributions for Allowed Claims.** Except as otherwise provided herein or as ordered by the Bankruptcy Court, all Distributions to Holders of Allowed Claims as of the applicable Distribution Date must be made on or as soon as practicable after the applicable Distribution Date. Distributions made as soon as reasonably practicable after the Effective Date or such other date set forth herein are deemed to have been made on such date.

**Section 7.02 Calculating Distributions and Related Matters.** The Liquidation Trustee, in his reasonable discretion, must calculate Liquidation Trust Available Cash and other amounts for or relating to Distributions for Liquidation Trust Beneficiaries (including the Disputed Claims Reserve) and may establish and hold back from Distributions reasonable reserves for other contingencies.

**Section 7.03 Interest and Other Amounts Regarding Claims.** Except to the extent provided in (a) Bankruptcy Code § 506(b) and Allowed by a Final Order, (b) the Plan, (c) the Confirmation Order, or (d) the Liquidation Trust Agreement, postpetition interest does not accrue and is not paid on any Claims, and no Holder of an Allowed Claim is entitled to interest, penalties, fees, or late charges accruing or chargeable on any Claim from and after the Petition Date. Notwithstanding the previous sentence, Holders of General Beneficial Interests are entitled to GUC Interest as provided in ~~Section 3.02(d) above~~Section 3.02(d) above.

**Section 7.04 Distributions.** The Liquidation Trustee makes all Distributions under the Plan to Holders of Allowed Claims and is the Estates' disbursing agent under the Plan for all distributions to Holders of Allowed Claims entitled to distribution from one or more of the Effective Date Reserves. The

**Section 11.08 Releases by the Debtors. Notwithstanding anything contained in the Plan to the contrary, pursuant to Bankruptcy Code § 1123(b), in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, effective on the Effective Date, each Released Party is hereby deemed to be released and discharged by the Debtors and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claims or Causes of Action, directly or derivatively, by, through, for, or because of the foregoing entities on behalf of the Debtors, from any and all Claims, Causes of Action, derivative claims and causes of action, obligations, suits, judgments, damages, debts, rights, remedies and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, contract, tort or otherwise, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Equity Interest in, a Debtor or other entity, or that any Holder of any Claim against, or Equity Interest in, a Debtor or other entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation of the Debtors), the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, documents associated with or related to the DIP Order and Cash Collateral Order, the Plan (including the Plan Supplement(s)), the Liquidation Trust Agreement, the Plan Support Agreement, and the CODI Settlement Agreement), or any aspect of the associated transactions, including any contract, instrument, release, or other agreement or document (including any legal opinion requested by any entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Liquidation Trust Agreement, the Plan Support Agreement, the CODI Settlement Agreement, the Disclosure Statement, the DIP Order and Cash Collateral Order, the Plan, the Plan Supplement(s), before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence of such Person (*provided* that the foregoing exception does not apply to the CODI Parties with respect to claims that are within the scope of those settled by the CODI Settlement Agreement). Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or entity under the Plan, the Confirmation Order, the Liquidation Trust Agreement, the Plan Support Agreement, the CODI Settlement Agreement, or any document, instrument, or agreement (including those set forth in the Plan Supplement(s)) executed to implement the Plan or any Claim or obligation arising under the Plan.**

**Section 11.09 Releases by Holders of Claims. Except as otherwise expressly set forth in the Plan or the Confirmation Order—and except to the extent a Holder of a Claim makes an Opt-Out Election—on and after the Effective Date, and with respect to all other Releasing Parties, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released by each Releasing Party from any and all Claims, Causes of Action, derivative claims and causes of action, obligations, suits, judgments, damages, debts, rights, remedies and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, contract, tort or otherwise, that such entity would have been legally entitled to assert in their own right (whether individually, derivatively, or collectively) or on behalf of the Holder of any Claim or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation of the Debtors), the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, documents associated with or related to the DIP Order and Cash Collateral Order, the Plan (including the ~~plan supplement~~Plan Supplement(s)), the Liquidation Trust Agreement, the Plan Support Agreement, and the CODI Settlement Agreement), or any aspect of the associated transactions, including any contract, instrument, release, or other agreement or document (including any legal opinion requested by any entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Liquidation Trust Agreement, the Plan Support Agreement, the CODI Settlement Agreement, the Disclosure Statement, the DIP Order and Cash Collateral Order documents, the Plan, the plan supplement(s), before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual ~~intentional~~ fraud, willful misconduct, or gross negligence of such Person. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or entity under the Plan, the Confirmation Order, the Liquidation Trust Agreement, the Plan Support Agreement, the CODI Settlement Agreement, or any document, instrument, or agreement (including those set forth in the plan supplement) executed to implement the Plan or any Claim or obligation arising under the Plan; (ii) any and all Claims, Causes of Action, derivative claims and causes of action, obligations, suits judgments, damages, debts, rights, remedies, and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, contract, tort or otherwise, that a CODI Party would have been legally entitled to assert in its own right (whether individually, derivatively, or collectively) against another CODI Party or any of their officers, directors, members, managers, trustees, or employees; or (iii) Allowed Claims solely against the Debtors.**