**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>LUGANO DIAMONDS & JEWELRY INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-12055 (BLS)<br><br>(Jointly Administered)<br><br>Re: Docket No. 826 |

**BENCH BRIEF OF FERDER PARTIES REGARDING SPECIAL COMMITTEE'S WAIVER OF MEDIATION PRIVILEGE AND CONFIDENTIALITY PROTECTIONS**

Mordechai Ferder, individually and in his capacity as Trustee of the Haim Family Trust (collectively, "Ferder"), respectfully submits this bench brief in connection with the confirmation hearing on the Debtors' Second Amended Chapter 11 Plan (the "Plan").

The issue is narrow. The Special Committee of the Board of Directors of Lugano Diamonds & Jewelry, Inc. (the "Special Committee") reviewed and edited a draft complaint purportedly brought on behalf of the Unsecured Creditors Committee against Compass Group Diversified Holdings LLC ("CODI"). The Special Committee now withholds that draft complaint and related communications shared with CODI on the alleged ground that they are protected by the mediation privilege and/or mediation confidentiality. But to the extent those protections originally applied, the Special Committee waived them.

[1] The Debtors in these chapter 11 cases (the "Debtors"), along with the last four digits of each Debtor's U.S. federal tax identification number, to the extent applicable, are as follows: Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc. (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308). The notice address for the Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, California 92660.

On April 27-28, 2026—ten days before mediation—the Special Committee's counsel, Eric Sussman of Barnes & Thornburg LLP, voluntarily emailed Ferder's counsel, Jeffrey Reeves, sharing material generated in connection with the Special Committee's mediation posture toward CODI. Mr. Sussman's emails included communications between him and counsel for CODI about the draft complaint the Special Committee's advisors were helping to prepare against CODI and the evidence Ferder had provided access to that the Special Committee had incorporated into that draft complaint.

A party cannot use confidential mediation material as a sword, sharing it selectively with an adverse party when it suits its interests, and then wield the same privilege as a shield to prevent that same adverse party—and this Court—from examining the process by which it investigated, valued, and ultimately settled the Debtors' claims against CODI and its affiliates. *See In re Avandia Mktg.*, 415 F. Supp. 3d 498, 507-08 (E.D. Pa. 2019); *see also Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 222 (3d Cir. 2006); *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 378 (3d Cir. 2007); *Tackett v. State Farm Fire & Cas. Ins. Co.*, 653 A.2d 254, 259 (Del. 1995).

Having voluntarily disclosed to Ferder mediation-related material, the Special Committee waived confidentiality as to that material. And because fairness requires it, that waiver should be as to the broader subject matter of its investigation, its valuation of Ferder's provided evidence, and the basis for its determination that the CODI settlement based on the draft complaint is "fair and reasonable." Ferder respectfully requests that the Court so hold and order the Special Committee to produce the relevant evidence and testimony.

## I. STATEMENT OF RELEVANT FACTS

On May 6 and May 7, 2026, the Special Committee, CODI, the UCC, and the Debtors participated in an in-person mediation in Los Angeles before mediator Lee R. Bogdanoff, attended in person by both Special Committee members. [Written Consent at 1.] On August 12–13, 2026, the Special Committee executed the Written Consent memorializing its determination that the resulting settlement with CODI is "fair and reasonable," expressly grounding that determination on "its consideration of all relevant documents and evidence obtained during its investigation." [*Id.* at 1–2 (¶ 2).]

Before mediation, beginning in late February 2026, Mr. Sussman repeatedly solicited Ferder's cooperation and the evidence Ferder could make available to the Special Committee in connection with the Debtor's claims against CODI. [*See, e.g.*, Email from E. Sussman to J. Reeves (Feb. 27, 2026, 7:33 AM) ("I'd like to see if we can work something out – at least tentatively – … so that we can make use of some of Moti's information.").] Mr. Reeves, Ferder's counsel, in turn proposed that Ferder "supply the Pat material and proffer" and "a draft attorney memo and attorney proffer describing the impeachment evidence," subject to confidentiality and a promise of "return and destruction of the evidence." [Email from J. Reeves to E. Sussman (Mar. 4, 2026, 8:56 AM).]

By mid-April 2026, Mr. Sussman was representing to Mr. Reeves that he was "hopeful that we can reach an agreement to use quotes from the summary information in our draft document," predicting that "within the next four weeks, we will be in a much better position to evaluate your client's cooperation and put a price or value on his evidence." [Email from E. Sussman to J. Reeves (Apr. 17, 2026, 9:50 PM).] Mr. Sussman further represented that the Special Committee "intend[ed] to honor our commitment to give your client credit for his

cooperation" and that, win or lose on a settlement with Ferder, Ferder "would still reap the benefit of us being able to hit CODI as hard as possible" using the evidence he supplied. [*Id.*]

On April 27, 2026, Mr. Sussman emailed Mr. Reeves and voluntarily shared material generated in connection with the Special Committee's preparation for, and negotiating posture at, the upcoming CODI mediation. That material included (i) emails between Mr. Sussman and counsel for CODI concerning the draft complaint the Special Committee's attorneys had helped prepare asserting claims against CODI and (ii) specific quotations from the draft complaint arising from the evidence Ferder had made available to the Special Committee.

## II. ARGUMENT

### A. Communications Between Opposing Parties Outside the Presence of the Mediator Are Not Protected by the Mediation Privilege

Delaware Bankruptcy Local Rule 9019-5(d) provides that mediation communications are confidential only in a specific, bounded sense: the mediator and participants "are prohibited from divulging outside of the mediation any oral or written information disclosed by the parties or witnesses *to or* ***in the presence of the mediator***, or between the parties ***during any mediation conference***." D. Del. Bankr. L.R. 9019-5(d) (emphasis added). But the rule expressly does not create a document-blocking discovery privilege: "Information, facts or documents otherwise discoverable or admissible in evidence do not become exempt from discovery or inadmissible in evidence merely by being disclosed or otherwise used in the mediation[.]" *Id.*

This Court has already held that Local Rule 9019-5 does not create a broad mediation privilege. In *Burtch v. Luminescent Systems, Inc. (In re AE Liquidation, Inc.),* the parties in preference actions were directed to go to mediation. Nos. 08-13031, 10-55460, 10-55384, 2012 Bankr. LEXIS 5710, at *3 (Bankr. D. Del. Dec. 11, 2012). Defendants thereafter, but before the

actual mediation, gathered affidavits from two former employees of the debtor. *Id.* After the failed mediation, the parties conducted discovery during which defendants prepared a privilege log asserting that the affidavits and related documents were protected by the attorney work product doctrine and the mediation privilege. *Id.* The Court rejected the defendants' attempt to use the local rule to shield mediation-related materials from discovery, holding that "Local Rule 9019-5 provides no basis for the Court to grant a protective order related to the mediation, nor does it protect any documents from discovery[.]" *Id.* at *5-6.

The confidentiality Local Rule 9019-5 supplies belongs to communications made to or in the presence of the mediator and kept within the mediation. That rule does not extend to evidence the Special Committee's counsel collected and the related communications it (and the UCC) chose to send CODI's counsel in advance of the mediation. *See id; see also In re Tribune Co.*, No. 08-13141, 2011 Bankr. LEXIS 299, at *32 (Bankr. D. Del. Feb. 3, 2011) (adjusting dates for which mediation privileged could be claimed to "written or oral communication between or among Mediation Parties concerning the Mediation ***to the extent such communications were exchanged on any Mediation Day***" and "only if the communications are between Mediation Parties who were present at the Mediation or were participating in the Mediation off-site");*United States Fid. & Guar. Co. v. Dick Corp.*, 215 F.R.D. 503, 506-507 (W.D. Pa. 2003) (finding that discussions among parties without the mediator's direct involvement are not privileged merely because they relate to the same subject as a mediation).

**B. The Special Committee Waived Any Confidentiality as to the Disclosed Material and to the Broader Subject Matter by Voluntarily Sharing It With an Adverse, Non-Participant Third Party**

Even under a broader view of mediation confidentiality, the black-letter rule in this Circuit is that voluntary disclosure of otherwise-protected communications to a third party waives whatever protection existed. In *Westinghouse Electric Corp. v. Republic of the Philippines*, the Third Circuit held that voluntary disclosure to outside parties waives privilege and work-product protection regardless of any expectation of continued confidentiality, expressly rejecting a "selective waiver" doctrine that would let a party disclose favorable material to one audience while withholding the same material from another. 951 F.2d 1414, 1423–27 (3d Cir. 1991). The court further observed that privilege protections are "not designed for such tactical employment" as picking and choosing to which adversary protected material will be shown. *Id.* at 1425. The Third Circuit has since reaffirmed that voluntary disclosure of privileged or protected material to an outsider destroys the protection as to that material. *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 361 (3d Cir. 2007).

Fairness principles recognized in this Circuit further prevent a party from selectively disclosing protected material to gain an advantage while shielding the remainder of the same subject matter from scrutiny. *See Westinghouse*, 951 F.2d at 1425-26; *In re Teleglobe*, 493 F.3d at 361. That doctrine controls here.

Mr. Sussman was, by the Special Committee's own admission, "acting as counsel for the Special Committee" when he corresponded with Mr. Reeves. [SC RFA Request No. 1; *see also* Special Committee Mtg. Minutes (May 1, 2026) (Ferder_SC_006122) (identifying "Eric Sussman … of Barnes & Thornburg LLP, counsel to the Special Committee").] His April 28, 2026 disclosure to Mr. Reeves was therefore made with the Special Committee's authority, in the course of his representation of the Special Committee, and for the Special Committee's own strategic benefit. The Special Committee cannot now disclaim a disclosure its own retained

counsel made on its behalf and for its benefit. Under *Westinghouse* and *Teleglobe*, that voluntary disclosure to Ferder, who is an adverse, non-participant third party, waived any confidentiality or privilege as to (i) the emails with CODI's counsel that were disclosed, and (ii) the draft complaint described in and covered by that disclosure.

Further, the Special Committee, through Mr. Sussman, used the existence and content of the draft complaint and the value being placed on the evidence Ferder had made available, as a tool to induce and manage Ferder's ongoing cooperation: his supply of witness summaries, financial disclosures, impeachment evidence, and his agreement to waive the privilege as to Holland & Knight materials that the Special Committee had subpoenaed, all furnished on the strength of representations that the Special Committee would "hit CODI as hard as possible" with that evidence and would "honor [its] commitment to give [Ferder] credit for his cooperation." [Email from E. Sussman to J. Reeves (Apr. 17, 2026, 9:50 PM).] Having wielded that material as a sword to extract value from Ferder, the Special Committee cannot now invoke "mediation privilege" as a shield to prevent Ferder from testing – at the first hearing where it matters – whether the CODI settlement embedded in the Plan was in fact the product of a good-faith, arm's-length, adequately informed process.

The Special Committee has, moreover, put that very question at issue. Its own Written Consent grounds the determination that the CODI settlement is "fair and reasonable" expressly on "consideration of all relevant documents and evidence obtained during its investigation." [Written Consent at 1–2 (¶ 2).] At Mr. Issa's deposition, the Debtor's counsel instructed him not to answer questions bearing on that same reasonableness determination, invoking attorney-client privilege. [Issa Dep. Tr. 176:5–177:23.] The Special Committee refuses, on privilege grounds, even to admit or deny the existence of the very draft complaint its own counsel described to

Ferder's counsel in the April 28 email, material that is not protected by any privilege. [SC RFA Resp. to Request Nos. 1, 7, 15.] That combination of offering the investigation as proof of reasonableness while blocking discovery into mediation-related material it already shared outside the mediation is the paradigmatic sword-and-shield problem the waiver doctrine exists to prevent.

## III. CONCLUSION

For the foregoing reasons, Ferder respectfully requests that the Court hold, for purposes of the confirmation hearing, that the Special Committee has waived any mediation privilege and mediation confidentiality as to the subject matter disclosed in and surrounding Mr. Sussman's April 27-28, 2026 emails to Mr. Reeves, and to direct production of the draft complaint and permit examination of the Special Committee witnesses concerning those emails, the draft complaint, the Ferder evidence included in it, communications with CODI's counsel concerning that material, the Special Committee's RFA responses, and the factual basis for the Committee's recommendation of the CODI settlement.

Dated: August 30, 2026

*/s/ Gregory W. Hauswirth*
Gregory Hauswirth (No. 5679)
CAROTHERS & HAUSWIRTH LLP
1007 N. Orange Street, 4th Floor
Wilmington DE 19801
Telephone: (302) 332-7181
Email: ghauswirth@ch-legal.com
*Counsel to Mordechai Ferder individually and as Trustee of the Haim Family Trust*

Jeffrey Reeves (CA Bar No. 156648)
Daniel Weiss (CA Bar No. 242022)
REEVES & WEISS LLP
3333 Michelson Dr.
Suite 300
Irvine, California 92612
Telephone: (818) 554-7601

Email: JReeves@reevesandweiss.com
DWeiss@reevesandweiss.com
*Admitted Pro Hac Vice*
*Counsel to Mordechai Ferder individually and as Trustee of the Haim Family Trust*

Sandford L. Frey (CA Bar No. 117058)
STINSON, LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067
Telephone: (310) 730-7020
Email: Sandford.frey@stinson.com
*Admitted Pro Hac Vice*
*Counsel to Mordechai Ferder individually and as Trustee of the Haim Family Trust*